# CHARITABLE REMAINDER UNITRUST AGREEMENT
## EIN 45-6449547

This Irrevocable Unitrust Agreement is made and entered into on _August 22_, 2011, by and between DAVID LAWRENCE ADDERLEY of Miami, Florida (Grantor) and DAVID LAWRENCE ADDERLEY of Miami, Florida, Trustee.

(A) UNITRUST PERCENTAGE. The Unitrust Percentage, which shall be used to determine the Unitrust Amount for purposes of this Agreement shall be Five percent (5.00%).

(B) UNITRUST RECIPIENT. The Unitrust Recipient for purposes of this Agreement shall be DAVID LAWRENCE ADDERLEY of Miami, Florida. Unitrust amounts calculated in accordance with methods specified in the Payment of Unitrust Amounts section in the Trust Provisions paragraph of this instrument shall be distributed to DAVID LAWRENCE ADDERLEY for life, subject to the last regular payment provision of Paragraph 1 below.

(C) SCHEDULE FOR CHARITABLE DISTRIBUTION. Any amounts which are to be distributed under this Agreement according to this Schedule for Charitable Distribution shall be distributed to qualified exempt charities as follows: 100% to Three Angels Broadcasting Netrowk, Inc. of West Frankfurt, Illinois, for unrestricted purposes.

(D) INITIAL TRUST CORPUS. The assets specified in Attachment "A" to this instrument have been transferred to the Trustee and shall constitute the initial trust corpus. This corpus and any additions to the corpus shall be administered by the Trustee as a single fund.

(E) TRUST PROVISIONS. The following provisions shall govern this Charitable Remainder Unitrust:

(1) PAYMENT OF UNITRUST AMOUNTS. During every taxable year of the Unitrust the Trustee shall pay the Unitrust Amount, which shall be determined according to Paragraph 2 hereof. Payments of Unitrust Amounts shall be made in equal quarterly installments, payable at the end of the selected period during each taxable year of the Unitrust. The Trustee shall pay the Unitrust Amounts to the Unitrust Recipient during the period indicated above. Notwithstanding other paragraphs herein, the obligation to pay Unitrust Amounts hereunder shall terminate with the last regular payment preceding the death of the last noncharitable beneficiary.

(2) DETERMINING THE UNITRUST AMOUNTS. If 50% or more of the initial trust assets qualify as 'Unmarketable Assets' under Section 664 and applicable regulations, defined as assets that are not cash, cash equivalents or assets that can be readily sold or exchanged for cash or cash equivalents, then for all purposes of this Agreement, the Unitrust Amount shall be an amount, paid quarterly, equal to the lesser of (a) the trust income for the respective taxable year (as defined in Section 643(b) of the Internal Revenue Code of 1986 and regulations thereunder) or (b) the Unitrust percentage (set forth above) multiplied by the net fair market value of the trust assets valued as of the first day of each taxable year, decreased under paragraph 5 or increased under paragraph 6 hereof. If trust income for any taxable year exceeds



the amount determined under (b), the Unitrust Amount shall also include the excess income to the extent that the aggregate of the amounts paid to Recipient(s) in prior years is less than the Unitrust percentage of the aggregate net fair market value of trust assets for such years. The above payout method shall be used until the end of the earliest year in which occurs the sale of Unmarketable Assets to the extent that, immediately following such sale, the remaining Unmarketable Assets total less than 50% of the total fair market value of all trust assets. As of the January 1 immediately following such sale, there shall then be a change of payout method from the above income exception method to a Section 664(d)(2) payout method as described below. On that January 1 or upon the trust creation if the value of Unmarketable Assets is less than 50% immediately after the initial contribution, the Unitrust Amount shall thereafter for all purposes of this Agreement be an amount equal to the Unitrust percentage (set forth above) multiplied by the net fair market value of the trust assets valued as of the first day of each taxable year, decreased as provided in paragraph 5 or increased as provided in paragraph 6 hereof. Unitrust Amounts shall be paid in equal quarterly installments from income and, to the extent that income is not sufficient, from principal. Any net income of the Unitrust for any taxable year in excess of the Unitrust Amount shall be added to the corpus at the end of such year.

(3) TESTAMENTARY RIGHT OF REVOCATION. Under the terms of this Charitable Remainder Unitrust Agreement, The Grantor reserves no inter vivos or testamentary right of revocation with respect to the principal or accumulated income, as defined in Section 643(b) of the Internal Revenue Code and the Regulations under that section.

