UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-23362-CIV-SCOLA

**JURY TRIAL DEMANDED**

DAVID LAWRENCE ADDERLEY,
an individual,

      Plaintiff,

vs.

THREE ANGELS BROADCASTING
NETWORK, INC., a non-for-profit Illinois
corporation, ROY HUNT, JR., an individual,
JAMES W. GILLEY, an individual,
DANNY SHELTON, an individual, and
RICHARD BARRY BENTON, ESQ., an
individual,

      Defendants.

_____

## VERIFIED SECOND AMENDED COMPLAINT
_____

DAVID LAWRENCE ADDERLEY ("ADDERLEY"), an individual, through

counsel, sues THREE ANGELS BROADCASTING NETWORK, INC. ("3ABN"), a not

for profit foreign corporation, ROY HUNT, JR. ("HUNT"), an individual, JAMES W.

GILLEY ("GILLEY"), an individual, DANNY SHELTON ("SHELTON"), an individual,

and RICHARD BARRY BENTON, ESQ. ("BENTON"), for damages, a declaration and

an injunction and alleges, as follows:

### PARTIES/JURISDICTION/VENUE

1.     ADDERLEY is an individual who is domiciled in Miami-Dade County,

Florida, a citizen of the State of Florida, and is a dual citizen of the United States and the

Bahamas and is otherwise *sui juris*.

2.      ADDERLEY is a veteran; beginning in 1960, ADDERLEY served in the U.S. Army as an airborne ranger, throughout the U.S. and abroad, including serving in combat in Vietnam. ADDERLEY started out as a Lieutenant in the Infantry, and ultimately was promoted to a Colonel[1]; he received several medals for his service throughout his career, and an Honorable Discharge in 1990.

3.      ADDERLEY is legally blind. ADDERLEY had 20/20 vision when he began his service in the military in 1960. However, due to an incident occurring while on active duty, ADDERLEY's vision ultimately degraded to his complete blindness; in 1990 when ADDERLEY left the service, he was legally blind and has continued to remain legally blind as of the date of this Second Amended Complaint ("Complaint").

4.      3ABN is a not-for-profit corporation organized and existing under the laws of Illinois, with its principal place of business located at 3391 Charley Good Road, West Frankfort, IL 62896, and a citizen of the State of Illinois.

5.      HUNT is a director of 3ABN, oversees the planned giving and trust services department at 3ABN, and is an individual who is domiciled in the State of Illinois, County of Franklin, a citizen of the State of Illinois, and is otherwise *sui juris*.

6.      From September 2007 to July 2015, GILLEY served as the President, CEO and authorized representative of 3ABN, and an individual who is domiciled in the State of California, County of Placer, a citizen of the State of California, and is otherwise *sui juris*.

7.      At all times prior to September 2007, and from July 2015 to present, SHELTON has served as the President, CEO, founder and authorized representative of

---

[1] ADDERLEY was offered to be promoted as a General Officer during his service in the U.S. Army, but declined the position.



3ABN, and is an individual who is domiciled in the State of Illinois, County of Franklin, a citizen of the State of Illinois, and is otherwise *sui juris*.

8.    BENTON is an attorney and an individual who is domiciled in the State of Georgia, County of Gordon, a citizen of the State of Georgia, and is otherwise *sui juris*.

9.    This Court has subject matter jurisdiction pursuant to 28 USC § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

10.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

11.    Venue is proper in this district pursuant to 28 USC § 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

12.    All conditions precedent to the maintenance of this action have been performed, have been waived, or would have proven futile if performed.

## **REAL PROPERTY**

13.    ADDERLEY is the rightful owner of the real property in excess of 419.537 acres or 18,275,032 square feet of vacant land in Long Island, Bahamas, known as:

| | |
|---|---|
| Property Identification: | Adderley Tract |
| Address: | Queen's Highway<br>Dean's Bahamas |
| Property Description: | All that piece parcel or lot of land situate in the Settlement of Deans, approximately four miles west of Clarence Town in the Island of Long Island of The Bahamas containing 419.537 acres by survey |

(hereinafter the "Property").



SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

## INTENDED DONATION TO SEVENTH DAY ADVENTIST CHURCH

14.     ADDERLEY's father, WELLINGTON ADDERLEY, became affiliated with the Seventh Day Adventist Church ("Church") before ADDERLEY's birth. ADDERLEY grew up in the faith of the Seventh Day Adventist Church and ADDERLEY has been a parishioner and firm believer in the doctrines and theology of the Seventh Day Adventist Church from birth, throughout is childhood, adulthood and entire life.  Due to his lifelong religious convictions and parishioner relationship with his Church, ADDERLEY discussed the donation of a small portion of his existing Property along Queens Highway to his Church to build a Sanctuary and for other religious purposes, to carry out the wishes of his father, WELLINGTON ADDERLEY.

15.     HUNT and 3ABN informed ADDERLEY that they would facilitate the donation and/or use of a small portion of his Property to 3ABN for building of a Sanctuary and other religious purposes consistent with the beliefs of the Seventh Day Adventist Church.

16.     ADDERLEY trusted HUNT and 3ABN to be truthful and moral in character because he thought HUNT and 3ABN were working in conjunction with the beliefs, doctrines and mission of his Church.

17.     Indeed, 3ABN is not in any way affiliated with ADDERLEY's Church. 3ABN's website states the following:

> We are not owned or operated by any person or outside organization, and neither are we funded by any church or denomination, although many of our employees and volunteers are members of the Seventh-day Adventist Church.

18.     HUNT and 3ABN intentionally and fraudulently misrepresented that 3ABN would facilitate the donation and/or use of only a small portion of ADDERLEY's Property for religious purposes consistent with the beliefs of his Church, and instead, intended to transfer the entirety of ADDERLEY's Property for the benefit of 3ABN.

## CHARITABLE REMAINDER UNITRUST

19.     3ABN retained BENTON, an attorney located in Georgia, to prepare a charitable remainder unitrust for 3ABN's benefit and ADDERLEY's detriment. 3ABN paid for the preparation of the charitable remainder unitrust; ADDERLEY did not pay BENTON for his legal services.

20.     BENTON had an ongoing relationship with 3ABN to prepare charitable remainder unitrusts to obtain donations for 3ABN, and as such, the engagement of BENTON to prepare an irrevocable charitable remainder trust to facilitate the donation of a small portion of ADDERLEY's Property necessarily included a conflict with the representation of ADDERLEY.

21.     On or about August 22, 2011, ADDERLEY signed the Charitable Remainder Unitrust Agreement, EIN No. 45-6449547, as Grantor/Trustee ("CRUT"). The Attachment A to the CRUT listed "Real property located on Long Island, Bahamas" as being transferred to the CRUT, but did not specify the property in detail that would fund the CRUT. Although there were discussions about donating a small portion of ADDERLEY's Property, there was never any final determination made as to the portion of Property ADDERLEY intended to donate to 3ABN. A copy is attached as **Exhibit "A."**

22.    The CRUT was notarized by Bessie M. Tomlin, a Notary Public in the State of Florida, Commission No. DD0915620, with an expiration date of August 10, 2013.  The notary did not identify the "satisfactory evidence" that ADDERLEY provided to the notary for identification, and the CRUT was not witnessed by any party.[2]

23.    Prior to and during the execution of the CRUT, neither HUNT nor 3ABN nor BENTON, informed ADDERLEY that he was executing a trust, and indeed, never informed ADDERLEY that the CRUT was irrevocable.  The notary public did not read the CRUT to ADDERLEY.[3]  ADDERLEY is legally blind and did not know that he was signing an irrevocable CRUT, or any trust instrument.

24.    HUNT, BENTON and 3ABN intentionally arranged for ADDERLEY, a legally blind person, to sign the CRUT without having the guidance, advice, representation and presence of independent legal counsel, and without disclosing the conflict of interest with BENTON.  Moreover, since ADDERLEY is legally blind, he could not read the documents prior to execution.  Instead, he relied on the representations made by 3ABN and HUNT, which representations were false.

25.    The CRUT identifies 3ABN as the qualified exempt charity who is to receive 100% of the charitable distribution.  **(Exhibit "A," ¶(C)).**  Neither HUNT nor 3ABN nor BENTON informed ADDERLEY, and ADDERLEY was not aware, that 3ABN was identified as the entity who was to receive the 100% distribution upon his death.

---

[2] § 117.05(5)(b)2. of the Florida Statutes provides reasonable reliance on presentation of "any one of the following forms of identification, if the document is current or has been issued within the past 5 years and bears a serial or other identifying number . . . .," including a drivers' license and passport.

[3] (14)(a)    A notary public may notarize the signature of a person who is blind after the notary public has read the entire instrument to that person.  117.05(14)(a), Fla. Stat.



Neither 3ABN nor HUNT nor BENTON informed ADDERLEY that the charitable designation to 3ABN was irrevocable and could not be modified in the future prior to this death.

26.     Rather, at the time of the execution of the CRUT, HUNT and 3ABN informed ADDERLEY that the documents that ADDERLEY was signing would allow for 3ABN to further explore and discuss the small portion of the Property that ADDERLEY would be willing to donate and/or allow 3ABN to use to carry forth ministerial activities of his Church.

27.     The 419 acre tract, valued at approximately $32,000,000, belonging to ADDERLEY represents a substantial portion of ADDERLEY's estate assets.

28.     HUNT and 3ABN had another attorney that represents 3ABN, Mr. Wesley Westphal ("Mr. Westphal"), who is not a licensed attorney in Florida, prepare a revocable trust to distribute ADDERLEY's estate assets to his two daughters, which were never signed.  The intake form was signed on November 14, 2011, only a couple months after the CRUT was signed; however, the draft of the revocable trust agreement was not prepared until March 2013.  Indeed, it is the common practice of 3ABN to allow Mr. Westphal to prepare documents for donors who are not located in the state(s) where Mr. Westphal is licensed to practice.

29.     At all material times, ADDERLEY thought that he was signing documents that would allow 3ABN and HUNT to have the necessary information to facilitate the intention of his overall estate planning objectives as follows:

        a)     To allow 3ABN to use a small portion of his Property for the building of a Sanctuary and for religious purposes consistent with the beliefs of his Church, which property was never defined.

SG  SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

      b)    To distribute the remainder of the Property to his two daughters upon his death.

However, since ADDERLEY is legally blind, he could not read the documents prior to execution, and the notary never read the documents to him prior to execution. Instead, ADDERLEY relied on the representations made by 3ABN, BENTON and HUNT, which representations were false.

    30.    The CRUT provides as follows:

    (17)    GOVERNING LAW. This Agreement and all rights and obligations under it shall be determined in accordance **with the law of the State of Florida** except to the extent that such may be in conflict with the United States laws and regulations with respect to income, estate and gift taxes which shall govern in the event of such conflict.

**(Exhibit "A," ¶ 17).**

    31.    ADDERLEY was initially named as the Trustee, but according to the Resignation of Trustee which purports to include ADDERLEY's signature, ADDERLEY resigned only five (5) months later, and never carried forth any official duties of the CRUT.

    32.    On January 24, 2012, ADDERLEY signed a Notice of Resignation of Trustee. At that time, ADDERLEY did not understand that he had previously signed a CRUT, nor did he understand that he was resigning as Trustee of the CRUT. A copy is attached as **Exhibit "B."**

    33.    On January 26, 2012, GILLEY agreed to act as successor Trustee as an authorized representative of 3ABN. A copy is attached as **Exhibit "C."** Once GILLEY was appointed as Trustee, ADDERLEY did not have any control over the CRUT or over the Property.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

34.     GILLEY did not know that ADDERLEY had originally been named as Trustee of the CRUT, that ADDERLEY resigned as Trustee of the CRUT, and indeed, never even read the CRUT.

35.     At some point in time after GILLEY agreed to act as successor Trustee as authorized representative of 3ABN, SHELTON took over to act as the successor Trustee as the authorized representative of 3ABN.

36.     Although ADDERLEY is named as a Unitrust Recipient, to date, ADDERLEY has not received any distributions from the CRUT.  **(Exhibit "A," ¶ (B), (E)(2)).**

## INDENTURES OF CONVEYANCE

37.     HUNT, BENTON and 3ABN retained the services of J. Denise Lewis-Johnson of Lewis & Longley in the Bahamas to prepare three (3) Indentures of Conveyance for ADDERLEY to execute.

38.     In December 2011, HUNT and the representatives of 3ABN informed ADDERLEY that they were going to take him to the Bahamian Embassy in Miami, Florida to discuss the donation of a small portion of his Property for the benefit of 3ABN for the building of a Sanctuary and for religious purposes consistent with the beliefs of his Church.

39.     ADDERLEY purportedly signed the following three (3) Indentures of Conveyance prepared by Lewis & Longley, all of which are dated December 30, 2011, notarized on January 24, 2012, and contain an affidavit of Bahamian Citizenship signed and notarized on May 8, 2012 (collectively the "Indentures of Conveyance"):

a) Indenture of Conveyance, Instrument No. 226191, Control No. 20475161, recorded at Volume 11697, Pages 10-19 in the Registry on September 12, 2012, transferring the following property from ADDERLEY to the CRUT:

ALL THAT piece or parcel of land situate in the area known as Peter Deans in the Island of Long Island one of the **Bahama Islands** comprising **Twenty-five (25) acres** more or less being one-half (1/2) of a parcel of land purchased by Lawrence Wellington Adderley from Minna Esteline Minns and John Ramsay which said piece or parcel of land is bounded on the North by the sea of the East by land formerly the property of the said Wellington Leon Adderley on the South by land the property of the said Wellington Leon Adderley and on the West by land known as Turtle Cove.