(4) ADJUSTMENTS IN EVENT OF REVALUATION. In the event that the fair market value of the assets constituting the corpus of the Unitrust, as determined by the initial valuation or any annual revaluation as provided hereinabove, is thereafter determined to be in error, the Unitrust Amounts which were paid to a Unitrust Recipient shall be adjusted within reasonable time after final determination is made as to correct fair market value of such corpus by refund to, or additional payment by, the said Unitrust as may be required so that only those Unitrust Amounts shall have been paid which would have been paid if the initial valuation or any annual revaluation had been correct.

(5) TAXABLE YEAR AND SHORT TAXABLE YEARS. The first taxable year shall commence on the effective date of this Agreement and shall end on December 31 of the same year. All subsequent taxable years shall commence on January 1 and, except for the final taxable year, shall end on December 31 of each respective year. During any taxable year of the Unitrust which is less than twelve months in duration, the Unitrust Amounts to be paid hereunder to the Unitrust Recipient shall be a fraction of the amount determined by multiplying the Unitrust Percentage by the fair market value of the assets constituting the corpus of such Unitrust at the beginning of that year, of which fraction the numerator shall be the number of days in such short year and of which the denominator is three hundred sixty-five (365) or, if February 29 is a day included in the numerator, of which the denominator is three hundred sixty-six (366).

(6) ADDITIONAL CONTRIBUTIONS. The Grantor and other persons may at any time contribute additional property to the Unitrust provided that such property is acceptable to the Trustee. If any additional contributions are made to the Unitrust after the initial contribution in trust, the Unitrust Amount, as determined under paragraph 2 above, for the taxable year in

which the assets are added to the trust shall be determined by multiplying the Unitrust Percentage by (a) the net fair market value of trust assets (excluding the assets so added and any income from, or appreciation on, such assets) and (b) that proportion of the value of the assets so added that was excluded under (a) which the number of days in the period which begins with the date of contribution and ends with the earlier of the last day of the taxable year or the date of the last regular payment pursuant to Paragraph 1 hereof, bears to the number of days in the period which begins on the first day of such taxable year and ends with the earlier of the last day of the taxable year or the date of the last regular payment pursuant to Paragraph 1 hereof. In the case where there is no valuation date after the time of contribution the assets so added shall be valued at the time of contribution.

In the event of an additional contribution to the Unitrust as a result of the death of an individual whose gross estate for Federal Estate Tax purposes includes the property passing to this charitable unitrust as such additional contribution, the Trustee's obligation to pay the Unitrust Amount with respect to such additional contribution shall commence with the date of death of that person, but payment of such Unitrust Amount may be deferred from such date of death to the end of the taxable year of the unitrust in which such additional contribution has been finally and completely distributed into the unitrust. Within a reasonable period after such time, the Trustee shall pay, in the case of an underpayment, or shall receive from the income recipient(s), in the case of an overpayment, the difference between (a) any Unitrust Amounts actually paid by the Trustee, plus interest, compounded annually, and (b) the Unitrust Amounts payable, plus interest on those amounts compounded annually. The rate of interest shall be the rate then specified by the Treasury Department for underpayments and overpayments of unitrust interests as stated in the Regulations under Code Section 664.

(7) DISABILITY OF RECIPIENT. If at any time any noncharitable beneficiary to whom the Trustee is directed in this instrument to pay Unitrust Amounts is under legal disability, the Trustee may pay Unitrust Amounts over to the Recipient or for the Recipient's use to a guardian or to any adult person with whom the Recipient resides, without responsibility for expenditure of such Unitrust Amounts.

(8) SPECIFIC HIPAA RELEASE AUTHORITY. Grantors intend for the Trustee to be treated as Grantors would be treated with respect to Grantors' rights regarding the use and disclosure of their individually identifiable health information and other medical records. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 USC 1320d and 45 CFR 160-164.

Accordingly, Grantors hereby authorize any doctor, physician, medical specialist, psychiatrist, chiropractor, health-care professional, dentist, optometrist, health plan, hospital, hospice, clinic, laboratory, pharmacy or pharmacy benefit manager, medical facility, pathologist, or other provider of medical or mental health care, as well as any insurance company and the Medical Information Bureau Inc. or other health-care clearinghouse that has paid for or is seeking payment for such services, to give, disclose and release to the Trustee or successor Trustee and who is currently serving as such, without restriction, all of Grantors' individually identifiable health information and medical records regarding any past, present or future medical or mental health condition, including all information relating to the diagnosis and treatment of HIV/AIDS, sexually transmitted diseases, mental illness, and drug or alcohol abuse. Such

information may also be released to any person designated as a primary or successor agent or attorney-in-fact in a durable power of attorney which Grantors have executed, whether or not such person is presently serving as such, and to any person presently serving as trustee or named as a successor trustee in any revocable or irrevocable trust created by Grantors.