A copy of this Indenture of Conveyance is attached as **Exhibit "D."**

a) Indenture of Conveyance, Instrument No. 226197, Control No. 20475170, recorded at Volume 11697, Pages 20-29 in the Registry on September 12, 2012, transferring the following property from ADDERLEY to the CRUT:

ALL THAT piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town in the Island of Long Island and bounded as follows on the North by the Sea running thereon at high water mark One thousand and Ten and One hundredths (1010.01) feet more or less on the East by land formerly the property of Wellington Leon Adderley but conveyed by the said Wellington Leon Adderley to himself and the Vendor jointly and running thereon One thousand and Ninety-six and Eighty-three hundredths (1096.83) feet on the South by land formerly the proper of the said Wellington Leon Adderley and conveyed by the [sic] said Wellington Leon Adderley to himself and the Vendor jointly and running thereon One thousand Two hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and on the West by land now or formerly the property of one H.L. Major and running thereon One thousand and Fifteen and Forty-one hundredths (1015.41) feet which said piece parcel or tract of land has such position boundaries shape marks and dimensions as are shown on the diagram or plan attached to the said Indenture and is thereon delineated on that part of the said diagram or plan which is coloured Pink.

A copy of this Indenture of Conveyance is attached as **Exhibit "E."**

a) Indenture of Conveyance, Instrument No. 226199, Control No. 20475174, recorded at Volume 11697, Pages 30-40 in the Registry on September 12, 2012, transferring the following property from ADDERLEY to the CRUT:

ALL THAT piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town on the Island of Long Island and bounded on the North partly by land formerly the property of Wellington Leon Adderley and conveyed by an Indenture dated the 21st day of May, A.D., 1971 herewith to the said David Lawrence Adderley and running thereon One Thousand Two Hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and partly by the Sea and running thereon in an irregular line at high water mark Three thousand Five hundred and Sixty-one and One hundredths (3561.01) feet more or less on the North partly by land the property of the Grantor and running thereon in an irregular line One thousand Two hundred and Twenty-two and Fifty-two hundredths (1222.52) feet and partly by land now or formerly the property of Freeman Cartwright and running thereon Four hundred and Thirty-five and Seventy-four hundredths (435.74) feet on the Southeast partly by land nor or formerly the property of the said Freeman Cartwright and running thereon Two thousand Four hundred and Eighty-seven and Seventy-three hundredths (2487.73) and partly by land now or formerly the property of Arthur S. Adderley and running thereon Two thousand Six hundred and Eighty-one and Thirty-one hundredths (2681.31) feet on the Southwest partly by land now or formerly the property of E. Adderley and Anna Ramsey and running thereon Six hundred and Seventy-one and Thirty hundredths (671.30) feet and partly by land now or formerly the property of Curtis Cartwright and running thereon in an irregular line One thousand Three hundred and Eighty-four and Eight-five hundredths (1384.85) feet and on the Northwest partly by land now or formerly the property of the said Curtis Cartwright and running thereon Three hundred and Eight-six and Sixty-six hundredths (386.66) feet and partly by land now or formerly the property of H. L. Major and running thereon Seven hundred and Sixty-four and Eighteen hundredths (764.18) feet which said parcel or tract of land has such position boundaries shape marks and dimensions as are shown on the diagram or plan attached to the said Indenture and is delineated on that part of the said diagram or plan which is colored Pink.

A copy of this Indenture of Conveyance is attached as **Exhibit "F."**

40.    The Property described in the three (3) Indentures of Conveyance was appraised at the value of Twenty-Two Million Nine Hundred Thousand Dollars ($22,900,000.00) on December 28, 2012, and together represent a substantial portion of the assets owned by ADDERLEY.

41.     Each of the three (3) Indentures of Conveyance provided consideration of the amount of Fifty Thousand Dollars ($50,000.00) to be paid to ADDERLEY as the Vendor, for a total of One Hundred Fifty Thousand Dollars ($150,000.00).  ADDERLEY never received any consideration for any of the Indentures of Conveyance, and even if he had received One Hundred Fifty Thousand Dollars ($150,000.00), such consideration was grossly inadequate for the transfer of the Property valued at Twenty-Two Million Nine Hundred Thousand Dollars ($22,900,000.00).

42.     In addition, on August 31, 2012, 3ABN acquired a Permit Issued by the Investments Board, which granted permission for 3ABN to directly acquire and hold the Property that was conveyed to the CRUT via the three (3) Indentures of Conveyance referenced above. *See*, **Exs. D-F** (Vol. 11697, pp. 11-12, pp. 21-22, pp. 31-32).  The CRUT does not provide for the charitable remainder distribution to 3ABN until after the death of ADDERLEY, who still remains living.  **(Ex. A., p. 4 ¶(11)).**

43.     HUNT and 3ABN representatives never disclosed to ADDERLEY that the three (3) Indentures of Conveyance were for the transfer of his entire 419 acre tract.

44.     Despite HUNT and 3ABN's misrepresentations and omissions, the Indentures of Conveyance signed by ADDRELEY transferred the entire 419 acre tract.

45.     One of the primary benefits of a CRUT is that the donor has the right to take an income tax deduction during his life even though the charity does not receive the donation until death.   Indeed, BENTON prepared illustrations that showed that ADDERLEY would receive a charitable tax deduction in the amount of $6,161,715. However, at no time did ADDERLEY take any charitable income tax deduction reflecting the transfer.  The fact that ADDERLEY did not ever take any income tax deduction for the transfer of 419 acres of Property, which was valued in excess of $22,900,000 at the time

Adderley v. 3ABN et. al.

of the transfer, and in turn, would have entitled ADDERLEY to an immediate income tax deduction for a period of up to five (5) years after the transfer of the Property, demonstrates that ADDERLEY did not understand the terms of the CRUT, and/or did not intend to convey his entire Property.

46.      HUNT and 3ABN specifically arranged for BENTON to prepare and draft the CRUT, and HUNT and 3ABN arranged for the execution of the CRUT as well as the transfer of ADDERLEY's Property knowing that ADDERLEY did not have legal representation present to represent him, that 3ABN, HUNT and BENTON did not disclose the conflict of interest, and that ADDERLEY was legally blind.  HUNT and 3ABN knew that they had arranged for a substantial transfer of 419 acres of his Property in the Bahamas without ADDERLEY's knowledge, and took advantage of the fact that ADDERLEY fully trusted HUNT and 3ABN to be honest and truthful.

47.      HUNT and 3ABN intentionally arranged for ADDERLEY, a legally blind person, to sign the CRUT without having the guidance, advice, representation and presence of independent legal counsel, and failed to disclose the conflict of interest with BENTON. Indeed, 3ABN and HUNT directed BENTON to include terms in the CRUT that were favorable to 3ABN, and failed to disclose same to ADDERLEY.

48.      HUNT, BENTON and 3ABN deliberately and intentionally made false and negligent representations to ADDERLEY to induce him to sign the CRUT and Indentures of Conveyance.

49.      Defendants made these false representations with intention to deprive ADDERLEY of all his Property.

50. HUNT, BENTON and 3ABN knew that ADDERLEY was blind, and that ADDERLEY had not retained independent legal representation that reviewed the CRUT and Indentures of Conveyance and advised ADDERLEY as to its contents.

51. On March 26, 2018, ADDERLEY made a demand to 3ABN to terminate the CRUT and return ADDERLEY's Property to him. A copy of the demand letter is attached as **Exhibit "G."**

52. On May 4, 2018, 3ABN responded to the demand letter refusing to return ADDERLEY's Property or to terminate the trust. A copy of the response letter is attached as **Exhibit "H."**

53. ADDERLEY has retained the undersigned counsel and has agreed to pay a reasonable fee for the prosecution of this action.

**3ABN's MARKETING TO THE PUBLIC**

**FOR ITS TRUST AND ESTATE SERVICES**

54. At all material times, 3ABN marketed its planned giving and trust services through its video broadcasting and pamphlets, lectures in Seventh Day Adventist Churches, and personal visits with donors.

55. 3ABN made the following representations in such video broadcasts and pamphlets with regard to the charitable remainder unitrust:

    a   Donors would save on capital gains tax on the sale of property;

    b   Donors would receive a charitable tax deduction;

    c   Donors would receive annual or quarterly income;

    d   That the only drawbacks included the cost of the preparation of the legal documents, and that 3ABN would pay for those services; indeed,



by its own admission, 3ABN used the payment of the CRUT to induce donors, including ADDERLEY, to execute a CRUT;

e    That the attorney preparing such documents would represent the donors.

56.    HUNT, 3ABN and its attorney, BENTON, specifically and expressly recommended a CRUT to ADDERLEY for the transfer of ADDERLEY's Property.

57.    HUNT, 3ABN and BENTON failed to disclose to ADDERLEY the inherent conflict of interest in the preparation of documents on or on behalf of ADDERLEY as BENTON represented 3ABN.

58.    3ABN appointed GILLEY and SHELTON as authorized representative of 3ABN to serve as the Trustee of the CRUT.

59.    GILLEY and SHELTON do not possess the requisite qualifications to serve as Trustee.

60.    3ABN and HUNT, in its practice of planned giving and trust services, provided recommendations, advice, and information to donors that constituted the unauthorized practice of law in the State of Florida.

61.    Upon information and belief, ADDERLEY signed documents, including the CRUT drafted by BENTON, based on the recommendations of 3ABN, HUNT and BENTON, all who failed to disclose the inherent conflict of interest, as well as the significant drawbacks of the CRUT, including but not limited to, the fact that:

a    ADDERLEY would not receive any unitrust distributions until the Property was sold;

b    ADDERLEY (and his heirs) would not receive any unitrust distributions if he deceased prior to the sale of the Property;



       c   ADDERLEY would not receive the charitable tax deduction if he did not have sufficient income to offset the deduction in the first five (5) years after contributing the Property to the CRUT;

       d   The entirety of ADDERLEY's Property would pass to 3ABN upon ADDERLEY's death.

## APPLICATION OF DELAYED DISCOVERY DOCTRINE[4] & FRAUDULENT CONCEALMENT
### (Statute of Limitations)

62.    In or about April 2016, ADDERLEY was first put on actual and/or constructive notice of Defendants' misconduct after he had decided to sell his Property and retained a local Florida attorney to review the documents uncovered in this matter, including the CRUT and Indentures of Conveyances.

63.    ADDERLEY did not discover, nor could have discovered through reasonable diligence, Defendants' misconduct until April 2016 because Defendants used deceptive and secret methods to avoid detection and to affirmatively conceal their fraudulent conduct. By its very nature, the misconduct by Defendants was inherently self-concealing, especially given the fact that ADDERLEY is legally blind.

64.    ADDERLEY did not retain an independent attorney and the express language of the CRUT or the Indentures of Conveyances were not properly translated or disclosed to him prior to signing.

65.    Defendants engaged in a deliberate course of conduct and misrepresentations, by its acts and omissions, to engage in a sham/fraud, all with the intention of inducing ADDERLEY to transfer his real Property worth millions of dollars to 3ABN, to wit:

---

[4] The delayed discovery doctrine applies to actions "founded on fraud." Fla. Stat. § 95.031(2)(a).



a) 3ABN, BENTON and HUNT misrepresented the contents of the CRUT and Indentures of Conveyance, and falsely informed ADDERLEY that the documents he was signing would further facilitate the discussion and exploration of the donation and/or use of a small portion of ADDERLEY's Property that ADDERLEY may donate to 3ABN for the building of a Sanctuary and for other religious purposes consistent with the beliefs of his Church;

b) 3ABN, BENTON and HUNT purposely (or with reckless falsity) prepared and induced ADDERLEY to execute the CRUT and Indentures of Conveyance, which conveyed ADDERLEY's entire Property and a substantial portion of his estate, and not a small portion of his Property;

c) 3ABN, BENTON and HUNT purposely (or with reckless falsity) failed to inform ADDERLEY that the disposition of his entire Property to 3ABN was irrevocable;

d) 3ABN, BENTON and HUNT failed to fully disclose the contents of the CRUT and Indentures of Conveyances that ADDERLEY signed, including the fact that:

  i. ADDERLEY was signing a trust;
  ii. The terms of the CRUT, including that it was irrevocable;
  iii. 3ABN was named as the sole beneficiary of the entire Property upon his death;
  iv. ADDERLEY could not change the charitable organization and replace 3ABN as Successor Trustee or beneficiary with another charitable organization;
  v. ADDERLEY's Indentures of Conveyance conveyed his entire Property into the CRUT.

e) 3ABN, BENTON and HUNT omitted the fact that a conflict of interest existed with regard to BENTON's preparation of the CRUT;

f) 3ABN, BENTON and HUNT omitted informing ADDERLEY that the CRUT was prepared with favorable terms to 3ABN, including but not limited to,
  i. Appointing 3ABN as the Successor Trustee, and failing to include an option for ADDERLEY to change the designation of 3ABN as Trustee;
  ii. Providing that 3ABN is 100% beneficiary of the CRUT upon ADDERLEY's death, and failing to include the option for ADDERLEY to change the beneficiary;
  iii. Providing that the sole unitrust recipient is ADDERLEY, and not including his daughters as lifetime unitrust recipients.

g) 3ABN, BENTON and HUNT misrepresented the unitrust distributions that ADDERLEY was to receive in its illustrations to induce ADDERLEY to sign the CRUT, and failed to update the illustration and calculations in accord with



the appraisal valuation of $22,900,000, which substantially changed the benefits to ADDERLEY.

h) 3ABN, BENTON and HUNT ensured annual income to ADDERLEY, yet failed to inform ADDERLEY that he would not receive any distribution until the Property was sold, and that ADDERLEY would not receive any distribution at all if the Property was not sold before his death, and that instead, 3ABN would receive the entirety of the Property.

i) 3ABN, BENTON and HUNT provided instructions to the CRUT that were inconsistent with the terms of the CRUT as drafted, including the fact that ADDERLEY was entitled to change the charitable beneficiary or adjust amounts going to each beneficiary, when the terms of the CRUT prohibited any such action by ADDERLEY.