In determining whether a Grantor is incapacitated, all individually identifiable health information and medical records may be released to the Trsutee, including any written opinion relating to a Grantor's incapacity that the Trustee may have requested. This release authority applies to any information governed by HIPAA and applies even if that person has not yet begun serving as Trustee.

This authority given to Trustee shall supersede any prior agreement that Grantors may have made with their health-care providers to restrict access to or disclosure of their individually identifiable health information. The individually identifiable health information and other medical records given, disclosed, or released to Trustee may be subject to redisclosure by Trustee and may no longer be protected by HIPAA. The authority given to Trustee has no expiration date and shall expire only in the event that Grantors revoke such authority in writing and deliver it to their health-care provider.

(9) NO DEATH TAXES PAID FROM TRUST. No federal estate taxes, generation skipping transfer taxes, state death taxes or other estate, death or inheritance taxes (from now on called "death taxes") with respect to any party to this trust shall be allocated to or be recoverable from the trust. The Grantor imposes an obligation on Grantor's estate to pay death taxes from sources other than this trust and agree to so provide in Grantor's will or in another way. This provision may be enforced by a noncharitable beneficiary, the trustee or a charity, acting alone or together.

(10) TERMINATION OF UNITRUST. For all purposes of this instrument, the Unitrust, and its last taxable year, shall terminate upon the expiration of the last period during which Unitrust Amounts are to be paid hereunder, provided that such shall not be later than the last day of the period specified in Section 1.664-3(a)(5) of the Federal Income Tax Regulations. Anything herein to the contrary notwithstanding, the Unitrust shall not continue beyond the time of death of the Unitrust Recipient.

(11) DISTRIBUTION UPON TERMINATION OF THIS UNITRUST. Upon termination of the Unitrust all property constituting the Unitrust, including all income received or accrued but not theretofore distributed, shall be distributed as set forth in the Schedule for Charitable Distribution (which appears in Section C hereof).

(12) CONFORMITY TO FEDERAL TAX LAWS. With respect to the Unitrust herein established, in any conflict, Treasury regulations shall prevail over generally accepted fiduciary accounting principles and any inconsistent provisions of this Unitrust Agreement. Without limiting the generality of these provisions, if Treasury regulations shall specify a method or time of valuing the Unitrust's assets, or a way of making payments from the Unitrust, which differs from the provisions herein contained, this Unitrust Agreement shall be deemed amended to conform to the Treasury regulations. The assets of the Unitrust shall be valued, managed and invested consistent with the intent that the Unitrust be exempt from taxation, and that it shall be entitled to applicable charitable income, gift or estate tax deductions. Except for

the payment of the Unitrust Amounts to the Unitrust Recipient, the trustee is prohibited from engaging in any act of self- dealing as defined in Section 4941(d) of the Internal Revenue Code of 1986, from retaining any excess business holdings as defined in Section 4943(c) of the Code which would subject the trust to tax under Section 4943 of the Code, from making any investments which would subject the trust to tax under Section 4944 of the Code, and from making any taxable expenditures as defined in Section 4945(d) of the Code. The trustee shall make distributions at such time and in such manner as not to subject the trust to tax under Section 4942 of the Code. In addition, nothing in this trust instrument shall be construed to restrict the trustee from investing the trust assets in a manner which could result in the annual realization of a reasonable amount of income or gain from the sale or disposition of trust assets.

(13) DISTRIBUTIONS TO CHARITIES. No amount other than a Unitrust Amount shall be paid to or for the use of any person other than an organization described in each of Section 170(b)(1)(A), Section 170(c), Section 2055(a) and Section 2522(a) (hereafter 'qualified exempt' organizations). If a Grantor is a current income recipient, then a Grantor shall retain the right to direct the Trustee to distribute an undivided percentage of trust assets to qualified exempt charities in the Schedule For Charitable Distribution, on the last day of any trust taxable year. The adjusted basis for Federal tax purposes of any trust property which the trustee distributes in kind to charity must be fairly representative of the adjusted basis for such purposes of all trust property available for distribution on the date of distribution. All principal and income to be distributed under the Schedule for Charitable Distribution shall be distributed in the specified percentages only to those organizations that are qualified exempt. The share of any specified charity which is not a qualified exempt organization shall be distributed in proportion to the remaining percentages by the trustee to the remaining named qualified exempt charities, if any. If no specified organization is qualified exempt, the share shall be distributed to such qualified exempt organization or organizations as shall be selected by the trustee in the sole discretion of the trustee.