66.     Upon information and belief, 3ABN retained the originals and copies of the CRUT and Indentures of Conveyances.

67.     As a result of the actions of Defendants, ADDERLEY was unaware that he had suffered injury as a result of the sham/fraudulent transfers until April 2016, the delayed discovery rule applies, and the statute of limitations for each of the below causes of action is tolled.

## <u>CONTINUING CONVERSION/FRAUD</u>
### (Statute of Limitations)

68.     In Florida, conversion is a continuing tort, and the statute of limitations runs from the date that the tortious act ceases.[5]

69.     Here, although the acts of conversion originally occurred on August 22, 2011, Defendants followed up with its continuing tort by the following acts:

a)     On August 22, 2011, inducing the signature of ADDERLEY to execute the CRUT;

b)     On December 30, 2011, inducing the signature of ADDERLEY on three Indentures of Conveyance;

---

[5] *Perera v. Wachovia Bank, N.A.,* No. 09-23773-CV, 2010 WL 1375635, at * 2 (S.D. Fla. Mar. 15, 2010).



c)  Failing to pay the stated $150,000 consideration to ADDERLEY required by the Indentures of Conveyances;

d)  On August 31, 2012, obtaining a Permit from the Investments Board which granted 3ABN the right to acquire and hold the Property;

e)  From August 31, 2012 to every day since to the present, retaining the Property and excluding ADDERLEY from the use and possession of his Property;

f)  From August 31, 2012 to every day since to the present, performing improvements on the Property without obtaining ADDERLEY's consent, including the surveying of the Property and building of a road;

g)  Failing to make appropriate and reasonable efforts to sell the Property immediately after the Property was transferred;

h)  After April 2016, reassuring ADDERLEY that he and his family would receive annual income from the CRUT in the total of approximately $900,000 or more per year since the formation of the trust, and that 3ABN was on the cusp of selling the property, and the sale was imminent, which would fund the ability of 3ABN to pay the Unitrust Amount to ADDERLEY;

i)  From the date that GILLEY became Trustee of the CRUT on January 24, 2012 to present, 3ABN, HUNT, GILLEY and SHELTON failed to convert the Property to productive property, and use the appropriate efforts to sell the Property;

j)  Each and every quarter, Defendants failed to fund the Unitrust Amount to ADDERLEY, which had been accruing since August 22, 2011, the date of the execution of the CRUT. The Unitrust Amounts were first due September 30, 2011, and every quarter thereafter through the date of this Complaint. Accordingly, there is a continuing conversion and fraud occurring at the time each Unitrust Amount becomes due; and

k)  Each and every year, failing to keep current accounts accurately reflecting the position of, and the receipts, disbursements and other changes in, the income and corpus of the CRUT, and permit ADDERLEY to inspect same during reasonable business hours, and failing to provide ADDERLEY a written statement, informing ADDERLEY of the contents of such at the end of each taxable year.

70. To date, the tortious acts by Defendants continue to occur, and thus, the continuing tort doctrine applies.

## EQUITABLE TOLLING
### (Statute of Limitations)

71. In Florida, equitable tolling applies when equitable circumstances have prevented a timely filing.[6]

72. Here, ADDERLEY was misled and lulled into inaction by the continuous actions, misrepresentations, deceit and fraudulent actions of the Defendants, who continued to make ADDERLEY believe that he and 3ABN were continuing discussions on the donation and/or use of a small portion of his Property, and that the small portion of his Property would be used for the building of a Sanctuary or for other religious purposes consistent with the beliefs of his Church.

73. Instead, the Defendants had deceived ADDERLEY, who is legally blind, into signing over the rights of his entire 419 acre Property.

74. ADDERLEY did not know about the Defendants' actions until April 2016, and as such, Defendants' representations prevented ADDERLEY from timely filing the action within the statute of limitations from the date of the first occurrence of the Defendants' tortious actions because he did not know that Defendants had deceived him.

75. On or about April 2016, Defendants continued to assure ADDERLEY that 3ABN was on the cusp of selling the Property, and the sale was imminent, which would fund the annual Unitrust Amounts due and payable to ADDERLEY in the amount of $900,000 or more accruing since 2011. Thus, equitable tolling applies under the circumstances of this case.

---

[6] *Perera v. Wachovia Bank, N.A.,* No. 09-23773-CV, 2010 WL 1375635, at * 2 (S.D. Fla. Mar. 15, 2010).



Adderley v. 3ABN et. al.

### Count I – Declaration that CRUT is Invalid
### (against 3ABN)

76. Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

77. This is a declaratory action brought pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

78. There is a real, immediate, existing, bona fide, justiciable dispute and substantial continuing controversy between ADDERLEY and 3ABN as to the invalidity of the CRUT.

79. ADDERLEY is in doubt as to its rights, duties and responsibilities concerning the invalidation of the CRUT.

80. Although ADDERLEY's signature appears on the CRUT, ADDERLEY is legally blind and, at the time of the execution, was not aware of the contents of the CRUT. ADDERLEY was not advised nor informed of the terms of the CRUT prior to execution, nor was he advised that the CRUT was irrevocable. ADDERLEY did not become aware that a CRUT was executed until April 2016.

81. ADDERLEY believed that, in executing the CRUT, he was signing documents to continue the discussion of a small portion of his Property to 3ABN for the building of a Sanctuary or for other religious purposes consistent with the beliefs of his Church.

82. ADDERLEY executed the CRUT specifically due to the undue influence of HUNT and 3ABN, who persuaded and coerced ADDERLEY to execute the CRUT through artful and fraudulent contrivances and misrepresentations. The undue influence exerted by HUNT and 3ABN resulted in the destruction of ADDERLEY's free agency and willpower



Adderley v. 3ABN et. al.

to execute documents in accord with the continued discussion of the small portion of Property that he may donate for the use and benefit of 3ABN, and the free will to retain his remaining Property, which comprises of a substantial majority of his estate.

83.     Moreover, the notary did not read ADDERLEY the CRUT prior to notarizing the CRUT, and as such, the CRUT was not executed in compliance with Section 117.05(14)(a) of Florida Statutes.

84.     ADDERLEY is in need of a judicial determination concerning the invalidation of the CRUT, and whether the CRUT has any force and effect.

85.     ADDERLEY has suffered injury from 3ABN's conduct as 3ABN has taken the use and possession of ADDERLEY's Property as an asset of the CRUT.

86.     There is a substantial threat of future injury to ADDERLEY without resolution of the controversy between ADDERLEY and 3ABN as to the invalidity of the CRUT as ADDERLEY's right to the use, possession and sale of the Property is dependent on the Court's determination.

87.     In the alternative, even if the Court determines that the CRUT is valid, the CRUT has certain requirements for payment of a Unitrust Amount to ADDERLEY, on a quarterly basis, and due to the failure of 3ABN, HUNT and SHELTON to convert the Property to marketable assets, ADDERLEY has not received any Unitrust Amount. ADDERLEY has suffered injury and will continue to suffer injury as ADDERLEY has not been paid any Unitrust Amount under the CRUT.

88.     As such, even if the CRUT is valid, ADDERLEY has a need for an immediate judicial determination of his rights under the CRUT, and the Trustee's duties and responsibilities to convert the Property to marketable assets.

SG  SAAVEDRAGOODWIN

312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

WHEREFORE, Plaintiff demands a judgment declaring that the CRUT is invalid, or alternatively, declaring that 3ABN has had an ongoing obligation and duty to convert assets to marketable Property and to pay ADDERLEY the Unitrust Amount retroactive back to the beginning of the CRUT, and for such other relief as the Court deems necessary and proper.

### Count II – Declaration that Indentures of Conveyances are Invalid
**(against 3ABN)**

89.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

90.    This is a declaratory action brought pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

91.    There is a real, immediate, existing bona fide and justiciable dispute and substantial continuing controversy between ADDERLEY and 3ABN as to the invalidity of the Indentures of Conveyance.

92.    ADDERLEY is in doubt as to its rights, duties and responsibilities concerning the invalidation of the Indentures of Conveyance, attached and incorporated herein as Exhibits D-F.

93.    Although ADDERLEY's signature appears on the Indentures of Conveyance, ADDERLEY is legally blind and at the time of the signing, was not aware of the contents of the Indentures of Conveyance.  Specifically, at the time of execution, ADDERLEY was not advised that he was transferring 419 acres of this Property, nor was he advised that the Indentures of Conveyance were transferring his Property to a CRUT. ADDERLEY did not become aware that a CRUT was executed until April 2016.

94.     ADDERLEY believed that, in executing the Indentures of Conveyance, it would facilitate the continued discussion of the donation of a small portion of ADDERLEY's Property to 3ABN for the building of a Sanctuary or for other religious purposes consistent with the beliefs of his Church.

95.     ADDERLEY executed the Indentures of Conveyance specifically due to the undue influence of HUNT and 3ABN, who persuaded and coerced ADDERLEY to execute the Indentures of Conveyance through artful and fraudulent contrivances and misrepresentations.  The undue influence exerted by HUNT and 3ABN resulted in the destruction of ADDERLEY's free agency and willpower to execute documents in accord with his intention to continue discussions of the small portion of Property ADDERLEY may donate to and for the use and benefit of 3ABN, and the free will to retain his remaining Property, which comprises of a substantial majority of his estate.

96.     Moreover, each Indenture of Conveyance provides for the sum of Fifty Thousand Dollars ($50,000) as consideration for each tract of land, for a total of One Hundred Fifty Thousand Dollars ($150,000).   ADDERLEY never received any consideration for these transfers, and even if he had, the consideration is grossly inadequate for the conveyance of his Property, which is currently valued in excess of Thirty Two Million Dollars ($32,000,000.00).

97.     In addition, upon information and belief, the Indentures of Conveyances contain errors and/or omissions that render the Indentures of Conveyances void as a matter of law.

98.     Moreover, the notary or Consul did not read ADDERLEY the Indentures of Conveyance prior to notarizing the Indentures of Conveyance, and as such, the instruments were not executed in compliance with Section 117.05(14)(a) of Florida Statutes.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

99.    ADDERLEY is in need of a judicial determination concerning the invalidation of the Indentures of Conveyance, and whether the Indentures of Conveyance have any force and effect.

100.    ADDERLEY has suffered injury as a result of 3ABN's conduct as 3ABN has taken the use and possession of ADDERLEY's Property.

101.    There is a substantial threat of future injury to ADDERLEY without resolution of the controversy between ADDERLEY and 3ABN as to the invalidity of the Indentures of Conveyance.  A Permit has been issued by the Investments Board, permitting 3ABN to acquire and hold the property for use as future development, and 3ABN has built a road, charging $200,000 against the CRUT, and performed other work on the Property without ADDERLEY's permission.   In addition, ADDERLEY's right to the use, possession and sale of the Property is dependent on the Court's determination.

**WHEREFORE**, Plaintiff demands a judgment declaring that the Indentures of Conveyance are invalid, and restoring the Property back to ADDERLEY, and for such other relief as the Court deems necessary and proper.

### Count III
### Negligent Misrepresentation
### (against HUNT and 3ABN)

102.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

103.    ADDERLEY had a heightened level of trust in HUNT and 3ABN.  He trusted them to be truthful and moral in character because he thought HUNT and 3ABN were working in conjunction with the beliefs, doctrines and mission of his Church.

104.     HUNT and 3ABN made inaccurate statements of material fact with respect to the CRUT and Indentures of Conveyances prepared for ADDERLEY's signature, as set forth above.

105.     HUNT and 3ABN either knew its representations were false OR made the misrepresentations without knowledge of their truth or falsity but should have known the representations were false.

106.     The misrepresentations were material to ADDERLEY's decision to sign the CRUT and Indentures of Conveyance transferring title of his Property to the CRUT. HUNT and 3ABN knew and intended that ADDERLEY would rely upon and be induced by the misrepresentations to execute the CRUT and Indentures of Conveyance, and to transfer his Property to the CRUT for the benefit of 3ABN.

107.     ADDERLEY reasonably relied on HUNT and 3ABN's misrepresentations in executing the CRUT and the Indentures of Conveyance for his Property, to its detriment and suffered damages currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's negligent misrepresentations in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

## Count IV – Fraudulent Inducement
### (against HUNT and 3ABN)

108.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

109.    HUNT and 3ABN made false statements of material fact with respect to the terms of the CRUT and Indentures of Conveyances prepared for ADDERLEY's signature, as set forth above.

110.    HUNT and 3ABN knew or should have known its representations to ADDERLEY were false and made the representations intentionally to induce ADDERLEY to execute the CRUT and the Indentures of Conveyance.

111.    At the time that ADDERLEY executed the CRUT and Indentures of Conveyance, HUNT and 3ABN promised ADDERLEY that the documents he executed were to facilitate the further discussion of the potential donation of a small portion of his Property to 3ABN to be used for religious purposes consistent with the beliefs of his Church.

112.    HUNT and 3ABN intended for ADDERLEY to rely on their misrepresentations of material fact in order for ADDERLEY to execute the CRUT and Indentures of Conveyance.

113.    The inducement made by HUNT and 3ABN was intended to deceive ADDERLEY, a legally blind person, into transferring the entirety of his 419 acre Property for the benefit 3ABN.

114.    HUNT and 3ABN deliberately and knowingly induced ADDERLEY to sign the CRUT and Indentures of Conveyance, with the intention and purpose of depriving ADDERLEY of his Property, which represents a substantial portion of his assets.