(14) ADMINISTRATION OF THE UNITRUST. The trustee is authorized to retain the Trust property, or may sell the property and reinvest in such property as the trustee shall deem advisable. The trustee shall not be required to diversify as to kind or amount. Unless prohibited by federal law, the trustee shall have the power to invest in zero coupon bonds, an annuity contract, an LLC, partnership or life insurance policy on the life of the Unitrust Recipient or Recipients, as applicable. Solely for the purpose of complying with Section 664 of the Code and applicable Treasury regulations, the trustee shall be authorized to amend this trust by written statement attached to this instrument and delivered to the current income recipients. In managing the trust assets, the trustee shall have the power to select and compensate professional advisors or administrators and to delegate appropriate trust powers to them. In addition, solely to the extent that these powers do not conflict with other trust provisions, the Trustee is authorized the trust powers specified by law.

(15) ACCOUNTS AND REPORTS. The Trustee shall keep current accounts accurately reflecting the position of, and the receipts, disbursements and other changes in, the income and corpus of the trust, which shall be available for inspection during all reasonable business hours by any Unitrust Recipient currently receiving payments of Unitrust Amounts hereunder or his duly authorized representative. In addition, the Trustee as of the end of each

taxable year of the trust and as of any other date the Trustee deems beneficial, shall keep the said Unitrust Recipient or his duly authorized representative, informed of the contents of such reports by accurate written statements. To the extent permitted by law, the Trustee shall not be required to provide reports or information to remainder recipients prior to trust termination.

(16) TRUSTEE. DAVID LAWRENCE ADDERLEY of Miami, Florida, shall serve as Trustee of the Unitrust herein established. If for any reason DAVID LAWRENCE ADDERLEY is unable or unwilling to serve as Trustee, then <u>Three Angels Broadcasting Network, Inc.</u> of West Frankfurt, Illinois shall serve as Successor Trustee. If no Independent Trustee as defined under Sections 664, 674 and 672 of the Code is acting with respect to this trust and the trust holds any asset that does not have a readily ascertainable fair market value or holds any insurance contract or annuity contract, then an Independent Special Trustee as defined under the above Code sections shall be appointed by the Trustee in a written document referring to this paragraph. The Independent Special Trustee shall have sole responsibility for valuation of assets without readily ascertainable fair market value and shall make all decisions regarding withdrawals, surrender, options, elections, allocations to income or principal, and dispositions with respect to any insurance or annuity contract. The Independent Special Trustee shall have no powers other than those specified in this paragraph. A Trustee shall be entitled to compensation for services hereunder according to the Trustee's schedule of fees in effect at the time such services are rendered. No bond or security shall be required of the Trustee in any jurisdiction. The Trustee shall not be required to file an inventory or annual report with any court with proper jurisdiction. If at any time a trustee is a corporation, the position of trustee may be assumed by a successor corporation with trust powers. A successor trustee shall not be required to examine the administration or actions of any prior trustee and shall not be liable for such administration or actions.

(17) GOVERNING LAW. This Agreement and all rights and obligations under it shall be determined in accordance with the law of the State of Florida except to the extent that such may be in conflict with United States laws and regulations with respect to income, estate and gift taxes which shall govern in the event of such conflict.

Grantors agree to hold the Trustee harmless for any defects of title, any and all environmental cleanup, or any action based on an environmental cleanup, for the property described in Attachment "A".

This Trust is dedicated to the memory of WELLINTON LEON ADDERLEY, the beloved father of DAVID LAWRENCE ADDERLEY.

In Witness Whereof, the Grantor has signed this Agreement and delivered the corpus of the Trust specified in Attachment "A" and as the Trustee has accepted this Trust by his signature.

I hereby acknowledge receipt in trust of the corpus specified in Attachment 'A' to this Charitable Trust.

_____  Date _____
DAVID LAWRENCE ADDERLEY, Grantor/Trustee        8-22-11

STATE OF FLORIDA
COUNTY OF Miami-Dade

On Aug 22, 2011, before me, Bessie M Tomlin personally appeared DAVID LAWRENCE ADDERLEY, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity. I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC
My Commisison expires: 8/10/2013        SEAL



BESSIE M. TOMLIN
NOTARY PUBLIC
STATE OF FLORIDA
Comm# DD0915620
Expires 8/10/2013

ATTACHMENT A

SCHEDULE OF PROPERTY TRANSFERRED BY DAVID LAWRENCE ADDERLEY PURSUANT TO HIS AGREEMENT AS GRANTOR.

1. $10.00
2. Real property located on Long Island, Bahamas

Approved on ___22___ day of ___August___, 2011.

_____
DAVID LAWRENCE ADDERLEY, Grantor

The David Lawrence ADDERLEY            Attachment "A"            11-082CRUTAgreement[1].docx
Charitable Remainder Unitrust Agreement