115.   ADDERLEY acted in reliance upon HUNT and 3ABN's representations, resulting in damages to ADDERLEY currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court to enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's fraud in the inducement in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

**Count V – Fraudulent Misrepresentation**
**(against HUNT and 3ABN)**

116.   Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

117.   HUNT and 3ABN made false statements of material fact with respect to the terms of the CRUT and Indentures of Conveyance prepared for ADDERLEY's signature, as set forth above.

118.   HUNT and 3ABN knew or should have known its representations to ADDERLEY were false.

119.   HUNT and 3ABN intended for ADDERLEY to rely on their misrepresentations of material fact in order for ADDERLEY to execute the CRUT and Indentures of Conveyance.

120.   HUNT and 3ABN deliberately and knowingly made these misrepresentations to ADDERLEY, and intended to deceive ADDERLEY, a legally blind person, into transferring the entirety of his 419 acre Property, which ultimately would benefit 3ABN.

121.    ADDERLEY acted in reliance upon the correctness of the misrepresentations, resulting in damages to ADDERLEY currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court to enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's fraudulent misrepresentations in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count VI – Conversion
### Fla. Stat. § 812.014(1)
### (against 3ABN)

122.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

123.    ADDERLEY is the rightful owner of 419 acres in the Bahamas described on the three (3) Indentures of Conveyance and has an immediate right to the possession of his Property.

124.    3ABN deceived ADDERLEY and misrepresented that the documents he was signing would facilitate the continued discussion of a donation of a small portion of his Property to 3ABN for religious purposes to be used consistent with the beliefs of his Church, in order to induce him to sign the CRUT and Indentures of Conveyance transferring his entire 419 acre tract of Property to 3ABN.

125.    3ABN intended to deprive ADDERLEY, temporarily and permanently, of the right to and from any benefit of his Property.

126.    3ABN's actions were unauthorized, and indeed, have deprived ADDERLEY of his Property, which represents substantially the majority of his assets,



Adderley v. 3ABN et. al.

permanently or for an indefinite time, including from the date of the Indentures of Conveyance through the date of this Complaint.

127.    3ABN has the use and possession of ADDERLEY's Property, and a present intent to deprive ADDERLEY of his Property.

128.    ADDERLEY has made a demand for the return of his Property, and 3ABN has refused to relinquish ADDERLEY's Property to him.

129.    ADDERLEY has suffered damages for 3ABN's refusal to return his Property, currently believed to be in excess of $32,000,000.

**WHEREFORE**, ADDERLEY requests that the Court enter judgment in its favor and against 3ABN for all actual, consequential and incidental damages as a result of 3ABN's conversion in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count VII– Florida Deceptive and Unfair Trade Practices
**(against 3ABN and HUNT)**
**FDUPTA § 501.201, et. seq.**

130.    Plaintiff re-alleges paragraphs 1-75, 108-129 above.

131.    3ABN and HUNT, individually and in conspiracy with one another, engaged in oppressive, unethical, immoral and outrageous behavior to mislead ADDERLEY with the intent to deprive ADDERLEY of his Property.

132.    HUNT and 3ABN, individually and in conspiracy with one another, performed an unlawful act, to wit: to mislead, misrepresent, and/or defraud the public, including Plaintiff, and otherwise to engage in an unfair and unconscionable trade practices as described herein, regarding the improper transfer of ADDERLEY's Property to 3ABN.

133.    HUNT and 3ABN, individually and in conspiracy with one another, falsely represented to ADDERLEY that it drafted and prepared documents to continue the



discussion of a potential donation of a small portion of ADDERLEY's Property for the use and benefit of 3ABN for religious purposes consistent with the beliefs of his Church. However, the CRUT and Indentures were drafted to transfer the entirety of ADDERLEY's 419 acre tract of land to and for the use and benefit of 3ABN.

134.    HUNT and 3ABN arranged for BENTON, a lawyer in Georgia, to prepare charitable documents for ADDERLEY. BENTON had an ongoing relationship with 3ABN to prepare estate planning documents for gifts and bequeaths to 3ABN, who had a conflict with the preparation of such documents for ADDERLEY's donation to 3ABN.

135.    HUNT and 3ABN intentionally arranged for ADDERLEY, a legally blind person, to sign the CRUT and Indentures of Conveyance without having the guidance, counsel and presence of independent legal representation.

136.    HUNT and 3ABN engaged in such unconscionable acts, unfair and deceptive practices in the conduct of its trade or commerce in connection with 3ABN's activities.

137.    HUNT and 3ABN's actions were willful, and HUNT and 3ABN knew or should have known that their conduct was unfair and deceptive.

138.    As a direct and proximate cause of HUNT and 3ABN's unconscionable and deceptive activities, and ADDERLEY's reliance on HUNT and 3ABN's false statements, Plaintiff suffered damages, currently believed to be in excess of $32,000,000.

139.    In addition, because ADDERLEY is legally blind, a military veteran and senior citizen, ADDERLEY is entitled to a heightened civil penalty pursuant to § 501.2077(2), (3) of the Florida Statutes for each unconscionable, deceptive, unfair act performed by HUNT and 3ABN against ADDERLEY.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

140.    ADDERLEY, as the prevailing party, is entitled to recovery of its attorneys' fees and costs pursuant to §501.2105 of the Florida Statutes.

**WHEREFORE**, Plaintiff demands judgment against HUNT and 3ABN for actual, consequential and incidental damages, interest, costs, attorneys' fees and such other relief as the Court deems proper.

### Count VIII – Civil Conspiracy
### (Against HUNT and 3ABN)

141.    Plaintiff adopts and restates paragraphs 1-75, 108-140 as if fully set forth herein.

142.    Two or more of Defendants, HUNT and 3ABN, entered into an agreement to perform an unlawful act, to wit: to mislead, misrepresent, and/or defraud the public, including Plaintiff, and otherwise to engage in an unfair and unconscionable trade practices as described herein, regarding the improper transfer of ADDERLEY's Property to 3ABN.

143.    HUNT and 3ABN possessed a peculiar power of coercion by virtue of acting in conspiracy together that HUNT or 3ABN did not possess acting alone.  In particular, HUNT obtained the trust of ADDERLEY on a moral level due to his denomination in the Seventh Day Adventist Church.  As an outreach and not for profit entity, 3ABN's promised to utilize a small portion of ADDERLEY's Property to build a Sanctuary and for religious purposes consistent with the beliefs of the Church was essential to obtain ADDERLEY's agreement to sign documents, which are now known to be the CRUT and Indentures of Conveyance.  In addition, 3ABN had the financial resources and ongoing relationship with BENTON and Lewis & Longley to facilitate the preparation of documents to transfer ADDERLEY's Property to 3ABN.

144.     HUNT and 3ABN undertook overt acts in the furtherance of this conspiracy, as set forth herein above, and did in fact harm the Plaintiff via their acts and omissions.

145.     HUNT and 3ABN knew or should have known that its wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

146.     As a direct and proximate cause of HUNT and 3ABN's acts and omissions, Plaintiff has incurred and will continue to incur damages, the value of which is estimated to be in excess of $32,000,000.

147.     Plaintiff is thus entitled to recover monetary damages for the value of its Property which ADDERLEY lost the use and possession of, to replace the Property, to return the Property to the status quo, damages for the loss of use and enjoyment of real property, the loss in value of the Property, actual damages for any increased taxes, documentary stamp taxes, and/or other related expenses resulting from the Property transfers, and other consequential damages.

**WHEREFORE,** ADDERLEY demands actual damages, compensatory damages, incidental damages, consequential damages, pre and post-judgment interest, an award of attorneys' fees, award of taxable costs, and, any and all such further relief as this Court deems just and proper.

## Count IX – Unjust Enrichment
### (against 3ABN)

148.     Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

149.     This is an equitable action for restitution.

150.    ADDERLEY conferred a benefit upon 3ABN in the amount of the reasonable value of the Property that 3ABN wrongfully received from ADDERLEY, which is believed to be in excess of $32,000,000.

151.    Despite demand for the return of ADDERLEY's Property, 3ABN has retained the benefit of the Property that ADDERLEY conferred.

152.    3ABN has been unjustly enriched for the use and possession of ADDERLEY's Property, and it would inequitable to allow 3ABN to retain such enjoyment of ADDERLEY's Property without paying the reasonable value thereof.

**WHEREFORE**, Plaintiff respectfully requests this honorable Court to enter judgment in its favor against 3ABN for the reasonable appraised value of the Property, plus interest, costs of this action and such further relief as this Court deems appropriate.

## Count X – Constructive Trust
### (against 3ABN)

153.    Plaintiff re-alleges paragraphs 1-75, 148-152 of this Complaint as if fully set forth herein.

154.    To induce ADDERLEY to sign the CRUT and Indentures of Conveyance, HUNT and 3ABN promised that ADDERLEY was signing documents to continue the discussion of a potential donation of a small portion of his Property to 3ABN for the building of a Sanctuary and other religious purposes consistent with the beliefs of his Church.

155.    In reliance on that promise, ADDERLEY executed the CRUT and Indentures of Conveyance, that, without ADDERLEY's knowledge or agreement, transferred title and possession of all of his 419 acres of Property to the use and benefit of 3ABN.

156.    The Property conveyed via the Indentures of Conveyance is specific and identifiable unique oceanfront property and can clearly be traced to the ownership by ADDERLEY.

157.    HUNT and 3ABN had a confidential relationship with ADDERLEY with regard to such transfer, and ADDERLEY trusted and relied on the representations of HUNT and 3ABN to follow through with ADDERLEY's intentions.

158.    3ABN has been unjustly enriched by the transfer of ADDERLEY's Property, and now retains the use, possession and benefit of ADDERLEY's entire 419 acre tract of land that was never intended to be transferred to 3ABN.

159.    The Court must impose a constructive trust to prevent unjust enrichment by 3ABN because it is against equity for a 3ABN to retain the ADDERLEY's Property, which was obtained by fraud or other questionable means.

**WHEREFORE**, ADDERLEY requests the Court to impose a constructive trust on the Property, to escrow funds in the event of a sale of the Property, for judgment against 3ABN for damages, interest, costs, and such other relief as the Court deems appropriate.

### Count XI – Equitable Lien
(against 3ABN)

160.    Plaintiff re-alleges paragraphs 1-75, 108-129, 148-152 of this Complaint as if fully set forth herein.

161.    Plaintiff seeks the imposition and foreclosure of an equitable lien against the Property.

162.    3ABN has possession and use of the Property as 3ABN obtained possession of the Property in its own name, under false pretenses, by misrepresenting the transfers to be imposed by the CRUT and Indentures of Conveyance.  But for the execution of the

CRUT and Indentures of Conveyance by ADDERLEY, 3ABN would not possess or control the Property.

163.    3ABN has been unjustly enriched by virtue of its current ownership, possession and use of the Property.

164.    An equitable lien must be imposed against the Property to prevent 3ABN from being unjustly enriched by accepting the benefit of ADDERLEY's Property without payment of money to ADDERLEY.

165.    ADDERLEY is also entitled to an equitable lien because 3ABN obtained the use and benefit of the Property by fraudulent means or misconduct, and an equitable lien must be imposed to prevent injustice and to restore ownership of the Property to ADDERLEY.

166.    An equitable lien is also necessary to protect ADDERLEY's equitable ownership interests in the Property, and so that 3ABN cannot further transfer the Property to a bona fide good faith purchaser for value without notice of ADDERLEY's interest in the Property.

**WHEREFORE**, Plaintiff requests that this honorable Court:

a) Take jurisdiction of the parties hereto and of the subject matter hereof;

b) Order that the Plaintiff be entitled to the imposition of an Equitable Lien as to the Property and that the Equitable Lien is a valid first lien on the Property and is superior to any lien of record;

c) Order foreclosure of the Equitable Lien, against 3ABN, its directors and officers, and all persons claiming under or against them;

d) Determine the amount due to Plaintiff pursuant to the theories of unjust enrichment or fraud, all of which support the imposition of an Equitable Lien;

e) Order that if said sum due Plaintiff is not paid in full within the time set by this Court, the Property be sold by Order of this Court to satisfy Plaintiffs claims;



f) Order that if the proceeds from such court ordered sale are insufficient to pay Plaintiff's claim, then a deficiency judgment be entered for the remaining sum against 3ABN; Order payment of interests and costs to Plaintiff; and

g) Order such other relief as the Court deems necessary and proper.

**Count XII - Injunctive Relief**
**(against 3ABN)**

167.   Plaintiff re-alleges paragraphs 1-75, 108-129 of this Complaint as if fully set forth herein.

168.   This is an action for temporary and permanent injunction.

169.   3ABN has proceeded to build a road on ADDERLEY's Property without obtaining ADDERLEY'S express consent and has charged in excess of $200,000 against the CRUT.

170.   Unless enjoined by the Court from trespassing on the Property, performing construction and making modifications and improvements to the Property that ADDERLEY has not approved, 3ABN will cause irreparable harm to ADDERLEY.

171.   ADDERLEY has no adequate remedy at law as the real property conveyed is specific and unique oceanfront property, and the damages cannot be readily calculated or determined.

172.   ADDERLEY has a substantial likelihood of succeeding on the merits as ADDERLEY never intended to convey 419 acres of his Property and was never paid any consideration for the transfer of his Property in accord with the Indentures of Conveyance.

173.   Considerations of public interest strongly support the entry of an injunction to prevent 3ABN from making any alterations to the Property as 3ABN obtained ADDERLEY's Property by fraud, negligence and/or other misconduct.

**WHEREFORE**, ADDERLEY prays for a preliminary injunction, and after trial, a permanent injunction against the 3ABN to enjoin it from trespassing, performing any modifications, alterations, construction or improvements on the Property, and for such other relief that the Court deems just or advisable.

## Count XIII
## Professional Negligence
### (against HUNT)

174.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

175.    HUNT, as a professional director of 3ABN and the person who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, and as the individual who was coordinating the sale of the Property, owed a duty of care of like professionals to provide accurate and truthful representations to ADDERLEY.

176.    HUNT placed himself in the position of an attorney by taking upon himself to arrange for the legal drafting and preparation of the CRUT and Indentures of Conveyance, explaining and reading the terms of the CRUT to ADDERLEY, and by arranging for the execution of the CRUT by ADDERLEY.

177.    HUNT breached its standard of care by misrepresenting, and by statements and omissions, the content and legal effect of the documents that were drafted for ADDERLEY's signature, and blatantly took advantage of the fact that ADDERLEY was legally blind and not represented by independent legal counsel and failed to disclose the conflict of interest in BENTON's preparation of the CRUT.

178.    HUNT is not a licensed attorney in the State of Florida and is not authorized to draft legal documents.[7] HUNT arranged for an attorney licensed in the State of Georgia, BENTON,[8] to prepare the CRUT.  The terms of the CRUT were misrepresented by HUNT to ADDERLEY before execution of same.

179.    HUNT also arranged for an attorney in the Bahamas, Lewis & Longley, to prepare the Indentures of Conveyance, for ADDERLEY to convey 419 acres of his Property.  The terms of the Indentures of Conveyance and the property description was misrepresented by HUNT to ADDERLEY before execution of same.

180.    Since the execution of the Indentures of Conveyance up and through to the date of this Complaint and hereafter, HUNT has had the authority and undertaken the responsibility to sell the Property on behalf of 3ABN, which would trigger payments to ADDERLEY.

181.    HUNT failed to use reasonable care that would be expected to be carried out by a professional in his position as a director of 3ABN, in like circumstances, and specifically in taking on the responsibility of directing and facilitating for BENTON and Lewis & Longley to prepare the CRUT and Indentures of Conveyance for ADDERLEY to execute, in failing to correctly describe the terms of the CRUT and Indentures of Conveyance prior to execution of same, and in retaining attorneys that necessarily had a

---

[7] We adhere to that view and find that the respondent's preparation of wills and antenuptial agreements for others, both of which affect important rights of persons under the law, ***without the review and approval of an attorney licensed to practice in this State,*** constitute the unauthorized practice of law. *See,* 7 Am. Jur.2d Attorneys at Law ss 73 and 75, and 22 A.L.R.3d 1112.

*The Fla. Bar v. Larkin*, 298 So. 2d 371, 373 (Fla. 1974)(e.s.).

[8] Mr. Benton is retired and not currently licensed as an attorney in the State of Florida but was admitted in 1997.



SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Adderley v. 3ABN et. al.

conflict with the representation and preparation of trust and transfer documents for ADDERLEY.

182.    Likewise, thereafter up and through to the date of this Complaint and hereafter, HUNT failed to use reasonable care that would be expected to be carried out by a professional in his position in performing actions for 3ABN as Trustee of the CRUT by failing to sell the Property to allow unitrust distributions to begin to flow to ADDERLEY.

183.    Further, HUNT continued to reassure ADDERLEY that he and his family would receive annual income from the CRUT in the total of approximately $900,000 or more per year since the formation of the trust, and that 3ABN was on the cusp of selling the property, and the sale was imminent, which would fund the ability of 3ABN to pay the Unitrust Amount to ADDERLEY.

184.    HUNT's actions were negligent and contributed substantially to ADDERLEY's injury and damages, which resulted in ADDERLEY transferring his entire 419 acre tract of Property.  Further, in the event the CRUT is held valid, HUNT's failure to perform actions necessary to sell the Property has caused damages to ADDERLEY because ADDERLEY has not received any untitrust distributions as of the date of this pleading, and ADDERLEY is no longer able to take advantage of any charitable tax deduction he would otherwise be entitled to receive under the CRUT.

185.    As a direct and proximate result of the foregoing negligence, Plaintiff suffered damages from the loss and use of his Property, currently believed to be in excess of $32,000,000.00.

Adderley v. 3ABN et. al.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT for all losses incurred as a result of HUNT's professional negligence in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count XIV
### Breach of Fiduciary Duty
### (against HUNT)

186.     Plaintiff re-alleges paragraphs 1-75, 174-185 of this Complaint as if fully set forth herein.

187.     HUNT, as a professional director of 3ABN and the person who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, owed a fiduciary duty of care to ADDERLEY to provide accurate and truthful representations so ADDERLEY could evaluate whether or not to execute the CRUT and the Indentures of Conveyance to transfer his Property.

188.     The duty of care is implied in law based on the factual circumstances of this case.  HUNT induced the reliance of ADDERLEY, and HUNT was placed in a position of trust and confidence in HUNT's efforts to have the legal documents drafted for the donation of a small portion of ADDERLEY's Property, and to accurately represent that content of those documents to ADDERLEY.

189.     The offer of assistance provided by HUNT for the preparation of the CRUT and Indentures of Conveyance was naturally calculated to repose confidence and trust in HUNT.

190.     In addition to the legal efforts undertook by HUNT, ADDERLEY relied upon and trusted HUNT on a personal and moral level based on the understanding that 3ABN was carrying out the missions of the Seventh Day Adventist Church.



Adderley v. 3ABN et. al.

191.    HUNT breached its duty of care by misrepresenting the content and legal effect of the documents that were drafted for ADDERLEY's signature, and blatantly took advantage of the fact that ADDERLEY was legally blind.

192.    HUNT is not a licensed attorney in the State of Florida and is not authorized to draft legal documents.[9]  HUNT arranged for an attorney licensed in the State of Georgia, BENTON,[10] to prepare the CRUT.  Specifically, HUNT directed BENTON to insert or omit terms in the CRUT that were favorable to 3ABN, which includes but is not limited to the following:

    a    Appointment of 3ABN as Successor Trustee;

    b    Omission of entitlement of ADDERLEY to change charitable beneficiaries; and

    c    Omission of additional life income beneficiaries, including but not limited to, ADDERLEY's children.

193.    The terms of the CRUT were misrepresented by HUNT to ADDERLEY before execution of same.

194.    HUNT also arranged for an attorney in the Bahamas, Lewis & Longley, to prepare the Indentures of Conveyance, for ADDERLEY to convey 419 acres of his

---

[9] We adhere to that view and find that the respondent's preparation of wills and antenuptial agreements for others, both of which affect important rights of persons under the law, **_without the review and approval of an attorney licensed to practice in this State,_**

constitute the unauthorized practice of law. *See,* 7 Am. Jur.2d Attorneys at Law ss 73 and 75, and 22 A.L.R.3d 1112.

*The Fla. Bar v. Larkin*, 298 So. 2d 371, 373 (Fla. 1974) (e.s.).

[10] Mr. Benton is retired and not currently licensed as an attorney in the State of Florida, but was admitted in 1997.



SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Property.  The terms of the Indentures of Conveyance and the property description was misrepresented by HUNT to ADDERLEY before execution of same.

195.    Further, HUNT owed a fiduciary duty of care to ADDERLEY to convert the land into marketable assets so that ADDERLEY could receive quarterly payments from the CRUT as the Unitrust Recipient.

196.    The duty of care is implied in law based on the factual circumstances of this case.  In July 2011, 3ABN  and HUNT, through BENTON, prepared illustrations of the CRUT for ADDERLEY.  Although ADDERLEY did not know about these illustrations until approximately April 2016, the illustrations prepared by attorney BENTON demonstrate that 3ABN represented that ADDERLEY would receive unitrust payments beginning in year one, at $1,500,000 per year before tax and $975,000 after tax and increasing and continuing payments due through year 39.  In addition, the illustrations show an income tax benefit of $6,161,715, and charitable deduction of $17,604,900.  At year seven, the chart shows the total after tax benefits in the amount of $13,410,141 (representing $7,248,426 in after tax unitrust amount, and an income tax savings of $6,161,715).  A copy of that Illustration is attached as **Exhibit "I."**

197.    Moreover, after ADDERLEY became aware of the CRUT in April 2016, 3ABN and HUNT induced ADDERLEY not to pursue legal action to declare the CRUT invalid and made the following assurances to ADDERLEY's local Florida counsel:

a)  ADDERLEY would receive approximately $900,000 per year retroactive to the beginning of the CRUT in August 12, 2011, until he passed away;

b)  3ABN expected to generate $32,000,000 from the sale of the land that would be invested into the Unitrust to fund ADDERLEY's annuity payments;

Adderley v. 3ABN et. al.

    c)  3ABN would work with Adriana Gonzalez in marketing and completing the sale; and

    d)  That 3ABN was on the cusp of selling the Property, and the sale of the Property was imminent.

198.    HUNT was placed in a position of trust and confidence as he was performing duties on behalf of 3ABN, who was acting as Trustee of the CRUT. HUNT was in control of the trust assets, including the Property, and 3ABN and HUNT had authority and the responsibility and duty to convert the Property to marketable property since January 2012.

199.    In addition to the legal efforts undertook by 3ABN and HUNT, ADDERLEY relied upon and trusted 3ABN and HUNT on a personal and moral level based on the understanding that 3ABN was carrying out the mission of the Seventh Day Adventist Church.

200.    Upon information and belief, 3ABN and HUNT's acts or omissions have stalled or prevented the sale and conversion of ADDERLEY's Property to marketable assets. Specifically, 3ABN and HUNT failed to list the Property on the market through a broker, and instead, chose to "open list" the Property by advertising the Property for sale on certain websites, which was not an appropriate method to facilitate the sale of the Property and delayed any sale.

201.    In addition, despite having serious potential buyers interested in the Property, 3ABN and HUNT's actions or inactions have prevented such potential buyers from submitting any offers. Indeed, HUNT testified that 3ABN has a current potential purchaser, but has failed to convey that offer to ADDERLEY or its counsel, and since the inception of the lawsuit has entirely halted any efforts to sell the Property.

Adderley v. 3ABN et. al.

202.    3ABN and HUNT breached its duty of care by misrepresenting the fact that ADDERLEY would receive income tax and charitable tax savings, and that 3ABN and HUNT would convert the Property to marketable assets since August 22, 2011 to facilitate unitrust payments to ADDERLEY.  As a result, as of the date of this Complaint, ADDERLEY has not received any unitrust payments or income or charitable tax benefits.

203.    Moreover, the delay of the sale has caused damages to ADDERLEY as 3ABN and HUNT represented that ADDERLEY would receive a charitable tax deduction in the amount of $17,604,900.  First, ADDERLEY did not have the income to take advantage of the charitable deduction.  In addition, since the unitrust payments have not been made within five (5) years after the CRUT, ADDERLEY is no longer permitted to take this deduction.

204.    The terms of the CRUT were misrepresented by 3ABN and HUNT before execution of same, and by 3ABN and HUNT during the term of the trust.

205.    Further, 3ABN and HUNT did not have the requisite qualifications to perform the necessary actions as Trustee of the CRUT, nor did they understand the terms of the CRUT.

206.    As a direct and proximate result of the foregoing breach of fiduciary duty, Plaintiff suffered damages from 3ABN and HUNT's failure to fund the unitrust payments to ADDERLEY, currently believed to be due in excess of $7,000,000.00, and due to the false representation that ADDERLEY would receive income tax savings in excess of $6,000,000, and a charitable tax deduction in excess of $17,000,000, plus interest.

207.    As a direct and proximate result of the foregoing breach of fiduciary duty, Plaintiff suffered damages from the loss and use of his Property, currently believed to be in excess of $32,000,000.00.

SG  SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT for all losses incurred as a result of HUNT's breach of fiduciary duty in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

**Count XV**
**Professional Negligence**
**(against GILLEY and SHELTON)**

208.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

209.    GILLEY and SHELTON, as authorized representatives of 3ABN, and the individuals who have served as Trustee of the CRUT on behalf of 3ABN since January 26, 2012, owed a duty of care of like professionals to provide accurate and truthful representation so ADDERLEY, and to convert his Property into marketable assets so that ADDERLEY could receive quarterly payments from the CRUT as the Unitrust Recipient.

210.    GILLEY and SHELTON placed themselves in the position as authorized representatives of 3ABN, serving as Trustee of the CRUT.

211.    Since the execution of the Indentures of Conveyance up and through to the date of this Complaint and hereafter, GILLEY and SHELTON have had the authority and responsibility to take actions to complete the sale of the Property, which would trigger unitrust payments to ADDERLEY.

212.    GILLEY and SHELTON failed to use reasonable care that would be expected to be carried out by a professional in his position in performing actions for 3ABN as Trustee of the CRUT by failing to sell the Property to allow unitrust distributions to begin to flow to ADDERLEY.

Adderley v. 3ABN et. al.

213.    Further, 3ABN continued to reassure ADDERLEY that he and his family would receive annual income from the CRUT in the total of approximately $900,000 or more per year since the formation of the trust, and that 3ABN was on the cusp of selling the property, and the sale was imminent, which would fund the ability of 3ABN to pay the Unitrust Amount to ADDERLEY.

214.    GILLEY and SHELTON's actions were negligent and contributed substantially to ADDERLEY's injury and damages, as ADDERLEY has not received any untitrust distributions as of the date of this pleading, and ADDERLEY is no longer able to take advantage of any charitable tax deduction he would otherwise be entitled to receive under the CRUT.

215.    As a direct and proximate result of the foregoing negligence, Plaintiff suffered damages from the loss and use of his Property, currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against GILLEY and SHELTON for all losses incurred as a result of GILLEY and SHELTON's professional negligence in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

SG   SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

**Count XVI**
**Breach of Fiduciary Duty**
**(against 3ABN and GILLEY and SHELTON)**

216.    Plaintiff re-alleges paragraphs 1-75, 208-215 of this Complaint as if fully set forth herein.

217.    GILLEY and SHELTON, as authorized representatives of 3ABN, and the individuals who have served as Trustee of the CRUT on behalf of 3ABN since January 26, 2012, owed a fiduciary duty of care to ADDERLEY to convert the land into marketable assets so that ADDERLEY could receive quarterly payments from the CRUT as the Unitrust Recipient.

218.    The duty of care is implied in law based on the factual circumstances of this case.   In July 2011, 3ABN, through BENTON, prepared illustrations of the CRUT for ADDERLEY.    Although ADDERLEY did not know about these illustrations until approximately April 2016, the illustrations prepared by attorney BENTON demonstrate that 3ABN represented that ADDERLEY would receive unitrust payments beginning in year one, at $1,500,000 per year before tax and $975,000 after tax and increasing and continuing payments due through year 39.   In addition, the illustrations show an income tax benefit of $6,161,715, and charitable deduction of $17,604,900.   At year seven, the chart shows the total after tax benefits in the amount of $13,410,141 (representing $7,248,426 in after tax unitrust amount, and an income tax savings of $6,161,715).   A copy of that Illustration is attached as **Exhibit "I."**

219.    Moreover, after ADDERLEY became aware of the CRUT in April 2016, 3ABN induced ADDERLEY not to pursue legal action to declare the CRUT invalid and made the following assurances to ADDERLEY's local Florida counsel:

a) ADDERLEY would receive approximately $900,000 per year retroactive to the beginning of the CRUT in August 12, 2011, until he passed away;

b) 3ABN expected to generate $32,000,000 from the sale of the land that would be invested into the Unitrust to fund ADDERLEY's annuity payments;

c) 3ABN would work with Adriana Gonzalez in marketing and completing the sale; and

d) That 3ABN was on the cusp of selling the Property, and that the sale of the Property was imminent.

220. GILLEY, SHELTON and 3ABN were placed in a position of trust and confidence as Trustee of the CRUT, and as the party that was in control of the trust assets, including the Property, and 3ABN, SHELTON and GILLEY, as Trustee, had authority and the responsibility and duty to convert the Property to marketable property since January 2012.

221. In addition to the legal efforts undertook by 3ABN, GILLEY and SHELTON, ADDERLEY relied upon and trusted 3ABN and GILLEY on a personal and moral level based on the understanding that 3ABN was carrying out the mission of the Seventh Day Adventist Church.

222. Upon information and belief, 3ABN, GILLEY and SHELTON's acts or omissions have stalled or prevented the sale and conversion of ADDERLEY's Property to marketable assets. Specifically, 3ABN, GILLEY and SHELTON failed to list the Property on the market through a broker, and instead, chose to "open list" the Property by advertising the Property for sale on certain websites, which was not an appropriate method to facilitate the sale of the Property and delayed any sale.

223. In addition, despite having serious potential buyers interested in the Property, 3ABN, GILLEY and SHELTON's actions or inactions have prevented such



potential buyers from submitting any offers.  Indeed, HUNT testified that 3ABN has a current potential purchaser, but has failed to convey that offer to ADDERLEY or its counsel, and since the inception of the lawsuit has entirely halted any efforts to sell the Property.

224.   3ABN, GILLEY and SHELTON breached its duty of care by misrepresenting the fact that ADDERLEY would receive income tax and charitable tax savings, and that 3ABN, GILLEY and SHELTON would convert the Property to marketable assets since August 22, 2011 to facilitate unitrust payments to ADDERLEY. As a result, as of the date of this Complaint, ADDERLEY has not received any unitrust payments or income or charitable tax benefits.

225.   Moreover, the delay of the sale has caused damages to ADDERLEY as 3ABN represented that ADDERLEY would receive a charitable tax deduction in the amount of $17,604,900.  First, ADDERLEY did not have the income to take advantage of the charitable deduction.  In addition, since the unitrust payments have not been made within five (5) years after the CRUT, ADDERLEY is no longer permitted to take this deduction.

226.   The terms of the CRUT were misrepresented by 3ABN to ADDERLEY before execution of same, and by 3ABN, GILLEY and SHELTON and during the term of the trust.  Further, 3ABN, GILLEY and SHELTON did not have the requisite qualifications to act as Trustee of the CRUT, nor did they understand the terms of the CRUT.

227.   As a direct and proximate result of the foregoing breach of fiduciary duty, Plaintiff suffered damages from the 3ABN, GILLEY and SHELTON's failure to fund the unitrust payments to ADDERLEY, currently believed to be due in excess of $7,000,000.00,

and due to the false representation that ADDERLEY would receive income tax savings in excess of $6,000,000, and a charitable tax deduction in excess of $17,000,000, plus interest.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against 3ABN, GILLEY and SHELTON for all actual, consequential and incidental damages incurred as a result of 3ABN, GILLEY and SHELTON's breach of fiduciary duty in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

<u>**Count XVIII – Reformation of Trust**</u>
**Fla. Stat. § 736.0415**
**(against 3ABN)**

228.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

229.    This is an action for reformation of trust pursuant to §736.0415 of the Florida Statutes.

230.    ADDERLEY is the Grantor of the CRUT, and an interested person in the reformation of the trust terms.

231.    The terms of the CRUT were affected by a mistake of fact or law, and by inducement of ADDERLEY to enter into the CRUT upon false pretenses by HUNT and 3ABN.  ADDERLEY is legally blind and was led to believe by HUNT and 3ABN that signing the CRUT and the Indentures of Conveyance would facilitate the transfer a small portion of his Property to 3ABN for religious purposes consistent with the beliefs of his Church.

232.    ADDERLEY was unduly influenced by HUNT and 3ABN to execute the CRUT.  Specifically, HUNT and 3ABN coerced and persuaded ADDERLEY to execute



the CRUT by using artful or fraudulent contrivances and misrepresentations as to the terms of the document that ADDERLEY was signing, to such a degree that it destroyed ADDERLEY's free agency and willpower to fulfill his intentions to only donate a small portion of Property to and for the use and benefit of 3ABN for religious purposes, and his free will to retain his remaining Property.

233.    ADDERLEY's intent for the CRUT was to:

a)  Potentially donate a small portion of the Property to 3ABN for the building of a Sanctuary and for religious purposes consistent with the mission and beliefs of his Church;

b)  Transfer only a small portion of the Property, and to retain the remaining of the 419 acre tract for his own use, possession and ownership during his life; and

c)  Transfer the remaining property in accord with the terms of his Last Will and Testament or Revocable Trust, which devise may be revoked or amended at any time prior to this death.

234.    In addition, 3ABN directed its attorneys to insert and omit provisions in the CRUT that were beneficial to 3ABN, including but not limited to:

a)  Appointment of 3ABN as Successor Trustee;

b)  Omission of entitlement of ADDERLEY to revoke and change the Trustee;

c)  Omission of entitlement of ADDERLEY to revoke and change charitable beneficiaries; and

d)  Omission of additional life income beneficiaries, including but not limited to, ADDERLEY's children.

235.    The mistake of fact or law can be corrected by the Court regardless of the express terms of the CRUT to conform with the intent of the Grantor.

**WHEREFORE**, ADDERLEY requests the Court to reform the CRUT to the intent of the Plaintiff, proven by clear and convincing evidence, and for such other relief that the Court deems just or advisable.

### Count XIX – Equitable Reformation of Indentures of Conveyance
### (against 3ABN)

236.　Plaintiff re-alleges paragraphs 1-75, 108-129 of this Complaint as if fully set forth herein.

237.　This is an equitable action for reformation.

238.　ADDERLEY is the Vendor, and an interested person in the reformation of the Indentures of Conveyance.

239.　The terms of the Indentures of Conveyance were affected by a mistake of fact or law, and due to the inducement and false pretenses represented by HUNT and 3ABN.

240.　HUNT and 3ABN directed and facilitated for Lewis & Longley to prepare the Indentures of Conveyance for ADDERLEY to execute; however, HUNT and 3ABN failed to properly advise ADDERLEY of the terms of the Indentures of Conveyance prior to execution of same.  In addition, HUNT and 3ABN facilitated for ADDERLEY to execute the Indentures of Conveyance without the presence of independent legal counsel, and Lewis & Longley necessarily had a conflict with the representation and preparation of the transfer documents for ADDERLEY.

241.　ADDERLEY is legally blind and was led to believe by HUNT and 3ABN that signing the Indentures of Conveyance would facilitate the continued discussion of the transfer of a small portion of his Property to 3ABN for religious purposes consistent with his Church.

Adderley v. 3ABN et. al.

242.     ADDERLEY only intended to donate a small portion of his Property. However, the Indentures of Conveyance purport to transfer 419 acres of this Property, representing a substantial portion of his assets.

243.     Prior to or during the execution of the Indentures of Conveyance, ADDERLEY was unaware that the Indentures of Conveyance were prepared with legal descriptions that would transfer his entire Property.

244.     ADDERLEY executed the three (3) Indentures of Conveyance due to the undue influence of HUNT and 3ABN, who persuaded and coerced ADDERLEY using artful or fraudulent contrivances and misrepresentations, to such a degree that it destroyed ADDERLEY's free agency and willpower to fulfill his intention to transfer only a small portion of his Property to and for the use and benefit of 3ABN for religious purposes, and his free will to retain his remaining Property.

245.     The mistake of fact or law is due to the unilateral mistake of ADDERLEY, or due to the inequitable conduct of 3ABN and HUNT, and as a matter of equity the Court should correct the error to conform with the intent of the Vendor.

246.     Despite the fact that the Indentures of Conveyance required payment of consideration in the amount of One Hundred Fifty Thousand Dollars ($150,000.00), ADDERLEY did not receive any consideration for the transfer of ADDERLEY's Property to the CRUT, which in any event, would be grossly inadequate for his Property which was valued at Twenty-Two Million Nine Hundred Thousand Dollars ($22,900,000.00) in 2012.

247.     3ABN is not a bona fide purchaser of the Property who purchased the Property for value.

SG   SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

**WHEREFORE**, ADDERLEY requests the Court to reform the Indentures of Conveyance to the intent of the Plaintiff, and for such other relief that the Court deems just or advisable.

## Count XX – Equitable Accounting
### (against GILLEY, SHELTON and 3ABN)

248.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

249.    This is an action in equity for accounting.

250.    GILLEY and SHELTON have served as the authorized representative of 3ABN, as Trustee of the CRUT from January 28, 2012 to present.

251.    The accounting of the CRUT involves extensive or complicated accounts, including but not limited to:

   a)  Determination of the Unitrust Amount in accord with Section (E) of the CRUT;

   b)  Calculation of the Trust Income for each respective Taxable Year since the inception of the CRUT;

   c)  Calculation of the Unitrust percentage;

   d)  Calculation of the net Fair Market Value of the Trust Assets valued as of the first day of each taxable year;

   e)  Calculation of the Net Income of the Unitrust for each taxable year that is in excess of the Unitrust Amount;

   f)  Statements of Account and Reports Reflecting the Receipts, Disbursements and Other Changes in the Income and the Corpus of the CRUT;

   g)  Payments due to the Unitrust Recipient upon sale of the assets; and

   h)  Determination of amounts reflected on the CRUT tax returns.



252.   It is not clear that the remedy at law is as full adequate and expeditious as it is in equity.

**WHEREFORE**, ADDERLEY requests the Court to require an equitable accounting of 3ABN, GILLEY and SHELTON, and for such other relief that the Court deems just or advisable.

### Count XXI – Violation of Adult Protection Statute
### § 415.1111, Fla. Stat.
### (against HUNT and 3ABN)

253.   Plaintiff re-alleges paragraphs 1-75, 108-129, 177-186 of this Complaint as if fully set forth herein.

254.   ADDERLEY is legally blind, and as thus, meets the definition of "vulnerable adult" under § 415.1111 of the Florida Statutes.[11]

255.   HUNT, as a professional director of 3ABN and the person who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, owed a fiduciary duty of care to ADDERLEY to provide accurate and truthful representations so ADDERLEY could evaluate whether or not to execute the CRUT and the Indentures of Conveyance to transfer his Property.

256.   The duty of care is implied in law based on the factual circumstances of this case.  HUNT and 3ABN induced the reliance of ADDERLEY, and HUNT and 3ABN was placed in a position of trust and confidence in HUNT and 3ABN's efforts to have the legal

---

[11] "Vulnerable adult" means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is **impaired due** to a mental, emotional, sensory, **long-term physical, or developmental disability or dysfunction**, or brain damage, or the infirmities of aging. § 415.102(28), Fla. Stat.



documents drafted for the donation of a small portion of his Property, and to accurately represent that content of those documents to ADDERLEY.

257.    The offer of assistance provided by HUNT and 3ABN for the preparation of the CRUT and Indentures of Conveyance was naturally calculated to repose confidence and trust and confidence in HUNT.

258.    In addition to the legal efforts undertook by HUNT and 3ABN, ADDERLEY relied upon and trusted HUNT and 3ABN on a personal and moral level based on the understanding that 3ABN was carrying out the missions of the Seventh Day Adventist Church.

259.    HUNT and 3ABN, wrongfully exploited ADDERLEY by breaching its fiduciary duty, and by the unauthorized taking or ADDERLEY's assets.  HUNT and 3ABN have obtained title to, and used ADDERLEY's Property by fraudulent means, with the intent to temporarily or permanently deprive ADDERLEY of the use, benefit or possession of his Property, and instead has retained ADDERLEY's Property for the sole benefit of 3ABN.

260.    ADDERLEY, as the prevailing party, is entitled to recovery of its attorneys' fees and costs pursuant to §415.1111 of the Florida Statutes.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's breach of §415.1111 of the Florida Statutes, in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

**Count XXII – Civil Exploitation of Elderly and Disabled Adult**
**Fla. Stat. § 772.11**
**(against 3ABN)**

261.    Plaintiff re-alleges paragraphs 1-75, 108-129, 174-227, 253-260 of this Complaint as if fully set forth herein.

262.    ADDERLEY is a veteran, elderly adult, and has a disability because he is legally blind.

263.    HUNT and 3ABN, as the parties who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, owed a fiduciary duty of care to ADDERLEY to provide accurate and truthful representations so ADDERLEY could evaluate whether or not to execute the CRUT and the Indentures of Conveyance to transfer his Property.

264.    The duty of care is implied in law based on the factual circumstances of this case.  HUNT and 3ABN induced the reliance of ADDERLEY, and HUNT and 3ABN was placed in a position of trust and confidence in HUNT and 3ABN's efforts to have the legal documents drafted for the transfer of his 1-2 acre property, and to accurately represent that content of those documents to ADDERLEY.

265.    The offer of assistance provided by HUNT and 3ABN for the preparation of the CRUT and Indentures of Conveyance was naturally calculated to repose confidence and trust in HUNT and 3ABN and HUNT.

266.    In addition to the legal efforts undertook by HUNT and 3ABN, ADDERLEY relied upon and trusted HUNT and 3ABN on a personal and moral level based on the understanding that 3ABN was carrying out the missions of the Seventh Day Adventist Church.

Adderley v. 3ABN et. al.

267.    HUNT and 3ABN, individually and in conspiracy with one another, knowingly wrongfully obtained the title to ADDERLEY's entire Property, representing the bulk of his estate assets, for the possession, use and benefit of 3ABN.

268.    HUNT and 3ABN has wrongfully exploited ADDERLEY, an elderly and disabled adult, by obtaining and using ADDERLEY's Property, with the intent to temporarily or permanently deprive ADDERLEY of the right or benefit from its Property, and to use ADDERLEY's Property for the sole benefit of 3ABN.   In addition, even if the CRUT and Indentures of Conveyances were valid, 3ABN has continuously exploited ADDERLEY by failing to convert the Property to productive property, and pay unitrust amounts to ADDERLEY.

269.    HUNT and 3ABN's actions have resulted in an unauthorized appropriation, sale, or transfer of ADDERLEY's Property, in which ADDERLEY did not receive the equivalent financial value in goods in services.

270.     On or about August 17, 2018, Plaintiff delivered a civil exploitation of elderly and disabled adult demand letter to 3ABN, demanding the amount of $22,900,000 or the return of title to ADDERLEY's Property.  A copy is attached as **Exhibit "J"** and made part of this pleading.

271.    3ABN failed to return ADDERLEY's Property within thirty (30) days after receipt of the demand letter.

272.    As a direct and proximate cause of the 3ABN's exploitation, Plaintiff has suffered damages and seeks treble the total amount of damages.

273.    Plaintiff is entitled to attorneys' fees pursuant to § 772.11 of the Florida Statutes.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33266

WHEREFORE, Plaintiff demands judgment against 3ABN for treble damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper

**Count XXIII – Civil Theft**
**Fla. Stat. § 772.11**
**(against 3ABN)**

274.    Plaintiff re-alleges paragraphs 1-75, 108-129 of this Complaint as if fully set forth herein.

275.    HUNT and 3ABN, individually and in conspiracy with one another, knowingly wrongfully obtained the title to ADDERLEY's entire Property, representing the bulk of his estate assets, for the possession, use and benefit of 3ABN.

276.    3ABN has wrongfully obtained and used, or endeavored to obtained or used, ADDERLEY's Property, with the intent to temporarily or permanently deprive ADDERLEY of the right or benefit from its Property, and/or appropriate ADDERLEY's Property to 3ABN's own use or to the use of any person not entitled to the use of the Property.

277.     On or about August 17, 2018, Plaintiff delivered a civil theft demand letter to 3ABN, demanding the amount of $22,900,000 or the return of title to ADDERLEY's Property.  (Ex. "J.")

278.    3ABN failed to return ADDERLEY's Property within thirty (30) days after receipt of the demand letter.

279.    As a direct and proximate cause of the 3ABN's theft, Plaintiff has suffered damages and seeks treble the total amount of damages.

280.    Plaintiff is entitled to attorneys' fees pursuant to §772.11 of the Florida Statutes.

**WHEREFORE**, Plaintiff demands judgment against 3ABN for treble damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper

### Count XXIV – Undue Influence[12] by Active Procurement
#### (Against HUNT and 3ABN)

281.    Plaintiff incorporates by reference paragraphs 1-75, 102-147, 174-207, 253-280, and further alleges:

282.    HUNT and 3ABN had a confidential relationship with ADDERLEY at the time that the CRUT was signed and ADDERLEY's Property was conveyed to the CRUT.

283.    HUNT and 3ABN actively procured the drafting and execution of the CRUT and Indentures of Conveyance, and the transfer of the Property to the CRUT, including but not limited to the following:

> a   HUNT and 3ABN were present at the execution of the CRUT and Indentures of Conveyance;
>
> b   HUNT and 3ABN were present at the time that ADDERLEY allegedly expressed a desire to make a CRUT and to transfer his Property to the CRUT;
>
> c   HUNT and 3ABN had knowledge of the contents of the CRUT and Indentures of Conveyance;
>
> d   HUNT and 3ABN recommended to its attorneys to draft the CRUT and Indentures of Conveyance;
>
> e   3ABN paid for its attorneys to draft the CRUT and Indentures of Conveyance;
>
> f   Neither 3ABN nor its attorneys obtained informed written consent of any conflict of interest in the preparation of the CRUT and Indentures of Conveyance for ADDERLEY;

---

[12] *Flanzer v. Kaplan*, 230 So. 3d 960 (Fla. 2d DCA 2017)(delayed discovery doctrine applies to broader class of claims "founded upon fraud" rather than just fraud in general, including undue influence claims).



        g  3ABN's attorneys drafted the CRUT and Indentures of Conveyance;

        h  HUNT and 3ABN gave instructions for the preparation of the CRUT and Indentures of Conveyance to its attorneys, including directly stating 3ABN's preference "not to give life incomes to any family member" and directing its attorneys to name 3ABN as Successor Trustee;

        i  HUNT and 3ABN participated in securing the notary, consul and witnesses for the CRUT and Indentures of Conveyances;

        j  HUNT and 3ABN applied for the renewal of ADDERLEY's passport in order to permit the transfer of the Property to the CRUT; and

        k  HUNT and 3ABN secured the resignation of ADDERLEY as Trustee, and the appointment of 3ABN as Successor Trustee, who has since acted as the Trustee of the CRUT subsequent to the execution.

*See, e.g., Metropolitan Life Ins. Co. v. Carter*, 2005 WL 2810699 (M.D. Fla. 2005)(active procurement creates a presumption of undue influence).

284.    HUNT and ADDERLEY did not have a long term relationship.  HUNT testified that he first met ADDERLEY by phone on July 20, 2011, and only a little over one month later, on August 21, 2011 and August 22, 2011, HUNT and 3ABN visited ADDERLEY in person for the first time, and took ADDERLEY to a bank to execute the CRUT.

285.    As the Florida Supreme Court stated in *Peacock v. Du Bois, et. al*., 90 Fla. 162 (Fla. 1925)(e.s.):

The property involved in this litigation is virtually all that [ADDERLEY] owned, and it is repulsive to every rule of law and right and love and justice to argue that [he] would uninfluenced deed this property for a nominal consideration to a [charitable organization] who was a stranger to [him], that [he] had known hardly [for one month], and who it is not shown had any claims whatever on [his] bounty, thereby disinheriting the children [he had fathered], and to whom [he] was bound by all the ties of love and affection. The fact of the execution of the deed on the showing made by the record we think imposes on the **appellant the duty of showing that the**

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

transaction was **bona fide, and that it was not secured by undue influence**.

**WHEREFORE**, Plaintiff demands judgment against HUNT and 3ABN for damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper.

### <u>Count XXIII – Unauthorized Practice of Law</u>
### (Against HUNT and 3ABN)

286.    Plaintiff incorporates by reference paragraphs 1-75, 174-207, 253-285, and further alleges:

287.    HUNT does not have a license to practice law in any state.

288.    3ABN has no licensed attorneys on its staff.

289.    HUNT and BENTON testified that they believed that ADDERLEY had heard one of their broadcasts conducted by the Planned Giving and Trust Departments that discussed charitable trusts.

290.    The information packets prepared by and delivered by HUNT and 3ABN to potential donors advertises the charitable remainder unitrust as a vehicle that:

        a    Bypass[es] capital gains tax

        b    [Provides] Monthly income for life

        c    A qualified Irrevocable Charitable Remainder Unitrust is tax exempt.  Accordingly, it pays no tax on realized gain when selling an appreciated asset.  The donor is eligible for income, gift, and estate tax charitable deductions.

        d    At maturity trust assets pass to the designated charitable beneficiary without probate.

291.    HUNT and 3ABN uses its broadcasts to advertise the charitable remainder unitrust as a vehicle that:

        a    Provides a healthy interest payment for life;
        b    Provides a charitable tax deduction; and



Adderley v. 3ABN et. al.

     c Bypasses capital gains.

292. 3ABN's broadcasts specifically identify the drawbacks of the CRUT as follows:

     a the expense associated with it; however, 3ABN states that it is covering that expense so that main drawback is gone.

     b that the CRUT is irrevocable, but that the benefits far outweigh any problems with it because it is going to continue to pay you interest for the rest of your life, your spouse's life, and up to six of your children; and

     c the fact that it is labor intensive because you have to file tax returns.

293. 3ABN, in its broadcasts, fails to identify some of the main critical drawbacks to a CRUT, including but not limited to:

     a The fact that the income does not start until the property is sold;

     b The fact that a donor may not receive any income if the property is sold before the donor deceases;

     c The fact that the IRS guidelines allow a donor to change the charitable beneficiary, but 3ABN directs its attorneys to name 3ABN as an irrevocable beneficiary;

     d The fact that the IRS guidelines allow the donor to retain the right to change the Trustee, but 3ABN directs its attorneys to name 3ABN as the Successor Trustee.

294. HUNT and 3ABN engaged in the unauthorized practice of law, by, *inter alia*:

     a HUNT and 3ABN had discussions with ADDERLEY and answered questions as to the how a CRUT works, and made the determination that the CRUT was appropriate for ADDERLEY and that it met ADDERLEY's needs;

     b HUNT and 3ABN gave instructions for the preparation of the CRUT and Indentures of Conveyance to its attorneys, including

directly stating 3ABN's preference "not to give life incomes to any family member," directing its attorneys to name 3ABN as Successor Trustee, and directing its attorneys to name 3ABN as an irrevocable beneficiary;

    c   HUNT and 3ABN explained the terms of the CRUT and Indentures of Conveyance, described the benefits and drawbacks of a CRUT, read the CRUT and Indentures of Conveyances to ADDERLEY, and made the determination whether or not ADDERLEY understood the terms of the CRUT and Indentures of Conveyances;

    d   HUNT and 3ABN facilitated the execution of the CRUT and Indentures of Conveyance, and participated in securing the notary, consul and witnesses for the execution;

    e   HUNT and 3ABN funded the CRUT with ADDERLEY's Property by transferring the Property out of ADDERLEY's individual name to the CRUT;

    f   HUNT and 3ABN applied for the renewal of ADDERLEY's passport in order to permit the transfer of the Property to the CRUT; and

    g   HUNT and 3ABN directed its attorneys to prepare the resignation of ADDERLEY as Trustee, and the appointment of GILLEY as Successor Trustee, who has since acted as the Trustee of the CRUT subsequent to the execution.

295.    HUNT and 3ABN knew that ADDERLEY was blind at the time that they discussed the charitable remainder unitrust with ADDERLEY.

296.    The Florida Supreme Court has ruled that the specific conduct that HUNT and 3ABN engaged in -- the "assembly, drafting, execution and funding of a trust document constitutes the practice of law." *The Florida Bar re Advisory Opinion-Nonlawyer Preparation of Living Trusts*, 613 So. 2d 426 (Fla. 1993). Accordingly, HUNT and 3ABN's activities constitute the unauthorized practice of law; *The Florida Bar v. American Senior Citizens Alliance, Inc.*, 689 So. 2d 255 (Fla. 1997)(answering specific legal questions, determining the appropriateness of a trust based on a customer's particular needs

Adderley v. 3ABN et. al.

and circumstances, assembling, drafting, executing documents, and funding trusts constitutes the unauthorized practice of law).

297.    Accordingly, HUNT and 3ABN's actions, through its broadcasts, advertising materials and activities in connection with ADDERLEY, have engaged in the practice of law.

298.    Plaintiff has suffered damages as a result of HUNT and 3ABN's actions.

**WHEREFORE**, Plaintiff demands judgment against HUNT and 3ABN for damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper.

<u>**Count XXV – Negligent Spoliation of Evidence**</u>
**(Against 3ABN and BENTON)**

299.    Plaintiff incorporates by reference paragraphs 1-75, and further alleges:

300.    Defendants had a common law duty to preserve evidence that arose prior to this litigation began, on or before March 26, 2018, when the Plaintiff delivered its demand letter.  The parties have stipulated that at least by March 26, 2018 the parties anticipated litigation.  [DE 24, p. 5].

301.    On or about April 2, 2018, Defendants notified BENTON of this potential litigation.  Thereafter, BENTON obtained the ADDERLEY file from Mr. John C. Leggett, Esq.'s office, on or about April 5, 2018, and held the file until December 11, 2018.

302.    Defendants had a duty to preserve evidence within its possession, custody or control.  Throughout this litigation, Defendants expressly asserted and attempted to prevent the production of documents within BENTON and Mr. Leggett's possession on the basis of attorney-client privilege, up until January 15, 2019, when it agreed to "a subject matter waiver involving ADDERLEY, BENTON, Mr. Leggett and Ms. Lewis-Johnson in connection with the claims in this lawsuit."

303.    Defendants obtained a copy of the computer file from Mr. Leggett, which were produced as LL000001 to LL000036. However, Defendants failed to preserve a copy of the actual physical file in Mr. Leggett's possession up through April 5, 2018, and in Mr. Benton's possession from April 5, 2018 through December 11, 2018.[13]

304.    Mr. Leggett's paralegal testified that the physical file obtained by BENTON from Mr. Leggett's office originally contained additional documents when he took the file on April 5, 2018, including but not limited to, an intake form and handwritten notes regarding phone calls; however, the file was returned on December 11, 2018 without those documents, and are believed to have been destroyed.

305.    Defendants have significantly impaired the Plaintiff's ability to prove its lawsuit as the notes of BENTON alleged telephone calls with ADDERLEY specifically relate to the allegations Plaintiff has raised in this litigation.

306.    Plaintiff has been damaged by the destruction of those documents.

**WHEREFORE**, Plaintiff demands judgment against 3ABN and BENTON for damages, interest, costs, attorneys' fees, or alternatively sanctions against 3ABN and BENTON, including but not limited to, an adverse inference, the striking of BENTON's

---

[13] Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters.

Pursuant to Rule 34(a), a party must produce documents in response to a request for production where those documents are "in the responding party's possession, custody, or control [.]" Fed.R.Civ.P. 34(a). Whether documents are in a parties control under Rule 34 is broadly construed. *471 *See, e.g., Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984) (finding that "[c]ontrol is defined not only as possession, but as the legal right to obtain documents requested upon demand"); *Jans ex rel. Jans v. The GAP Stores, Inc.,* No. 05–1534, 2006 WL 2691800, at *2 (M.D.Fla. Sept. 20, 2006)(emphasizing that the "term 'control' is broadly construed"). "Control," therefore, does not require that a party have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the "right, authority, or practical ability to obtain the materials sought on demand." *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.,* No. 09–599, 2010 WL 4853891, at *3 (M.D.Fla. Nov. 22, 2010) (internal quotations omitted; citing *In re Wright,* No. 04–94519, 2005 WL 6488101, at *3 (N.D.Ga. Aug. 9, 2005); *Searock,* 736 F.2d at 650; and *Fin. Bus. Equip. Solutions, Inc. v. Quality Data Systems, Inc.,* No. 08–60769, 2008 WL 4663277, at *2 (S.D.Fla. Oct. 21, 2008)); *Soliday v. 7–Eleven, Inc.,* No. 09–807, 2010 WL 4788041, at *2(same); *see also Anz Advanced Technologies v. Bush Hog, LLC,* No. 09–00228, 2011 WL 814663, at *9 (S.D.Ala. Jan. 26, 2011) (" '[C]ontrol' has been 'construed broadly by the courts' to include not just a legal right, but also a 'practical ability to obtain the materials' on demand.") (internal citations omitted). *Costa v. Kerzner Intern. Resorts, Inc.,* 277 F.R.D. 468 (S.D. Fla. 2011).



testimony relating to any telephone calls with ADDERLEY or the striking of the pleadings, and such other relief as the Court deems proper.

### Count XXVI – Negligent Misrepresentation[14]
**(Against BENTON)**

307.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

308.    BENTON, in providing information and recommendations to ADDERLEY regarding the CRUT, placed himself in a place of trust and confidence with ADDERLEY.

309.    BENTON omitted and made inaccurate statements of material fact with respect to the CRUT prepared for ADDERLEY's signature, as follows:

a    BENTON failed to disclose the conflict of interest with 3ABN;

b    BENTON delivered instructions to ADDERLEY indicating that he could change the Trustee, when the terms of the CRUT were inconsistent with those instructions;

c    BENTON failed to inform ADDERLEY that he could change the Trustee or the beneficiary during his lifetime and add additional unitrust recipients and still be in compliance with the IRC rules on the CRUT;

---

[14] In Florida, negligent misrepresentation sounds in fraud. *Posen Const. Inc. v. Lee County*, 921 F.Supp.2d 1350 (M.D. Fla. 2013); *Ostreyko v. B.C. Morton Organization, Inc*., 310 So. 2d 316 (Fla. 3d DCA 1975). The delayed discovery doctrine in Section. 95.031(2)(a) applies to actions "founded on fraud," and thus, also applies to negligent misrepresentation cases.  Merriam Webster's dictionary defines fraud as "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right," "an act of deceiving or misrepresenting," "a person who is not what he or she pretends to be," or "one that is nowt what it seems or is represented to be."



d   BENTON incorporated terms of the CRUT that were

favorable to 3ABN and failed to inform ADDERLEY of same.

310.   BENTON either knew its representations were false OR made the

misrepresentations without knowledge of their truth or falsity but should have known the

representations were false.

311.   The misrepresentations were material to ADDERLEY's decision to sign the

CRUT and Indentures of Conveyance transferring title of his Property to the CRUT.

BENTON knew and intended that ADDERLEY would rely upon and be induced by the

misrepresentations to execute the CRUT and Indentures of Conveyance, and to transfer his

Property to the CRUT for the benefit of 3ABN.

312.   ADDERLEY reasonably relied on BENTON's misrepresentations in

executing the CRUT and the Indentures of Conveyance for his Property, to its detriment

and suffered damages currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and

against BENTON for all actual, consequential and incidental damages incurred as a result

of BENTON's negligent misrepresentations in an amount to be determined by the trier of

fact, for the costs of this action, interest, and such other and further relief that the Court

deems just and appropriate.

### Count XXVII – Aiding and Abetting
### Unauthorized Practice of Law
### (Against BENTON)

313.   Plaintiff incorporates by reference paragraphs 1-75, 174-207, 253-298, 307-

312, and further alleges:

314.   At all material times, BENTON had knowledge of 3ABN engaging in the

unauthorized practice of law.

315.    BENTON substantially assisted 3ABN in committing the unauthorized practice of law, by, *inter alia*:

    a   Preparing the CRUT, instructions for the CRUT, and calculations for the CRUT;

    b   Taking direction from 3ABN to incorporate terms from 3ABN that were favorable to 3ABN;

    c   Encouraging ADDERLEY to execute the CRUT;

    d   Failing to disclose to ADDERLEY material drawbacks to enter into the CRUT;

    e   Failing to disclose to ADDERLEY a conflict of interest in his representation of 3ABN.

316.    Plaintiff has been damaged as a result of BENTON's aiding and abetting activities with 3ABN.

**WHEREFORE**, Plaintiff demands judgment against 3ABN for damages, interest, costs, and such other relief as the Court deems proper.

### Count XXVIII – Punitive Damages
### (Against HUNT, BENTON and 3ABN)

317.    Plaintiff incorporates by reference paragraphs 1-75, 102-147, 174-207, 253-316, and further alleges:

318.    HUNT, BENTON and 3ABN individually and collectively acted intentionally, willfully, wanton, reckless and grossly negligent and in complete disregard for the Plaintiff's interest, entitling the Plaintiff to an award of punitive damages against each HUNT, BENTON and 3ABN.

319.    Punitive damages are appropriate for HUNT, BENTON and 3ABN's intentional misrepresentation of the contents of the CRUT and Indentures of Conveyance, malicious actions in converting the Plaintiff's entire 419 acre tract of Property to the use and benefit of 3ABN. HUNT, BENTON and 3ABN knew that Plaintiff only intended to transfer 1-2 acres, and that the transfer of Property was to be used for the religious purposes consistent with the beliefs of the Seventh Day Adventist Church.

320.    In addition, HUNT, BENTON and 3ABN prepared the CRUT and Indentures of Conveyance with the intent to deprive ADDERLEY of his Property and engaged attorneys that had an ongoing relationship with 3ABN, and a conflict with ADDERLEY, to prepare documents to facilitate the transfer of Property from ADDERLEY to 3ABN.

321.    HUNT, BENTON and 3ABN knew that ADDERLEY was legally blind, not represented by independent counsel, and that HUNT had gained the trust of ADDERLEY. HUNT, BENTON and 3ABN, specifically intended to abuse these conditions and misrepresented the contents of the CRUT and Indentures of Conveyance in order to obtain, by fraudulent and intentional means, title to ADDERLEY's Property.

322.    HUNT, BENTON and 3ABN are personally guilty of intentional misconduct, gross negligence, or both.

323.    HUNT, BENTON and 3ABN had actual knowledge of the wrongfulness of the conduct alleged herein and the high probability that injury or damage to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in significant damage to the Plaintiff.

324.    HUNT, BENTON and 3ABN's conduct was so outrageous, reckless or wanton in care that it constituted gross negligence, the conduct of which was so reckless



Adderley v. 3ABN et. al.

or wanting in care that HUNT and 3ABN's actions constituted a conscious disregard or indifference to ADDERLEY's rights to his Property, which represents substantially the majority of ADDERLEY's assets.

325. HUNT, BENTON and 3ABN, through its senior level or management employees, principal, corporate leaders, officers, directors, managers, or other senior level person knowingly condoned, ratified, or consented to such conduct; or engaged in conduct that constituted gross negligence and that contributed to the loss, damages, and injury suffered by the Plaintiff.

326. HUNT, BENTON and 3ABN's acts and omissions were motivated solely by unreasonable financial gain.

327. The unreasonably dangerous nature of each HUNT, BENTON and 3ABN's conduct, together with the high likelihood of damage to Plaintiff resulting from the conduct, was actually known by HUNT, BENTON, as well as the managing agent, director, officers, senior level employees or management of 3ABN.

328. As a direct and proximate result of each HUNT, BENTON and 3ABN'S intentional, willful, outrageous, wanton, reckless and grossly negligent conduct that damaged the Plaintiff, HUNT, BENTON and 3ABN should be assessed with sufficient punitive damages to be adequately punished for their bad acts and to deter others from acting in a similar manner in the future.

**WHEREFORE**, Plaintiff demands judgment against HUNT, BENTON and 3ABN for compensatory damages, punitive damages, post judgment interest, taxable costs and whatever further relief the court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff further demands trial by jury in the present case.

Dated this 12th day of April 2019.

Respectfully submitted,
**SAAVEDRA | GOODWIN**
*Attorneys for Plaintiff*
312 SE 17th Street, 2nd Floor
Fort Lauderdale, FL  33316
Tel: 954-767-6333
Fax:  954-767-8111

BY: ___/s/ Diane J. Zelmer_____
Diane J. Zelmer, Esq.
Fla. Bar No. 27251
Email: DZelmer@saavlaw.com
Ross D. Kulberg, Esq.
Fla. Bar No. 44398
Email: RKulberg@saavlaw.com
Glen M. Lindsay, Esq.
Fla. Bar No. 59200
Email: GLindsay@saavlaw.com
Service Email: eservice@saavlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically via the Court's ECF system upon all counsel listed in the attached service list on this 12th day of April 2019.

**SAAVEDRA | GOODWIN**
*Attorneys for Plaintiff*
312 SE 17th Street, 2nd Floor
Fort Lauderdale, FL 33316
Tel: 954-767-6333
Fax: 954-767-8111

BY: ____/s/ Diane J. Zelmer_____
        Diane J. Zelmer, Esq.
        Fla. Bar No. 27251
        Email: DZelmer@saavlaw.com
        Ross D. Kulberg, Esq.
        Fla. Bar No. 44398
        Email: RKulberg@saavlaw.com
        Glen M. Lindsay, Esq.
        Fla. Bar No. 59200
        Email: GLindsay@saavlaw.com
        Service Email: eservice@saavlaw.com

Case No. 18-23362-CIV-SCOLA
Adderley v. 3ABN et. al.

## VERIFICATION OF SECOND AMENDED COMPLAINT
## BY DAVID LAWRENCE ADDERLEY

I, DAVID LAWRENCE ADDERLEY, declare under penalty of perjury that the foregoing is true and correct:

I am the Plaintiff in this lawsuit and am legally blind.  The Second Amended Complaint has been read aloud to me in its entirety and I declare that the contents contained in the Second Amended Complaint are true and correct.

Executed this _____ day of April 2019.

_____
DAVID LAWRENCE ADDERLEY

STATE OF FLORIDA       )
                          ) ss
COUNTY OF MIAMI-DADE   )

I have read the foregoing document to DAVID LAWRENCE ADDERLEY on this day of _____ April 2019, who acknowledged and affirmed that the statements contained in the Second Amended Complaint are true and correct, and who is personally known to me or produced _____ as identification and did take an oath.

ROSS D. KULBERG
Notary Public - State of Florida
Commission # GG 020107
My Comm. Expires Aug 9, 2020
Bonded through National Notary Assn.

_____
Signature of Notary Public

_____
*Print Type/Stamp Name of Notary*

*SEAL:*

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

## SERVICE LIST

| | |
|---|---|
| Timothy W. Ridley, Esq.<br>M. Gregory Simpson, Esq.<br>***Co-Counsel for Defendants***<br>MEAGHER & GEER, P.L.L.P.<br>33 South Sixth Street, Suite 4400<br>Minneapolis, Minnesota 55402<br>Phone: (612) 337-9672<br>Email: tridley@meagher.com<br>Email: gsimpson@meagher.com | Raymond L. Robin, Esq.<br>D. David Keller, Esq.<br>***Counsel for Defendants***<br>KELLER LANDSBERG PA<br>Broward Financial Centre<br>500 East Broward Boulevard, Suite 1400<br>Fort Lauderdale, FL 33394<br>Telephone: (954) 761-3550<br>Email: raymond.robin@kellerlandsberg.com<br>Email: david.keller@kellerlandsberg.com<br>Email: rita.vanarsdale@kellerlandsberg.com |