UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.  18-23362-CIV-SCOLA

**JURY TRIAL DEMANDED**

DAVID LAWRENCE ADDERLEY,
an individual,

      Plaintiff,

v.

THREE ANGELS BROADCASTING
NETWORK, INC., a non-for-profit Illinois
corporation, ROY HUNT, JR., an individual,
and JAMES W. GILLEY, an individual,
DANNY SHELTON, an individual and
RICHARD BARRY BENTON, ESQ., an
individual,

      Defendants.

_____/

---

## SUPPLEMENTAL LETTERS ROGATORY
## TO THE APPROPRIATE JUDICIAL AUTHORITY OF THE BAHAMAS

---

The United States District Court for the Southern District of Florida presents its compliments to The Appropriate Judicial Authority of the Bahamas, and requests international judicial assistance to obtain testimony and documents to be used in a civil proceeding before this Court in the above-captioned matter.

### I.  <u>CASE BACKGROUND</u>

Plaintiff has alleged the wrongful conduct of the Defendants in inducing Plaintiff to execute a Charitable Remainder Unitrust ("CRUT") in favor of Three Angels Broadcasting ("3ABN"), as the charitable beneficiary, and three (3) Indentures of Conveyance, which purportedly transferred in excess of 419 acres Bahamian property owned by the Plaintiff, and valued in excess of $32,000,000 to the CRUT for 3ABN's benefit.  After Plaintiff, a legally blind and elderly individual became aware of the actions

CASE NO.  18-23362-CIV-SCOLA
Adderley v. 3ABN, et. al.
SUPPLEMENTAL LETTERS ROGATORY TO THE APPROPRIATE JUDICIAL AUTHORITY OF THE BAHAMAS
Page **2** of **5**

by 3ABN, Plaintiff brought the instant suit alleging twenty-two (22) counts against the Defendants, seeking a declaration, injunctive relief, reformation of the trust and indentures, actual and punitive damages for their alleged breaches of fiduciary duties, violation of the adult protection statute, civil exploitation, and negligent and fraudulent actions resulting in the improper conversion of Plaintiff's property. On April 9, 2019, this Court granted ADDERLEY leave to file his Second Amended Complaint, alleging twenty-eight (28) counts against the Defendants, adding Richard Barry Benton, Esq. and Danny Shelton as Defendants, and alleging additional counts, including undue influence, unauthorized practice of law, and negligent spoliation of evidence.  [DE 67].  A copy of the Second Amended Complaint is attached as **Exhibit "1."**

## II.  <u>REQUEST</u>

This Court requests the assistance from the Supreme Court, Commonwealth of the Bahamas, in the interests of justice, to obtain documents and testimony in the possession of the individuals, entities, and their known representatives located in the Bahamas.

This Court is satisfied that this request is required to produce evidence necessary for trial.  In the interest of justice and judicial economy, this Court requests that the Supreme Court, Commonwealth of the Bahamas permit such documents and testimony as may be obtained to be used for both pre-trial discovery and trial purposes in the above-captioned case.

### *1.  Documents*

The Supreme Court, Commonwealth of the Bahamas, is requested to issue an order by your proper and usual process, ordering the production of documents from the following individuals, entities and their legal representatives, as listed in the attached Schedules "A" and "B" referenced below:

CASE NO.  18-23362-CIV-SCOLA
Adderley v. 3ABN, et. al.
SUPPLEMENTAL LETTERS ROGATORY TO THE APPROPRIATE JUDICIAL AUTHORITY OF THE BAHAMAS
Page **3** of **5**

A.   Warren Rodgers
Police Inspector
Long Island, Bahamas
Subject:  Knowledge of the property, services performed pertaining to the property, expenses incurred pertaining to the property, payments made by one or more Defendants for expenses and services pertaining to the property, the purchase and/or lease by 3ABN of property in Long Island, Bahamas, and in general, services performed, expenses incurred and assets purchased by Mr. Rodgers on behalf of 3ABN.
Documents Requested:  See attached **Schedule "A"**

B.   Hazel Fox
c/o HD Christie LTD
P.O. Box N. 8164
Long Island, Bahamas
Tel: (242) 322-1041 or 357-3630
Subject:  Knowledge of property, listing of the property, marketing efforts, preparation of the property for sale, market value and potential use of the property, and potential buyers.
Documents Requested:  See attached **Schedule "B"**

2. **_Depositions_**

It is further requested that the Supreme Court, Commonwealth of the Bahamas, issue an order permitting United States counsel of record in the above-captioned case to conduct depositions of the following individuals, entities, and their legal representatives:

A.   Warren Rodgers
Police Inspector
Long Island, Bahamas
Subject:  Knowledge of the property, services performed pertaining to the property, expenses incurred pertaining to the property, payments made by one or more Defendants for expenses and services pertaining to the property, the purchase and/or lease by 3ABN of property in Long Island, Bahamas, and in general, services performed, expenses incurred and assets purchased by Mr. Rodgers on behalf of 3ABN.

B.   Hazel Fox
c/o HD Christie LTD
P.O. Box N. 8164
Long Island, Bahamas
Subject:  Knowledge of property, listing of the property, marketing efforts, preparation of the property for sale, market value and potential use of the property, and potential buyers.

CASE NO. 18-23362-CIV-SCOLA
Adderley v. 3ABN, et. al.
SUPPLEMENTAL LETTERS ROGATORY TO THE APPROPRIATE JUDICIAL AUTHORITY OF THE BAHAMAS
Page **4** of **5**

It is further requested that the Court direct that objections to the questions or testimony of the witness by lodged in the manner prescribed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence of the United States, and further directing that a verbatim transcript and a videotape of the proceedings be made to preserve testimony for trial.

This request is made by a United States court of law pursuant to Federal Rule of Civil Procedure 28(b), which provides that "[d]epositions may be taken in a foreign country (1) pursuant to any applicable treaty or convention, or (2) pursuant to a letter of request (whether or not captioned a letter rogatory) . . ."

### III.  CONCLUSION

Plaintiff is willing to reimburse the Appropriate Judicial Authority of the Bahamas for costs incurred by, in executing this Supplemental Letters Rogatory.

This Court is willing to provide similar assistance to the Bahamas, if necessary.

This Court requests that when this request has been executed, that you provide notice to the Clerk of the Court, United States District Court for the Southern District of Florida, 400 N. Miami Avenue, Room 12-3, Miami, Florida, 33132, Case No. 18-23362-CIV-SCOLA.

This Court further requests that when this request has been executed, you send notice to Plaintiff's counsel, Diane J. Zelmer, Esq., Ross Kulberg, Esq., Glen Lindsay, Esq., and Caitlin Bronstein, Esq., Saavedra | Goodwin, 312 SE 17th Street, Second Floor, Fort Lauderdale, Florida 33316.

CASE NO.  18-23362-CIV-SCOLA
Adderley v. 3ABN, et. al.
SUPPLEMENTAL LETTERS ROGATORY TO THE APPROPRIATE JUDICIAL AUTHORITY OF THE BAHAMAS
Page **5** of **5**


This Supplemental Letters Rogatory is signed and sealed from the United States District Court for the Southern District of Florida by the Honorable Magistrate Judge Edwin G. Torres.

Dated this _24_ day of _____ July _____, 2019.

MAGISTRATE JUDGE EDWIN G. TORRES
United States Magistrate Judge
United States District Court
Southern District of Florida

Case 1:18-cv-23362-RNS   Document 110   Entered on FLSD Docket 07/24/2019   Page 6 of 175
Schedule "A" to 30(b)6 Supplemental Letters Rogatory

Page 1 of 9

---

<div align="center">

### SCHEDULE "A"

### DOCUMENTS REQUESTED FROM WARREN RODGERS

</div>

---

<div align="center">

### <u>DEFINITIONS</u>

</div>

For the purposes of these Requests, the following words shall have the meaning indicated

below:

      1.     The terms "**you**," "**your**," "**yours**" or "**WARREN RODGERS**" shall mean WARREN RODGERS, including, but not limited to, any agents, and/or any other person acting for or on behalf of WARREN RODGERS, or under his authority.

      2.     "**Defendants**" shall mean THREE ANGELS BROADCASTING, INC., including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for THREE ANGELS BROADCASTING, INC., and/or any other person acting for or on behalf of THREE ANGELS BROADCASTING, INC., or under THREE ANGELS BROADCASTING, INC.'s authority, ROY HUNT, JR., JAMES W. GILLEY, DANNY SHELTON, and/or RICHARD BARRY BENTON, ESQ.

      3.     "**3ABN**" shall mean THREE ANGELS BROADCASTING, INC., including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for THREE ANGELS BROADCASTING, INC., and/or any other person acting for or on behalf of THREE ANGELS BROADCASTING, INC., or under THREE ANGELS BROADCASTING, INC.'s authority.

      4.     "**Hunt**" shall mean ROY HUNT, JR. including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for ROY HUNT, JR., and/or any other person acting for or on behalf of ROY HUNT, JR., or under ROY HUNT, JR.'s authority.

      5.     "**Shelton**" shall mean DANNY SHELTON including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for DANNY SHELTON, and/or any other person acting for or on behalf of DANNY SHELTON, or under DANNY SHELTON's authority.

      6.     "**Benton**" shall mean RICHARD BARRY BENTON, ESQ., including, but not limited to, any employees, agents, managers, presidents, directors, officers,

independent contractors, representatives, and/or attorney(s) for RICHARD BARRY BENTON, ESQ., and/or any other person acting for or on behalf of RICHARD BARRY BENTON, ESQ., or under RICHARD BARRY BENTON, ESQ.'s authority.

7. "**Lewis & Longley**" shall mean the Bahamian counsel of Lewis & Longley including, but not limited to, J. Denise Lewis-Johnson as well as any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for Lewis & Longley, and/or any other person acting for or on behalf of Lewis & Longley, or under Lewis & Longley's authority.

8. The term "**Property**" shall mean the real property of in excess of 419.537 acres or 18,275,032 square feet of vacant land in Long Island, Bahamas, known as:

| | |
|---|---|
| Property Identification: | Adderley Tract |
| Address: | Queen's Highway<br>Dean's Bahamas |
| Property Description: | All that piece parcel or lot of land situate in the Settlement of Deans, approximately four miles west of Clarence Town in the Island of Long Island of The Bahamas containing 419.537 acres by survey. |

9. The term "**2019 Property**" shall mean the real property purchased by 3ABN in 2019 that is located on Long Island, Bahamas near the Property.

## REQUESTS

Plaintiff hereby requests that WARREN RODGERS produce each of the following documents, **for the period from August 2010 to the present**:

## GENERAL DOCUMENTS

1. Your entire file pertaining to the Property.

2. Your entire file in any way pertaining to any inspections performed on the Property.

3. Your entire file in any way pertaining to any police investigations pertaining to the Property.

---

SAAVEDRAGOODWIN

<span style="color:red">Schedule "A"- Rodgers</span>

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

## LAW ENFORCEMENT ACTIVITIES FOR PROPERTY

4.      Any and all documents pertaining to any inspections or investigations performed on the Property.

5.      Any and all intake reports, reports, memorandums, notes and other documents prepared with regard to any inspections or investigations performed on the Property.

6.      Any and all documents and correspondence related to security and/or law enforcement activities on the Property, including but not limited to, any incident reports and/or dispatch reports relating to Ambrose Adderley.

7.      Any and all police reports with regard to the Property.

8.      Any documents with regard to Ambrose Adderley.

9.      All documents reflecting any arrests made with regard to persons on the Property.

10.      Any and all documents with regard to any trespassing or illegal activities on the Property.

## PROPERTY DOCUMENTS

11.      Any and all communications by and between you and 3ABN, Hunt, Shelton, Benton, Lewis & Longley, Hazel Fox, Rowdy Boys Construction, Dave Everett, and/or any other third party concerning the Property.

12.      Any and all communications by and between you and any brokers, real estate professionals, and/or appraisers concerning the Property.

13.      Any and all communications by and between you and the Bahamian authorities, government, or municipalities for information concerning the Property.

SAAVEDRAGOODWIN

14.     Any and all communications by and between you and the Bahamas Investment Board pertaining to the Property.

15.     Any and all documents and correspondence related to construction and/or road clearing for the Property.

16.     Any and all plans, permits, surveys, engineering plans, architectural plans or other documents relating to the Property.

## EXPENSES AND SERVICES FOR PROPERTY

17.     Any and all documents reflecting any contracts or agreements you entered into with 3ABN for any services or reimbursement of any expenses with regard to the Property.

18.     Any and all documents reflecting any payments received by you from 3ABN, or on behalf of any of the Defendants, including but not limited to, bank account statements, ledgers, wire transfers, checks, etc.

19.     All receipts, invoices, bills of sale, and other documentation reflecting expenses incurred or paid related to the Property (whether incurred by you directly, indirectly, or on behalf of any of the Defendants).

20.     Any and all documents and communications reflecting any payments made by you on behalf of 3ABN, or on behalf of any of the Defendants.

21.     Any and all documentation submitted by you to 3ABN for reimbursement for expenses incurred or paid pertaining to the Property.

22.     Any and all documents relating to any services performed/to be performed by you relating to the Property.

23.     Any and all communications by and between you and 3ABN, Hunt, Shelton, Benton, Lewis & Longley, Hazel Fox, Rowdy Boys Construction, Dave Everett, and/or any other third party concerning the Property.

24.     Any and all documents evidencing 3ABN's request for and/or approval of expenditures made by you on behalf of the Property and/or services to be performed by you on or for the Property.

25.     Any and all written requests made by you to 3ABN, Hunt, Shelton, or any third party for reimbursement of expenses incurred by you pertaining to the Property and/or for services performed/to be performed by you on or for the Property.

26.     Any and all bank account and credit card account documents (including but not limited to, monthly statements, deposit slips, withdrawal slips, copies of checks, and wire transfers) from the account maintained by you which was used to make expense payments for the Property, including payments for the lease of a home on Long Island and the purchase of a Dodge truck.

27.     Any and all credit or debit card statements for credit or debit cards provided to you by 3ABN, Hunt, Shelton, or any other third party for use pertaining to the Property.

28.     Any and all written instructions received by you from 3ABN, Hunt, Shelton, or any third party regarding how you were/are to spend the funds received from 3ABN that pertain to the Property.

29.     Any and all accountings, spreadsheets, correspondence, or any other documentation evidencing how you utilized/are utilizing the funds received by you from 3ABN relating to the Property.

30.     Any and all salary, income, or benefits received by you as result of your work for 3ABN relating to the Property, including, but not limited to, funds, titles,

promotions, memberships, discounts, use of company cars, use of company property, reimbursement of expenses, meals, property, vehicles, and the like.

### EXPENSES FOR THE LEASE OF RENTAL PROPERTY

31.     Any and all documents and correspondence related to the lease of real property in the Long Island, Bahamas for the period running January 1, 2018 through January 1, 2019.

32.     Any and all documents and correspondence related to the lease of real property in the Bahamas for the period running January 1, 2018 through January 1, 2019, which was signed by you as tenant and Judith P. Knowles, as landlord, on behalf of Walter Turnquest, and ultimately paid for by (or on behalf of) 3ABN via reimbursements to you for the costs.

33.     Any and all correspondence with the landlord and/or owner of the property that was leased by you for or on behalf of 3ABN during 2018 or 2019.

34.     Any and all documents reflecting any payments made for the rental of the property that was leased by you for or on behalf of 3ABN during 2018 or 2019.

35.     Any and all documents reflecting any expenses made for the rental of the property that was leased by you for or on behalf of 3ABN during 2018 or 2019, including but not limited to utilities, maintenance, telephone and other documents.

36.     Any and all documents reflecting any agreement by and between you and 3ABN for the lease of the property, sublease of the property, payment of rent and expenses of the rental property.

### EXPENSES FOR THE PURCHASE OF A DODGE TRUCK

37.     Any and all documents related to the purchase of a 2013 blue Dodge Ram truck by you, as buyer, from Nathaniel Thompson, as seller, for or on behalf of 3ABN.

38.     Any and all documents related to the purchase of a Dodge truck which was titled in your name and ultimately paid for by (or on behalf of) 3ABN via reimbursements to you for the costs, including, but not limited to the title registration and all insurance documents pertaining to said Dodge truck.

39.     Any and all documents relating to any reimbursements received by you from 3ABN for the purchase of the Dodge truck.

40.     Any and all expenses and costs incurred relating to the Dodge truck, including but not limited to, repairs, maintenance, gasoline, oil, etc.

41.     All documents relating to the title registration, tax documents, vehicle tags, and insurance documents pertaining to said Dodge truck.

42.     All documents reflecting any agreement with 3ABN to purchase the Dodge truck in your name, for the use of the Dodge truck, and/or for the return of the Dodge truck to 3ABN and/or the funds received in a subsequent sale of the Dodge truck.

## EXPENSES AND SERVICES FOR 2019 PROPERTY

43.     This request seeks those documents identified in numbers 17-30 relating to any and all services you performed on behalf of any of 3ABN or Shelton, any payments received by you from 3ABN or Shelton, and all expenses incurred or paid by you on behalf of 3ABN or Shelton relating to the 2019 Property.

## EXPENSES AND SERVICES FOR 3ABN GENERALLY

44.     This request seeks those documents identified in numbers 17-30, relating to any and all services you performed on behalf of any of 3ABN or Shelton, any payments received by you from 3ABN or Shelton, and all expenses incurred or paid by you on behalf of 3ABN or Shelton in Long Island, Bahamas, including but not limited to the total

documented amount of $56,625.00 as reflected in 3ABN's ledger batestamped as 3ABN002033-2035. A copy of this ledger can be provided upon request.

## **MISCELLANEOUS DOCUMENTS**

45.     Any and all ESI, emails, text messages, What'sApp messenger (or any other messenger service, electronic copies and screen prints of any information responsive to the above that are maintained internally or on an electronic system of program.

46.     Any and all photos, videos, graphs, pictures, notes, memos, or the like regarding the above requests.

---

**SCHEDULE "B"**

**DOCUMENTS REQUESTED FROM HAZEL FOX**

---

## DEFINITIONS

For the purposes of these Requests, the following words shall have the meaning indicated

below:

1.      The terms "**you**," "**your**," "**yours**" or "**HAZEL FOX**" shall mean HAZEL FOX, including, but not limited to, any agents, and/or any other person acting for or on behalf of HAZEL FOX, or under her authority.

2.      "**Defendants**" shall mean THREE ANGELS BROADCASTING, INC., including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for THREE ANGELS BROADCASTING, INC., and/or any other person acting for or on behalf of THREE ANGELS BROADCASTING, INC., or under THREE ANGELS BROADCASTING, INC.'s authority, ROY HUNT, JR., JAMES W. GILLEY, DANNY SHELTON, and/or RICHARD BARRY BENTON, ESQ.

3.      "**3ABN**" shall mean THREE ANGELS BROADCASTING, INC., including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for THREE ANGELS BROADCASTING, INC., and/or any other person acting for or on behalf of THREE ANGELS BROADCASTING, INC., or under THREE ANGELS BROADCASTING, INC.'s authority.

4.      "**Hunt**" shall mean ROY HUNT, JR. including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for ROY HUNT, JR., and/or any other person acting for or on behalf of ROY HUNT, JR., or under ROY HUNT, JR.'s authority.

5.      "**Shelton**" shall mean DANNY SHELTON including, but not limited to, any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for DANNY SHELTON, and/or any other person acting for or on behalf of DANNY SHELTON, or under DANNY SHELTON's authority.

6.      "**Benton**" shall mean RICHARD BARRY BENTON, ESQ., including, but not limited to, any employees, agents, managers, presidents, directors, officers,

independent contractors, representatives, and/or attorney(s) for RICHARD BARRY BENTON, ESQ., and/or any other person acting for or on behalf of RICHARD BARRY BENTON, ESQ., or under RICHARD BARRY BENTON, ESQ.'s authority.

7.      "**Lewis & Longley**" shall mean the Bahamian counsel of Lewis & Longley including, but not limited to, J. Denise Lewis-Johnson as well as any employees, agents, managers, presidents, directors, officers, independent contractors, representatives, and/or attorney(s) for Lewis & Longley, and/or any other person acting for or on behalf of Lewis & Longley, or under Lewis & Longley's authority.

8.      The term "**Property**" shall mean the real property of in excess of 419.537 acres or 18,275,032 square feet of vacant land in Long Island, Bahamas, known as:

| | |
|---|---|
| Property Identification: | Adderley Tract |
| Address: | Queen's Highway<br>Dean's Bahamas |
| Property Description: | All that piece parcel or lot of land situate in the Settlement of Deans, approximately four miles west of Clarence Town in the Island of Long Island of The Bahamas containing 419.537 acres by survey. |

## REQUESTS

Plaintiff hereby requests that HAZEL FOX produce each of the following documents, **for the period from August 2010 to the present**:

## DOCUMENTS

1.      Your entire file pertaining to the Property.

2.      Any and all communications by and between you and 3ABN, Hunt, Benton, Shelton, Lewis & Longley, David Everett and/or any third party concerning the listing, marketing, appraisal, survey and/or purchase and sale of the Property.

3.      Any and all communications by and between you and any brokers, real estate professionals, appraisers, potential buyers and/or other third parties concerning the marketing, listing, purchase, and/or sale of the Property.

4.      Any and all documents pertaining to listing or marketing of the Property, including but not limited to, any listing agreements, pamphlets and/or any websites or other marketing efforts made for the Property.

5.      All documents reflecting the potential market value and/or potential use of the Property.

6.      All documents reflecting any potential offers to purchase the Property or potential buyers interested in the Property.

7.      Any and all documents to and from you or any other third party relating to the current and/or future potential use of the Property, including but not limited to, legal opinions, surveys, permits, architectural or engineering plans.

8.      Any and all communications by and between you and the Bahamian authorities, government, or municipalities for information concerning the Property.

9.      Any and all invoices, receipts, bills, or other records of expenses incurred as a result of marketing the Property, or any efforts to prepare the Property for sale.

10.     Any and all documents reflecting any payments made from the Defendants to you or Warren Rodgers related in any way to the Property (including but not limited to, the rental of a home next to the Property, the purchase of a Dodge truck, or the construction of a road on the Property).

11.     Any and all communications between you and Warran Rodgers relating to the Property.

12.     Any and all documents related to 3ABN's purchase of real property on Long Island, Bahamas in 2019, and the closing of same.

13.     Any and all documents and correspondence related to any payments made by Defendants (or on behalf of any of the Defendants) to Warren Rodgers, and the use of those funds, including, but not limited to, the rental of a home near the Property, the purchase of a Dodge truck, and 3ABN's purchase of real estate on Long Island, Bahamas.

14.     Any and all emails, text messages, WhatsApp Messenger (or any other messenger service) responsive to the requests above.

15.     Any and all pictures, photos or videos responsive to the requests above.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-23362-CIV-SCOLA

**JURY TRIAL DEMANDED**

DAVID LAWRENCE ADDERLEY,
an individual,

  Plaintiff,

vs.

THREE ANGELS BROADCASTING
NETWORK, INC., a non-for-profit Illinois
corporation, ROY HUNT, JR., an individual,
JAMES W. GILLEY, an individual,
DANNY SHELTON, an individual, and
RICHARD BARRY BENTON, ESQ., an
individual,

  Defendants.

_____

## VERIFIED SECOND AMENDED COMPLAINT
_____

  DAVID LAWRENCE ADDERLEY ("ADDERLEY"), an individual, through

counsel, sues THREE ANGELS BROADCASTING NETWORK, INC. ("3ABN"), a not

for profit foreign corporation, ROY HUNT, JR. ("HUNT"), an individual, JAMES W.

GILLEY ("GILLEY"), an individual, DANNY SHELTON ("SHELTON"), an individual,

and RICHARD BARRY BENTON, ESQ. ("BENTON"), for damages, a declaration and

an injunction and alleges, as follows:

### <u>PARTIES/JURISDICTION/VENUE</u>

  1.  ADDERLEY is an individual who is domiciled in Miami-Dade County,

Florida, a citizen of the State of Florida, and is a dual citizen of the United States and the

Bahamas and is otherwise *sui juris*.

**Exhibit "1"** to Supplemental Letters
Rogatory

Case 1:18-cv-23362-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 19 of 475
Case 1:18-cv-23362-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 19 of 76
Adderley v. 3ABN et. al.

2.      ADDERLEY is a veteran; beginning in 1960, ADDERLEY served in the U.S. Army as an airborne ranger, throughout the U.S. and abroad, including serving in combat in Vietnam.  ADDERLEY started out as a Lieutenant in the Infantry, and ultimately was promoted to a Colonel[1]; he received several medals for his service throughout his career, and an Honorable Discharge in 1990.

3.      ADDERLEY is legally blind.  ADDERLEY had 20/20 vision when he began his service in the military in 1960.  However, due to an incident occurring while on active duty, ADDERLEY's vision ultimately degraded to his complete blindness; in 1990 when ADDERLEY left the service, he was legally blind and has continued to remain legally blind as of the date of this Second Amended Complaint ("Complaint").

4.      3ABN is a not-for-profit corporation organized and existing under the laws of Illinois, with its principal place of business located at 3391 Charley Good Road, West Frankfort, IL 62896, and a citizen of the State of Illinois.

5.      HUNT is a director of 3ABN, oversees the planned giving and trust services department at 3ABN, and is an individual who is domiciled in the State of Illinois, County of Franklin, a citizen of the State of Illinois, and is otherwise *sui juris*.

6.      From September 2007 to July 2015, GILLEY served as the President, CEO and authorized representative of 3ABN, and an individual who is domiciled in the State of California, County of Placer, a citizen of the State of California, and is otherwise *sui juris*.

7.      At all times prior to September 2007, and from July 2015 to present, SHELTON has served as the President, CEO, founder and authorized representative of

---

[1] ADDERLEY was offered to be promoted as a General Officer during his service in the U.S. Army, but declined the position.



SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23362-RNS  Document 116  Entered on FLSD Docket 07/24/2019  Page 20 of 475
Case 1:18-cv-23362-RNS  Document 68  Entered on FLSD Docket 04/12/2019  Page 3 of 76
Adderley v. 3ABN et. al.

3ABN, and is an individual who is domiciled in the State of Illinois, County of Franklin, a citizen of the State of Illinois, and is otherwise *sui juris*.

8.    BENTON is an attorney and an individual who is domiciled in the State of Georgia, County of Gordon, a citizen of the State of Georgia, and is otherwise *sui juris*.

9.    This Court has subject matter jurisdiction pursuant to 28 USC § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

10.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

11.    Venue is proper in this district pursuant to 28 USC § 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

12.    All conditions precedent to the maintenance of this action have been performed, have been waived, or would have proven futile if performed.

## REAL PROPERTY

13.    ADDERLEY is the rightful owner of the real property in excess of 419.537 acres or 18,275,032 square feet of vacant land in Long Island, Bahamas, known as:

| | |
|---|---|
| Property Identification: | Adderley Tract |
| Address: | Queen's Highway<br>Dean's Bahamas |
| Property Description: | All that piece parcel or lot of land situate in the Settlement of Deans, approximately four miles west of Clarence Town in the Island of Long Island of The Bahamas containing 419.537 acres by survey |

(hereinafter the "Property").

Case 1:18-cv-23863-RNS Document 116 Entered on FLSD Docket 07/24/2019 Page 21 of 175
Case 1:18-cv-23863-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 21 of 76
Adderley v. 3ABN et. al.

### INTENDED DONATION TO SEVENTH DAY ADVENTIST CHURCH

14.    ADDERLEY's father, WELLINGTON ADDERLEY, became affiliated with the Seventh Day Adventist Church ("Church") before ADDERLEY's birth. ADDERLEY grew up in the faith of the Seventh Day Adventist Church and ADDERLEY has been a parishioner and firm believer in the doctrines and theology of the Seventh Day Adventist Church from birth, throughout is childhood, adulthood and entire life. Due to his lifelong religious convictions and parishioner relationship with his Church, ADDERLEY discussed the donation of a small portion of his existing Property along Queens Highway to his Church to build a Sanctuary and for other religious purposes, to carry out the wishes of his father, WELLINGTON ADDERLEY.

15.    HUNT and 3ABN informed ADDERLEY that they would facilitate the donation and/or use of a small portion of his Property to 3ABN for building of a Sanctuary and other religious purposes consistent with the beliefs of the Seventh Day Adventist Church.

16.    ADDERLEY trusted HUNT and 3ABN to be truthful and moral in character because he thought HUNT and 3ABN were working in conjunction with the beliefs, doctrines and mission of his Church.

17.    Indeed, 3ABN is not in any way affiliated with ADDERLEY's Church. 3ABN's website states the following:

> We are not owned or operated by any person or outside organization, and neither are we funded by any church or denomination, although many of our employees and volunteers are members of the Seventh-day Adventist Church.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

18.     HUNT and 3ABN intentionally and fraudulently misrepresented that 3ABN would facilitate the donation and/or use of only a small portion of ADDERLEY's Property for religious purposes consistent with the beliefs of his Church, and instead, intended to transfer the entirety of ADDERLEY's Property for the benefit of 3ABN.

## CHARITABLE REMAINDER UNITRUST

19.     3ABN retained BENTON, an attorney located in Georgia, to prepare a charitable remainder unitrust for 3ABN's benefit and ADDERLEY's detriment.  3ABN paid for the preparation of the charitable remainder unitrust; ADDERLEY did not pay BENTON for his legal services.

20.     BENTON had an ongoing relationship with 3ABN to prepare charitable remainder unitrusts to obtain donations for 3ABN, and as such, the engagement of BENTON to prepare an irrevocable charitable remainder trust to facilitate the donation of a small portion of ADDERLEY's Property necessarily included a conflict with the representation of ADDERLEY.

21.     On or about August 22, 2011, ADDERLEY signed the Charitable Remainder Unitrust Agreement, EIN No. 45-6449547, as Grantor/Trustee ("CRUT").  The Attachment A to the CRUT listed "Real property located on Long Island, Bahamas" as being transferred to the CRUT, but did not specify the property in detail that would fund the CRUT.    Although there were discussions about donating a small portion of ADDERLEY's Property, there was never any final determination made as to the portion of Property ADDERLEY intended to donate to 3ABN.  A copy is attached as **Exhibit "A."**

SG  SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

22.     The CRUT was notarized by Bessie M. Tomlin, a Notary Public in the State
of Florida, Commission No. DD0915620, with an expiration date of August 10, 2013.  The
notary did not identify the "satisfactory evidence" that ADDERLEY provided to the notary
for identification, and the CRUT was not witnessed by any party.[2]

23.     Prior to and during the execution of the CRUT, neither HUNT nor 3ABN
nor BENTON, informed ADDERLEY that he was executing a trust, and indeed, never
informed ADDERLEY that the CRUT was irrevocable.  The notary public did not read the
CRUT to ADDERLEY.[3]  ADDERLEY is legally blind and did not know that he was
signing an irrevocable CRUT, or any trust instrument.

24.     HUNT, BENTON and 3ABN intentionally arranged for ADDERLEY, a
legally blind person, to sign the CRUT without having the guidance, advice, representation
and presence of independent legal counsel, and without disclosing the conflict of interest
with BENTON.  Moreover, since ADDERLEY is legally blind, he could not read the
documents prior to execution.  Instead, he relied on the representations made by 3ABN and
HUNT, which representations were false.

25.     The CRUT identifies 3ABN as the qualified exempt charity who is to
receive 100% of the charitable distribution.  **(Exhibit "A," ¶(C)).**  Neither HUNT nor
3ABN nor BENTON informed ADDERLEY, and ADDERLEY was not aware, that 3ABN
was identified as the entity who was to receive the 100% distribution upon his death.

---

[2] § 117.05(5)(b)2. of the Florida Statutes provides reasonable reliance on presentation of
"any one of the following forms of identification, if the document is current or has been
issued within the past 5 years and bears a serial or other identifying number . . . .," including
a drivers' license and passport.

[3] (14)(a)    A notary public may notarize the signature of a person who is blind after the notary public has
read the entire instrument to that person.  117.05(14)(a), Fla. Stat.



SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:19-cv-23862-RNS Document 116 Entered on FLSD Docket 07/24/2019 Page 24 of 475
Case 1:18-cv-18882-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 24 of 76
Adderley v. 3ABN et. al.

Neither 3ABN nor HUNT nor BENTON informed ADDERLEY that the charitable designation to 3ABN was irrevocable and could not be modified in the future prior to this death.

26.     Rather, at the time of the execution of the CRUT, HUNT and 3ABN informed ADDERLEY that the documents that ADDERLEY was signing would allow for 3ABN to further explore and discuss the small portion of the Property that ADDERLEY would be willing to donate and/or allow 3ABN to use to carry forth ministerial activities of his Church.

27.     The 419 acre tract, valued at approximately $32,000,000, belonging to ADDERLEY represents a substantial portion of ADDERLEY's estate assets.

28.     HUNT and 3ABN had another attorney that represents 3ABN, Mr. Wesley Westphal ("Mr. Westphal"), who is not a licensed attorney in Florida, prepare a revocable trust to distribute ADDERLEY's estate assets to his two daughters, which were never signed.  The intake form was signed on November 14, 2011, only a couple months after the CRUT was signed; however, the draft of the revocable trust agreement was not prepared until March 2013.  Indeed, it is the common practice of 3ABN to allow Mr. Westphal to prepare documents for donors who are not located in the state(s) where Mr. Westphal is licensed to practice.

29.     At all material times, ADDERLEY thought that he was signing documents that would allow 3ABN and HUNT to have the necessary information to facilitate the intention of his overall estate planning objectives as follows:

        a)     To allow 3ABN to use a small portion of his Property for the building of a Sanctuary and for religious purposes consistent with the beliefs of his Church, which property was never defined.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

      b)      To distribute the remainder of the Property to his two daughters upon his death.

However, since ADDERLEY is legally blind, he could not read the documents prior to execution, and the notary never read the documents to him prior to execution. Instead, ADDERLEY relied on the representations made by 3ABN, BENTON and HUNT, which representations were false.

     30.     The CRUT provides as follows:

     (17)   GOVERNING LAW. This Agreement and all rights and obligations under it shall be determined in accordance **with the law of the State of Florida** except to the extent that such may be in conflict with the United States laws and regulations with respect to income, estate and gift taxes which shall govern in the event of such conflict.

**(Exhibit "A," ¶ 17).**

     31.     ADDERLEY was initially named as the Trustee, but according to the Resignation of Trustee which purports to include ADDERLEY's signature, ADDERLEY resigned only five (5) months later, and never carried forth any official duties of the CRUT.

     32.     On January 24, 2012, ADDERLEY signed a Notice of Resignation of Trustee. At that time, ADDERLEY did not understand that he had previously signed a CRUT, nor did he understand that he was resigning as Trustee of the CRUT. A copy is attached as **Exhibit "B."**

     33.     On January 26, 2012, GILLEY agreed to act as successor Trustee as an authorized representative of 3ABN. A copy is attached as **Exhibit "C."** Once GILLEY was appointed as Trustee, ADDERLEY did not have any control over the CRUT or over the Property.

SG  SAAVEDRAGOODWIN

Case 1:19-cv-23965-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 26 of 475
Case 1:18-cv-23822-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 9 of 76
Adderley v. 3ABN et. al.

34.     GILLEY did not know that ADDERLEY had originally been named as Trustee of the CRUT, that ADDERLEY resigned as Trustee of the CRUT, and indeed, never even read the CRUT.

35.     At some point in time after GILLEY agreed to act as successor Trustee as authorized representative of 3ABN, SHELTON took over to act as the successor Trustee as the authorized representative of 3ABN.

36.     Although ADDERLEY is named as a Unitrust Recipient, to date, ADDERLEY has not received any distributions from the CRUT.  **(Exhibit "A," ¶ (B), (E)(2)).**

## INDENTURES OF CONVEYANCE

37.     HUNT, BENTON and 3ABN retained the services of J. Denise Lewis-Johnson of Lewis & Longley in the Bahamas to prepare three (3) Indentures of Conveyance for ADDERLEY to execute.

38.     In December 2011, HUNT and the representatives of 3ABN informed ADDERLEY that they were going to take him to the Bahamian Embassy in Miami, Florida to discuss the donation of a small portion of his Property for the benefit of 3ABN for the building of a Sanctuary and for religious purposes consistent with the beliefs of his Church.

39.     ADDERLEY purportedly signed the following three (3) Indentures of Conveyance prepared by Lewis & Longley, all of which are dated December 30, 2011, notarized on January 24, 2012, and contain an affidavit of Bahamian Citizenship signed and notarized on May 8, 2012 (collectively the "Indentures of Conveyance"):

Case 1:18-cv-23623-RNS Document 148 Entered on FLSD Docket 07/24/2019 Page 27 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 10 of 76
Adderley v. 3ABN et. al.

a) Indenture of Conveyance, Instrument No. 226191, Control No. 20475161, recorded at Volume 11697, Pages 10-19 in the Registry on September 12, 2012, transferring the following property from ADDERLEY to the CRUT:

ALL THAT piece or parcel of land situate in the area known as Peter Deans in the Island of Long Island one of the **Bahama Islands** comprising **Twenty-five (25) acres** more or less being one-half (1/2) of a parcel of land purchased by Lawrence Wellington Adderley from Minna Esteline Minns and John Ramsay which said piece or parcel of land is bounded on the North by the sea of the East by land formerly the property of the said Wellington Leon Adderley on the South by land the property of the said Wellington Leon Adderley and on the West by land known as Turtle Cove.

A copy of this Indenture of Conveyance is attached as **Exhibit "D."**

a) Indenture of Conveyance, Instrument No. 226197, Control No. 20475170, recorded at Volume 11697, Pages 20-29 in the Registry on September 12, 2012, transferring the following property from ADDERLEY to the CRUT:

ALL THAT piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town in the Island of Long Island and bounded as follows on the North by the Sea running thereon at high water mark One thousand and Ten and One hundredths (1010.01) feet more or less on the East by land formerly the property of Wellington Leon Adderley but conveyed by the said Wellington Leon Adderley to himself and the Vendor jointly and running thereon One thousand and Ninety-six and Eighty-three hundredths (1096.83) feet on the South by land formerly the proper of the said Wellington Leon Adderley and conveyed by the [sic] said Wellington Leon Adderley to himself and the Vendor jointly and running thereon One thousand Two hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and on the West by land now or formerly the property of one H.L. Major and running thereon One thousand and Fifteen and Forty-one hundredths (1015.41) feet which said piece parcel or tract of land has such position boundaries shape marks and dimensions as are shown on the diagram or plan attached to the said Indenture and is thereon delineated on that part of the said diagram or plan which is coloured Pink.

A copy of this Indenture of Conveyance is attached as **Exhibit "E."**

a) Indenture of Conveyance, Instrument No. 226199, Control No. 20475174, recorded at Volume 11697, Pages 30-40 in the Registry on September 12, 2012, transferring the following property from ADDERLEY to the CRUT:

Case 1:18-cv-23022-RNS Document 148 Entered on FLSD Docket 07/24/2019 Page 28 of 175
Case 1:18-cv-23022-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 28 of 75
Adderley v. 3ABN et. al.

ALL THAT piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town on the Island of Long Island and bounded on the North partly by land formerly the property of Wellington Leon Adderley and conveyed by an Indenture dated the 21st day of May, A.D., 1971 herewith to the said David Lawrence Adderley and running thereon One Thousand Two Hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and partly by the Sea and running thereon in an irregular line at high water mark Three thousand Five hundred and Sixty-one and One hundredths (3561.01) feet more or less on the North partly by land the property of the Grantor and running thereon in an irregular line One thousand Two hundred and Twenty-two and Fifty-two hundredths (1222.52) feet and partly by land now or formerly the property of Freeman Cartwright and running thereon Four hundred and Thirty-five and Seventy-four hundredths (435.74) feet on the Southeast partly by land nor or formerly the property of the said Freeman Cartwright and running thereon Two thousand Four hundred and Eighty-seven and Seventy-three hundredths (2487.73) and partly by land now or formerly the property of Arthur S. Adderley and running thereon Two thousand Six hundred and Eighty-one and Thirty-one hundredths (2681.31) feet on the Southwest partly by land now or formerly the property of E. Adderley and Anna Ramsey and running thereon Six hundred and Seventy-one and Thirty hundredths (671.30) feet and partly by land now or formerly the property of Curtis Cartwright and running thereon in an irregular line One thousand Three hundred and Eighty-four and Eight-five hundredths (1384.85) feet and on the Northwest partly by land now or formerly the property of the said Curtis Cartwright and running thereon Three hundred and Eight-six and Sixty-six hundredths (386.66) feet and partly by land now or formerly the property of H. L. Major and running thereon Seven hundred and Sixty-four and Eighteen hundredths (764.18) feet which said parcel or tract of land has such position boundaries shape marks and dimensions as are shown on the diagram or plan attached to the said Indenture and is delineated on that part of the said diagram or plan which is colored Pink.

A copy of this Indenture of Conveyance is attached as **Exhibit "F."**

40.     The Property described in the three (3) Indentures of Conveyance was appraised at the value of Twenty-Two Million Nine Hundred Thousand Dollars ($22,900,000.00) on December 28, 2012, and together represent a substantial portion of the assets owned by ADDERLEY.

Adderley v. 3ABN et. al.

41.     Each of the three (3) Indentures of Conveyance provided consideration of the amount of Fifty Thousand Dollars ($50,000.00) to be paid to ADDERLEY as the Vendor, for a total of One Hundred Fifty Thousand Dollars ($150,000.00).  ADDERLEY never received any consideration for any of the Indentures of Conveyance, and even if he had received One Hundred Fifty Thousand Dollars ($150,000.00), such consideration was grossly inadequate for the transfer of the Property valued at Twenty-Two Million Nine Hundred Thousand Dollars ($22,900,000.00).

42.     In addition, on August 31, 2012, 3ABN acquired a Permit Issued by the Investments Board, which granted permission for 3ABN to directly acquire and hold the Property that was conveyed to the CRUT via the three (3) Indentures of Conveyance referenced above.  *See*, **Exs. D-F** (Vol. 11697, pp. 11-12, pp. 21-22, pp. 31-32).  The CRUT does not provide for the charitable remainder distribution to 3ABN until after the death of ADDERLEY, who still remains living.  **(Ex. A., p. 4 ¶(11)).**

43.     HUNT and 3ABN representatives never disclosed to ADDERLEY that  the three (3) Indentures of Conveyance were for the transfer of his entire 419 acre tract.

44.     Despite HUNT and 3ABN's misrepresentations and omissions, the Indentures of Conveyance signed by ADDRELEY transferred the entire 419 acre tract.

45.     One of the primary benefits of a CRUT is that the donor has the right to take an income tax deduction during his life even though the charity does not receive the donation until death.   Indeed, BENTON prepared illustrations that showed that ADDERLEY would receive a charitable tax deduction in the amount of $6,161,715. However, at no time did ADDERLEY take any charitable income tax deduction reflecting the transfer.  The fact that ADDERLEY did not ever take any income tax deduction for the transfer of 419 acres of Property, which was valued in excess of $22,900,000 at the time

Case 1:18-cv-23672-RNS Document 1-18 Entered on FLSD Docket 07/24/2019 Page 30 of 175
Case 1:18-cv-23672-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 30 of 75
Adderley v. 3ABN et. al.

of the transfer, and in turn, would have entitled ADDERLEY to an immediate income tax deduction for a period of up to five (5) years after the transfer of the Property, demonstrates that ADDERLEY did not understand the terms of the CRUT, and/or did not intend to convey his entire Property.

46.     HUNT and 3ABN specifically arranged for BENTON to prepare and draft the CRUT, and HUNT and 3ABN arranged for the execution of the CRUT as well as the transfer of ADDERLEY's Property knowing that ADDERLEY did not have legal representation present to represent him, that 3ABN, HUNT and BENTON did not disclose the conflict of interest, and that ADDERLEY was legally blind.  HUNT and 3ABN knew that they had arranged for a substantial transfer of 419 acres of his Property in the Bahamas without ADDERLEY's knowledge, and took advantage of the fact that ADDERLEY fully trusted HUNT and 3ABN to be honest and truthful.

47.     HUNT and 3ABN intentionally arranged for ADDERLEY, a legally blind person, to sign the CRUT without having the guidance, advice, representation and presence of independent legal counsel, and failed to disclose the conflict of interest with BENTON. Indeed, 3ABN and HUNT directed BENTON to include terms in the CRUT that were favorable to 3ABN, and failed to disclose same to ADDERLEY.

48.     HUNT, BENTON and 3ABN deliberately and intentionally made false and negligent representations to ADDERLEY to induce him to sign the CRUT and Indentures of Conveyance.

49.     Defendants made these false representations with intention to deprive ADDERLEY of all his Property.

Adderley v. 3ABN et. al.

50.     HUNT, BENTON and 3ABN knew that ADDERLEY was blind, and that ADDERLEY had not retained independent legal representation that reviewed the CRUT and Indentures of Conveyance and advised ADDERLEY as to its contents.

51.     On March 26, 2018, ADDERLEY made a demand to 3ABN to terminate the CRUT and return ADDERLEY's Property to him.  A copy of the demand letter is attached as **Exhibit "G."**

52.     On May 4, 2018, 3ABN responded to the demand letter refusing to return ADDERLEY's Property or to terminate the trust.  A copy of the response letter is attached as **Exhibit "H."**

53.     ADDERLEY has retained the undersigned counsel and has agreed to pay a reasonable fee for the prosecution of this action.

<div align="center">

### 3ABN's MARKETING TO THE PUBLIC

### FOR ITS TRUST AND ESTATE SERVICES

</div>

54.     At all material times, 3ABN marketed its planned giving and trust services through its video broadcasting and pamphlets, lectures in Seventh Day Adventist Churches, and personal visits with donors.

55.     3ABN made the following representations in such video broadcasts and pamphlets with regard to the charitable remainder unitrust:

    a    Donors would save on capital gains tax on the sale of property;

    b    Donors would receive a charitable tax deduction;

    c    Donors would receive annual or quarterly income;

    d    That the only drawbacks included the cost of the preparation of the legal documents, and that 3ABN would pay for those services; indeed,



Case 1:18-cv-23623-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 32 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 15 of 75
Adderley v. 3ABN et. al.

by its own admission, 3ABN used the payment of the CRUT to induce donors, including ADDERLEY, to execute a CRUT;

e    That the attorney preparing such documents would represent the donors.

56.    HUNT, 3ABN and its attorney, BENTON, specifically and expressly recommended a CRUT to ADDERLEY for the transfer of ADDERLEY's Property.

57.    HUNT, 3ABN and BENTON failed to disclose to ADDERLEY the inherent conflict of interest in the preparation of documents on or on behalf of ADDERLEY as BENTON represented 3ABN.

58.    3ABN appointed GILLEY and SHELTON as authorized representative of 3ABN to serve as the Trustee of the CRUT.

59.    GILLEY and SHELTON do not possess the requisite qualifications to serve as Trustee.

60.    3ABN and HUNT, in its practice of planned giving and trust services, provided recommendations, advice, and information to donors that constituted the unauthorized practice of law in the State of Florida.

61.    Upon information and belief, ADDERLEY signed documents, including the CRUT drafted by BENTON, based on the recommendations of 3ABN, HUNT and BENTON, all who failed to disclose the inherent conflict of interest, as well as the significant drawbacks of the CRUT, including but not limited to, the fact that:

a    ADDERLEY would not receive any unitrust distributions until the Property was sold;

b    ADDERLEY (and his heirs) would not receive any unitrust distributions if he deceased prior to the sale of the Property;

Case 1:18-cv-23362-RNS Document 110 Entered on FLSD Docket 07/24/2019 Page 33 of 175
Case 1:18-cv-23362-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 16 of 75
Adderley v. 3ABN et. al.

      c   ADDERLEY would not receive the charitable tax deduction if he did not have sufficient income to offset the deduction in the first five (5) years after contributing the Property to the CRUT;

      d   The entirety of ADDERLEY's Property would pass to 3ABN upon ADDERLEY's death.

## APPLICATION OF DELAYED DISCOVERY DOCTRINE[4] & FRAUDULENT CONCEALMENT
### (Statute of Limitations)

62.    In or about April 2016, ADDERLEY was first put on actual and/or constructive notice of Defendants' misconduct after he had decided to sell his Property and retained a local Florida attorney to review the documents uncovered in this matter, including the CRUT and Indentures of Conveyances.

63.    ADDERLEY did not discover, nor could have discovered through reasonable diligence, Defendants' misconduct until April 2016 because Defendants used deceptive and secret methods to avoid detection and to affirmatively conceal their fraudulent conduct.  By its very nature, the misconduct by Defendants was inherently self-concealing, especially given the fact that ADDERLEY is legally blind.

64.    ADDERLEY did not retain an independent attorney and the express language of the CRUT or the Indentures of Conveyances were not properly translated or disclosed to him prior to signing.

65.    Defendants engaged in a deliberate course of conduct and misrepresentations, by its acts and omissions, to engage in a sham/fraud, all with the intention of inducing ADDERLEY to transfer his real Property worth millions of dollars to 3ABN, to wit:

---

[4] The delayed discovery doctrine applies to actions "founded on fraud."  Fla. Stat. § 95.031(2)(a).



Case 1:18-cv-23623-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 34 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/22/2019 Page 17 of 76
Adderley v. 3ABN et. al.

a) 3ABN, BENTON and HUNT misrepresented the contents of the CRUT and Indentures of Conveyance, and falsely informed ADDERLEY that the documents he was signing would further facilitate the discussion and exploration of the donation and/or use of a small portion of ADDERLEY's Property that ADDERLEY may donate to 3ABN for the building of a Sanctuary and for other religious purposes consistent with the beliefs of his Church;

b) 3ABN, BENTON and HUNT purposely (or with reckless falsity) prepared and induced ADDERLEY to execute the CRUT and Indentures of Conveyance, which conveyed ADDERLEY's entire Property and a substantial portion of his estate, and not a small portion of his Property;

c) 3ABN, BENTON and HUNT purposely (or with reckless falsity) failed to inform ADDERLEY that the disposition of his entire Property to 3ABN was irrevocable;

d) 3ABN, BENTON and HUNT failed to fully disclose the contents of the CRUT and Indentures of Conveyances that ADDERLEY signed, including the fact that:

    i. ADDERLEY was signing a trust;
    ii. The terms of the CRUT, including that it was irrevocable;
    iii. 3ABN was named as the sole beneficiary of the entire Property upon his death;
    iv. ADDERLEY could not change the charitable organization and replace 3ABN as Successor Trustee or beneficiary with another charitable organization;
    v. ADDERLEY's Indentures of Conveyance conveyed his entire Property into the CRUT.

e) 3ABN, BENTON and HUNT omitted the fact that a conflict of interest existed with regard to BENTON's preparation of the CRUT;

f) 3ABN, BENTON and HUNT omitted informing ADDERLEY that the CRUT was prepared with favorable terms to 3ABN, including but not limited to,
    i. Appointing 3ABN as the Successor Trustee, and failing to include an option for ADDERLEY to change the designation of 3ABN as Trustee;
    ii. Providing that 3ABN is 100% beneficiary of the CRUT upon ADDERLEY's death, and failing to include the option for ADDERLEY to change the beneficiary;
    iii. Providing that the sole unitrust recipient is ADDERLEY, and not including his daughters as lifetime unitrust recipients.

g) 3ABN, BENTON and HUNT misrepresented the unitrust distributions that ADDERLEY was to receive in its illustrations to induce ADDERLEY to sign the CRUT, and failed to update the illustration and calculations in accord with



Case 1:18-cv-23623-RNS Document 110 Entered on FLSD Docket 07/24/2019 Page 35 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 35 of 75
Adderley v. 3ABN et. al.

the appraisal valuation of $22,900,000, which substantially changed the benefits to ADDERLEY.

h) 3ABN, BENTON and HUNT ensured annual income to ADDERLEY, yet failed to inform ADDERLEY that he would not receive any distribution until the Property was sold, and that ADDERLEY would not receive any distribution at all if the Property was not sold before his death, and that instead, 3ABN would receive the entirety of the Property.

i) 3ABN, BENTON and HUNT provided instructions to the CRUT that were inconsistent with the terms of the CRUT as drafted, including the fact that ADDERLEY was entitled to change the charitable beneficiary or adjust amounts going to each beneficiary, when the terms of the CRUT prohibited any such action by ADDERLEY.

66. Upon information and belief, 3ABN retained the originals and copies of the CRUT and Indentures of Conveyances.

67. As a result of the actions of Defendants, ADDERLEY was unaware that he had suffered injury as a result of the sham/fraudulent transfers until April 2016, the delayed discovery rule applies, and the statute of limitations for each of the below causes of action is tolled.

## CONTINUING CONVERSION/FRAUD
### (Statute of Limitations)

68. In Florida, conversion is a continuing tort, and the statute of limitations runs from the date that the tortious act ceases.[5]

69. Here, although the acts of conversion originally occurred on August 22, 2011, Defendants followed up with its continuing tort by the following acts:

a) On August 22, 2011, inducing the signature of ADDERLEY to execute the CRUT;

b) On December 30, 2011, inducing the signature of ADDERLEY on three Indentures of Conveyance;

---

[5] *Perera v. Wachovia Bank, N.A.,* No. 09-23773-CV, 2010 WL 1375635, at * 2 (S.D. Fla. Mar. 15, 2010).



Case 1:18-cv-23662-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 36 of 175
Case 1:18-cv-23662-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 19 of 75
Adderley v. 3ABN et. al.

c)      Failing to pay the stated $150,000 consideration to ADDERLEY required by the Indentures of Conveyances;

d)      On August 31, 2012, obtaining a Permit from the Investments Board which granted 3ABN the right to acquire and hold the Property;

e)      From August 31, 2012 to every day since to the present, retaining the Property and excluding ADDERLEY from the use and possession of his Property;

f)      From August 31, 2012 to every day since to the present, performing improvements on the Property without obtaining ADDERLEY's consent, including the surveying of the Property and building of a road;

g)      Failing to make appropriate and reasonable efforts to sell the Property immediately after the Property was transferred;

h)      After April 2016, reassuring ADDERLEY that he and his family would receive annual income from the CRUT in the total of approximately $900,000 or more per year since the formation of the trust, and that 3ABN was on the cusp of selling the property, and the sale was imminent, which would fund the ability of 3ABN to pay the Unitrust Amount to ADDERLEY;

i)      From the date that GILLEY became Trustee of the CRUT on January 24, 2012 to present, 3ABN, HUNT, GILLEY and SHELTON failed to convert the Property to productive property, and use the appropriate efforts to sell the Property;

j)       Each and every quarter, Defendants failed to fund the Unitrust Amount to ADDERLEY, which had been accruing since August 22, 2011, the date of the execution of the CRUT.  The Unitrust Amounts were first due September 30, 2011, and every quarter thereafter through the date of this Complaint.  Accordingly, there is a continuing conversion and fraud occurring at the time each Unitrust Amount becomes due; and

k)      Each and every year, failing to keep current accounts accurately reflecting the position of, and the receipts, disbursements and other changes in, the income and corpus of the CRUT, and permit ADDERLEY to inspect same during reasonable business hours, and failing to provide ADDERLEY a written statement, informing ADDERLEY of the contents of such at the end of each taxable year.

Case 1:18-cv-23623-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 37 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 20 of 76
Adderley v. 3ABN et. al.

70.     To date, the tortious acts by Defendants continue to occur, and thus, the continuing tort doctrine applies.

## EQUITABLE TOLLING
### (Statute of Limitations)

71.     In Florida, equitable tolling applies when equitable circumstances have prevented a timely filing.[6]

72.     Here, ADDERLEY was misled and lulled into inaction by the continuous actions, misrepresentations, deceit and fraudulent actions of the Defendants, who continued to make ADDERLEY believe that he and 3ABN were continuing discussions on the donation and/or use of a small portion of his Property, and that the small portion of his Property would be used for the building of a Sanctuary or for other religious purposes consistent with the beliefs of his Church.

73.     Instead, the Defendants had deceived ADDERLEY, who is legally blind, into signing over the rights of his entire 419 acre Property.

74.     ADDERLEY did not know about the Defendants' actions until April 2016, and as such, Defendants' representations prevented ADDERLEY from timely filing the action within the statute of limitations from the date of the first occurrence of the Defendants' tortious actions because he did not know that Defendants had deceived him.

75.     On or about April 2016, Defendants continued to assure ADDERLEY that 3ABN was on the cusp of selling the Property, and the sale was imminent, which would fund the annual Unitrust Amounts due and payable to ADDERLEY in the amount of $900,000 or more accruing since 2011.    Thus, equitable tolling applies under the circumstances of this case.

---

[6] *Perera v. Wachovia Bank, N.A.,* No. 09-23773-CV, 2010 WL 1375635, at * 2 (S.D. Fla. Mar. 15, 2010).



Adderley v. 3ABN et. al.

## Count I – Declaration that CRUT is Invalid
### (against 3ABN)

76.     Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

77.     This is a declaratory action brought pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

78.     There is a real, immediate, existing, bona fide, justiciable dispute and substantial continuing controversy between ADDERLEY and 3ABN as to the invalidity of the CRUT.

79.     ADDERLEY is in doubt as to its rights, duties and responsibilities concerning the invalidation of the CRUT.

80.     Although ADDERLEY's signature appears on the CRUT, ADDERLEY is legally blind and, at the time of the execution, was not aware of the contents of the CRUT. ADDERLEY was not advised nor informed of the terms of the CRUT prior to execution, nor was he advised that the CRUT was irrevocable.  ADDERLEY did not become aware that a CRUT was executed until April 2016.

81.     ADDERLEY believed that, in executing the CRUT, he was signing documents to continue the discussion of a small portion of his Property to 3ABN for the building of a Sanctuary or for other religious purposes consistent with the beliefs of his Church.

82.     ADDERLEY executed the CRUT specifically due to the undue influence of HUNT and 3ABN, who persuaded and coerced ADDERLEY to execute the CRUT through artful and fraudulent contrivances and misrepresentations.  The undue influence exerted by HUNT and 3ABN resulted in the destruction of ADDERLEY's free agency and willpower

SG | SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

to execute documents in accord with the continued discussion of the small portion of Property that he may donate for the use and benefit of 3ABN, and the free will to retain his remaining Property, which comprises of a substantial majority of his estate.

83.     Moreover, the notary did not read ADDERLEY the CRUT prior to notarizing the CRUT, and as such, the CRUT was not executed in compliance with Section 117.05(14)(a) of Florida Statutes.

84.     ADDERLEY is in need of a judicial determination concerning the invalidation of the CRUT, and whether the CRUT has any force and effect.

85.     ADDERLEY has suffered injury from 3ABN's conduct as 3ABN has taken the use and possession of ADDERLEY's Property as an asset of the CRUT.

86.     There is a substantial threat of future injury to ADDERLEY without resolution of the controversy between ADDERLEY and 3ABN as to the invalidity of the CRUT as ADDERLEY's right to the use, possession and sale of the Property is dependent on the Court's determination.

87.     In the alternative, even if the Court determines that the CRUT is valid, the CRUT has certain requirements for payment of a Unitrust Amount to ADDERLEY, on a quarterly basis, and due to the failure of 3ABN, HUNT and SHELTON to convert the Property to marketable assets, ADDERLEY has not received any Unitrust Amount. ADDERLEY has suffered injury and will continue to suffer injury as ADDERLEY has not been paid any Unitrust Amount under the CRUT.

88.     As such, even if the CRUT is valid, ADDERLEY has a need for an immediate judicial determination of his rights under the CRUT, and the Trustee's duties and responsibilities to convert the Property to marketable assets.

SG  SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Adderley v. 3ABN et. al.

**WHEREFORE**, Plaintiff demands a judgment declaring that the CRUT is invalid, or alternatively, declaring that 3ABN has had an ongoing obligation and duty to convert assets to marketable Property and to pay ADDERLEY the Unitrust Amount retroactive back to the beginning of the CRUT, and for such other relief as the Court deems necessary and proper.

### Count II – Declaration that Indentures of Conveyances are Invalid
### (against 3ABN)

89.      Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

90.      This is a declaratory action brought pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

91.      There is a real, immediate, existing bona fide and justiciable dispute and substantial continuing controversy between ADDERLEY and 3ABN as to the invalidity of the Indentures of Conveyance.

92.      ADDERLEY is in doubt as to its rights, duties and responsibilities concerning the invalidation of the Indentures of Conveyance, attached and incorporated herein as Exhibits D-F.

93.      Although ADDERLEY's signature appears on the Indentures of Conveyance, ADDERLEY is legally blind and at the time of the signing, was not aware of the contents of the Indentures of Conveyance.  Specifically, at the time of execution, ADDERLEY was not advised that he was transferring 419 acres of this Property, nor was he advised that the Indentures of Conveyance were transferring his Property to a CRUT. ADDERLEY did not become aware that a CRUT was executed until April 2016.

SG  SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23623-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 41 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 24 of 76
Adderley v. 3ABN et. al.

94. ADDERLEY believed that, in executing the Indentures of Conveyance, it would facilitate the continued discussion of the donation of a small portion of ADDERLEY's Property to 3ABN for the building of a Sanctuary or for other religious purposes consistent with the beliefs of his Church.

95. ADDERLEY executed the Indentures of Conveyance specifically due to the undue influence of HUNT and 3ABN, who persuaded and coerced ADDERLEY to execute the Indentures of Conveyance through artful and fraudulent contrivances and misrepresentations. The undue influence exerted by HUNT and 3ABN resulted in the destruction of ADDERLEY's free agency and willpower to execute documents in accord with his intention to continue discussions of the small portion of Property ADDERLEY may donate to and for the use and benefit of 3ABN, and the free will to retain his remaining Property, which comprises of a substantial majority of his estate.

96. Moreover, each Indenture of Conveyance provides for the sum of Fifty Thousand Dollars ($50,000) as consideration for each tract of land, for a total of One Hundred Fifty Thousand Dollars ($150,000). ADDERLEY never received any consideration for these transfers, and even if he had, the consideration is grossly inadequate for the conveyance of his Property, which is currently valued in excess of Thirty Two Million Dollars ($32,000,000.00).

97. In addition, upon information and belief, the Indentures of Conveyances contain errors and/or omissions that render the Indentures of Conveyances void as a matter of law.

98. Moreover, the notary or Consul did not read ADDERLEY the Indentures of Conveyance prior to notarizing the Indentures of Conveyance, and as such, the instruments were not executed in compliance with Section 117.05(14)(a) of Florida Statutes.

SG  SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

99.     ADDERLEY is in need of a judicial determination concerning the invalidation of the Indentures of Conveyance, and whether the Indentures of Conveyance have any force and effect.

100.    ADDERLEY has suffered injury as a result of 3ABN's conduct as 3ABN has taken the use and possession of ADDERLEY's Property.

101.    There is a substantial threat of future injury to ADDERLEY without resolution of the controversy between ADDERLEY and 3ABN as to the invalidity of the Indentures of Conveyance. A Permit has been issued by the Investments Board, permitting 3ABN to acquire and hold the property for use as future development, and 3ABN has built a road, charging $200,000 against the CRUT, and performed other work on the Property without ADDERLEY's permission. In addition, ADDERLEY's right to the use, possession and sale of the Property is dependent on the Court's determination.

**WHEREFORE**, Plaintiff demands a judgment declaring that the Indentures of Conveyance are invalid, and restoring the Property back to ADDERLEY, and for such other relief as the Court deems necessary and proper.

### Count III
### Negligent Misrepresentation
### (against HUNT and 3ABN)

102.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

103.    ADDERLEY had a heightened level of trust in HUNT and 3ABN. He trusted them to be truthful and moral in character because he thought HUNT and 3ABN were working in conjunction with the beliefs, doctrines and mission of his Church.

SG   SAAVEDRAGOODWIN

312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Adderley v. 3ABN et. al.

104.    HUNT and 3ABN made inaccurate statements of material fact with respect to the CRUT and Indentures of Conveyances prepared for ADDERLEY's signature, as set forth above.

105.    HUNT and 3ABN either knew its representations were false OR made the misrepresentations without knowledge of their truth or falsity but should have known the representations were false.

106.    The misrepresentations were material to ADDERLEY's decision to sign the CRUT and Indentures of Conveyance transferring title of his Property to the CRUT. HUNT and 3ABN knew and intended that ADDERLEY would rely upon and be induced by the misrepresentations to execute the CRUT and Indentures of Conveyance, and to transfer his Property to the CRUT for the benefit of 3ABN.

107.    ADDERLEY reasonably relied on HUNT and 3ABN's misrepresentations in executing the CRUT and the Indentures of Conveyance for his Property, to its detriment and suffered damages currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's negligent misrepresentations in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Adderley v. 3ABN et. al.

### Count IV – Fraudulent Inducement
### (against HUNT and 3ABN)

108.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

109.    HUNT and 3ABN made false statements of material fact with respect to the terms of the CRUT and Indentures of Conveyances prepared for ADDERLEY's signature, as set forth above.

110.    HUNT and 3ABN knew or should have known its representations to ADDERLEY were false and made the representations intentionally to induce ADDERLEY to execute the CRUT and the Indentures of Conveyance.

111.    At the time that ADDERLEY executed the CRUT and Indentures of Conveyance, HUNT and 3ABN promised ADDERLEY that the documents he executed were to facilitate the further discussion of the potential donation of a small portion of his Property to 3ABN to be used for religious purposes consistent with the beliefs of his Church.

112.    HUNT and 3ABN intended for ADDERLEY to rely on their misrepresentations of material fact in order for ADDERLEY to execute the CRUT and Indentures of Conveyance.

113.    The inducement made by HUNT and 3ABN was intended to deceive ADDERLEY, a legally blind person, into transferring the entirety of his 419 acre Property for the benefit 3ABN.

114.    HUNT and 3ABN deliberately and knowingly induced ADDERLEY to sign the CRUT and Indentures of Conveyance, with the intention and purpose of depriving ADDERLEY of his Property, which represents a substantial portion of his assets.

Case 1:18-cv-23623-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 45 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 28 of 75
Adderley v. 3ABN et. al.

115.    ADDERLEY acted in reliance upon HUNT and 3ABN's representations, resulting in damages to ADDERLEY currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court to enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's fraud in the inducement in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

<div align="center">

**Count V – Fraudulent Misrepresentation**
**(against HUNT and 3ABN)**

</div>

116.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

117.    HUNT and 3ABN made false statements of material fact with respect to the terms of the CRUT and Indentures of Conveyance prepared for ADDERLEY's signature, as set forth above.

118.    HUNT and 3ABN knew or should have known its representations to ADDERLEY were false.

119.    HUNT and 3ABN intended for ADDERLEY to rely on their misrepresentations of material fact in order for ADDERLEY to execute the CRUT and Indentures of Conveyance.

120.    HUNT and 3ABN deliberately and knowingly made these misrepresentations to ADDERLEY, and intended to deceive ADDERLEY, a legally blind person, into transferring the entirety of his 419 acre Property, which ultimately would benefit 3ABN.

SG  SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

121.   ADDERLEY acted in reliance upon the correctness of the misrepresentations, resulting in damages to ADDERLEY currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court to enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's fraudulent misrepresentations in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count VI – Conversion
### Fla. Stat. § 812.014(1)
### (against 3ABN)

122.   Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

123.   ADDERLEY is the rightful owner of 419 acres in the Bahamas described on the three (3) Indentures of Conveyance and has an immediate right to the possession of his Property.

124.   3ABN deceived ADDERLEY and misrepresented that the documents he was signing would facilitate the continued discussion of a donation of a small portion of his Property to 3ABN for religious purposes to be used consistent with the beliefs of his Church, in order to induce him to sign the CRUT and Indentures of Conveyance transferring his entire 419 acre tract of Property to 3ABN.

125.   3ABN intended to deprive ADDERLEY, temporarily and permanently, of the right to and from any benefit of his Property.

126.   3ABN's actions were unauthorized, and indeed, have deprived ADDERLEY of his Property, which represents substantially the majority of his assets,



SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23623-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 47 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/11/2019 Page 30 of 76
Adderley v. 3ABN et. al.

permanently or for an indefinite time, including from the date of the Indentures of Conveyance through the date of this Complaint.

127.    3ABN has the use and possession of ADDERLEY's Property, and a present intent to deprive ADDERLEY of his Property.

128.    ADDERLEY has made a demand for the return of his Property, and 3ABN has refused to relinquish ADDERLEY's Property to him.

129.    ADDERLEY has suffered damages for 3ABN's refusal to return his Property, currently believed to be in excess of $32,000,000.

**WHEREFORE**, ADDERLEY requests that the Court enter judgment in its favor and against 3ABN for all actual, consequential and incidental damages as a result of 3ABN's conversion in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count VII– Florida Deceptive and Unfair Trade Practices
**(against 3ABN and HUNT)**
**FDUPTA § 501.201, et. seq.**

130.    Plaintiff re-alleges paragraphs 1-75, 108-129 above.

131.    3ABN and HUNT, individually and in conspiracy with one another, engaged in oppressive, unethical, immoral and outrageous behavior to mislead ADDERLEY with the intent to deprive ADDERLEY of his Property.

132.    HUNT and 3ABN, individually and in conspiracy with one another, performed an unlawful act, to wit: to mislead, misrepresent, and/or defraud the public, including Plaintiff, and otherwise to engage in an unfair and unconscionable trade practices as described herein, regarding the improper transfer of ADDERLEY's Property to 3ABN.

133.    HUNT and 3ABN, individually and in conspiracy with one another, falsely represented to ADDERLEY that it drafted and prepared documents to continue the



Case 1:18-cv-23623-RNS Document 148 Entered on FLSD Docket 07/24/2019 Page 48 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 31 of 75
Adderley v. 3ABN et. al.

discussion of a potential donation of a small portion of ADDERLEY's Property for the use and benefit of 3ABN for religious purposes consistent with the beliefs of his Church. However, the CRUT and Indentures were drafted to transfer the entirety of ADDERLEY's 419 acre tract of land to and for the use and benefit of 3ABN.

134.   HUNT and 3ABN arranged for BENTON, a lawyer in Georgia, to prepare charitable documents for ADDERLEY.  BENTON had an ongoing relationship with 3ABN to prepare estate planning documents for gifts and bequeaths to 3ABN, who had a conflict with the preparation of such documents for ADDERLEY's donation to 3ABN.

135.   HUNT and 3ABN intentionally arranged for ADDERLEY, a legally blind person, to sign the CRUT and Indentures of Conveyance without having the guidance, counsel and presence of independent legal representation.

136.   HUNT and 3ABN engaged in such unconscionable acts, unfair and deceptive practices in the conduct of its trade or commerce in connection with 3ABN's activities.

137.   HUNT and 3ABN's actions were willful, and HUNT and 3ABN knew or should have known that their conduct was unfair and deceptive.

138.   As a direct and proximate cause of HUNT and 3ABN's unconscionable and deceptive activities, and ADDERLEY's reliance on HUNT and 3ABN's false statements, Plaintiff suffered damages, currently believed to be in excess of $32,000,000.

139.   In addition, because ADDERLEY is legally blind, a military veteran and senior citizen, ADDERLEY is entitled to a heightened civil penalty pursuant to § 501.2077(2), (3) of the Florida Statutes for each unconscionable, deceptive, unfair act performed by HUNT and 3ABN against ADDERLEY.

Adderley v. 3ABN et. al.

140.     ADDERLEY, as the prevailing party, is entitled to recovery of its attorneys' fees and costs pursuant to §501.2105 of the Florida Statutes.

**WHEREFORE**, Plaintiff demands judgment against HUNT and 3ABN for actual, consequential and incidental damages, interest, costs, attorneys' fees and such other relief as the Court deems proper.

## Count VIII – Civil Conspiracy
### (Against HUNT and 3ABN)

141.     Plaintiff adopts and restates paragraphs 1-75, 108-140 as if fully set forth herein.

142.     Two or more of Defendants, HUNT and 3ABN, entered into an agreement to perform an unlawful act, to wit: to mislead, misrepresent, and/or defraud the public, including Plaintiff, and otherwise to engage in an unfair and unconscionable trade practices as described herein, regarding the improper transfer of ADDERLEY's Property to 3ABN.

143.     HUNT and 3ABN possessed a peculiar power of coercion by virtue of acting in conspiracy together that HUNT or 3ABN did not possess acting alone.  In particular, HUNT obtained the trust of ADDERLEY on a moral level due to his denomination in the Seventh Day Adventist Church.  As an outreach and not for profit entity, 3ABN's promised to utilize a small portion of ADDERLEY's Property to build a Sanctuary and for religious purposes consistent with the beliefs of the Church was essential to obtain ADDERLEY's agreement to sign documents, which are now known to be the CRUT and Indentures of Conveyance.  In addition, 3ABN had the financial resources and ongoing relationship with BENTON and Lewis & Longley to facilitate the preparation of documents to transfer ADDERLEY's Property to 3ABN.

Case 1:18-cv-23623-RNS Document 148 Entered on FLSD Docket 07/24/2019 Page 50 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 33 of 75
Adderley v. 3ABN et. al.

144.     HUNT and 3ABN undertook overt acts in the furtherance of this conspiracy, as set forth herein above, and did in fact harm the Plaintiff via their acts and omissions.

145.     HUNT and 3ABN knew or should have known that its wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

146.     As a direct and proximate cause of HUNT and 3ABN's acts and omissions, Plaintiff has incurred and will continue to incur damages, the value of which is estimated to be in excess of $32,000,000.

147.     Plaintiff is thus entitled to recover monetary damages for the value of its Property which ADDERLEY lost the use and possession of, to replace the Property, to return the Property to the status quo, damages for the loss of use and enjoyment of real property, the loss in value of the Property, actual damages for any increased taxes, documentary stamp taxes, and/or other related expenses resulting from the Property transfers, and other consequential damages.

**WHEREFORE,** ADDERLEY demands actual damages, compensatory damages, incidental damages, consequential damages, pre and post-judgment interest, an award of attorneys' fees, award of taxable costs, and, any and all such further relief as this Court deems just and proper.

### Count IX – Unjust Enrichment
### (against 3ABN)

148.     Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

149.     This is an equitable action for restitution.

Case 1:18-cv-23623-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 51 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 54 of 76
Adderley v. 3ABN et. al.

150.   ADDERLEY conferred a benefit upon 3ABN in the amount of the reasonable value of the Property that 3ABN wrongfully received from ADDERLEY, which is believed to be in excess of $32,000,000.

151.   Despite demand for the return of ADDERLEY's Property, 3ABN has retained the benefit of the Property that ADDERLEY conferred.

152.   3ABN has been unjustly enriched for the use and possession of ADDERLEY's Property, and it would inequitable to allow 3ABN to retain such enjoyment of ADDERLEY's Property without paying the reasonable value thereof.

**WHEREFORE**, Plaintiff respectfully requests this honorable Court to enter judgment in its favor against 3ABN for the reasonable appraised value of the Property, plus interest, costs of this action and such further relief as this Court deems appropriate.

## Count X – Constructive Trust
### (against 3ABN)

153.   Plaintiff re-alleges paragraphs 1-75, 148-152 of this Complaint as if fully set forth herein.

154.   To induce ADDERLEY to sign the CRUT and Indentures of Conveyance, HUNT and 3ABN promised that ADDERLEY was signing documents to continue the discussion of a potential donation of a small portion of his Property to 3ABN for the building of a Sanctuary and other religious purposes consistent with the beliefs of his Church.

155.   In reliance on that promise, ADDERLEY executed the CRUT and Indentures of Conveyance, that, without ADDERLEY's knowledge or agreement, transferred title and possession of all of his 419 acres of Property to the use and benefit of 3ABN.

SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23063-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 52 of 175
Case 1:18-cv-23063-RNS Document 68 Entered on FLSD Docket 04/11/2019 Page 35 of 76
Adderley v. 3ABN et. al.

156.    The Property conveyed via the Indentures of Conveyance is specific and identifiable unique oceanfront property and can clearly be traced to the ownership by ADDERLEY.

157.    HUNT and 3ABN had a confidential relationship with ADDERLEY with regard to such transfer, and ADDERLEY trusted and relied on the representations of HUNT and 3ABN to follow through with ADDERLEY's intentions.

158.    3ABN has been unjustly enriched by the transfer of ADDERLEY's Property, and now retains the use, possession and benefit of ADDERLEY's entire 419 acre tract of land that was never intended to be transferred to 3ABN.

159.    The Court must impose a constructive trust to prevent unjust enrichment by 3ABN because it is against equity for a 3ABN to retain the ADDERLEY's Property, which was obtained by fraud or other questionable means.

**WHEREFORE**, ADDERLEY requests the Court to impose a constructive trust on the Property, to escrow funds in the event of a sale of the Property, for judgment against 3ABN for damages, interest, costs, and such other relief as the Court deems appropriate.

### Count XI – Equitable Lien
**(against 3ABN)**

160.    Plaintiff re-alleges paragraphs 1-75, 108-129, 148-152 of this Complaint as if fully set forth herein.

161.    Plaintiff seeks the imposition and foreclosure of an equitable lien against the Property.

162.    3ABN has possession and use of the Property as 3ABN obtained possession of the Property in its own name, under false pretenses, by misrepresenting the transfers to be imposed by the CRUT and Indentures of Conveyance.  But for the execution of the

Case 1:18-cv-23623-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 53 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 36 of 75
Adderley v. 3ABN et. al.

CRUT and Indentures of Conveyance by ADDERLEY, 3ABN would not possess or control the Property.

163.    3ABN has been unjustly enriched by virtue of its current ownership, possession and use of the Property.

164.    An equitable lien must be imposed against the Property to prevent 3ABN from being unjustly enriched by accepting the benefit of ADDERLEY's Property without payment of money to ADDERLEY.

165.    ADDERLEY is also entitled to an equitable lien because 3ABN obtained the use and benefit of the Property by fraudulent means or misconduct, and an equitable lien must be imposed to prevent injustice and to restore ownership of the Property to ADDERLEY.

166.    An equitable lien is also necessary to protect ADDERLEY's equitable ownership interests in the Property, and so that 3ABN cannot further transfer the Property to a bona fide good faith purchaser for value without notice of ADDERLEY's interest in the Property.

**WHEREFORE**, Plaintiff requests that this honorable Court:

a) Take jurisdiction of the parties hereto and of the subject matter hereof;

b) Order that the Plaintiff be entitled to the imposition of an Equitable Lien as to the Property and that the Equitable Lien is a valid first lien on the Property and is superior to any lien of record;

c) Order foreclosure of the Equitable Lien, against 3ABN, its directors and officers, and all persons claiming under or against them;

d) Determine the amount due to Plaintiff pursuant to the theories of unjust enrichment or fraud, all of which support the imposition of an Equitable Lien;

e) Order that if said sum due Plaintiff is not paid in full within the time set by this Court, the Property be sold by Order of this Court to satisfy Plaintiffs claims;



312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23623-RNS Document 110 Entered on FLSD Docket 07/24/2019 Page 54 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 37 of 75
Adderley v. 3ABN et. al.

    f)   Order that if the proceeds from such court ordered sale are insufficient to pay Plaintiff's claim, then a deficiency judgment be entered for the remaining sum against 3ABN; Order payment of interests and costs to Plaintiff; and

    g)   Order such other relief as the Court deems necessary and proper.

## Count XII - Injunctive Relief
### (against 3ABN)

167.    Plaintiff re-alleges paragraphs 1-75, 108-129 of this Complaint as if fully set forth herein.

168.    This is an action for temporary and permanent injunction.

169.    3ABN has proceeded to build a road on ADDERLEY's Property without obtaining ADDERLEY'S express consent and has charged in excess of $200,000 against the CRUT.

170.    Unless enjoined by the Court from trespassing on the Property, performing construction and making modifications and improvements to the Property that ADDERLEY has not approved, 3ABN will cause irreparable harm to ADDERLEY.

171.    ADDERLEY has no adequate remedy at law as the real property conveyed is specific and unique oceanfront property, and the damages cannot be readily calculated or determined.

172.    ADDERLEY has a substantial likelihood of succeeding on the merits as ADDERLEY never intended to convey 419 acres of his Property and was never paid any consideration for the transfer of his Property in accord with the Indentures of Conveyance.

173.    Considerations of public interest strongly support the entry of an injunction to prevent 3ABN from making any alterations to the Property as 3ABN obtained ADDERLEY's Property by fraud, negligence and/or other misconduct.

SG SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Adderley v. 3ABN et. al.

**WHEREFORE**, ADDERLEY prays for a preliminary injunction, and after trial, a permanent injunction against the 3ABN to enjoin it from trespassing, performing any modifications, alterations, construction or improvements on the Property, and for such other relief that the Court deems just or advisable.

<u>Count XIII</u>
<u>Professional Negligence</u>
(against HUNT)

174.     Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

175.     HUNT, as a professional director of 3ABN and the person who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, and as the individual who was coordinating the sale of the Property, owed a duty of care of like professionals to provide accurate and truthful representations to ADDERLEY.

176.     HUNT placed himself in the position of an attorney by taking upon himself to arrange for the legal drafting and preparation of the CRUT and Indentures of Conveyance, explaining and reading the terms of the CRUT to ADDERLEY, and by arranging for the execution of the CRUT by ADDERLEY.

177.     HUNT breached its standard of care by misrepresenting, and by statements and omissions, the content and legal effect of the documents that were drafted for ADDERLEY's signature, and blatantly took advantage of the fact that ADDERLEY was legally blind and not represented by independent legal counsel and failed to disclose the conflict of interest in BENTON's preparation of the CRUT.

SG  SAAVEDRA GOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23362-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 56 of 175
Case 1:18-cv-23362-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 39 of 76
Adderley v. 3ABN et. al.

178.    HUNT is not a licensed attorney in the State of Florida and is not authorized to draft legal documents.[7] HUNT arranged for an attorney licensed in the State of Georgia, BENTON,[8] to prepare the CRUT.  The terms of the CRUT were misrepresented by HUNT to ADDERLEY before execution of same.

179.    HUNT also arranged for an attorney in the Bahamas, Lewis & Longley, to prepare the Indentures of Conveyance, for ADDERLEY to convey 419 acres of his Property.  The terms of the Indentures of Conveyance and the property description was misrepresented by HUNT to ADDERLEY before execution of same.

180.    Since the execution of the Indentures of Conveyance up and through to the date of this Complaint and hereafter, HUNT has had the authority and undertaken the responsibility to sell the Property on behalf of 3ABN, which would trigger payments to ADDERLEY.

181.    HUNT failed to use reasonable care that would be expected to be carried out by a professional in his position as a director of 3ABN, in like circumstances, and specifically in taking on the responsibility of directing and facilitating for BENTON and Lewis & Longley to prepare the CRUT and Indentures of Conveyance for ADDERLEY to execute, in failing to correctly describe the terms of the CRUT and Indentures of Conveyance prior to execution of same, and in retaining attorneys that necessarily had a

---

[7] We adhere to that view and find that the respondent's preparation of wills and antenuptial agreements for others, both of which affect important rights of persons under the law, ***without the review and approval of an attorney licensed to practice in this State,*** constitute the unauthorized practice of law. *See,* 7 Am. Jur.2d Attorneys at Law ss 73 and 75, and 22 A.L.R.3d 1112.

*The Fla. Bar v. Larkin*, 298 So. 2d 371, 373 (Fla. 1974)(e.s.).

[8] Mr. Benton is retired and not currently licensed as an attorney in the State of Florida but was admitted in 1997.



Case 1:18-cv-23362-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 57 of 175
Case 1:18-cv-23362-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 40 of 76
Adderley v. 3ABN et. al.

conflict with the representation and preparation of trust and transfer documents for ADDERLEY.

182.     Likewise, thereafter up and through to the date of this Complaint and hereafter, HUNT failed to use reasonable care that would be expected to be carried out by a professional in his position in performing actions for 3ABN as Trustee of the CRUT by failing to sell the Property to allow unitrust distributions to begin to flow to ADDERLEY.

183.     Further, HUNT continued to reassure ADDERLEY that he and his family would receive annual income from the CRUT in the total of approximately $900,000 or more per year since the formation of the trust, and that 3ABN was on the cusp of selling the property, and the sale was imminent, which would fund the ability of 3ABN to pay the Unitrust Amount to ADDERLEY.

184.     HUNT's actions were negligent and contributed substantially to ADDERLEY's injury and damages, which resulted in ADDERLEY transferring his entire 419 acre tract of Property.  Further, in the event the CRUT is held valid, HUNT's failure to perform actions necessary to sell the Property has caused damages to ADDERLEY because ADDERLEY has not received any untitrust distributions as of the date of this pleading, and ADDERLEY is no longer able to take advantage of any charitable tax deduction he would otherwise be entitled to receive under the CRUT.

185.     As a direct and proximate result of the foregoing negligence, Plaintiff suffered damages from the loss and use of his Property, currently believed to be in excess of $32,000,000.00.

SG    SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23683-RNS Document 119 Entered on FLSD Docket 07/24/2019 Page 58 of 175
Case 1:18-cv-23683-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 41 of 76
Adderley v. 3ABN et. al.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT for all losses incurred as a result of HUNT's professional negligence in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

<div align="center">

**Count XIV**
**Breach of Fiduciary Duty**
**(against HUNT)**

</div>

186.    Plaintiff re-alleges paragraphs 1-75, 174-185 of this Complaint as if fully set forth herein.

187.    HUNT, as a professional director of 3ABN and the person who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, owed a fiduciary duty of care to ADDERLEY to provide accurate and truthful representations so ADDERLEY could evaluate whether or not to execute the CRUT and the Indentures of Conveyance to transfer his Property.

188.    The duty of care is implied in law based on the factual circumstances of this case.  HUNT induced the reliance of ADDERLEY, and HUNT was placed in a position of trust and confidence in HUNT's efforts to have the legal documents drafted for the donation of a small portion of ADDERLEY's Property, and to accurately represent that content of those documents to ADDERLEY.

189.    The offer of assistance provided by HUNT for the preparation of the CRUT and Indentures of Conveyance was naturally calculated to repose confidence and trust in HUNT.

190.    In addition to the legal efforts undertook by HUNT, ADDERLEY relied upon and trusted HUNT on a personal and moral level based on the understanding that 3ABN was carrying out the missions of the Seventh Day Adventist Church.



Adderley v. 3ABN et. al.

191.    HUNT breached its duty of care by misrepresenting the content and legal effect of the documents that were drafted for ADDERLEY's signature, and blatantly took advantage of the fact that ADDERLEY was legally blind.

192.    HUNT is not a licensed attorney in the State of Florida and is not authorized to draft legal documents.[9]  HUNT arranged for an attorney licensed in the State of Georgia, BENTON,[10] to prepare the CRUT.  Specifically, HUNT directed BENTON to insert or omit terms in the CRUT that were favorable to 3ABN, which includes but is not limited to the following:

    a    Appointment of 3ABN as Successor Trustee;

    b    Omission of entitlement of ADDERLEY to change charitable beneficiaries; and

    c    Omission of additional life income beneficiaries, including but not limited to, ADDERLEY's children.

193.    The terms of the CRUT were misrepresented by HUNT to ADDERLEY before execution of same.

194.    HUNT also arranged for an attorney in the Bahamas, Lewis & Longley, to prepare the Indentures of Conveyance, for ADDERLEY to convey 419 acres of his

---

[9] We adhere to that view and find that the respondent's preparation of wills and antenuptial agreements for others, both of which affect important rights of persons under the law, ***without the review and approval of an attorney licensed to practice in this State,***

constitute the unauthorized practice of law. *See,* 7 Am. Jur.2d Attorneys at Law ss 73 and 75, and 22 A.L.R.3d 1112.

*The Fla. Bar v. Larkin*, 298 So. 2d 371, 373 (Fla. 1974) (e.s.).

[10] Mr. Benton is retired and not currently licensed as an attorney in the State of Florida, but was admitted in 1997.



Adderley v. 3ABN et. al.

Property. The terms of the Indentures of Conveyance and the property description was misrepresented by HUNT to ADDERLEY before execution of same.

195. Further, HUNT owed a fiduciary duty of care to ADDERLEY to convert the land into marketable assets so that ADDERLEY could receive quarterly payments from the CRUT as the Unitrust Recipient.

196. The duty of care is implied in law based on the factual circumstances of this case. In July 2011, 3ABN and HUNT, through BENTON, prepared illustrations of the CRUT for ADDERLEY. Although ADDERLEY did not know about these illustrations until approximately April 2016, the illustrations prepared by attorney BENTON demonstrate that 3ABN represented that ADDERLEY would receive unitrust payments beginning in year one, at $1,500,000 per year before tax and $975,000 after tax and increasing and continuing payments due through year 39. In addition, the illustrations show an income tax benefit of $6,161,715, and charitable deduction of $17,604,900. At year seven, the chart shows the total after tax benefits in the amount of $13,410,141 (representing $7,248,426 in after tax unitrust amount, and an income tax savings of $6,161,715). A copy of that Illustration is attached as **Exhibit "I."**

197. Moreover, after ADDERLEY became aware of the CRUT in April 2016, 3ABN and HUNT induced ADDERLEY not to pursue legal action to declare the CRUT invalid and made the following assurances to ADDERLEY's local Florida counsel:

    a) ADDERLEY would receive approximately $900,000 per year retroactive to the beginning of the CRUT in August 12, 2011, until he passed away;

    b) 3ABN expected to generate $32,000,000 from the sale of the land that would be invested into the Unitrust to fund ADDERLEY's annuity payments;

Adderley v. 3ABN et. al.

    c)  3ABN would work with Adriana Gonzalez in marketing and completing the sale; and

    d)  That 3ABN was on the cusp of selling the Property, and the sale of the Property was imminent.

198.    HUNT was placed in a position of trust and confidence as he was performing duties on behalf of 3ABN, who was acting as Trustee of the CRUT. HUNT was in control of the trust assets, including the Property, and 3ABN and HUNT had authority and the responsibility and duty to convert the Property to marketable property since January 2012.

199.    In addition to the legal efforts undertook by 3ABN and HUNT, ADDERLEY relied upon and trusted 3ABN and HUNT on a personal and moral level based on the understanding that 3ABN was carrying out the mission of the Seventh Day Adventist Church.

200.    Upon information and belief, 3ABN and HUNT's acts or omissions have stalled or prevented the sale and conversion of ADDERLEY's Property to marketable assets. Specifically, 3ABN and HUNT failed to list the Property on the market through a broker, and instead, chose to "open list" the Property by advertising the Property for sale on certain websites, which was not an appropriate method to facilitate the sale of the Property and delayed any sale.

201.    In addition, despite having serious potential buyers interested in the Property, 3ABN and HUNT's actions or inactions have prevented such potential buyers from submitting any offers. Indeed, HUNT testified that 3ABN has a current potential purchaser, but has failed to convey that offer to ADDERLEY or its counsel, and since the inception of the lawsuit has entirely halted any efforts to sell the Property.

SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

202.    3ABN and HUNT breached its duty of care by misrepresenting the fact that ADDERLEY would receive income tax and charitable tax savings, and that 3ABN and HUNT would convert the Property to marketable assets since August 22, 2011 to facilitate unitrust payments to ADDERLEY.  As a result, as of the date of this Complaint, ADDERLEY has not received any unitrust payments or income or charitable tax benefits.

203.    Moreover, the delay of the sale has caused damages to ADDERLEY as 3ABN and HUNT represented that ADDERLEY would receive a charitable tax deduction in the amount of $17,604,900.  First, ADDERLEY did not have the income to take advantage of the charitable deduction.  In addition, since the unitrust payments have not been made within five (5) years after the CRUT, ADDERLEY is no longer permitted to take this deduction.

204.    The terms of the CRUT were misrepresented by 3ABN and HUNT before execution of same, and by 3ABN and HUNT during the term of the trust.

205.    Further, 3ABN and HUNT did not have the requisite qualifications to perform the necessary actions as Trustee of the CRUT, nor did they understand the terms of the CRUT.

206.    As a direct and proximate result of the foregoing breach of fiduciary duty, Plaintiff suffered damages from 3ABN and HUNT's failure to fund the unitrust payments to ADDERLEY, currently believed to be due in excess of $7,000,000.00, and due to the false representation that ADDERLEY would receive income tax savings in excess of $6,000,000, and a charitable tax deduction in excess of $17,000,000, plus interest.

207.    As a direct and proximate result of the foregoing breach of fiduciary duty, Plaintiff suffered damages from the loss and use of his Property, currently believed to be in excess of $32,000,000.00.

Case 1:18-cv-23662-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 63 of 175
Case 1:18-cv-23662-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 46 of 76
Adderley v. 3ABN et. al.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT for all losses incurred as a result of HUNT's breach of fiduciary duty in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

<div align="center">

**Count XV**
**Professional Negligence**
**(against GILLEY and SHELTON)**

</div>

208.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

209.    GILLEY and SHELTON, as authorized representatives of 3ABN, and the individuals who have served as Trustee of the CRUT on behalf of 3ABN since January 26, 2012, owed a duty of care of like professionals to provide accurate and truthful representation so ADDERLEY, and to convert his Property into marketable assets so that ADDERLEY could receive quarterly payments from the CRUT as the Unitrust Recipient.

210.    GILLEY and SHELTON placed themselves in the position as authorized representatives of 3ABN, serving as Trustee of the CRUT.

211.    Since the execution of the Indentures of Conveyance up and through to the date of this Complaint and hereafter, GILLEY and SHELTON have had the authority and responsibility to take actions to complete the sale of the Property, which would trigger unitrust payments to ADDERLEY.

212.    GILLEY and SHELTON failed to use reasonable care that would be expected to be carried out by a professional in his position in performing actions for 3ABN as Trustee of the CRUT by failing to sell the Property to allow unitrust distributions to begin to flow to ADDERLEY.

Case 1:18-cv-23063-RNS Document 110 Entered on FLSD Docket 07/24/2019 Page 64 of 175
Case 1:18-cv-23063-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 47 of 75
Adderley v. 3ABN et. al.

213.     Further, 3ABN continued to reassure ADDERLEY that he and his family would receive annual income from the CRUT in the total of approximately $900,000 or more per year since the formation of the trust, and that 3ABN was on the cusp of selling the property, and the sale was imminent, which would fund the ability of 3ABN to pay the Unitrust Amount to ADDERLEY.

214.     GILLEY and SHELTON's actions were negligent and contributed substantially to ADDERLEY's injury and damages, as ADDERLEY has not received any untitrust distributions as of the date of this pleading, and ADDERLEY is no longer able to take advantage of any charitable tax deduction he would otherwise be entitled to receive under the CRUT.

215.     As a direct and proximate result of the foregoing negligence, Plaintiff suffered damages from the loss and use of his Property, currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against GILLEY and SHELTON for all losses incurred as a result of GILLEY and SHELTON's professional negligence in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

SG SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

## Count XVI
## Breach of Fiduciary Duty
### (against 3ABN and GILLEY and SHELTON)

216.    Plaintiff re-alleges paragraphs 1-75, 208-215 of this Complaint as if fully set forth herein.

217.    GILLEY and SHELTON, as authorized representatives of 3ABN, and the individuals who have served as Trustee of the CRUT on behalf of 3ABN since January 26, 2012, owed a fiduciary duty of care to ADDERLEY to convert the land into marketable assets so that ADDERLEY could receive quarterly payments from the CRUT as the Unitrust Recipient.

218.    The duty of care is implied in law based on the factual circumstances of this case.  In July 2011, 3ABN, through BENTON, prepared illustrations of the CRUT for ADDERLEY.   Although ADDERLEY did not know about these illustrations until approximately April 2016, the illustrations prepared by attorney BENTON demonstrate that 3ABN represented that ADDERLEY would receive unitrust payments beginning in year one, at $1,500,000 per year before tax and $975,000 after tax and increasing and continuing payments due through year 39.  In addition, the illustrations show an income tax benefit of $6,161,715, and charitable deduction of $17,604,900.  At year seven, the chart shows the total after tax benefits in the amount of $13,410,141 (representing $7,248,426 in after tax unitrust amount, and an income tax savings of $6,161,715).  A copy of that Illustration is attached as **Exhibit "I."**

219.    Moreover, after ADDERLEY became aware of the CRUT in April 2016, 3ABN induced ADDERLEY not to pursue legal action to declare the CRUT invalid and made the following assurances to ADDERLEY's local Florida counsel:

Adderley v. 3ABN et. al.

a) ADDERLEY would receive approximately $900,000 per year retroactive to the beginning of the CRUT in August 12, 2011, until he passed away;

b) 3ABN expected to generate $32,000,000 from the sale of the land that would be invested into the Unitrust to fund ADDERLEY's annuity payments;

c) 3ABN would work with Adriana Gonzalez in marketing and completing the sale; and

d) That 3ABN was on the cusp of selling the Property, and that the sale of the Property was imminent.

220.     GILLEY, SHELTON and 3ABN were placed in a position of trust and confidence as Trustee of the CRUT, and as the party that was in control of the trust assets, including the Property, and 3ABN, SHELTON and GILLEY, as Trustee, had authority and the responsibility and duty to convert the Property to marketable property since January 2012.

221.     In addition to the legal efforts undertook by 3ABN, GILLEY and SHELTON, ADDERLEY relied upon and trusted 3ABN and GILLEY on a personal and moral level based on the understanding that 3ABN was carrying out the mission of the Seventh Day Adventist Church.

222.     Upon information and belief, 3ABN, GILLEY and SHELTON's acts or omissions have stalled or prevented the sale and conversion of ADDERLEY's Property to marketable assets.  Specifically, 3ABN, GILLEY and SHELTON failed to list the Property on the market through a broker, and instead, chose to "open list" the Property by advertising the Property for sale on certain websites, which was not an appropriate method to facilitate the sale of the Property and delayed any sale.

223.     In addition, despite having serious potential buyers interested in the Property, 3ABN, GILLEY and SHELTON's actions or inactions have prevented such

SG  SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Case 1:18-cv-23362-RNS  Document 110  Entered on FLSD Docket 07/24/2019  Page 67 of 175
Case 1:18-cv-23362-RNS  Document 68  Entered on FLSD Docket 04/12/2019  Page 50 of 76
Adderley v. 3ABN et. al.

potential buyers from submitting any offers.  Indeed, HUNT testified that 3ABN has a current potential purchaser, but has failed to convey that offer to ADDERLEY or its counsel, and since the inception of the lawsuit has entirely halted any efforts to sell the Property.

224.    3ABN, GILLEY and SHELTON breached its duty of care by misrepresenting the fact that ADDERLEY would receive income tax and charitable tax savings, and that 3ABN, GILLEY and SHELTON would convert the Property to marketable assets since August 22, 2011 to facilitate unitrust payments to ADDERLEY. As a result, as of the date of this Complaint, ADDERLEY has not received any unitrust payments or income or charitable tax benefits.

225.    Moreover, the delay of the sale has caused damages to ADDERLEY as 3ABN represented that ADDERLEY would receive a charitable tax deduction in the amount of $17,604,900.  First, ADDERLEY did not have the income to take advantage of the charitable deduction.  In addition, since the unitrust payments have not been made within five (5) years after the CRUT, ADDERLEY is no longer permitted to take this deduction.

226.    The terms of the CRUT were misrepresented by 3ABN to ADDERLEY before execution of same, and by 3ABN, GILLEY and SHELTON and during the term of the trust.  Further, 3ABN, GILLEY and SHELTON did not have the requisite qualifications to act as Trustee of the CRUT, nor did they understand the terms of the CRUT.

227.    As a direct and proximate result of the foregoing breach of fiduciary duty, Plaintiff suffered damages from the 3ABN, GILLEY and SHELTON's failure to fund the unitrust payments to ADDERLEY, currently believed to be due in excess of $7,000,000.00,

Adderley v. 3ABN et. al.

and due to the false representation that ADDERLEY would receive income tax savings in excess of $6,000,000, and a charitable tax deduction in excess of $17,000,000, plus interest.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against 3ABN, GILLEY and SHELTON for all actual, consequential and incidental damages incurred as a result of 3ABN, GILLEY and SHELTON's breach of fiduciary duty in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count XVIII – Reformation of Trust
### Fla. Stat. § 736.0415
### (against 3ABN)

228.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

229.    This is an action for reformation of trust pursuant to §736.0415 of the Florida Statutes.

230.    ADDERLEY is the Grantor of the CRUT, and an interested person in the reformation of the trust terms.

231.    The terms of the CRUT were affected by a mistake of fact or law, and by inducement of ADDERLEY to enter into the CRUT upon false pretenses by HUNT and 3ABN.  ADDERLEY is legally blind and was led to believe by HUNT and 3ABN that signing the CRUT and the Indentures of Conveyance would facilitate the transfer a small portion of his Property to 3ABN for religious purposes consistent with the beliefs of his Church.

232.    ADDERLEY was unduly influenced by HUNT and 3ABN to execute the CRUT.  Specifically, HUNT and 3ABN coerced and persuaded ADDERLEY to execute

Adderley v. 3ABN et. al.

the CRUT by using artful or fraudulent contrivances and misrepresentations as to the terms

of the document that ADDERLEY was signing, to such a degree that it destroyed

ADDERLEY's free agency and willpower to fulfill his intentions to only donate a small

portion of Property to and for the use and benefit of 3ABN for religious purposes, and his

free will to retain his remaining Property.

233.    ADDERLEY's intent for the CRUT was to:

   a) Potentially donate a small portion of the Property to 3ABN for the
      building of a Sanctuary and for religious purposes consistent with the
      mission and beliefs of his Church;

   b) Transfer only a small portion of the Property, and to retain the remaining
      of the 419 acre tract for his own use, possession and ownership during
      his life; and

   c) Transfer the remaining property in accord with the terms of his Last Will
      and Testament or Revocable Trust, which devise may be revoked or
      amended at any time prior to this death.

234.    In addition, 3ABN directed its attorneys to insert and omit provisions in the

CRUT that were beneficial to 3ABN, including but not limited to:

   a) Appointment of 3ABN as Successor Trustee;

   b) Omission of entitlement of ADDERLEY to revoke and change the
      Trustee;

   c) Omission of entitlement of ADDERLEY to revoke and change
      charitable beneficiaries; and

   d) Omission of additional life income beneficiaries, including but not
      limited to, ADDERLEY's children.

235.    The mistake of fact or law can be corrected by the Court regardless of the

express terms of the CRUT to conform with the intent of the Grantor.

SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

     **WHEREFORE**, ADDERLEY requests the Court to reform the CRUT to the intent of the Plaintiff, proven by clear and convincing evidence, and for such other relief that the Court deems just or advisable.

### Count XIX – Equitable Reformation of Indentures of Conveyance
### (against 3ABN)

236.    Plaintiff re-alleges paragraphs 1-75, 108-129 of this Complaint as if fully set forth herein.

237.    This is an equitable action for reformation.

238.    ADDERLEY is the Vendor, and an interested person in the reformation of the Indentures of Conveyance.

239.    The terms of the Indentures of Conveyance were affected by a mistake of fact or law, and due to the inducement and false pretenses represented by HUNT and 3ABN.

240.    HUNT and 3ABN directed and facilitated for Lewis & Longley to prepare the Indentures of Conveyance for ADDERLEY to execute; however, HUNT and 3ABN failed to properly advise ADDERLEY of the terms of the Indentures of Conveyance prior to execution of same.  In addition, HUNT and 3ABN facilitated for ADDERLEY to execute the Indentures of Conveyance without the presence of independent legal counsel, and Lewis & Longley necessarily had a conflict with the representation and preparation of the transfer documents for ADDERLEY.

241.    ADDERLEY is legally blind and was led to believe by HUNT and 3ABN that signing the Indentures of Conveyance would facilitate the continued discussion of the transfer of a small portion of his Property to 3ABN for religious purposes consistent with his Church.

Adderley v. 3ABN et. al.

242.    ADDERLEY only intended to donate a small portion of his Property. However, the Indentures of Conveyance purport to transfer 419 acres of this Property, representing a substantial portion of his assets.

243.    Prior to or during the execution of the Indentures of Conveyance, ADDERLEY was unaware that the Indentures of Conveyance were prepared with legal descriptions that would transfer his entire Property.

244.    ADDERLEY executed the three (3) Indentures of Conveyance due to the undue influence of HUNT and 3ABN, who persuaded and coerced ADDERLEY using artful or fraudulent contrivances and misrepresentations, to such a degree that it destroyed ADDERLEY's free agency and willpower to fulfill his intention to transfer only a small portion of his Property to and for the use and benefit of 3ABN for religious purposes, and his free will to retain his remaining Property.

245.    The mistake of fact or law is due to the unilateral mistake of ADDERLEY, or due to the inequitable conduct of 3ABN and HUNT, and as a matter of equity the Court should correct the error to conform with the intent of the Vendor.

246.    Despite the fact that the Indentures of Conveyance required payment of consideration in the amount of One Hundred Fifty Thousand Dollars ($150,000.00), ADDERLEY did not receive any consideration for the transfer of ADDERLEY's Property to the CRUT, which in any event, would be grossly inadequate for his Property which was valued at Twenty-Two Million Nine Hundred Thousand Dollars ($22,900,000.00) in 2012.

247.    3ABN is not a bona fide purchaser of the Property who purchased the Property for value.

SAAVEDRAGOODWIN
312 Southeast 17th Street, Second Floor, Fort Lauderdale, Florida 33316

Case 1:18-cv-23662-RNS  Document 118  Entered on FLSD Docket 07/24/2019  Page 72 of 175
Case 1:18-cv-23662-RNS  Document 68  Entered on FLSD Docket 04/12/2019  Page 55 of 76
Adderley v. 3ABN et. al.

**WHEREFORE**, ADDERLEY requests the Court to reform the Indentures of Conveyance to the intent of the Plaintiff, and for such other relief that the Court deems just or advisable.

### Count XX – Equitable Accounting
### (against GILLEY, SHELTON and 3ABN)

248.    Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

249.    This is an action in equity for accounting.

250.    GILLEY and SHELTON have served as the authorized representative of 3ABN, as Trustee of the CRUT from January 28, 2012 to present.

251.    The accounting of the CRUT involves extensive or complicated accounts, including but not limited to:

   a)  Determination of the Unitrust Amount in accord with Section (E) of the CRUT;

   b)  Calculation of the Trust Income for each respective Taxable Year since the inception of the CRUT;

   c)  Calculation of the Unitrust percentage;

   d)  Calculation of the net Fair Market Value of the Trust Assets valued as of the first day of each taxable year;

   e)  Calculation of the Net Income of the Unitrust for each taxable year that is in excess of the Unitrust Amount;

   f)  Statements of Account and Reports Reflecting the Receipts, Disbursements and Other Changes in the Income and the Corpus of the CRUT;

   g)  Payments due to the Unitrust Recipient upon sale of the assets; and

   h)  Determination of amounts reflected on the CRUT tax returns.

SG  SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23683-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 73 of 175
Case 1:18-cv-23683-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 56 of 76
Adderley v. 3ABN et. al.

252.     It is not clear that the remedy at law is as full adequate and expeditious as it is in equity.

**WHEREFORE**, ADDERLEY requests the Court to require an equitable accounting of 3ABN, GILLEY and SHELTON, and for such other relief that the Court deems just or advisable.

### Count XXI – Violation of Adult Protection Statute
### § 415.1111, Fla. Stat.
### (against HUNT and 3ABN)

253.     Plaintiff re-alleges paragraphs 1-75, 108-129, 177-186 of this Complaint as if fully set forth herein.

254.     ADDERLEY is legally blind, and as thus, meets the definition of "vulnerable adult" under § 415.1111 of the Florida Statutes.[11]

255.     HUNT, as a professional director of 3ABN and the person who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, owed a fiduciary duty of care to ADDERLEY to provide accurate and truthful representations so ADDERLEY could evaluate whether or not to execute the CRUT and the Indentures of Conveyance to transfer his Property.

256.     The duty of care is implied in law based on the factual circumstances of this case. HUNT and 3ABN induced the reliance of ADDERLEY, and HUNT and 3ABN was placed in a position of trust and confidence in HUNT and 3ABN's efforts to have the legal

---

[11] "Vulnerable adult" means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is **impaired due** to a mental, emotional, sensory, **long-term physical, or developmental disability or dysfunction**, or brain damage, or the infirmities of aging. § 415.102(28), Fla. Stat.



Case 1:18-cv-23623-RNS Document 110 Entered on FLSD Docket 07/24/2019 Page 74 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 57 of 76
Adderley v. 3ABN et. al.

documents drafted for the donation of a small portion of his Property, and to accurately represent that content of those documents to ADDERLEY.

257.    The offer of assistance provided by HUNT and 3ABN for the preparation of the CRUT and Indentures of Conveyance was naturally calculated to repose confidence and trust and confidence in HUNT.

258.    In addition to the legal efforts undertook by HUNT and 3ABN, ADDERLEY relied upon and trusted HUNT and 3ABN on a personal and moral level based on the understanding that 3ABN was carrying out the missions of the Seventh Day Adventist Church.

259.    HUNT and 3ABN, wrongfully exploited ADDERLEY by breaching its fiduciary duty, and by the unauthorized taking or ADDERLEY's assets.  HUNT and 3ABN have obtained title to, and used ADDERLEY's Property by fraudulent means, with the intent to temporarily or permanently deprive ADDERLEY of the use, benefit or possession of his Property, and instead has retained ADDERLEY's Property for the sole benefit of 3ABN.

260.    ADDERLEY, as the prevailing party, is entitled to recovery of its attorneys' fees and costs pursuant to §415.1111 of the Florida Statutes.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against HUNT and 3ABN for all actual, consequential and incidental damages incurred as a result of HUNT and 3ABN's breach of §415.1111 of the Florida Statutes, in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

Adderley v. 3ABN et. al.

## Count XXII – Civil Exploitation of Elderly and Disabled Adult
### Fla. Stat. § 772.11
### (against 3ABN)

261.    Plaintiff re-alleges paragraphs 1-75, 108-129, 174-227, 253-260 of this Complaint as if fully set forth herein.

262.    ADDERLEY is a veteran, elderly adult, and has a disability because he is legally blind.

263.    HUNT and 3ABN, as the parties who facilitated the legal drafting of the CRUT and the Indentures of Conveyance, owed a fiduciary duty of care to ADDERLEY to provide accurate and truthful representations so ADDERLEY could evaluate whether or not to execute the CRUT and the Indentures of Conveyance to transfer his Property.

264.    The duty of care is implied in law based on the factual circumstances of this case.  HUNT and 3ABN induced the reliance of ADDERLEY, and HUNT and 3ABN was placed in a position of trust and confidence in HUNT and 3ABN's efforts to have the legal documents drafted for the transfer of his 1-2 acre property, and to accurately represent that content of those documents to ADDERLEY.

265.    The offer of assistance provided by HUNT and 3ABN for the preparation of the CRUT and Indentures of Conveyance was naturally calculated to repose confidence and trust in HUNT and 3ABN and HUNT.

266.    In addition to the legal efforts undertook by HUNT and 3ABN, ADDERLEY relied upon and trusted HUNT and 3ABN on a personal and moral level based on the understanding that 3ABN was carrying out the missions of the Seventh Day Adventist Church.

Case 1:18-cv-23623-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 76 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 59 of 75
Adderley v. 3ABN et. al.

267.    HUNT and 3ABN, individually and in conspiracy with one another, knowingly wrongfully obtained the title to ADDERLEY's entire Property, representing the bulk of his estate assets, for the possession, use and benefit of 3ABN.

268.    HUNT and 3ABN has wrongfully exploited ADDERLEY, an elderly and disabled adult, by obtaining and using ADDERLEY's Property, with the intent to temporarily or permanently deprive ADDERLEY of the right or benefit from its Property, and to use ADDERLEY's Property for the sole benefit of 3ABN.   In addition, even if the CRUT and Indentures of Conveyances were valid, 3ABN has continuously exploited ADDERLEY by failing to convert the Property to productive property, and pay unitrust amounts to ADDERLEY.

269.    HUNT and 3ABN's actions have resulted in an unauthorized appropriation, sale, or transfer of ADDERLEY's Property, in which ADDERLEY did not receive the equivalent financial value in goods in services.

270.     On or about August 17, 2018, Plaintiff delivered a civil exploitation of elderly and disabled adult demand letter to 3ABN, demanding the amount of $22,900,000 or the return of title to ADDERLEY's Property.  A copy is attached as **Exhibit "J"** and made part of this pleading.

271.    3ABN failed to return ADDERLEY's Property within thirty (30) days after receipt of the demand letter.

272.    As a direct and proximate cause of the 3ABN's exploitation, Plaintiff has suffered damages and seeks treble the total amount of damages.

273.    Plaintiff is entitled to attorneys' fees pursuant to § 772.11 of the Florida Statutes.

SG   SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

WHEREFORE, Plaintiff demands judgment against 3ABN for treble damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper

## Count XXIII – Civil Theft
### Fla. Stat. § 772.11
### (against 3ABN)

274.    Plaintiff re-alleges paragraphs 1-75, 108-129 of this Complaint as if fully set forth herein.

275.    HUNT and 3ABN, individually and in conspiracy with one another, knowingly wrongfully obtained the title to ADDERLEY's entire Property, representing the bulk of his estate assets, for the possession, use and benefit of 3ABN.

276.    3ABN has wrongfully obtained and used, or endeavored to obtained or used, ADDERLEY's Property, with the intent to temporarily or permanently deprive ADDERLEY of the right or benefit from its Property, and/or appropriate ADDERLEY's Property to 3ABN's own use or to the use of any person not entitled to the use of the Property.

277.    On or about August 17, 2018, Plaintiff delivered a civil theft demand letter to 3ABN, demanding the amount of $22,900,000 or the return of title to ADDERLEY's Property.  (Ex. "J.")

278.    3ABN failed to return ADDERLEY's Property within thirty (30) days after receipt of the demand letter.

279.    As a direct and proximate cause of the 3ABN's theft, Plaintiff has suffered damages and seeks treble the total amount of damages.

280.    Plaintiff is entitled to attorneys' fees pursuant to §772.11 of the Florida Statutes.

SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23362-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 78 of 175
Case 1:18-cv-23362-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 61 of 75
Adderley v. 3ABN et. al.

**WHEREFORE**, Plaintiff demands judgment against 3ABN for treble damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper

### Count XXIV – Undue Influence[12] by Active Procurement
### (Against HUNT and 3ABN)

281.     Plaintiff incorporates by reference paragraphs 1-75, 102-147, 174-207, 253-280, and further alleges:

282.     HUNT and 3ABN had a confidential relationship with ADDERLEY at the time that the CRUT was signed and ADDERLEY's Property was conveyed to the CRUT.

283.     HUNT and 3ABN actively procured the drafting and execution of the CRUT and Indentures of Conveyance, and the transfer of the Property to the CRUT, including but not limited to the following:

> a   HUNT and 3ABN were present at the execution of the CRUT and Indentures of Conveyance;

> b   HUNT and 3ABN were present at the time that ADDERLEY allegedly expressed a desire to make a CRUT and to transfer his Property to the CRUT;

> c   HUNT and 3ABN had knowledge of the contents of the CRUT and Indentures of Conveyance;

> d   HUNT and 3ABN recommended to its attorneys to draft the CRUT and Indentures of Conveyance;

> e   3ABN paid for its attorneys to draft the CRUT and Indentures of Conveyance;

> f   Neither 3ABN nor its attorneys obtained informed written consent of any conflict of interest in the preparation of the CRUT and Indentures of Conveyance for ADDERLEY;

---

[12] *Flanzer v. Kaplan*, 230 So. 3d 960 (Fla. 2d DCA 2017)(delayed discovery doctrine applies to broader class of claims "founded upon fraud" rather than just fraud in general, including undue influence claims).



Adderley v. 3ABN et. al.

        g   3ABN's attorneys drafted the CRUT and Indentures of Conveyance;

        h   HUNT and 3ABN gave instructions for the preparation of the CRUT and Indentures of Conveyance to its attorneys, including directly stating 3ABN's preference "not to give life incomes to any family member" and directing its attorneys to name 3ABN as Successor Trustee;

        i   HUNT and 3ABN participated in securing the notary, consul and witnesses for the CRUT and Indentures of Conveyances;

        j   HUNT and 3ABN applied for the renewal of ADDERLEY's passport in order to permit the transfer of the Property to the CRUT; and

        k   HUNT and 3ABN secured the resignation of ADDERLEY as Trustee, and the appointment of 3ABN as Successor Trustee, who has since acted as the Trustee of the CRUT subsequent to the execution.

*See, e.g., Metropolitan Life Ins. Co. v. Carter*, 2005 WL 2810699 (M.D. Fla. 2005)(active procurement creates a presumption of undue influence).

284.   HUNT and ADDERLEY did not have a long term relationship. HUNT testified that he first met ADDERLEY by phone on July 20, 2011, and only a little over one month later, on August 21, 2011 and August 22, 2011, HUNT and 3ABN visited ADDERLEY in person for the first time, and took ADDERLEY to a bank to execute the CRUT.

285.   As the Florida Supreme Court stated in *Peacock v. Du Bois, et. al*., 90 Fla. 162 (Fla. 1925)(e.s.):

The property involved in this litigation is virtually all that [ADDERLEY] owned, and it is repulsive to every rule of law and right and love and justice to argue that [he] would uninfluenced deed this property for a nominal consideration to a [charitable organization] who was a stranger to [him], that [he] had known hardly [for one month], and who it is not shown had any claims whatever on [his] bounty, thereby disinheriting the children [he had fathered], and to whom [he] was bound by all the ties of love and affection. The fact of the execution of the deed on the showing made by the record we think imposes on the **appellant the duty of showing that the**

Case 1:18-cv-23063-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 80 of 175
Case 1:18-cv-23063-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 63 of 75
Adderley v. 3ABN et. al.

**transaction was bona fide, and that it was not secured by undue influence**.

**WHEREFORE**, Plaintiff demands judgment against HUNT and 3ABN for damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper.

### <u>Count XXIII – Unauthorized Practice of Law</u>
#### (Against HUNT and 3ABN)

286.     Plaintiff incorporates by reference paragraphs 1-75, 174-207, 253-285, and further alleges:

287.     HUNT does not have a license to practice law in any state.

288.     3ABN has no licensed attorneys on its staff.

289.     HUNT and BENTON testified that they believed that ADDERLEY had heard one of their broadcasts conducted by the Planned Giving and Trust Departments that discussed charitable trusts.

290.     The information packets prepared by and delivered by HUNT and 3ABN to potential donors advertises the charitable remainder unitrust as a vehicle that:

       a   Bypass[es] capital gains tax

       b   [Provides] Monthly income for life

       c   A qualified Irrevocable Charitable Remainder Unitrust is tax exempt.  Accordingly, it pays no tax on realized gain when selling an appreciated asset.  The donor is eligible for income, gift, and estate tax charitable deductions.

       d   At maturity trust assets pass to the designated charitable beneficiary without probate.

291.     HUNT and 3ABN uses its broadcasts to advertise the charitable remainder unitrust as a vehicle that:

       a   Provides a healthy interest payment for life;
       b   Provides a charitable tax deduction; and



Adderley v. 3ABN et. al.

       c   Bypasses capital gains.

292.   3ABN's broadcasts specifically identify the drawbacks of the CRUT as follows:

       a   the expense associated with it; however, 3ABN states that it is covering that expense so that main drawback is gone.

       b   that the CRUT is irrevocable, but that the benefits far outweigh any problems with it because it is going to continue to pay you interest for the rest of your life, your spouse's life, and up to six of your children; and

       c   the fact that it is labor intensive because you have to file tax returns.

293.   3ABN, in its broadcasts, fails to identify some of the main critical drawbacks to a CRUT, including but not limited to:

       a   The fact that the income does not start until the property is sold;

       b   The fact that a donor may not receive any income if the property is sold before the donor deceases;

       c   The fact that the IRS guidelines allow a donor to change the charitable beneficiary, but 3ABN directs its attorneys to name 3ABN as an irrevocable beneficiary;

       d   The fact that the IRS guidelines allow the donor to retain the right to change the Trustee, but 3ABN directs its attorneys to name 3ABN as the Successor Trustee.

294.   HUNT and 3ABN engaged in the unauthorized practice of law, by, *inter alia*:

       a   HUNT and 3ABN had discussions with ADDERLEY and answered questions as to the how a CRUT works, and made the determination that the CRUT was appropriate for ADDERLEY and that it met ADDERLEY's needs;

       b   HUNT and 3ABN gave instructions for the preparation of the CRUT and Indentures of Conveyance to its attorneys, including

Case 1:18-cv-23693-RNS Document 148 Entered on FLSD Docket 07/24/2019 Page 82 of 175
Case 1:18-cv-23693-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 65 of 75
Adderley v. 3ABN et. al.

directly stating 3ABN's preference "not to give life incomes to any family member," directing its attorneys to name 3ABN as Successor Trustee, and directing its attorneys to name 3ABN as an irrevocable beneficiary;

 c HUNT and 3ABN explained the terms of the CRUT and Indentures of Conveyance, described the benefits and drawbacks of a CRUT, read the CRUT and Indentures of Conveyances to ADDERLEY, and made the determination whether or not ADDERLEY understood the terms of the CRUT and Indentures of Conveyances;

 d HUNT and 3ABN facilitated the execution of the CRUT and Indentures of Conveyance, and participated in securing the notary, consul and witnesses for the execution;

 e HUNT and 3ABN funded the CRUT with ADDERLEY's Property by transferring the Property out of ADDERLEY's individual name to the CRUT;

 f HUNT and 3ABN applied for the renewal of ADDERLEY's passport in order to permit the transfer of the Property to the CRUT; and

 g HUNT and 3ABN directed its attorneys to prepare the resignation of ADDERLEY as Trustee, and the appointment of GILLEY as Successor Trustee, who has since acted as the Trustee of the CRUT subsequent to the execution.

295. HUNT and 3ABN knew that ADDERLEY was blind at the time that they discussed the charitable remainder unitrust with ADDERLEY.

296. The Florida Supreme Court has ruled that the specific conduct that HUNT and 3ABN engaged in -- the "assembly, drafting, execution and funding of a trust document constitutes the practice of law." *The Florida Bar re Advisory Opinion-Nonlawyer Preparation of Living Trusts*, 613 So. 2d 426 (Fla. 1993). Accordingly, HUNT and 3ABN's activities constitute the unauthorized practice of law; *The Florida Bar v. American Senior Citizens Alliance, Inc.*, 689 So. 2d 255 (Fla. 1997)(answering specific legal questions, determining the appropriateness of a trust based on a customer's particular needs

Adderley v. 3ABN et. al.

and circumstances, assembling, drafting, executing documents, and funding trusts constitutes the unauthorized practice of law).

297.    Accordingly, HUNT and 3ABN's actions, through its broadcasts, advertising materials and activities in connection with ADDERLEY, have engaged in the practice of law.

298.    Plaintiff has suffered damages as a result of HUNT and 3ABN's actions.

**WHEREFORE**, Plaintiff demands judgment against HUNT and 3ABN for damages, interest, costs, attorneys' fees, and such other relief as the Court deems proper.

## Count XXV – Negligent Spoliation of Evidence
### (Against 3ABN and BENTON)

299.    Plaintiff incorporates by reference paragraphs 1-75, and further alleges:

300.    Defendants had a common law duty to preserve evidence that arose prior to this litigation began, on or before March 26, 2018, when the Plaintiff delivered its demand letter.  The parties have stipulated that at least by March 26, 2018 the parties anticipated litigation.  [DE 24, p. 5].

301.    On or about April 2, 2018, Defendants notified BENTON of this potential litigation.  Thereafter, BENTON obtained the ADDERLEY file from Mr. John C. Leggett, Esq.'s office, on or about April 5, 2018, and held the file until December 11, 2018.

302.    Defendants had a duty to preserve evidence within its possession, custody or control.  Throughout this litigation, Defendants expressly asserted and attempted to prevent the production of documents within BENTON and Mr. Leggett's possession on the basis of attorney-client privilege, up until January 15, 2019, when it agreed to "a subject matter waiver involving ADDERLEY, BENTON, Mr. Leggett and Ms. Lewis-Johnson in connection with the claims in this lawsuit."

SG  SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23623-RNS Document 110 Entered on FLSD Docket 07/24/2019 Page 84 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 67 of 75
Adderley v. 3ABN et. al.

303.    Defendants obtained a copy of the computer file from Mr. Leggett, which were produced as LL000001 to LL000036. However, Defendants failed to preserve a copy of the actual physical file in Mr. Leggett's possession up through April 5, 2018, and in Mr. Benton's possession from April 5, 2018 through December 11, 2018.[13]

304.    Mr. Leggett's paralegal testified that the physical file obtained by BENTON from Mr. Leggett's office originally contained additional documents when he took the file on April 5, 2018, including but not limited to, an intake form and handwritten notes regarding phone calls; however, the file was returned on December 11, 2018 without those documents, and are believed to have been destroyed.

305.    Defendants have significantly impaired the Plaintiff's ability to prove its lawsuit as the notes of BENTON alleged telephone calls with ADDERLEY specifically relate to the allegations Plaintiff has raised in this litigation.

306.    Plaintiff has been damaged by the destruction of those documents.

**WHEREFORE**, Plaintiff demands judgment against 3ABN and BENTON for damages, interest, costs, attorneys' fees, or alternatively sanctions against 3ABN and BENTON, including but not limited to, an adverse inference, the striking of BENTON's

---

[13] Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters.

Pursuant to Rule 34(a), a party must produce documents in response to a request for production where those documents are "in the responding party's possession, custody, or control [.]" Fed.R.Civ.P. 34(a). Whether documents are in a parties control under Rule 34 is broadly construed. *471 *See, e.g., Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir.1984) (finding that "[c]ontrol is defined not only as possession, but as the legal right to obtain documents requested upon demand"); *Jans ex rel. Jans v. The GAP Stores, Inc.*, No. 05–1534, 2006 WL 2691800, at *2 (M.D.Fla. Sept. 20, 2006)(emphasizing that the "term 'control' is broadly construed"). "Control," therefore, does not require that a party have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the "right, authority, or practical ability to obtain the materials sought on demand." *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, No. 09–599, 2010 WL 4853891, at *3 (M.D.Fla. Nov. 22, 2010) (internal quotations omitted; citing *In re Wright*, No. 04–94519, 2005 WL 6488101, at *3 (N.D.Ga. Aug. 9, 2005); *Searock*, 736 F.2d at 650; and *Fin. Bus. Equip. Solutions, Inc. v. Quality Data Systems, Inc.*, No. 08–60769, 2008 WL 4663277, at *2 (S.D.Fla. Oct. 21, 2008)); *Soliday v. 7–Eleven, Inc.*, No. 09–807, 2010 WL 4788041, at *2(same); *see also Anz Advanced Technologies v. Bush Hog, LLC*, No. 09–00228, 2011 WL 814663, at *9 (S.D.Ala. Jan. 26, 2011) (" '[C]ontrol' has been 'construed broadly by the courts' to include not just a legal right, but also a 'practical ability to obtain the materials' on demand.") (internal citations omitted). *Costa v. Kerzner Intern. Resorts, Inc.*, 277 F.R.D. 468 (S.D. Fla. 2011).



Adderley v. 3ABN et. al.

testimony relating to any telephone calls with ADDERLEY or the striking of the pleadings, and such other relief as the Court deems proper.

### Count XXVI – Negligent Misrepresentation[14]
**(Against BENTON)**

307.     Plaintiff re-alleges paragraphs 1-75 of this Complaint as if fully set forth herein.

308.     BENTON, in providing information and recommendations to ADDERLEY regarding the CRUT, placed himself in a place of trust and confidence with ADDERLEY.

309.     BENTON omitted and made inaccurate statements of material fact with respect to the CRUT prepared for ADDERLEY's signature, as follows:

       a     BENTON failed to disclose the conflict of interest with 3ABN;

       b     BENTON delivered instructions to ADDERLEY indicating that he could change the Trustee, when the terms of the CRUT were inconsistent with those instructions;

       c     BENTON failed to inform ADDERLEY that he could change the Trustee or the beneficiary during his lifetime and add additional unitrust recipients and still be in compliance with the IRC rules on the CRUT;

---

[14] In Florida, negligent misrepresentation sounds in fraud. *Posen Const. Inc. v. Lee County*, 921 F.Supp.2d 1350 (M.D. Fla. 2013); *Ostreyko v. B.C. Morton Organization, Inc.*, 310 So. 2d 316 (Fla. 3d DCA 1975). The delayed discovery doctrine in Section. 95.031(2)(a) applies to actions "founded on fraud," and thus, also applies to negligent misrepresentation cases. Merriam Webster's dictionary defines fraud as "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right," "an act of deceiving or misrepresenting," "a person who is not what he or she pretends to be," or "one that is nowt what it seems or is represented to be."



Case 1:18-cv-23623-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 86 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 69 of 75
Adderley v. 3ABN et. al.

        d   BENTON incorporated terms of the CRUT that were favorable to 3ABN and failed to inform ADDERLEY of same.

310.    BENTON either knew its representations were false OR made the misrepresentations without knowledge of their truth or falsity but should have known the representations were false.

311.    The misrepresentations were material to ADDERLEY's decision to sign the CRUT and Indentures of Conveyance transferring title of his Property to the CRUT. BENTON knew and intended that ADDERLEY would rely upon and be induced by the misrepresentations to execute the CRUT and Indentures of Conveyance, and to transfer his Property to the CRUT for the benefit of 3ABN.

312.    ADDERLEY reasonably relied on BENTON's misrepresentations in executing the CRUT and the Indentures of Conveyance for his Property, to its detriment and suffered damages currently believed to be in excess of $32,000,000.00.

**WHEREFORE**, ADDERLEY requests the Court enter judgment in its favor and against BENTON for all actual, consequential and incidental damages incurred as a result of BENTON's negligent misrepresentations in an amount to be determined by the trier of fact, for the costs of this action, interest, and such other and further relief that the Court deems just and appropriate.

### Count XXVII – Aiding and Abetting
### Unauthorized Practice of Law
### (Against BENTON)

313.    Plaintiff incorporates by reference paragraphs 1-75, 174-207, 253-298, 307-312, and further alleges:

314.    At all material times, BENTON had knowledge of 3ABN engaging in the unauthorized practice of law.

Case 1:18-cv-23662-RNS Document 140 Entered on FLSD Docket 07/24/2019 Page 87 of 175
Case 1:18-cv-23662-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 70 of 75
Adderley v. 3ABN et. al.

315.    BENTON substantially assisted 3ABN in committing the unauthorized practice of law, by, *inter alia*:

        a    Preparing the CRUT, instructions for the CRUT, and calculations for the CRUT;

        b    Taking direction from 3ABN to incorporate terms from 3ABN that were favorable to 3ABN;

        c    Encouraging ADDERLEY to execute the CRUT;

        d    Failing to disclose to ADDERLEY material drawbacks to enter into the CRUT;

        e    Failing to disclose to ADDERLEY a conflict of interest in his representation of 3ABN.

316.    Plaintiff has been damaged as a result of BENTON's aiding and abetting activities with 3ABN.

**WHEREFORE**, Plaintiff demands judgment against 3ABN for damages, interest, costs, and such other relief as the Court deems proper.

### Count XXVIII – Punitive Damages
### (Against HUNT, BENTON and 3ABN)

317.    Plaintiff incorporates by reference paragraphs 1-75, 102-147, 174-207, 253-316, and further alleges:

318.    HUNT, BENTON and 3ABN individually and collectively acted intentionally, willfully, wanton, reckless and grossly negligent and in complete disregard for the Plaintiff's interest, entitling the Plaintiff to an award of punitive damages against each HUNT, BENTON and 3ABN.

Case 1:18-cv-23362-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 88 of 175
Case 1:18-cv-23362-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 71 of 76
Adderley v. 3ABN et. al.

319.     Punitive damages are appropriate for HUNT, BENTON and 3ABN's intentional misrepresentation of the contents of the CRUT and Indentures of Conveyance, malicious actions in converting the Plaintiff's entire 419 acre tract of Property to the use and benefit of 3ABN.  HUNT, BENTON and 3ABN knew that Plaintiff only intended to transfer 1-2 acres, and that the transfer of Property was to be used for the religious purposes consistent with the beliefs of the Seventh Day Adventist Church.

320.     In addition, HUNT, BENTON and 3ABN prepared the CRUT and Indentures of Conveyance with the intent to deprive ADDERLEY of his Property and engaged attorneys that had an ongoing relationship with 3ABN, and a conflict with ADDERLEY, to prepare documents to facilitate the transfer of Property from ADDERLEY to 3ABN.

321.     HUNT, BENTON and 3ABN knew that ADDERLEY was legally blind, not represented by independent counsel, and that HUNT had gained the trust of ADDERLEY.  HUNT, BENTON and 3ABN, specifically intended to abuse these conditions and misrepresented the contents of the CRUT and Indentures of Conveyance in order to obtain, by fraudulent and intentional means, title to ADDERLEY's Property.

322.     HUNT, BENTON and 3ABN are personally guilty of intentional misconduct, gross negligence, or both.

323.     HUNT, BENTON and 3ABN had actual knowledge of the wrongfulness of the conduct alleged herein and the high probability that injury or damage to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in significant damage to the Plaintiff.

324.     HUNT, BENTON and 3ABN's conduct was so outrageous, reckless or wanton in care that it constituted gross negligence, the conduct of which was so reckless

Case 1:18-cv-23623-RNS Document 118 Entered on FLSD Docket 07/24/2019 Page 89 of 175
Case 1:18-cv-23623-RNS Document 68 Entered on FLSD Docket 04/12/2019 Page 72 of 76
Adderley v. 3ABN et. al.

or wanting in care that HUNT and 3ABN's actions constituted a conscious disregard or indifference to ADDERLEY's rights to his Property, which represents substantially the majority of ADDERLEY's assets.

325. HUNT, BENTON and 3ABN, through its senior level or management employees, principal, corporate leaders, officers, directors, managers, or other senior level person knowingly condoned, ratified, or consented to such conduct; or engaged in conduct that constituted gross negligence and that contributed to the loss, damages, and injury suffered by the Plaintiff.

326. HUNT, BENTON and 3ABN's acts and omissions were motivated solely by unreasonable financial gain.

327. The unreasonably dangerous nature of each HUNT, BENTON and 3ABN's conduct, together with the high likelihood of damage to Plaintiff resulting from the conduct, was actually known by HUNT, BENTON, as well as the managing agent, director, officers, senior level employees or management of 3ABN.

328. As a direct and proximate result of each HUNT, BENTON and 3ABN'S intentional, willful, outrageous, wanton, reckless and grossly negligent conduct that damaged the Plaintiff, HUNT, BENTON and 3ABN should be assessed with sufficient punitive damages to be adequately punished for their bad acts and to deter others from acting in a similar manner in the future.

**WHEREFORE**, Plaintiff demands judgment against HUNT, BENTON and 3ABN for compensatory damages, punitive damages, post judgment interest, taxable costs and whatever further relief the court deems appropriate.

SG SAAVEDRAGOODWIN
312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Adderley v. 3ABN et. al.

## **DEMAND FOR JURY TRIAL**

Plaintiff further demands trial by jury in the present case.

Dated this 12th day of April 2019.

Respectfully submitted,
**SAAVEDRA | GOODWIN**
*Attorneys for Plaintiff*
312 SE 17th Street, 2nd Floor
Fort Lauderdale, FL 33316
Tel: 954-767-6333
Fax: 954-767-8111

BY: ___/s/ Diane J. Zelmer_____
Diane J. Zelmer, Esq.
Fla. Bar No. 27251
Email: DZelmer@saavlaw.com
Ross D. Kulberg, Esq.
Fla. Bar No. 44398
Email: RKulberg@saavlaw.com
Glen M. Lindsay, Esq.
Fla. Bar No. 59200
Email: GLindsay@saavlaw.com
Service Email: eservice@saavlaw.com

Case 1:18-cv-23362-RNS  Document 110  Entered on FLSD Docket 07/24/2019  Page 91 of 175
Case 1:18-cv-23362-RNS  Document 68  Entered on FLSD Docket 04/12/2019  Page 74 of 76
Adderley v. 3ABN et. al.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically via the Court's ECF system upon all counsel listed in the attached service list on this 12th day of April 2019.

<div style="margin-left:40%">

**SAAVEDRA | GOODWIN**
*Attorneys for Plaintiff*
312 SE 17th Street, 2nd Floor
Fort Lauderdale, FL  33316
Tel: 954-767-6333
Fax:  954-767-8111

BY: ___/s/ Diane J. Zelmer_____
    Diane J. Zelmer, Esq.
    Fla. Bar No. 27251
    Email: DZelmer@saavlaw.com
    Ross D. Kulberg, Esq.
    Fla. Bar No. 44398
    Email: RKulberg@saavlaw.com
    Glen M. Lindsay, Esq.
    Fla. Bar No. 59200
    Email: GLindsay@saavlaw.com
    Service Email: eservice@saavlaw.com

</div>

Case No. 18-23362-CIV-SCOLA
Adderley v. 3ABN et. al.

## VERIFICATION OF SECOND AMENDED COMPLAINT
## BY DAVID LAWRENCE ADDERLEY

I, DAVID LAWRENCE ADDERLEY, declare under penalty of perjury that the foregoing is true and correct:

I am the Plaintiff in this lawsuit and am legally blind. The Second Amended Complaint has been read aloud to me in its entirety and I declare that the contents contained in the Second Amended Complaint are true and correct.

Executed this _____ day of April 2019.

_____
DAVID LAWRENCE ADDERLEY

STATE OF FLORIDA )
                 ) ss
COUNTY OF MIAMI-DADE )

I have read the foregoing document to DAVID LAWRENCE ADDERLEY on this ~~day of~~ _____ April 2019, who acknowledged and affirmed that the statements contained in the Second Amended Complaint are true and correct, and who is personally known to me or produced _____ as identification and did take an oath.

ROSS D. KULBERG
Notary Public - State of Florida
Commission # GG 020107
My Comm. Expires Aug 9, 2020
Bonded through National Notary Assn.

_____
Signature of Notary Public

_____
*Print Type/Stamp Name of Notary*

SEAL:

SG  SAAVEDRAGOODWIN

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

Case 1:18-cv-23362-RNS  Document 110  Entered on FLSD Docket 07/24/2019  Page 93 of 175
Case 1:18-cv-23362-RNS  Document 68  Entered on FLSD Docket 04/12/2019  Page 96 of 76
Adderley v. 3ABN et. al.

## SERVICE LIST

| | |
|---|---|
| Timothy W. Ridley, Esq.<br>M. Gregory Simpson, Esq.<br>***Co-Counsel for Defendants***<br>MEAGHER & GEER, P.L.L.P.<br>33 South Sixth Street, Suite 4400<br>Minneapolis, Minnesota 55402<br>Phone: (612) 337-9672<br>Email: tridley@meagher.com<br>Email: gsimpson@meagher.com | Raymond L. Robin, Esq.<br>D. David Keller, Esq.<br>***Counsel for Defendants***<br>KELLER LANDSBERG PA<br>Broward Financial Centre<br>500 East Broward Boulevard, Suite 1400<br>Fort Lauderdale, FL 33394<br>Telephone: (954) 761-3550<br>Email: raymond.robin@kellerlandsberg.com<br>Email: david.keller@kellerlandsberg.com<br>Email: rita.vanarsdale@kellerlandsberg.com |

# CHARITABLE REMAINDER UNITRUST AGREEMENT
## EIN 45-6449547

This Irrevocable Unitrust Agreement is made and entered into on _August 22_, 2011, by and between DAVID LAWRENCE ADDERLEY of Miami, Florida (Grantor) and DAVID LAWRENCE ADDERLEY of Miami, Florida, Trustee.

(A) UNITRUST PERCENTAGE. The Unitrust Percentage, which shall be used to determine the Unitrust Amount for purposes of this Agreement shall be Five percent (5.00%).

(B) UNITRUST RECIPIENT. The Unitrust Recipient for purposes of this Agreement shall be DAVID LAWRENCE ADDERLEY of Miami, Florida. Unitrust amounts calculated in accordance with methods specified in the Payment of Unitrust Amounts section in the Trust Provisions paragraph of this instrument shall be distributed to DAVID LAWRENCE ADDERLEY for life, subject to the last regular payment provision of Paragraph 1 below.

(C) SCHEDULE FOR CHARITABLE DISTRIBUTION. Any amounts which are to be distributed under this Agreement according to this Schedule for Charitable Distribution shall be distributed to qualified exempt charities as follows: 100% to Three Angels Broadcasting Netrowk, Inc. of West Frankfurt, Illinois, for unrestricted purposes.

(D) INITIAL TRUST CORPUS. The assets specified in Attachment "A" to this instrument have been transferred to the Trustee and shall constitute the initial trust corpus. This corpus and any additions to the corpus shall be administered by the Trustee as a single fund.

(E) TRUST PROVISIONS. The following provisions shall govern this Charitable Remainder Unitrust:

(1) PAYMENT OF UNITRUST AMOUNTS. During every taxable year of the Unitrust the Trustee shall pay the Unitrust Amount, which shall be determined according to Paragraph 2 hereof. Payments of Unitrust Amounts shall be made in equal quarterly installments, payable at the end of the selected period during each taxable year of the Unitrust. The Trustee shall pay the Unitrust Amounts to the Unitrust Recipient during the period indicated above. Notwithstanding other paragraphs herein, the obligation to pay Unitrust Amounts hereunder shall terminate with the last regular payment preceding the death of the last noncharitable beneficiary.

(2) DETERMINING THE UNITRUST AMOUNTS. If 50% or more of the initial trust assets qualify as 'Unmarketable Assets' under Section 664 and applicable regulations, defined as assets that are not cash, cash equivalents or assets that can be readily sold or exchanged for cash or cash equivalents, then for all purposes of this Agreement, the Unitrust Amount shall be an amount, paid quarterly, equal to the lesser of (a) the trust income for the respective taxable year (as defined in Section 643(b) of the Internal Revenue Code of 1986 and regulations thereunder) or (b) the Unitrust percentage (set forth above) multiplied by the net fair market value of the trust assets valued as of the first day of each taxable year, decreased under paragraph 5 or increased under paragraph 6 hereof. If trust income for any taxable year exceeds

EXHIBIT "A" to 2nd Amended Complaint

the amount determined under (b), the Unitrust Amount shall also include the excess income to the extent that the aggregate of the amounts paid to Recipient(s) in prior years is less than the Unitrust percentage of the aggregate net fair market value of trust assets for such years. The above payout method shall be used until the end of the earliest year in which occurs the sale of Unmarketable Assets to the extent that, immediately following such sale, the remaining Unmarketable Assets total less than 50% of the total fair market value of all trust assets. As of the January 1 immediately following such sale, there shall then be a change of payout method from the above income exception method to a Section 664(d)(2) payout method as described below. On that January 1 or upon the trust creation if the value of Unmarketable Assets is less than 50% immediately after the initial contribution, the Unitrust Amount shall thereafter for all purposes of this Agreement be an amount equal to the Unitrust percentage (set forth above) multiplied by the net fair market value of the trust assets valued as of the first day of each taxable year, decreased as provided in paragraph 5 or increased as provided in paragraph 6 hereof. Unitrust Amounts shall be paid in equal quarterly installments from income and, to the extent that income is not sufficient, from principal. Any net income of the Unitrust for any taxable year in excess of the Unitrust Amount shall be added to the corpus at the end of such year.

(3) TESTAMENTARY RIGHT OF REVOCATION. Under the terms of this Charitable Remainder Unitrust Agreement, The Grantor reserves no inter vivos or testamentary right of revocation with respect to the principal or accumulated income, as defined in Section 643(b) of the Internal Revenue Code and the Regulations under that section.

(4) ADJUSTMENTS IN EVENT OF REVALUATION. In the event that the fair market value of the assets constituting the corpus of the Unitrust, as determined by the initial valuation or any annual revaluation as provided hereinabove, is thereafter determined to be in error, the Unitrust Amounts which were paid to a Unitrust Recipient shall be adjusted within reasonable time after final determination is made as to correct fair market value of such corpus by refund to, or additional payment by, the said Unitrust as may be required so that only those Unitrust Amounts shall have been paid which would have been paid if the initial valuation or any annual revaluation had been correct.

(5) TAXABLE YEAR AND SHORT TAXABLE YEARS. The first taxable year shall commence on the effective date of this Agreement and shall end on December 31 of the same year. All subsequent taxable years shall commence on January 1 and, except for the final taxable year, shall end on December 31 of each respective year. During any taxable year of the Unitrust which is less than twelve months in duration, the Unitrust Amounts to be paid hereunder to the Unitrust Recipient shall be a fraction of the amount determined by multiplying the Unitrust Percentage by the fair market value of the assets constituting the corpus of such Unitrust at the beginning of that year, of which fraction the numerator shall be the number of days in such short year and of which the denominator is three hundred sixty-five (365) or, if February 29 is a day included in the numerator, of which the denominator is three hundred sixty-six (366).

(6) ADDITIONAL CONTRIBUTIONS. The Grantor and other persons may at any time contribute additional property to the Unitrust provided that such property is acceptable to the Trustee. If any additional contributions are made to the Unitrust after the initial contribution in trust, the Unitrust Amount, as determined under paragraph 2 above, for the taxable year in

which the assets are added to the trust shall be determined by multiplying the Unitrust Percentage by (a) the net fair market value of trust assets (excluding the assets so added and any income from, or appreciation on, such assets) and (b) that proportion of the value of the assets so added that was excluded under (a) which the number of days in the period which begins with the date of contribution and ends with the earlier of the last day of the taxable year or the date of the last regular payment pursuant to Paragraph 1 hereof, bears to the number of days in the period which begins on the first day of such taxable year and ends with the earlier of the last day of the taxable year or the date of the last regular payment pursuant to Paragraph 1 hereof. In the case where there is no valuation date after the time of contribution the assets so added shall be valued at the time of contribution.

In the event of an additional contribution to the Unitrust as a result of the death of an individual whose gross estate for Federal Estate Tax purposes includes the property passing to this charitable unitrust as such additional contribution, the Trustee's obligation to pay the Unitrust Amount with respect to such additional contribution shall commence with the date of death of that person, but payment of such Unitrust Amount may be deferred from such date of death to the end of the taxable year of the unitrust in which such additional contribution has been finally and completely distributed into the unitrust. Within a reasonable period after such time, the Trustee shall pay, in the case of an underpayment, or shall receive from the income recipient(s), in the case of an overpayment, the difference between (a) any Unitrust Amounts actually paid by the Trustee, plus interest, compounded annually, and (b) the Unitrust Amounts payable, plus interest on those amounts compounded annually. The rate of interest shall be the rate then specified by the Treasury Department for underpayments and overpayments of unitrust interests as stated in the Regulations under Code Section 664.

    (7) DISABILITY OF RECIPIENT. If at any time any noncharitable beneficiary to whom the Trustee is directed in this instrument to pay Unitrust Amounts is under legal disability, the Trustee may pay Unitrust Amounts over to the Recipient or for the Recipient's use to a guardian or to any adult person with whom the Recipient resides, without responsibility for expenditure of such Unitrust Amounts.

    (8) SPECIFIC HIPAA RELEASE AUTHORITY. Grantors intend for the Trustee to be treated as Grantors would be treated with respect to Grantors' rights regarding the use and disclosure of their individually identifiable health information and other medical records. This release authority applies to any information governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 USC 1320d and 45 CFR 160-164.

    Accordingly, Grantors hereby authorize any doctor, physician, medical specialist, psychiatrist, chiropractor, health-care professional, dentist, optometrist, health plan, hospital, hospice, clinic, laboratory, pharmacy or pharmacy benefit manager, medical facility, pathologist, or other provider of medical or mental health care, as well as any insurance company and the Medical Information Bureau Inc. or other health-care clearinghouse that has paid for or is seeking payment for such services, to give, disclose and release to the Trustee or successor Trustee and who is currently serving as such, without restriction, all of Grantors' individually identifiable health information and medical records regarding any past, present or future medical or mental health condition, including all information relating to the diagnosis and treatment of HIV/AIDS, sexually transmitted diseases, mental illness, and drug or alcohol abuse. Such

COPY

information may also be released to any person designated as a primary or successor agent or attorney-in-fact in a durable power of attorney which Grantors have executed, whether or not such person is presently serving as such, and to any person presently serving as trustee or named as a successor trustee in any revocable or irrevocable trust created by Grantors.

In determining whether a Grantor is incapacitated, all individually identifiable health information and medical records may be released to the Trsutee, including any written opinion relating to a Grantor's incapacity that the Trustee may have requested. This release authority applies to any information governed by HIPAA and applies even if that person has not yet begun serving as Trustee.

This authority given to Trustee shall supersede any prior agreement that Grantors may have made with their health-care providers to restrict access to or disclosure of their individually identifiable health information. The individually identifiable health information and other medical records given, disclosed, or released to Trustee may be subject to redisclosure by Trustee and may no longer be protected by HIPAA. The authority given to Trustee has no expiration date and shall expire only in the event that Grantors revoke such authority in writing and deliver it to their health-care provider.

(9) NO DEATH TAXES PAID FROM TRUST. No federal estate taxes, generation skipping transfer taxes, state death taxes or other estate, death or inheritance taxes (from now on called "death taxes") with respect to any party to this trust shall be allocated to or be recoverable from the trust. The Grantor imposes an obligation on Grantor's estate to pay death taxes from sources other than this trust and agree to so provide in Grantor's will or in another way. This provision may be enforced by a noncharitable beneficiary, the trustee or a charity, acting alone or together.

(10) TERMINATION OF UNITRUST. For all purposes of this instrument, the Unitrust, and its last taxable year, shall terminate upon the expiration of the last period during which Unitrust Amounts are to be paid hereunder, provided that such shall not be later than the last day of the period specified in Section 1.664-3(a)(5) of the Federal Income Tax Regulations. Anything herein to the contrary notwithstanding, the Unitrust shall not continue beyond the time of death of the Unitrust Recipient.

(11) DISTRIBUTION UPON TERMINATION OF THIS UNITRUST. Upon termination of the Unitrust all property constituting the Unitrust, including all income received or accrued but not theretofore distributed, shall be distributed as set forth in the Schedule for Charitable Distribution (which appears in Section C hereof).

(12) CONFORMITY TO FEDERAL TAX LAWS. With respect to the Unitrust herein established, in any conflict, Treasury regulations shall prevail over generally accepted fiduciary accounting principles and any inconsistent provisions of this Unitrust Agreement. Without limiting the generality of these provisions, if Treasury regulations shall specify a method or time of valuing the Unitrust's assets, or a way of making payments from the Unitrust, which differs from the provisions herein contained, this Unitrust Agreement shall be deemed amended to conform to the Treasury regulations. The assets of the Unitrust shall be valued, managed and invested consistent with the intent that the Unitrust be exempt from taxation, and that it shall be entitled to applicable charitable income, gift or estate tax deductions. Except for



the payment of the Unitrust Amounts to the Unitrust Recipient, the trustee is prohibited from engaging in any act of self- dealing as defined in Section 4941(d) of the Internal Revenue Code of 1986, from retaining any excess business holdings as defined in Section 4943(c) of the Code which would subject the trust to tax under Section 4943 of the Code, from making any investments which would subject the trust to tax under Section 4944 of the Code, and from making any taxable expenditures as defined in Section 4945(d) of the Code. The trustee shall make distributions at such time and in such manner as not to subject the trust to tax under Section 4942 of the Code. In addition, nothing in this trust instrument shall be construed to restrict the trustee from investing the trust assets in a manner which could result in the annual realization of a reasonable amount of income or gain from the sale or disposition of trust assets.

(13) DISTRIBUTIONS TO CHARITIES. No amount other than a Unitrust Amount shall be paid to or for the use of any person other than an organization described in each of Section 170(b)(1)(A), Section 170(c), Section 2055(a) and Section 2522(a) (hereafter 'qualified exempt' organizations). If a Grantor is a current income recipient, then a Grantor shall retain the right to direct the Trustee to distribute an undivided percentage of trust assets to qualified exempt charities in the Schedule For Charitable Distribution, on the last day of any trust taxable year. The adjusted basis for Federal tax purposes of any trust property which the trustee distributes in kind to charity must be fairly representative of the adjusted basis for such purposes of all trust property available for distribution on the date of distribution. All principal and income to be distributed under the Schedule for Charitable Distribution shall be distributed in the specified percentages only to those organizations that are qualified exempt. The share of any specified charity which is not a qualified exempt organization shall be distributed in proportion to the remaining percentages by the trustee to the remaining named qualified exempt charities, if any. If no specified organization is qualified exempt, the share shall be distributed to such qualified exempt organization or organizations as shall be selected by the trustee in the sole discretion of the trustee.

(14) ADMINISTRATION OF THE UNITRUST. The trustee is authorized to retain the Trust property, or may sell the property and reinvest in such property as the trustee shall deem advisable. The trustee shall not be required to diversify as to kind or amount. Unless prohibited by federal law, the trustee shall have the power to invest in zero coupon bonds, an annuity contract, an LLC, partnership or life insurance policy on the life of the Unitrust Recipient or Recipients, as applicable. Solely for the purpose of complying with Section 664 of the Code and applicable Treasury regulations, the trustee shall be authorized to amend this trust by written statement attached to this instrument and delivered to the current income recipients. In managing the trust assets, the trustee shall have the power to select and compensate professional advisors or administrators and to delegate appropriate trust powers to them. In addition, solely to the extent that these powers do not conflict with other trust provisions, the Trustee is authorized the trust powers specified by law.

(15) ACCOUNTS AND REPORTS. The Trustee shall keep current accounts accurately reflecting the position of, and the receipts, disbursements and other changes in, the income and corpus of the trust, which shall be available for inspection during all reasonable business hours by any Unitrust Recipient currently receiving payments of Unitrust Amounts hereunder or his duly authorized representative. In addition, the Trustee as of the end of each

COPY

taxable year of the trust and as of any other date the Trustee deems beneficial, shall keep the said Unitrust Recipient or his duly authorized representative, informed of the contents of such reports by accurate written statements. To the extent permitted by law, the Trustee shall not be required to provide reports or information to remainder recipients prior to trust termination.

(16) TRUSTEE. DAVID LAWRENCE ADDERLEY of Miami, Florida, shall serve as Trustee of the Unitrust herein established. If for any reason DAVID LAWRENCE ADDERLEY is unable or unwilling to serve as Trustee, then Three Angels Broadcasting Network, Inc. of West Frankfurt, Illinois shall serve as Successor Trustee. If no Independent Trustee as defined under Sections 664, 674 and 672 of the Code is acting with respect to this trust and the trust holds any asset that does not have a readily ascertainable fair market value or holds any insurance contract or annuity contract, then an Independent Special Trustee as defined under the above Code sections shall be appointed by the Trustee in a written document referring to this paragraph. The Independent Special Trustee shall have sole responsibility for valuation of assets without readily ascertainable fair market value and shall make all decisions regarding withdrawals, surrender, options, elections, allocations to income or principal, and dispositions with respect to any insurance or annuity contract. The Independent Special Trustee shall have no powers other than those specified in this paragraph. A Trustee shall be entitled to compensation for services hereinunder according to the Trustee's schedule of fees in effect at the time such services are rendered. No bond or security shall be required of the Trustee in any jurisdiction. The Trustee shall not be required to file an inventory or annual report with any court with proper jurisdiction. If at any time a trustee is a corporation, the position of trustee may be assumed by a successor corporation with trust powers. A successor trustee shall not be required to examine the administration or actions of any prior trustee and shall not be liable for such administration or actions.

(17) GOVERNING LAW. This Agreement and all rights and obligations under it shall be determined in accordance with the law of the State of Florida except to the extent that such may be in conflict with United States laws and regulations with respect to income, estate and gift taxes which shall govern in the event of such conflict.

Grantors agree to hold the Trustee harmless for any defects of title, any and all environmental cleanup, or any action based on an environmental cleanup, for the property described in Attachment "A".

This Trust is dedicated to the memory of WELLINTON LEON ADDERLEY, the beloved father of DAVID LAWRENCE ADDERLEY.

COPY

In Witness Whereof, the Grantor has signed this Agreement and delivered the corpus of the Trust specified in Attachment "A" and as the Trustee has accepted this Trust by his signature.

I hereby acknowledge receipt in trust of the corpus specified in Attachment 'A' to this Charitable Trust.

_____   Date _____

DAVID LAWRENCE ADDERLEY, Grantor/Trustee                    8/ -22-11

STATE OF FLORIDA
COUNTY OF _Miami - Dade_

On _Aug 22_, 2011, before me, _Bessie M Tomlin_ personally appeared DAVID LAWRENCE ADDERLEY, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity.   I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Bessie M. Tomlin_
NOTARY PUBLIC
My Commisison expires: _8/10/2013_

SEAL



BESSIE M. TOMLIN
NOTARY PUBLIC
STATE OF FLORIDA
Comm# DD0915620
Expires 8/10/2013

ATTACHMENT A

SCHEDULE OF PROPERTY TRANSFERRED BY DAVID LAWRENCE ADDERLEY
PURSUANT TO HIS AGREEMENT AS GRANTOR.

1. $10.00
2. Real property located on Long Island, Bahamas

Approved on ___22___ day of __August_____, 2011.

_____
DAVID LAWRENCE ADDERLEY, Grantor

## NOTICE OF RESIGNATION OF TRUSTEE

I, **DAVID LAWRENCE ADDERLEY**, Grantor, also currently serving as Trustee of the DAVID LAWRENCE ADDERLEY CHARITABLE REMAINDER UNITRUST dated August 22, 2011, hereby give notice of my **RESIGNATION AS TRUSTEE** of that trust effective the date of this notice.

Pursuant to ARTICLE E, Paragraph 16 found on Page 6 of said trust agreement, as the Grantor of said trust, I appoint THREE ANGELS BROADCASTING NETWORK, INC. as the Trustee, to serve in that capacity from this day forward.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal this 24ᵀᴱ day of JANUARY , 2012.

_____ (Seal)
DAVID LAWRENCE ADDERLEY,
Grantor/Current Trustee

Signed, sealed, published, and declared by DAVID LAWRENCE ADDERLEY as and for his Notice of Resignation as Trustee in our presence and we, at his request and in his presence, and in the presence of each other, have subscribed our names as witnesses the day and year first above written.

_____
Witness (Signature)

MAXINE FERGUSON
Witness (Print Name)

25 S.E. 2ᴺᴰ Ave,
Street

Miami          FL          33131
City          State          Zip

_____
Witness (Signature)

Dulce Green
Witness (Print Name)

25 S.E. 2ᴺᴰ Ave
Street

Miami          FL          33131
City          State          Zip

COPY

EXHIBIT "B" to 2nd Amended Complaint

Case 1:18-cv-23362-RNS   Document 112   Entered on FLSD Docket 07/24/2019   Page 103 of
175
Case 1:18-cv-23362-RNS   Document 68-2   Entered on FLSD Docket 04/12/2019   Page 2 of 2

## AFFIDAVIT

STATE OF FLORIDA

COUNTY OF DADE

      Before me, a notary public in the above state and county, on this day personally appeared the persons whose names are subscribed below, known to me to be the Grantor and witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me duly sworn, the Grantor declared to me and to the said witnesses in my presence that said instrument is the Grantor's Notice of Resignation as Trustee and that the Grantor has willingly made and executed it as the Grantor's free act and deed for the purposes therein expressed. The witnesses, each upon oath, stated to me in the presence and hearing of the Grantor that the Grantor has declared to them that the instrument is the Grantor's Notice of Resignation as Trustee and that the Grantor executed same as such and wanted each of them to sign it as a witness, and upon oath each witness stated further that the witness did sign the same as witness in the presence of the Grantor and at the Grantor's request; that the Grantor was at that time 18 years of age or over and was of sound mind; and that each of said witnesses was then at least 18 years of age.

_____
Witness

_____
DAVID LAWRENCE ADDERLEY, Grantor/Trustee

_____
Witness

      Subscribed and sworn to before me by DAVID LAWRENCE ADDERLEY, Grantor, and by MAXINE FERGUSON and DULCIE GREEN, the witnesses,
      (Print Name)      (Print Name)
on JANUARY 24, 2012, all of whom personally appeared before me.
      The Grantor, DAVID LAWRENCE ADDERLEY, is (circle one) personally known to me, have a credible witness or have produced MILITARY ET.D. as identification.
      MAXINE FERGUSON, the witness, is (circle one) personally known to me, has a credible witness or who has produced _____ as identification.
      DULCIE GREEN, the witness, is (circle one) personally known to me, has a credible witness or who has produced _____ as identification.

      DATED this 24TH day of JANUARY, 2012.

(SEAL)

Notary Public
Print Name CHANELLE P. BROWN
      Consul
My commission expires: _____

COPY

## ACCEPTANCE OF APPOINTMENT AS TRUSTEE

By my signature below, I, _James W. Gilley_, authorized representative of

THREE ANGELS BROADCASTING NETWORK, INC., hereby accept the appointment as

Trustee of the DAVID LAWRENCE ADDERLEY CHARITABLE REMAINDER UNITRUST

dated August 22, 2011, as amended, agree to serve under the terms thereof, and accept the trust

property contained therein

IN WITNESS WHEREOF, the Trustee has hereunto set his/her hand and seal this _26th_

day of _January_, 2012.

THREE ANGELS BROADCASTING NETWORK, INC.,

By: _James W. Gilley_ _____ (Seal)
Authorized Representative _____ (print name)

Signed, sealed, published, and declared by _James W. Gilley_, as

authorized representative of THREE ANGELS BROADCASTING NETWORK, INC. as and for

its Acceptance of appointment as Trustee in our presence and we, at his request and in his

presence, and in the presence of each other, have subscribed our names as witnesses the day and

year first above written.

_Nellie Stevenson_     _3391 Charley Good Rd._
Witness (Signature)        Street

_Nellie Stevenson_    _West Frankfort, IL 62896_
Witness (Print Name)       City      State     Zip

_Roy G. Hunt_     _3391 Charley Good RD_
Witness (Signature)        Street

_Roy G. Hunt Jr_    _West Frankfort, IL 62896_
Witness (Print Name)       City      State     Zip

COPY

**EXHIBIT "C" to 2nd Amended Complaint**

## AFFIDAVIT

STATE OF _Illinois_
COUNTY OF _Williamson_

      Before me, a notary public in the above state and county, on this day personally appeared the persons whose names are subscribed below, known to me to be the Trustee and witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and, all of said persons being by me duly sworn, the Trustee declared to me and to the said witnesses in my presence that said instrument is the Trustee's Acceptance of appointment as Trustee and that the Trustee has willingly made and executed it as the Trustee's free act and deed for the purposes therein expressed. The witnesses, each upon oath, stated to me in the presence and hearing of the Trustee that the Trustee has declared to them that the instrument is the Trustee's Acceptance of Appointment as Trustee and that the Trustee executed same as such and wanted each of them to sign it as a witness, and upon oath each witness stated further that the witness did sign the same as witness in the presence of the Trustee and at the Trustee's request; that the Trustee was at that time 18 years of age or over and was of sound mind; and that each of said witnesses was then at least 18 years of age.

THREE ANGELS BROADCASTING NETWORK, INC., Trustee

_Mollie Steenson_
Witness

by: _James W. Gilley_ (print name)
        Authorized Representative

_Roy G. Hunt Jr_
Witness

      Subscribed and sworn to before me by _James Gilley_, authorized representative of THREE ANGELS BROADCASTING NETWORK, INC., Trustee, and by _Mollie Steenson_ and _Roy Hunt_, the witnesses, on
   (Print Name)           (Print Name)
_January_ _26_, 2012, all of whom personally appeared before me. _James Gilley_, authorized representative of the Trustee, THREE ANGELS BROADCASTING NETWORK, INC., is (circle one) personally known to me, has a credible witness or has produced _____ as identification. _Mollie Steenson_, the witness, is (circle one) personally known to me, has a credible witness or who has produced _____ as identification. _Roy Hunt_, the witness, is (circle one) personally known to me, has a credible witness or who has produced _____ as identification.

      DATED this _26_ day of _January_, 2012.

_Lynda E. Welch_
Notary Public
Print Name _Lynda E. Welch_
My commission expires: _05/04/2014_

OFFICIAL SEAL
LYNDA E. WELCH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/04/14

COPY



# Registrar General's Department
## Deeds and Documents Section

# RECORDING PAGE



000226191

| | |
|---|---|
| Received From: | **LEWIS & LONGLEY** |
| Volume/Page: | Volume **11697** Page **10-19** |
| Instrument Type: | **Conveyance** |
| General Description: | **Conveyance** |
| Recording Date/Time: | **12 September 2012   13.22.18** |
| Instrument Number: | **226191** |
| Control Number: | **20475161** |
| Receipt Number: | **735924** |
| Lodging Date/Time: | **12 September 2012   13.22.18** |
| Consideration: | **$50,000.00.** |
| From/Of Parties: (first entry) | **Adderley, David Lawrence** |
| To Parties: (first entry) | **Adderley, David Lawrence (Irrevoc Unitru** |
| Land Details: (first entry) | **Long Island   Long Island** |
| Entry Date/Time/User: | **28 September 2012   17.55.38   CBRENNEN** |

Received by Customer:_____ Date:_____

Document Scanned By:_____ Date:_____ Verified by:_____ Date:_____

Rec. Page Scanned By:_____ Date:_____ Verified by:_____ Date:_____



<span style="color:red">**EXHIBIT "D" to 2nd Amended Complaint**</span>



**Registrar General's Department**
**Deeds and Documents Section**

# RECORDING PAGE

| | |
|---|---|
| Received From: | **LEWIS & LONGLEY** |
| Volume/Page: | Volume **11697** Page **10-19** |
| Instrument Type: | **Conveyance** |
| General Description: | **Conveyance** |
| Recording Date/Time: | **12 September 2012  13.22.18** |
| Instrument Number: | **226191** |
| Control Number: | **20475161** |
| Receipt Number: | **735924** |
| Lodging Date/Time | **12 September 2012   13.22.18** |
| Consideration: | **$50,000.00.** |
| From/Of Parties: (first entry) | **Adderley, David Lawrence** |
| To Parties: (first entry) | **Adderley, David Lawrence (Irrevoc Unitru** |
| Land Details: (first entry) | **Long Island   Long Island** |
| Entry Date/Time/User: | **28 September 2012  17.55.38   CBRENNEN** |

## *Customer Copy*



**REGISTRAR GENERAL DEPARTMENT**
**RODNEY E. BAIN BUILDING**
**PARLIAMENT & SHIRLEY STREETS**
**#50 SHIRLEY STREET**
**NASSAU, THE BAHAMAS**
**TELEPHONE: (242) 322-3376-8**
**322-8038, 325-1251, 322-7841**
**FAX: (242) 322-5553**

# INSTRUMENT DATA FORM

This document should be completed and attached to each deed or document lodged for recording at the Office of the Registrar General. The purpose of this form is to provide the information required to create the index for the deed or document in the Registrar General's database. Therefore, it is extremely important that you accurately complete and confirm the information provided before submitting this form with your deed or document for recording. The Registrar General accepts no responsibility for the accuracy of the information provided on this form.

Date Document Submitted for Lodging      11th September, 2012

Person company or firm submitting document:

| | |
|---|---|
| Name: | Lewis & Longley |
| Contact Person: | J. Denise Lewis-Johnson |
| Address: | East Bay Shopping Centre, East Bay Street |
| | P.O. Box CB-11901, Nassau, Bahamas |
| Telephone: | (242) 394-5560-2 |
| Email Address: | lewisjohnson@bahamas.net.bs |

| | |
|---|---|
| Document/Instrument Type (i.e. conveyance, mortgage, declaration): | **Conveyance** |
| Number of pages of deed or document including affidavits, plans, backing sheet)* | Eleven (11) |
| Consideration: | 50,000 |
| From: | **David Lawrence Adderley** |
| To: | **Irrevocable Unitrust of David Lawrence Adderley** |
| Island: | Long Island |
| District: | Peter Deans |
| Subdivision: | |
| Block: | |
| Lot**: | |
| | |
| Unit: | ----------- |
| Name of Condominium: | ----------- |
| Condominium Unit Number: | --------- |

☐ Check the Box if Plan Attached

\* This form should not be counted in determining the number of pages in a deed or document. It is being provided for informational purposes only.
\*\* Where there is no lot number or the space provided above is insufficient to describe the lot, please attach to this form a full description of the lot.

**COMMONWEALTH OF THE BAHAMAS**
New Providence

VOL. **11697** PAGE **010**

DATED the 30th day of December, A.D., 2011

*For Use by Registrar General's Department only.*

Lodged For Record by:

*Lewis & Longley*

---

**DAVID LAWRENCE ADDERLEY**

**TO**

**IRREVOCABLE UNITRUST OF
DAVID LAWRENCE ADDERLEY**

**CONVEYANCE**

**ALL THAT** piece parcel of land situate in the area
Known as Peter Deans in the Island of Long Island
Comprising 25 acres more or less.

Consideration: B$50,000.00
Stamp Duty:   B$ 3,000.00

**LEWIS & LONGLEY**
Chambers
East Bay Shopping Centre
East Bay Street
Nassau, Bahamas

---

This  12  Day of  Sept  A.D. 20 12

_____
(*for*) Registrar General

Receipt Number: 735924 .

11697

**COMMONWEALTH OF THE BAHAMAS
REGISTRAR GENERAL'S DEPARTMENT**

I certify the within to be duly proved and recorded in
book pages  10  to  19  in
accordance with the provisions of the Registration
of Records Act, Chapter 187 this  12th day of
September 20 12

REGISTRAR GENERAL

Case 1:18-cv-23362-RNS   Document 61-9   Entered on FLSD Docket 04/22/2019   Page 5 of 25



PER/12/489T

## FORM 4

## THE INTERNATIONAL PERSONS LANDHOLDING ACT, 1993

(S. I. No. 61 of 2007)

## PERMIT

## ISSUED BY THE INVESTMENTS BOARD

———————————————

TO:   **THREE ANGELS BROADCASTING NETWORK INC. (3ABN)**

Permission is hereby granted you to acquire/hold the following property to wit: -

**ALL THAT PIECE PARCEL OF LAND SITUATE IN THE AREA KNOWN AS PETER DEANS, CLARENCE TOWN, LONG ISLAND, THE BAHAMAS (SEE DESCRIPTION ATTACHED)**

**FUTURE DEVELOPMENT**

for use as/for: ...........................................................................................................................................

**DAVID R. DAVIS**

————————————————————
Secretary
Investments Board

31ˢᵗ August, 2012

————————————————————
DATE

VOL. **11697** PAGE **012**

**ALL THAT** piece or parcel of land situate in the area known as Peter Deans in the Island of Long Island one of the Bahama Islands comprising Twenty-five (25) acres more or less being One-half (1/2) of a parcel of land purchased by the Donor's father Lawrence Wellington Adderley from Minna Esteline Minns and John Ramsay which said piece or parcel of land is bounded on the North by the Sea on the East by land the property of the Donor on the South by land the property of the Donor and on the West by land known as Turtle Cove.

DAVID R. DAVIS
SECRETARY
INVESTMENTS BOARD
31ˢᵗ August, 2012
DATE

3

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**

I, DULCIE GREEN of the City of Miami in the

State of Florida one of the States of the United States of America

make oath and say that I was present and saw **DAVID LAWRENCE**

**ADDERLEY** of the City of Miami in the State of Florida one of the

States of the United States of America aforesaid  sign seal and as and

for his  Act and Deed execute and deliver the annexed Indenture of

Conveyance dated the 30th day of December, A.D., 2011 for

the purposes therein mentioned and that I subscribed my name as the

witness to the due execution thereof.

**SWORN TO** this 24TH day )

of JANUARY A.D. 2012 )

)

Before me,

CHANELLE P. BRU...

*Consul*

~ **NOTARY PUBLIC**

VOL5   11697 PAGE 014

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**



Attorney-at-Law
Nassau, N.P., The Bahamas

Gov't Stamp Duty Paid
Amount $3,000
Received
Date 16/3/14
Treasurer W.Bain

THIS INDENTURE OF CONVEYANCE is made the 30ᵗʰ day of December in the year of Our Lord Two Thousand and Eleven **BETWEEN DAVID LAWRENCE ADDERLEY** of the City of Miami in the State of Florida one of the States of the United States of America (hereinafter called "the Vendor") of the one part **AND the IRREVOCABLE UNITRUST OF DAVID LAWRENCE ADDERLEY** of the said City of Miami aforesaid (hereinafter called "the Purchaser") of the other part.

**W H E R E A S**: -

(A)    By an Indenture of Conveyance dated the 15ᵗʰ day of March, A.D., 1966 and made between Wellington Leon Adderley   of the one part and the Vendor of the other part and now of record in the Registry of Records in the City of Nassau in the  Island of New Providence one of the Islands of The Commonwealth of The Bahamas in Volume 986 at pages 386 to 390  (hereinafter called the said Indenture) the Vendor became seised  for an estate in fee simple in possession subject as hereinafter mentioned but otherwise free from encumbrances of the hereditaments hereinafter described in the Schedule hereto (hereinafter referred to as "the said hereditaments")

(B)    The Vendor  has  agreed with the Purchaser  for the sale to the Purchaser of the said hereditaments for a like estate in possession subject as hereinbefore mentioned but otherwise free from encumbrances for the sum of Fifty Thousand Dollars (B$50,000.00) in the currency of the said Commonwealth (hereinafter referred to as "the said currency").

**NOW THIS INDENTURE WITNESSETH as follows: -**

1.    In pursuance of the said agreement and consideration of the said sum of Fifty Thousand Dollars (B$50,000.00) in the said currency now paid to the Vendor by the Purchaser (the receipt whereof the Vendor hereby acknowledges) the Vendor **AS BENEFICIAL OWNER**

VOL. **11697** PAGE **015**

2

hereby grants and conveys unto the Purchaser **ALL** the said hereditaments **TOGETHER WITH** the appurtenances thereunto belonging **AND TOGETHER WITH** a Thirty (30) foot right of way in a straight line from the main public road to the Eastern boundary of that half of the Fifty (50) acre parcel formerly owned by the said Wellington Leon Adderley and thence within the Southern boundary of the said half of the Fifty (50) acre parcel formerly owned by the said Wellington Leon Adderley to the Eastern boundary of the said hereditaments **TO HOLD** the same unto and to the use of the Purchaser in fee simple absolute.

### THE SCHEDULE HEREINBEFORE REFERRED TO

**ALL THAT** All that piece or parcel of land situate in the area known as Peter Deans in the Island of Long Island one of the **Bahama Islands** comprising **Twenty-five (25) acres** more or less being one-half (1/2) of a parcel of land purchased by Lawrence Wellington Adderley from Minna Esteline Minns and John Ramsay which said piece or parcel of land is bounded on the North by the sea on the East by land formerly the property of the said Wellington Leon Adderley on the South by land the property of the said Wellington Leon Adderley and on the West by land known as Turtle Cove.

**IN WITNESS WHEREOF** the Vendor has hereunto set his hand and seal the day and year first hereinbefore mentioned.

**SIGNED SEALED** and **DELIVERED** by the said **DAVID LAWRENCE ADDERLEY** in the presence of:

**Vol.** 11695 **PAGE** 016



## COMMONWEALTH OF THE BAHAMAS

### New Providence

    I, **DAVID LAWRENCE ADDERLEY** of the City of Miami in the State of Florida one of the States of the United States of America, make oath and say as follows:-

1. That I am a Bahamian Citizen by birth having been born to Bahamian married parents on the 21st day of November, 1937. Attached hereto is a true copy of pages 1, 2 and 3 of my Bahamian Passport No. ER0111733.

2. That I am still a Bahamian Citizen having never renounced nor been deprived of my Bahamian Citizenship.

3. That I do not hold and have never held the hereditaments and premises described in the annexed Indenture of Conveyance or any estate or interest therein either as trustees or nominees for a foreign person or persons defined in The International Persons Landholdings Act, 1993 of the said Commonwealth or for the benefit of such a foreign persons as provided by the said Act.

4. That the contents hereof are correct and true.


**SWORN TO** at ~~Nassau~~ Miami, )
~~Bahamas~~ Florida this 3rd day )
of May, A.D., 2012 )

NOTARY PUBLIC
**JOY A. NEWBOLD**
**Vice-Consul**

VOL. 11697 PAGE 017



VOL. 11697 PAGE 018



VOL. D C 1169 PAG: 0788





**Registrar General's Department
Deeds and Documents Section**

## RECORDING PAGE



000226197

| | |
|---|---|
| Received From: | **LEWIS & LONGLEY** |
| Volume/Page: | Volume **11697** Page **20-29** |
| Instrument Type: | **Conveyance** |
| General Description: | **Conveyance** |
| Recording Date/Time: | **12 September 2012 13.22.18** |
| Instrument Number: | **226197** |
| Control Number: | **20475170** |
| Receipt Number: | **735924** |
| Lodging Date/Time: | **12 September 2012 13.22.18** |
| Consideration: | **$50,000.00.** |
| From/Of Parties: (first entry) | **Adderley, David Lawrence** |
| To Parties: (first entry) | **Adderley, David Lawrence (Irrevoc Unitru** |
| Land Details: (first entry) | **Long Island Clarence Town** |

Entry Date/Time/User: **01 October 2012 10.30.28 CBRENNEN**



Received by Customer:_____ Date:_____

Document Scanned By:_____ Date:_____ Verified by:_____ Date:_____

Rec. Page Scanned By:_____ Date:_____ Verified by:_____ Date:_____

<span style="color:red">EXHIBIT "E" to 2nd
Amended Complaint</span>



**Registrar General's Department**
**Deeds and Documents Section**

# RECORDING PAGE

| | |
|---|---|
| Received From: | **LEWIS & LONGLEY** |
| Volume/Page: | Volume **11697** Page **20-29** |
| Instrument Type: | **Conveyance** |
| General Description: | **Conveyance** |
| Recording Date/Time: | **12 September 2012   13.22.18** |
| Instrument Number: | **226197** |
| Control Number: | **20475170** |
| Receipt Number: | **735924** |
| Lodging Date/Time | **12 September 2012   13.22.18** |
| Consideration: | **$50,000.00.** |
| From/Of Parties:<br>(first entry) | **Adderley, David Lawrence** |
| To Parties:<br>(first entry) | **Adderley, David Lawrence (Irrevoc Unitru** |
| Land Details:<br>(first entry) | **Long Island   Clarence Town** |

Entry Date/Time/User: **01 October 2012   10.30.28   CBRENNEN**

## *Customer Copy*



**REGISTRAR GENERAL DEPARTMENT**
· RODNEY E. BAIN BUILDING
PARLIAMENT & SHIRLEY STREETS
#50 SHIRLEY STREET
NASSAU, THE BAHAMAS
TELEPHONE: (242) 322-3376-8
322-8038, 325-1251, 322-7841
FAX: (242) 322-5553

# INSTRUMENT DATA FORM

This document should be completed and attached to each deed or document lodged for recording at the Office of the Registrar General. The purpose of this form is to provide the information required to create the index for the deed or document in the Registrar General's database. Therefore, it is extremely important that you accurately complete and confirm the information provided before submitting this form with your deed or document for recording. The Registrar General accepts no responsibility for the accuracy of the information provided on this form.

Date Document Submitted for Lodging          11th September, 2012

Person company or firm submitting document:

| | |
|---|---|
| Name: | Lewis & Longley |
| Contact Person: | J. Denise Lewis-Johnson |
| Address: | East Bay Shopping Centre, East Bay Street |
| | P.O. Box CB-11901, Nassau, Bahamas |
| Telephone: | (242) 394-5560-2 |
| Email Address: | lewisjohnson@bahamas.net.bs |

| | |
|---|---|
| Document/Instrument Type (i.e. conveyance, mortgage, declaration): | **Conveyance** |
| Number of pages of deed or document including affidavits, plans, backing sheet)* | Eleven (11) |
| Consideration: | 50,000 |
| From: | **David Lawrence Adderley** |
| To: | **Irrevocable Unitrust of David Lawrence Adderley** |
| Island: | Long Island |
| District: | Deans Settlement |
| Subdivision: | |
| Block: | |
| Lot**: | |
| | |
| Unit: | ----------- |
| Name of Condominium: | ------------ |
| Condominium Unit Number: | --------- |

☐ Check the Box if Plan Attached

\* This form should not be counted in determining the number of pages in a deed or document. It is being provided for informational purposes only.
\*\* Where there is no lot number or the space provided above is insufficient to describe the lot, please attach to this form a full description of the lot.

| | |
|---|---|
| **COMMONWEALTH OF THE BAHAMAS**<br>New Providence<br><br>VOL. **11697** PAGE **020**<br><br>DATED the 30th day of December, A.D., 2011 | *For Use by Registrar General's Department only.*<br><br>**Lodged For Record by:**<br><br>_Lewis & Longley_ |

**DAVID LAWRENCE ADDERLEY**

**TO**

**IRREVOCABLE UNITRUST OF
DAVID LAWRENCE ADDERLEY**

**CONVEYANCE**

ALL THAT piece parcel or tract of land situate at the Settlement of Deans approximately 4 miles West of the Settlement of Clarence Town in the Island of Long Island, Bahamas.

Consideration: B$50,000.00
Stamp Duty:   B$ 3,000.00

11697

**LEWIS & LONGLEY**
Chambers
East Bay Shopping Centre
East Bay Street
Nassau, Bahamas

This 12 Day of Sept A.D. 20 12

_(signature)_

*(for)* Registrar General

Receipt Number: 73 5924

**COMMONWEALTH OF THE BAHAMAS
REGISTRAR GENERAL'S DEPARTMENT**

I certify the within to be duly proved and recorded in book pages 20 to 29 in accordance with the provisions of the Registration of Records Act, Chapter 187 this 12th day of September 2012

REGISTRAR GENERAL

VOL. **11697** PAGE **021**



PER/12/490T

## FORM 4

## THE INTERNATIONAL PERSONS LANDHOLDING ACT, 1993

(S. I. No. 61 of 2007)

## PERMIT

## ISSUED BY THE INVESTMENTS BOARD

---

TO: **THREE ANGELS BROADCASTING NETWORK INC. (3ABN)**

Permission is hereby granted you to acquire/hold the following property to wit: -

**ALL THAT PIECE PARCEL OR TRACT OF LAND SITUATE AT THE SETTLEMENT OF DEANS APPROXIMATELY FOUR MILES WEST OF CLARENCE TOWN, LONG ISLAND, THE BAHAMAS (SEE DESCRIPTION ATTACHED)**

for use as/for: **FUTURE DEVELOPMENT** ...........................................................................................................................

**DAVID R. DAVIS**

Secretary
Investments Board

31ˢᵗ August, 2012

DATE

VOL. **11697** PAGE **022**

**ALL THAT** piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town in the Island of Long Island and bounded as follows on the North by the Sea and running thereon at high water mark One Thousand and Ten and One hundredths (1010.01) feet more or less on the East by land the property of the Donor but now about to be conveyed by the Donor to himself and the Donee jointly and running thereon One Thousand and Ninety-six and Eighty-three hundredths (1096.83) feet on the South by land the property of the Donor but now about to be conveyed by the Donor to himself and the Donee jointly and running thereon One thousand Two hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and on the West by land now or formerly the property of one H. L. Major and running thereon One thousand and Fifteen and Forty-one hundredths (1015.41) feet.

DAVID R. DAVIS
SECRETARY
INVESTMENTS BOARD

31st August, 2012
DATE

3

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**

I, DULCIE GREEN of the City of Miami in the State

of Florida one of the States of the United States of America  make

oath and say that I was present and saw **DAVID LAWRENCE**

**ADDERLEY** of the City of Miami in the State of Florida one of the

States of the United States of America aforesaid  sign seal and as

and for his    Act and Deed execute and deliver the annexed

Indenture of Conveyance dated the            day of            ,

A.D., 2011 for the purposes therein mentioned and that I subscribed

my name as the witness to the due execution thereof.


**SWORN TO** this 24TH day )

of JANUARY A.D. 2012        )

                            )_____

Before me,



**CHANELLE P. BROWN**

**Consul**

**NOTARY PUBLIC**

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**

Gov't Stamp Duty Paid

Amount $3,000

Receipt 153348

Date 16/3/12

Treasurer

THIS INDENTURE OF CONVEYANCE is made the     day of     in the year of Our Lord Two Thousand and Eleven **BETWEEN DAVID LAWRENCE ADDERLEY** of the City of Miami in the State of Florida one of the States of the United States of America (hereinafter called "the Vendor) of the one part **AND the IRREVOCABLE UNITRUST OF DAVID LAWRENCE ADDERLEY** of the said City of Miami aforesaid   (hereinafter called "the Purchaser") of the other part.

**W H E R E A S** : -

(A)    By an Indenture of Conveyance dated the 21st day of May, A.D., 1971 and made between Wellington Leon Adderley   of the one part and the Vendor of the other part and now of record in the Registry of Records in the City of Nassau in the   Island of New Providence one of the Islands of The Commonwealth of The Bahamas in Volume 2330 at pages 452 to 456 (hereinafter called the said Indenture) the Vendor  became seised  for an estate in fee simple in possession subject as hereinafter mentioned but otherwise free from encumbrances of the hereditaments hereinafter described in the Schedule hereto (hereinafter referred to as "the said hereditaments")

(B)    The Vendor  has  agreed with the Purchaser  for the sale to the Purchaser of the said hereditaments for a like estate in possession subject as hereinbefore mentioned but otherwise free from encumbrances  for the sum of Fifty  Thousand Dollars (B$50,000.00) in the currency of the said Commonwealth (hereinafter referred to as "the said currency").

**NOW THIS INDENTURE WITNESSETH** as follows: -

1.     In pursuance of the said agreement and consideration of the said sum of Fifty Thousand Dollars (B$50,000.00) in the said currency now paid to the Vendor by the Purchaser (the receipt whereof the Vendor hereby  acknowledges) the Vendor **AS BENEFICIAL OWNER** hereby grants and conveys unto the Purchaser **ALL**  the said

Attorney-at-Law
Nassau, N.P., The Bahamas

2

hereditaments **TOGETHER WITH** the appurtenances thereunto belonging **TO HOLD** the same unto and to the use of the Purchaser in fee simple absolute.

### THE SCHEDULE HEREINBEFORE REFERRED TO

**ALL THAT** piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town on the Island of Long Island and bounded as follows on the **North** by the Sea running thereon at high water mark One thousand and Ten and One hundredths (1010.01) feet more or less on the **East** by land formerly the property of Wellington Leon Adderley but conveyed by the said Wellington Leon Adderley to himself and the Vendor jointly and running thereon One thousand and Ninety-six and Eighty-three hundredths (1096.83) feet on the **South** by land formerly the property of the said Wellington Leon Adderley and conveyed by the the said Wellington Leon Adderley to himself and the Vendor jointly and running thereon One thousand Two hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and on the **West** by land now or formerly the property of one H. L. Major and running thereon One thousand and Fifteen and Forty-one hundredths (1015.41) feet which said piece parcel or tract of land has such position boundaries shape marks and dimensions as are shown on the diagram or plan attached to the said Indenture and is thereon delineated on that part of the said diagram or plan which is coloured Pink.

**IN WITNESS WHEREOF** the Vendor has hereunto set his hand and seal the day and year first hereinbefore mentioned.

**SIGNED SEALED and DELIVERED** by the said **DAVID LAWRENCE ADDERLEY** in the presence of:

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**



       I, **DAVID LAWRENCE ADDERLEY** of the City of Miami in the State of Florida one of the States of the United States of America, make oath and say as follows:-

1. That I am a Bahamian Citizen by birth having been born to Bahamian married parents on the 21st day of November, 1937. Attached hereto is a true copy of pages 1, 2 and 3 of my Bahamian Passport No. ER0111733.

2. That I am still a Bahamian Citizen having never renounced nor been deprived of my Bahamian Citizenship.

3. That I do not hold and have never held the hereditaments and premises described in the annexed Indenture of Conveyance or any estate or interest therein either as trustees or nominees for a foreign person or persons defined in The International Persons Landholdings Act, 1993 of the said Commonwealth or for the benefit of such a foreign persons as provided by the said Act.

4. That the contents hereof are correct and true.

**SWORN TO** at ~~Nassau,~~ Miami  )

~~Bahamas~~ Flo,, da this   2+ᴸ  day )

of May, A.D., 2012      )

 

~~NOTARY PUBLIC~~

*ROY A. NEWBOLD*

*Vice Consul*



# COMMONWEALTH
# OF THE BAHAMAS

## PASSPORT

These are to request and require in the name of the Governor-General of the Commonwealth of the Bahamas all those whom it may concern to allow the bearer to pass freely without let or hindrance and to afford him or her every assistance and protection of which he or she may stand in need.

No. of passport **ER0111733**

National Status
Citizen of the Commonwealth of The Bahamas

This Passport contains 32 pages

VOL. 11697 PAGE 027

VOL. 11697 PAGE 028







DLS JOB FILE NO. P133/12
373 LI.
THE ATLANTIC OCEAN
DEAN'S BLUE HOLE
UPPER TURTLE COVE
SALT POND
AREA = 344.126 ACRES
TOTAL AREA
(A+B+C) = 437.423 ACRES
PLUS OFFSET AREA = 0.702 ACRES
LESS CASE NO. 227 OF 1989 = 0.707 ACRES
NET OFFSET AREA = 437.418 ACRES
D-143
D-26
D-14
D-13
SALINA POND
STROUND POND
THE ESTATE OF FREEMAN CARTWRIGHT
THE ESTATE OF CURTIS CARTWRIGHT
PORTION OF THE ESTATE KNOWN AS TURTLE COVE
OTHER PORTION OF THE ESTATE KNOWN AS TURTLE COVE
OTHER PORTION OF THE ESTATE OF STEPFIELD STANLEY ADDERLEY
AREA = 15.879 ACRES
AREA = 7.657 ACRES
AREA = 23.948 ACRES
AREA = 17.144 ACRES
D-4
N 2,554,000m
N 2,553,000m
E 499,000m
E 500,000m
E 501,000m
REFERENCES:
i) PLAN 21 L.L. SHOWING COMMUTATIONS BY CROWN LANDS OFFICE
ii) PLAN 339 L.L. BY RIVERE & ASSOCIATES RECORDED JANUARY 18th, 2010
iii) PLAN BY HUBERT WILLIAMS DATED FEBRUARY, 2010
iv) PLAN BY 152 L.L. BY ROBERT A. GARRAWAY RECORDED DECEMBER 29th, 19
v) PLAN BY HUBERT WILLIAMS DATED JUNE, 2006
vi) PLAN BY ROLAND JOHN SURVEYING COMPANY LTD. DATED DECEMBER, 2004
vii) CROWN GRANTS D-13, D-14, D-26 AND D-143 TO PETER DEAN
viii) CROWN GRANTS D-3 AND D-4 TO ALEXANDER TAYLOR
ix) BOOK VOLUME 2330, PAGES 452-457 OF THE REGISTRAR GENERAL'S OFFIC
x) BOOK VOLUME 2330, PAGES 442-448 OF THE REGISTRAR GENERAL'S OFFIC
xi) BOOK VOLUME 986, PAGES 386-390 OF THE REGISTRAR GENERAL'S OFFICE
xii) 1:10,000 TOPOGRAPHIC MAP SHEET 6C OF LONG ISLAND
NOTES:
i) GRID TIE TO CS 146 AND SHEET 6C L.I.
ii) CS 146 N=2,553,949.4m, E=500,175.2m
iii) PROJECT SCALE FACTOR IS 0.99960
SURVEY PLAN
SCALE: 1 inch = 300 feet
BAHAMA GEOMATICS LIMITED

# *Registrar General's Department*
# *Deeds and Documents Section*

# RECORDING PAGE

000226199

| | |
|---|---|
| Received From: | **LEWIS & LONGLEY** |
| Volume/Page: | Volume **11697**  Page **30-40** |
| Instrument Type: | **Conveyance**  |
| General Description: | **Conveyance** |
| Recording Date/Time: | **12 September 2012   13.22.18** |
| Instrument Number: | **226199** |
| Control Number: | **20475174** |
| Receipt Number: | **735924** |
| Lodging Date/Time: | **12 September 2012    13.22.18** |
| Consideration: | **$50,000.00.** |
| From/Of Parties:<br>(first entry) | **Adderley, David Lawrence** |
| To Parties:<br>(first entry) | **Adderley, David Lawrence (Irrevoc Unitru** |
| Land Details:<br>(first entry) | **Long Island   Clarence Town** |

Entry Date/Time/User: **01 October 2012   10.34.09   CBRENNEN**

**Received by Customer:**_____ **Date:**_____

**Document Scanned By:**_____ **Date:**_____ **Verified by:**_____ **Date:**_____

**Rec. Page Scanned By:**_____ **Date:**_____ **Verified by:**_____ **Date:**_____



**EXHIBIT "F" to 2nd
Amended Complaint**



**Registrar General's Department
Deeds and Documents Section**

# RECORDING PAGE

| | |
|---|---|
| Received From: | **LEWIS & LONGLEY** |
| Volume/Page: | Volume **11697** Page **30-40** |
| Instrument Type: | **Conveyance** |
| General Description: | **Conveyance** |
| Recording Date/Time: | **12 September 2012   13.22.18** |
| Instrument Number: | **226199** |
| Control Number: | **20475174** |
| Receipt Number: | **735924** |
| Lodging Date/Time | **12 September 2012    13.22.18** |
| Consideration: | **$50,000.00.** |
| From/Of Parties: (first entry) | **Adderley, David Lawrence** |
| To Parties: (first entry) | **Adderley, David Lawrence (Irrevoc Unitru** |
| Land Details: (first entry) | **Long Island    Clarence Town** |

Entry Date/Time/User:   **01 October 2012   10.34.09    CBRENNEN**

## Customer Copy



**REGISTRAR GENERAL DEPARTMENT**
**RODNEY E. BAIN BUILDING**
**PARLIAMENT & SHIRLEY STREETS**
**#50 SHIRLEY STREET**
**NASSAU, THE BAHAMAS**
**TELEPHONE: (242) 322-3376-8**
**322-8038, 325-1251, 322-7841**
**FAX: (242) 322-5553**

# INSTRUMENT DATA FORM

This document should be completed and attached to each deed or document lodged for recording at the Office of the Registrar General. The purpose of this form is to provide the information required to create the index for the deed or document in the Registrar General's database. Therefore, it is extremely important that you accurately complete and confirm the information provided before submitting this form with your deed or document for recording. The Registrar General accepts no responsibility for the accuracy of the information provided on this form.

Date Document Submitted for Lodging      11th September, 2012

Person company or firm submitting document:

| | |
|---|---|
| Name: | Lewis & Longley |
| Contact Person: | J. Denise Lewis-Johnson |
| Address: | East Bay Shopping Centre, East Bay Street |
| | P.O. Box CB-11901, Nassau, Bahamas |
| Telephone: | (242) 394-5560-2 |
| Email Address: | lewisjohnson@bahamas.net.bs |

| | |
|---|---|
| Document/Instrument Type (i.e. conveyance, mortgage, declaration): | **Conveyance** |
| Number of pages of deed or document including affidavits, plans, backing sheet)* | Twelve (12) |
| Consideration: | 50,000 |
| From: | **David Lawrence Adderley** |
| To: | **Irrevocable Unitrust of David Lawrence Adderley** |
| Island: | Long Island |
| District: | Deans Settlement |
| Subdivision: | |
| Block: | |
| Lot**: | |
| | |
| | |
| Unit: | ----------- |
| Name of Condominium: | ----------- |
| Condominium Unit Number | --------- |

☐ Check the Box if Plan Attached

  * This form should not be counted in determining the number of pages in a deed or document. It is being provided for informational purposes only.
  ** Where there is no lot number or the space provided above is insufficient to describe the lot, please attach to this form a full description of the lot.

COMMONWEALTH OF THE BAHAMAS
New Providence

VOL. **11697** PAGE **030**

DATED the 30th day of December A.D., 2011

*For Use by Registrar General's Department only.*

**Lodged For Record by:**

_Lennon & Longley_

**DAVID LAWRENCE ADDERLEY**

**TO**

**IRREVOCABLE UNITRUST OF
DAVID LAWRENCE ADDERLEY**

**CONVEYANCE**

**ALL THAT** piece parcel or tract of land situate at the Settlement of Deans approximately 4 miles West of the Settlement of Clarence Town in the Island of Long Island, Bahamas.

Consideration: B$50,000.00
Stamp Duty:   B$ 3,000.00

**LEWIS & LONGLEY**
Chambers
East Bay Shopping Centre
East Bay Street
Nassau, Bahamas

This 12 Day of Sept A.D. 20 12

_Denys_

*(for)* Registrar General

Receipt Number: 035924

**COMMONWEALTH OF THE BAHAMAS
REGISTRAR GENERAL'S DEPARTMENT**

I certify the within to be duly proved and recorded in
book pages 30 to 40 in
accordance with the provisions of the Registration
of Records Act, Chapter 187 this 12th day of
September 20 12

REGISTRAR GENERAL



PER/12/491T

## FORM 4

## THE INTERNATIONAL PERSONS LANDHOLDING ACT, 1993

(S. I. No. 61 of 2007)

## PERMIT

## ISSUED BY THE INVESTMENTS BOARD

TO:     **THREE ANGELS BROADCASTING NETWORK INC. (3ABN)**

Permission is hereby granted you to acquire/hold the following property to wit: -

**ALL THAT PIECE PARCEL OR TRACT OF LAND SITUATE AT THE SETTLEMENT OF DEANS APPROXIMATELY FOUR MILES WEST OF CLARENCE TOWN, LONG ISLAND, THE BAHAMAS (SEE DESCRIPTION ATTACHED)**

**FUTURE DEVELOPMENT**

for use as/for: ......................................................................................................................................

**DAVID R. DAVIS**

Secretary
Investments Board

31 st August, 2012

DATE

**ALL THAT** piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town in the Island of Long Island and bounded on the North partly by land formerly the property of the Grantor but now conveyed by an Indenture of even date herewith to the said David Lawrence Adderley and running thereon One thousand Two hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and partly by the Sea and running thereon in an irregular line at high water mark Three thousand Five hundred and Sixty-one and One hundredths (3561.01) feet more or less on the North partly by land the property of the Grantor and running thereon in an irregular line One thousand Two hundred and Twenty-two and Fifty-two hundredths (1222.52) feet and partly by land now or formerly the property of Freeman Cartwright and running thereon Two thousand Four hundred and Eighty-seven and Seventy-three hundredths (2487.73) and partly by land now or formerly the property of Arthur S. Adderley and running thereon Two thousand Six hundred and Eighty-one and Thirty-one hundredths (2681.31) feet on the Southwest partly by land now or formerly the property of E. Adderley and Anna Ramsey and running thereon Six hundred and Seventy-one and Thirty hundredths (671.30) feet and partly by land now or formerly the property of Curtis Cartwright and running thereon in an irregular line One thousand Three hundred and Eighty-four and Eighty-five hundredths (1384.85) feet and on the Northwest partly by land now or formerly the property of the said Curtis Cartwright and running thereon Three hundred and Eighty-six and Sixty-six hundredths (386.66) feet and partly by land now or formerly the property of H.L. Major and running thereon Seven hundred and Sixty-four and Eighteen hundredths (764.18) feet

DAVID R. DAVIS
SECRETARY
INVESTMENTS BOARD

31ᵒˢ August 2012
DATE

4

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**


       I, DULCIE GREEN of the City of Miami in the State of Florida one of the States of the United States of America make oath and say that I was present and saw **DAVID LAWRENCE ADDERLEY** of the City of Miami in the State of Florida one of the States of the United States of America aforesaid sign seal and as and for his Act and Deed execute and deliver the annexed Indenture of Conveyance dated the 30th day of December A.D., 2011 for the purposes therein mentioned and that I subscribed my name as the witness to the due execution thereof.


**SWORN TO** this 24th day )

of JANU, A.D. 2012 )

                 )                                        
Before me,

**CHANELLE P. BROWN**
*Consul*
**NOTARY PUBLIC**

## COMMONWEALTH OF THE BAHAMAS
### New Providence



_Juanita _____
Attorney-at-Law
Nassau, N.P., The Bahamas

THIS **INDENTURE OF CONVEYANCE** is made the 30th day of December in the year of Our Lord Two Thousand and Eleven **BETWEEN DAVID LAWRENCE ADDERLEY** of the City of Miami in the State of Florida one of the States of the United States of America (hereinafter called "the Vendor") of the one part **AND the IRREVOCABLE UNITRUST OF DAVID LAWRENCE ADDERLEY** of the said City of Miami aforesaid  (hereinafter called "the Purchaser") of the other part.

### W H E R E A S : -

(A)     By an Indenture of Conveyance dated the 21st day of May, A.D., 1971 and made between Wellington Leon Adderley  of the one part and Wellington Leon Adderley  and the Vendor of the other part and now of record in the Registry of Records in the City of Nassau in the Island of New Providence one of the Islands of The Commonwealth of The Bahamas in Volume 2330 at pages 442 to 447  (hereinafter called the said Indenture) the Vendor became seised  for an estate in fee simple in possession subject as hereinafter mentioned but otherwise free from encumbrances of the hereditaments hereinafter described in the Schedule hereto (hereinafter referred to as "the said hereditaments")

(B)     The said Wellington Leon Adderley late of the Settlement of Clarence Town in the Island of Long Island one of the Islands of the said Commonwealth of the Bahamas died on the 2nd day of February A.D., 2002 without having severed the Joint Tenancy created by the said Indenture and the said David Lawrence Adderley became solely seised of the said hereditaments by right of survivorship as evidenced by the attached copy Death certificate Exhibited "DLA-1.";

(C)     The Vendor  has  agreed with the Purchaser  for the sale to the Purchaser of the said hereditaments for a like estate in possession subject as hereinbefore mentioned but otherwise free from encumbrances  for the sum of Fifty Thousand Dollars (B$50,000.00) in the currency of the said Commonwealth (hereinafter referred to as "the

VOL. 11697 PAGE 035

2

said currency").

## NOW THIS INDENTURE WITNESSETH as follows: -

1.      In pursuance of the said agreement and consideration of the said sum of Fifty Thousand Dollars (B$50,000.00) in the said currency now paid to the Vendor by the Purchaser (the receipt whereof the Vendor hereby acknowledges) the Vendor **AS BENEFICIAL OWNER** hereby grants and conveys unto the Purchaser **ALL** the said hereditaments **TOGETHER WITH** the appurtenances thereunto belonging **TO HOLD** the same unto and to the use of the Purchaser in fee simple absolute.

## THE SCHEDULE HEREINBEFORE REFERRED TO

**ALL THAT** piece parcel or tract of land situate at the Settlement of Deans approximately Four (4) miles West of the said Settlement of Clarence Town on the Island of Long Island and bounded on the North partly by land formerly the property of Wellington Leon Adderley and conveyed by an Indenture dated the 21st day of May, A.D., 1971 herewith to the said David Lawrence Adderley and running thereon One Thousand Two Hundred and Twenty-five and Seventy-nine hundredths (1225.79) feet and partly by the Sea and running thereon in an irregular line at high water mark Three thousand Five hundred and Sixty-one and One hundredths (3561.01) feet more or less on the North partly by land the property of the Grantor and running thereon in an irregular line One thousand Two hundred and Twenty-two and Fifty-two hundredths (1222.52) feet and partly by land now or formerly the property of Freeman Cartwright and running thereon Four hundred and Thirty-five and Seventy-four hundredths (435.74) feet on the Southeast partly by land nor or formerly the property of the said Freeman Cartwright and running

3

thereon Two thousand Four hundred and Eighty-seven and Seventy-three hundredths (2487.73) and partly by land now or formerly the property of Arthur S. Adderley and running thereon Two thousand Six hundred and Eighty-one and Thirty-one hundredths (2681.31) feet on the Southwest partly by land now or formerly the property of E. Adderley and Anna Ramsey and running thereon Six hundred and Seventy-one and Thirty hundredths (671.30) feet and partly by land now or formerly the property of Curtis Cartwright and running thereon in an irregular line One thousand Three hundred and Eighty-four and Eight-five hundredths (1384.85) feet and on the Northwest partly by land now or formerly the property of the said Curtis Cartwright and running thereon Three hundred and Eight-six and Sixty-six hundredths (386.66) feet and partly by land now or formerly the property of H. L. Major and running thereon Seven hundred and Sixty-four and Eighteen hundredths (764.18) feet which said parcel or tract of land has such position boundaries shape marks and dimensions as are shown on the diagram or plan attached to the said Indenture and is delineated on that part of the said diagram or plan which is coloured Pink.

IN WITNESS WHEREOF the Vendor has hereunto set his hand and seal the day and year first hereinbefore mentioned

SIGNED SEALED and DELIVERED by the said DAVID LAWRENCE ADDERLEY in the presence of:



**COMMONWEALTH OF THE BAHAMAS**

**New Providence**

VOL. 11697 PAGE 037

I, **DAVID LAWRENCE ADDERLEY** of the City of Miami in

the State of Florida one of the States of the United States of

America, make oath and say as follows:-

1.  That I am a Bahamian Citizen by birth having been born to
    Bahamian married parents on the 21st day of November, 1937.
    Attached hereto is a true copy of pages 1, 2 and 3 of my
    Bahamian Passport No. ER0111733.

2.  That I am still a Bahamian Citizen having never renounced nor
    been deprived of my Bahamian Citizenship.

3.  That I do not hold and have never held the hereditaments and
    premises described in the annexed Indenture of Conveyance or
    any estate or interest therein either as trustees or nominees for
    a foreign person or persons defined in The International
    Persons Landholdings Act, 1993 of the said Commonwealth or
    for the benefit of such a foreign persons as provided by the said
    Act.

4.  That the contents hereof are correct and true.

SWORN TO at ~~Nassau~~ Miami  )
~~Bahamas~~ Florida this *8th* day )
of May, A.D., 2012 )  _____
                                Before me,

**NOTARY PUBLIC**
**JOY A. NEWBOLD**
*Vice Consul*

COMMONWEALTH
OF THE BAHAMAS

PASSPORT

These are to request and require in the name of the
Governor-General of the Commonwealth of The Bahamas
all those whom it may concern to allow the bearer
to pass freely without let or hindrance and to
afford him or her every assistance and protection
of which he or she may stand in need

No. of passport    ER0111733

National Status
Citizen of the Commonwealth of The Bahamas
This Passport contains 32 pages

VOL. **11697** PAGE **039**



The Commonwealth of The Bahamas

Passport / Passeport

Type / Type: PR
Country Code / Code de pays: BHS
Passport No. / Passeport N°: ERO111733

Surname / Nom: SADDERLEY
Given names / Prénoms: DAVID LAWRENCE
Nationality / Nationalité: BAHAMIAN
Date of Birth / Date de naissance: 21 NOV / NOV. 1937
Sex / Sexe: M
Place of Birth / Lieu de naissance: FLORIDA
Date of Issue / Date de délivrance: 01 MAY / MAI 2012
Issuing Office / Bureau d'émission: NEW PROVIDENCE
Date of Expiry / Date d'expiration: 30 APR / AVR 2022

PRBHSADDERLEY<<DAVID<LAWRENCE<<<<<<<<<<<<<<<
ERO1117331BHS3711217M2204307<<<<<<<<<<<<<<<2

DLS JOB FILE NO. P133/12
373 L.I.
THE ATLANTIC OCEAN
UPPER TURTLE COVE
DEAN'S BLUE HOLE
SALT POND
D-143
D-26
D-14
D-13
D-4
THE ESTATE OF CURTIS CARTWRIGHT
THE ESTATE OF FREEMAN CARTWRIGHT
PORTION OF THE ESTATE KNOWN AS "TURTLE COVE"
OTHER PORTION OF THE ESTATE OF STEPHEN STANLEY ADDERLEY
STINKING POND
SALINA POND
AREA = 15.979 ACRES
AREA = 7.657 ACRES
AREA = 23.948 ACRES
AREA = 17.144 ACRES
N 2,554,000m
N 2,553,000m
E 499,000m
E 500,000m
E 501,000m
NOTES:
i) GRID TIE TO CS 146 AND SHEET 6C L.I.
ii) CS 146 N=2,553,949.4m, E=500,175.2m
iii) PROJECT SCALE FACTOR IS 0.99960
REFERENCES:
i) PLAN 21 L.L. SHOWING COMMUTATIONS BY CROWN LANDS OFFICE
ii) PLAN 339 L.I. BY RIVERE & ASSOCIATES RECORDED JANUARY 18th, 2010
iii) PLAN BY HUBERT WILLIAMS DATED FEBRUARY, 2010
iv) PLAN BY 152 L.L. BY ROBERT A. GARRAWAY RECORDED DECEMBER 29th, 19
v) PLAN BY HUBERT WILLIAMS DATED JUNE, 2006
vi) PLAN BY ROLAND JOHN SURVEYING COMPANY LTD. DATED DECEMBER, 2004
vii) CROWN GRANTS D-13, D-14, D-26 AND D-143 TO PETER DEAN
viii) CROWN GRANTS D-3 AND D-4 TO ALEXANDER TAYLOR
ix) BOOK VOLUME 2330, PAGES 452-457 OF THE REGISTRAR GENERAL'S OFFIC
x) BOOK VOLUME 7330, PAGES 447-448 OF THE REGISTRAR GENERAL'S OFFIC
xi) BOOK VOLUME 986, PAGES 386-390 OF THE REGISTRAR GENERAL'S OFFICE
xii) 1:10,000 TOPOGRAPHIC MAP SHEET 6C OF LONG ISLAND
SURVEY PLAN
SCALE: 1 inch = 300 feet
SURVEYOR GENERAL 05/03/2012
REGISTERED LAND SURVEYOR
BAHAMA GEOMATICS LIMITED
ADVANCED SURVEYING, MAPPING & CONSULT
TEL./FAX (242) 394-2887
TOLL FREE 888-250-4030



# SAAVEDRAGOODWIN

**ATTORNEYS & COUNSELORS AT LAW**
TELEPHONE (954) 767-6333 • FAX (954) 767-8111
WWW.SAAVLAW.COM

<u>ATTORNEYS:</u>
DAMASO W. SAAVEDRA (AV RATED)
ALLYSON D. GOODWIN
JENNIE L. COLABELLI
ROSS D. KULBERG (AV RATED)
GLEN M. LINDSAY (AV RATED)
CASEY B. MCCORMACK
ANDREW D. WYMAN (AV RATED)

<u>OF COUNSEL:</u>
MARA ALYSON
RANDOLPH M. BROMBACHER (AV RATED)
MARIO THOMAS GABOURY
L. FORREST OWENS
(BOARD CERTIFIED IN AVIATION LAW)

ATTORNEYS LICENSED IN:
FLORIDA
ILLINOIS
NEW YORK
NEW JERSEY
CONNECTICUT
WASHINGTON, D.C.

SENDER'S E-MAIL ADDRESS:
rkulberg@saavlaw.com

March 26, 2018

**VIA E-MAIL AND U.S. MAIL**
Mr. Danny Shelton
Three Angels Broadcasting Network
P.O. Box 220
West Frankfort, IL 62896
danshelton@earthlink.net
dan.shelton@3abn.org

Re:   David Lawrence Adderley

Dear Mr. Shelton:

Thank you for speaking with me late last week over the phone. As discussed, we are representing the interests of Mr. David Lawrence Adderley and we ask that all future and further communications take place through this office. As we also discussed on our call, Mr. Adderley believes that he is the owner of all of his property located on Long Island in the Bahamas, including specifically, the 420+ acres known as the Adderley Estate. Accordingly, neither you nor Three Angels Broadcasting Network have any reason or permission to be on Mr. Adderley's property, and we immediately demand that you and 3ABN immediately cease and desist from entering this property and from performing any work thereon.

As you must be aware, Mr. Adderley is blind. While Mr. Adderely may be blind, he is completely cognizant and understands fully what he is saying and has a clear memory as to what transpired with the Church and 3ABN. Mr. Adderley trusted his Church and 3ABN, which he thought at that time was the charitable division of his Church, to carry out his intentions with a portion of his property no larger than one or two acres for use as a Church Sanctuary. Unfortunately, it is clear that 3ABN, which we now understand to be a wholly separate entity from the Church, had Mr. Adderley sign documents which purport to transfer his property to a "Charitable Trust." Mr. Adderley is adamant that no discussion ever took place regarding any trust and he never has had an intention to donate his entire property to 3ABN or to a trust in his name.

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

**EXHIBIT "G" to 2nd Amended Complaint**

Saavedra | Goodwin
Page 2


Attached to this letter, you will find an Affidavit that is being filed of record in the Bahamas to ensure that 3ABN immediately ceases all actions with respect to Mr. Adderley's property. The statement and sworn testimony of Mr. Adderley are alarming and raise allegations of fraud and undue influence against 3ABN and its representatives. This serious matter requires an immediate resolution, including the execution of all necessary documents to terminate any so-called trust and ensure Mr. Adderley is the rightful owner of his property. Unfortunately, if this matter is not immediately resolved, the next step will be to file a lawsuit against 3ABN, which will undoubtedly include claims of fraud.

As I briefly noted over the phone, I will be out of the office through Thursday, March 29, 2018, but will be returning on Friday, March 30, 2018. I hope at that time we can discuss a fair resolution of these matters without the necessity of raising the profile of this case. I look forward to speaking with you or your counsel upon my return.

Sincerely,

**SAAVEDRA | GOODWIN**

Ross D. Kulberg, Esq.
For the Firm

RDK/dka

Enc.



MEAGHER&GEER
ATTORNEYS AT LAW        PLLP

33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
PHONE: 612/338-0661
FAX: 612/338-8384
MEAGHER.COM

Timothy W. Ridley
Direct Dial: 612/347-9128
Direct Fax: 612/877-3024
Email: tridley@meagher.com

M. Gregory Simpson
Direct Dial: 612/337-9672
Direct Fax: 612/877-3138
Email: gsimpson@meagher.com

May 4, 2018

Mr. Ross D. Kulberg
Saavedra Goodwin
312 SE 17th Street – 2nd Floor
Fort Lauderdale, FL 33316

Re:    David Lawrence Adderley/Three Angels Broadcasting Network, Inc./Adderley CRUT
       Our File No.:  57242-13

Dear Mr. Kulberg:

Our firm has been retained by Three Angels Broadcasting Network, Inc. ("3ABN") to represent its interests with regard to the Adderley Charitable Remainder UniTrust.  We have not been retained to represent Barry Benton, Esq.

We have reviewed your April 27, 2018 correspondence to attorney Jeffrey A. Blaker, Esq.  We have also reviewed your previous correspondence of March 26, 2018 to Mr. Danny Shelton of 3ABN.

In addition to reviewing those two pieces of correspondence we have reviewed the Trust Agreement, the Deeds transferring the property to the Trust, and a series of other documents.

We are in disagreement with you in your contentions that the CRUT is invalid.  We believe that Mr. Adderly had a number of meetings with 3ABN regarding a proposed gift to the entity.  Those discussions culminated in the drafting and signing of a CRUT on August 22, 2011.  The transfer of the real estate to the Trust occurred shortly thereafter.  We believe that the establishment of the Trust was valid and that the transfer of real estate was also validly accomplished.  We disagree with your contentions that there was any fraud or coercion involved in either the establishment of the Trust or the transfer of the real property.  We further believe that the intention was to transfer the entirety of the property, not the one or two acres that you are now discussing.

**EXHIBIT "H" to
2nd Amended
Complaint**

Mr. Ross D. Kulberg
May 4, 2018
Page 2

3ABN is willing to do whatever is necessary to uphold the transfers to the Trust.

If you have any further communications with regard to these matters, please direct them through us.

Sincerely,

Timothy W. Ridley
M. Gregory Simpson

TWR/leg/12163130.1
cc:     Danny Shelton (via e-mail)
        Jill Morikone (via email)

# Charitable Unitrust

## Prepared For

## DAVID LAWRENCE ADDERLY

### A SERVICE PROVIDED BY

Barry Benton
Attorney
The Benton Law Firm
396 Switch Road
Calhoun, GA  30701
Phone 706-629-0641 Fax 706-602-8231
b2@b2lawonline.com

**This illustration is offered as a service.**
**Please feel free to call for further assistance.**

Software by Crescendo Interactive, Inc.                    Version 2011.2  Copyright © 2011 (40)

EXHIBIT "I" to 2nd
Amended Complaint


COPY

## DAVID LAWRENCE ADDERLY - Age 74

**Property**

| Value | $30,000,000 |
|-------|-------------|
| Cost | 20,000,000 |
| Gain | $10,000,000 |

**5% Unitrust**

**Principal**

**$30,000,000**

**Charity**

**$39,663,532**

**One**  **Life**

**Remainder to Charity**

**Income**

**$1,500,000**

**Tax Free Sale**
**Income Tax Deduction**

July 27, 2011

Page 2 of 17

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation. See data sheets for assumptions.

COPY

## DAVID LAWRENCE ADDERLY - Age 74

### Property

| | |
|---|---|
| Value | $30,000,000 |
| Cost | 20,000,000 |
| Gain | $10,000,000 |

### 5% Unitrust

### Principal

$30,000,000

### Charity

$39,663,532

**One      Life**

1. Give asset, sell Tax-Free. Bypass up to $10,000,000 gain may save $1,500,000.  Income tax deduction of $17,604,900 may save $6,161,715.

2. UT annual income $1,500,000. Increased income $1,500,000 over prior $00 income.  Estimated income in 14.1 years $24,158,829. Effective pretax rate 6.29%.

3. If trust earns 7%, pays 5%, then grows by 2%. After one life, trust passes without probate to charity.

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.  See data sheets for assumptions.


COPY

Case 1:18-cv-23362-RNS Document 68-9 Entered on FLSD Docket 07/12/2019 Page 153 of 175

## DAVID LAWRENCE ADDERLY - Age 74

### 5% Unitrust

**Property**

| | |
|---|---|
| Value | $30,000,000 |
| Cost | 20,000,000 |
| Gain | $10,000,000 |

**Principal**

$30,000,000

**Charity**

$39,663,532

**One**    **Life**

1. Give asset, sell Tax-Free. Bypass up to $10,000,000 gain may save $1,500,000. Income tax deduction of $17,604,900 may save $6,161,715.

2. UT annual income $1,500,000. Increased income $1,500,000 over prior $00 income. Estimated income in 14.1 years $24,158,829. Effective pretax rate 6.29%.

3. If trust earns 7%, pays 5%, then grows by 2%. After one life, trust passes without probate to charity.

July 27, 2011

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation. See data sheets for assumptions.



# CHARITABLE UNITRUST

The Charitable Remainder Unitrust is a special trust that pays income to family members. After all of the income payments have been completed, the remainder is distributed to qualified charities. The person who establishes the trust may select the unitrust percentage, the person to receive the income from the trust, and the charities which will receive the principal of the trust after all income payments are completed. The major benefits of the trust are (i) Bypass of Capital Gains Tax, (ii) Increased Income and (iii) a Charitable Income Tax Deduction.

**Bypass Capital Gains**

Investments of property eventually mature. At certain times, it is wise to sell and reinvest. The unitrust is an ideal method for a tax-free reinvestment, since the qualified unitrust bypasses the capital gains tax. If the unitrust earns more than the payout percent, this gain is permanently bypassed. However, if trust earnings are less than the payout percent, most unitrusts will pay out the earnings and some corpus. In this case, part of the capital gain may be paid out. Fortunately, any capital gain payout is taxed at capital gain rates.

**Increased Income**

Mature investment properties frequently are earning two, three or four percent per year. The capital gains tax-free reinvestment through the unitrust might enable a person to sell through a trust without tax an asset earning a low rate of return and reinvest in an asset earning a higher rate of return. The increased earnings can then be passed on to the income recipients using the unitrust income produced by higher yield investments. Over the years, family members can reinvest the additional income and acquire even greater economic security.

**Income Tax Deduction**

After the completion of all income payments, the principal or corpus is distributed to charity. Even though charity might not receive anything for many years, the government permits the trust grantor (the person who establishes the irrevocable trust) to take an immediate income tax deduction. The deduction is a percentage of the value of the property transferred to the trust and is calculated using the age of the donor and the unitrust percentage selected. Many trust donors use their current tax savings for additional investments. They are able to enjoy the maximum return from their charitable trust payments and also benefit at the same time from substantial income tax savings.

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.



# CHARITABLE UNITRUST

**Unitrust Percentage**

Each grantor may select the unitrust percentage.  The unitrust percentage may amount to five percent or more of the value of the trust.  Each year the trust accountant determines the fair market value of the trust.  The unitrust then pays the selected percent of the fair market value to the family.  For instance, if a trust is valued at $100,000 and the trust grantor selected a 6% unitrust percentage,  the accountant would multiply the 6% times the $100,000 in value and distribute $6,000 that year.  If earnings were 7% or 8% and the trust distributed 6%, the extra 1% or 2% would be added to principal.  Since the income payments depend upon the value in trust, many persons select a lower percentage and then hope to benefit from the growth of the trust value during the later years of the trust.

**Duration of Income**

In addition, the trust grantor may also select the time for which payments are to be made.  This time may be one life, two or more lives, or a term of one to twenty years.  The current illustration shows a trust which pays income for one life. After the income recipient has passed away, the trust corpus will then be distributed to charity.

**Charitable Remainder**

Finally, the trust grantor may select the charities that will receive the trust remainder (the corpus of the trust after all income payments are completed).  The entire corpus could be distributed to one charity, or the corpus may be divided among several charities.  The selection of the charities is entirely under the control of the trust grantor.

**Trustee**

Each unitrust must have a trustee.  The trustee can be a commercial institution such as a bank or trust company, a charity, an individual or a combination of two of these three options.  The trustee will carefully invest the property, conduct any sales and file the appropriate information and tax forms.  Since the trust may last for many years, it is important to select a trustee in whom the donor has confidence.

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.



# UNITRUST BENEFITS FOR FAMILY AND CHARITY

| Years | PRINCIPAL 7.000% Return* 2.000% Growth | UT INCOME PAYMENTS 5.00% Pmt | TOTAL OF UT INCOME PAYMENTS | INCOME AFTER TAX 35.00% Tax | INCOME TAX SAVINGS | TOTAL OF BENEFITS AFTER TAX |
|---|---|---|---|---|---|---|
| 0 | $30,000,000 | | | | | |
| 1 | 30,600,000 | $1,500,000 | $1,500,000 | $975,000 | $6,161,715 | $7,136,715 |
| 2 | 31,212,000 | 1,530,000 | 3,030,000 | 994,500 | 0 | 8,131,215 |
| 3 | 31,836,240 | 1,560,600 | 4,590,600 | 1,014,390 | 0 | 9,145,605 |
| 4 | 32,472,965 | 1,591,812 | 6,182,412 | 1,034,678 | 0 | 10,180,283 |
| 5 | 33,122,424 | 1,623,648 | 7,806,060 | 1,055,371 | 0 | 11,235,654 |
| 6 | 33,784,873 | 1,656,121 | 9,462,181 | 1,076,479 | 0 | 12,312,133 |
| 7 | 34,460,570 | 1,689,244 | 11,151,425 | 1,098,008 | | 13,410,141 |
| 8 | 35,149,781 | 1,723,029 | 12,874,454 | 1,119,969 | | 14,530,110 |
| 9 | 35,852,777 | 1,757,489 | 14,631,943 | 1,142,368 | | 15,672,478 |
| 10 | 36,569,833 | 1,792,639 | 16,424,581 | 1,165,215 | | 16,837,693 |
| 11 | 37,301,229 | 1,828,492 | 18,253,073 | 1,188,520 | | 18,026,213 |
| 12 | 38,047,254 | 1,865,061 | 20,118,135 | 1,212,290 | | 19,238,502 |
| 13 | 38,808,199 | 1,902,363 | 22,020,497 | 1,236,536 | | 20,475,038 |
| 14 | 39,584,363 | 1,940,410 | 23,960,907 | 1,261,266 | | 21,736,305 |
| 15 | 40,376,050 | 1,979,218 | 25,940,125 | 1,286,492 | | 23,022,796 |
| 16 | 41,183,571 | 2,018,803 | 27,958,928 | 1,312,222 | | 24,335,018 |
| 17 | 42,007,243 | 2,059,179 | 30,018,106 | 1,338,466 | | 25,673,484 |
| 18 | 42,847,387 | 2,100,362 | 32,118,469 | 1,365,235 | | 27,038,720 |
| 19 | 43,704,335 | 2,142,369 | 34,260,838 | 1,392,540 | | 28,431,260 |
| 20 | 44,578,422 | 2,185,217 | 36,446,055 | 1,420,391 | | 29,851,651 |
| 21 | 45,469,990 | 2,228,921 | 38,674,976 | 1,448,799 | | 31,300,449 |
| 22 | 46,379,390 | 2,273,500 | 40,948,475 | 1,477,775 | | 32,778,224 |
| 23 | 47,306,978 | 2,318,970 | 43,267,445 | 1,507,330 | | 34,285,554 |
| 24 | 48,253,117 | 2,365,349 | 45,632,794 | 1,537,477 | | 35,823,031 |
| 25 | 49,218,180 | 2,412,656 | 48,045,450 | 1,568,226 | | 37,391,257 |
| 26 | 50,202,543 | 2,460,909 | 50,506,359 | 1,599,591 | | 38,990,848 |
| 27 | 51,206,594 | 2,510,127 | 53,016,486 | 1,631,583 | | 40,622,431 |
| 28 | 52,230,726 | 2,560,330 | 55,576,815 | 1,664,214 | | 42,286,645 |
| 29 | 53,275,341 | 2,611,536 | 58,188,352 | 1,697,499 | | 43,984,144 |
| 30 | 54,340,848 | 2,663,767 | 60,852,119 | 1,731,449 | | 45,715,592 |
| 31 | 55,427,664 | 2,717,042 | 63,569,161 | 1,766,078 | | 47,481,670 |
| 32 | 56,536,218 | 2,771,383 | 66,340,544 | 1,801,399 | | 49,283,069 |
| 33 | 57,666,942 | 2,826,811 | 69,167,355 | 1,837,427 | | 51,120,496 |
| 34 | 58,820,281 | 2,883,347 | 72,050,702 | 1,874,176 | | 52,994,672 |
| 35 | 59,996,687 | 2,941,014 | 74,991,716 | 1,911,659 | | 54,906,331 |
| 36 | 61,196,620 | 2,999,834 | 77,991,551 | 1,949,892 | | 56,856,223 |
| 37 | 62,420,553 | 3,059,831 | 81,051,382 | 1,988,890 | | 58,845,113 |
| 38 | 63,668,964 | 3,121,028 | 84,172,409 | 2,028,668 | | 60,873,781 |
| 39 | 64,942,343 | 3,183,448 | 87,355,858 | 2,069,241 | | 62,943,022 |

| | | | | |
|---|---|---|---|---|
| EXPECTANCY | 14.1 YEARS | | CHARITABLE DEDUCTION | $17,604,900 |
| FAMILY 14.1 YRS | $21,864,954 | | INCOME TAX SAVINGS | $6,161,715 |
| CHARITY 14.1 YRS | $39,663,532 | | TOTAL INCOME 14.1 YRS | $24,158,829 |
| P. Value 3.4%/14.1 YRS | $24,754,365 | | TYPE INCOME | ORDINARY |

* 7.133758% Return adjusted to 7% for Quarterly payments.



-- Jul 27, 2011
This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.

# UNITRUST BENEFITS FOR FAMILY AND CHARITY

| Years | PRINCIPAL 7.000% Return* 2.000% Growth | UT INCOME PAYMENTS 5.00% Pmt | TOTAL OF UT INCOME PAYMENTS | INCOME AFTER TAX 35.00% Tax | INCOME TAX SAVINGS | TOTAL OF BENEFITS AFTER TAX |
|---|---|---|---|---|---|---|
| 0 | $30,000,000 | | | | | |
| 1 | 30,600,000 | $1,500,000 | $1,500,000 | $975,000 | $6,161,715 | $7,136,715 |
| 2 | 31,212,000 | 1,530,000 | 3,030,000 | 994,500 | 0 | 8,131,215 |
| 3 | 31,836,240 | 1,560,600 | 4,590,600 | 1,014,390 | 0 | 9,145,605 |
| 4 | 32,472,965 | 1,591,812 | 6,182,412 | 1,034,678 | 0 | 10,180,283 |
| 5 | 33,122,424 | 1,623,648 | 7,806,060 | 1,055,371 | 0 | 11,235,654 |
| 6 | 33,784,873 | 1,656,121 | 9,462,181 | 1,076,479 | 0 | 12,312,133 |
| 7 | 34,460,570 | 1,689,244 | 11,151,425 | 1,098,008 | | 13,410,141 |
| 8 | 35,149,781 | 1,723,029 | 12,874,454 | 1,119,969 | | 14,530,110 |
| 9 | 35,852,777 | 1,757,489 | 14,631,943 | 1,142,368 | | 15,672,478 |
| 10 | 36,569,833 | 1,792,639 | 16,424,581 | 1,165,215 | | 16,837,693 |
| 11 | 37,301,229 | 1,828,492 | 18,253,073 | 1,188,520 | | 18,026,213 |
| 12 | 38,047,254 | 1,865,061 | 20,118,135 | 1,212,290 | | 19,238,502 |
| 13 | 38,808,199 | 1,902,363 | 22,020,497 | 1,236,536 | | 20,475,038 |
| 14 | 39,584,363 | 1,940,410 | 23,960,907 | 1,261,266 | | 21,736,305 |
| 15 | 40,376,050 | 1,979,218 | 25,940,125 | 1,286,492 | | 23,022,796 |
| 16 | 41,183,571 | 2,018,803 | 27,958,928 | 1,312,222 | | 24,335,018 |
| 17 | 42,007,243 | 2,059,179 | 30,018,106 | 1,338,466 | | 25,673,484 |
| 18 | 42,847,387 | 2,100,362 | 32,118,469 | 1,365,235 | | 27,038,720 |
| 19 | 43,704,335 | 2,142,369 | 34,260,838 | 1,392,540 | | 28,431,260 |
| 20 | 44,578,422 | 2,185,217 | 36,446,055 | 1,420,391 | | 29,851,651 |
| 21 | 45,469,990 | 2,228,921 | 38,674,976 | 1,448,799 | | 31,300,449 |
| 22 | 46,379,390 | 2,273,500 | 40,948,475 | 1,477,775 | | 32,778,224 |
| 23 | 47,306,978 | 2,318,970 | 43,267,445 | 1,507,330 | | 34,285,554 |
| 24 | 48,253,117 | 2,365,349 | 45,632,794 | 1,537,477 | | 35,823,031 |
| 25 | 49,218,180 | 2,412,656 | 48,045,450 | 1,568,226 | | 37,391,257 |
| 26 | 50,202,543 | 2,460,909 | 50,506,359 | 1,599,591 | | 38,990,848 |
| 27 | 51,206,594 | 2,510,127 | 53,016,486 | 1,631,583 | | 40,622,431 |
| 28 | 52,230,726 | 2,560,330 | 55,576,815 | 1,664,214 | | 42,286,645 |
| 29 | 53,275,341 | 2,611,536 | 58,188,352 | 1,697,499 | | 43,984,144 |
| 30 | 54,340,848 | 2,663,767 | 60,852,119 | 1,731,449 | | 45,715,592 |
| 31 | 55,427,664 | 2,717,042 | 63,569,161 | 1,766,078 | | 47,481,670 |
| 32 | 56,536,218 | 2,771,383 | 66,340,544 | 1,801,399 | | 49,283,069 |
| 33 | 57,666,942 | 2,826,811 | 69,167,355 | 1,837,427 | | 51,120,496 |
| 34 | 58,820,281 | 2,883,347 | 72,050,702 | 1,874,176 | | 52,994,672 |
| 35 | 59,996,687 | 2,941,014 | 74,991,716 | 1,911,659 | | 54,906,331 |
| 36 | 61,196,620 | 2,999,834 | 77,991,551 | 1,949,892 | | 56,856,223 |
| 37 | 62,420,553 | 3,059,831 | 81,051,382 | 1,988,890 | | 58,845,113 |
| 38 | 63,668,964 | 3,121,028 | 84,172,409 | 2,028,668 | | 60,873,781 |
| 39 | 64,942,343 | 3,183,448 | 87,355,858 | 2,069,241 | | 62,943,022 |

| | | | | |
|---|---|---|---|---|
| EXPECTANCY | 14.1 YEARS | | CHARITABLE DEDUCTION | $17,604,900 |
| FAMILY 14.1 YRS | $21,864,954 | | INCOME TAX SAVINGS | $6,161,715 |
| CHARITY 14.1 YRS | $39,663,532 | | TOTAL INCOME 14.1 YRS | $24,158,829 |
| P. Value 3.4%/14.1 YRS | $24,754,365 | | TYPE INCOME | ORDINARY |

*7.133758% Return adjusted to 7% for Quarterly payments.

Jul 27, 2011
This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.



# CHARITABLE UNITRUST

---

### One Life

Election: IRC Sec. 7520(a) election made using June 2.8% rate

Donor    **DAVID LAWRENCE ADDERLEY** Gift Amt. **$30,000,000.00** Gift Date **07/27/2011**

First Person    **DAVID LAWRENCE ADDERLEY** Birth Date **11/22/1937** Age* **74**

Payment Freq.    **Quarterly**    (Payments at End of Selected Period)

Age* - Year changes at six months from birth date

---

| | | |
|---|---|---|
| (A) Unitrust Percentage | 5.00% | (A) |
| (B) Factor for Adjusted Payout Rate<br>IRS Pub 1458, Table F<br>AFR of the Month   2.8% | 0.982918 | (B) |
| (C) Adjusted Payout Rate (A x B) | 4.915% | (C) |
| (D) Nearest table rate below (C) | 4.80% | (D) |
| (E) Factor at Line (D) rate<br>(IRS Pub. 1458, Table U(1)) | 0.59358 | (E) |
| (F) Nearest table rate above (C) | 5.00% | (F) |
| (G) Factor at Line (F) rate<br>(IRS Pub. 1458, Table U(1)) | 0.58184 | (G) |
| (H) Line (E) Minus Line (G) | 0.01174 | (H) |
| (I) Line (C) Minus Line (D) | 0.115% | (I) |
| (J) Line (I) Divided by 0.2% | 0.57500 | (J) |
| (K) Line (H) Times Line (J) | 0.00675 | (K) |
| (L) Line (E) Minus Line (K) | 0.58683 | (L) |
| (M) Line (L) Times Gift Amount<br>PRESENT VALUE OF REMAINDER INTEREST | $17,604,900.00 | (M) |
| (N) TAX BRACKET AND SAVINGS   35.00% | $6,161,715.00 | (N) |

---

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.



# CHARITABLE UNITRUST

---

### One Life

Election: IRC Sec. 7520(a) election made using June 2.8% rate

**Donor**    **DAVID LAWRENCE ADDERLEY**    Gift Amt. **$30,000,000.00**   Gift Date **07/27/2011**

**First Person**    **DAVID LAWRENCE ADDERLEY**    Birth Date **11/22/1937** Age* **74**

**Payment Freq.**    **Quarterly**      (Payments at End of Selected Period)

Age* - Year changes at six months from birth date

---

| | | |
|---|---|---|
| (A) Unitrust Percentage | 5.00% | (A) |
| (B) Factor for Adjusted Payout Rate<br>　IRS Pub 1458, Table F<br>　AFR of the Month    2.8% | 0.982918 | (B) |
| (C) Adjusted Payout Rate (A x B) | 4.915% | (C) |
| (D) Nearest table rate below (C) | 4.80% | (D) |
| (E) Factor at Line (D) rate<br>　(IRS Pub. 1458, Table U(1)) | 0.59358 | (E) |
| (F) Nearest table rate above (C) | 5.00% | (F) |
| (G) Factor at Line (F) rate<br>　(IRS Pub. 1458, Table U(1)) | 0.58184 | (G) |
| (H) Line (E) Minus Line (G) | 0.01174 | (H) |
| (I) Line (C) Minus Line (D) | 0.115% | (I) |
| (J) Line (I) Divided by 0.2% | 0.57500 | (J) |
| (K) Line (H) Times Line (J) | 0.00675 | (K) |
| (L) Line (E) Minus Line (K) | 0.58683 | (L) |
| (M) Line (L) Times Gift Amount<br>　PRESENT VALUE OF REMAINDER INTEREST | **$17,604,900.00** | (M) |
| (N) TAX BRACKET AND SAVINGS    35.00% | **$6,161,715.00** | (N) |

--    Jul 27, 2011
This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.



# TOTAL EFFECTIVE RETURN RATES

| | 5.00% UNITRUST | | | 5.00% UNITRUST |
|---|---|---|---|---|
| INVESTMENT | $30,000,000 | INVESTMENT | | $30,000,000 |
| TAX SAVINGS | $6,161,715 | TAX SAVINGS | | $6,161,715 |
| NET INVESTMENT | $23,838,285 | NET INVESTMENT | | $23,838,285 |
| Years | TOTAL RETURN | EFFECT. RATE | TOTAL RETURN | EFFECT. RATE |
| 0 | $1,500,000 | 6.29% | $1,500,000 | 6.29% |
| 1 | 1,530,000 | 6.42% | 1,530,000 | 6.42% |
| 2 | 1,560,600 | 6.55% | 1,560,600 | 6.55% |
| 3 | 1,591,812 | 6.68% | 1,591,812 | 6.68% |
| 4 | 1,623,648 | 6.81% | 1,623,648 | 6.81% |
| 5 | 1,656,121 | 6.95% | 1,656,121 | 6.95% |
| 6 | 1,656,121 | 6.95% | 1,656,121 | 6.95% |
| 7 | 1,689,244 | 7.09% | 1,689,244 | 7.09% |
| 8 | 1,723,029 | 7.23% | 1,723,029 | 7.23% |
| 9 | 1,757,489 | 7.37% | 1,757,489 | 7.37% |
| 10 | 1,792,639 | 7.52% | 1,792,639 | 7.52% |
| 11 | 1,828,492 | 7.67% | 1,828,492 | 7.67% |
| 12 | 1,865,061 | 7.82% | 1,865,061 | 7.82% |
| 13 | 1,902,363 | 7.98% | 1,902,363 | 7.98% |
| 14 | **1,940,410** | **8.14%** | **1,940,410** | **8.14%** |
| 15 | 1,979,218 | 8.30% | 1,979,218 | 8.30% |
| 16 | 2,018,803 | 8.47% | 2,018,803 | 8.47% |
| 17 | 2,059,179 | 8.64% | 2,059,179 | 8.64% |
| 18 | 2,100,362 | 8.81% | 2,100,362 | 8.81% |
| 19 | 2,142,369 | 8.99% | 2,142,369 | 8.99% |
| 20 | 2,185,217 | 9.17% | 2,185,217 | 9.17% |
| 21 | 2,228,921 | 9.35% | 2,228,921 | 9.35% |
| 22 | 2,273,500 | 9.54% | 2,273,500 | 9.54% |
| 23 | 2,318,970 | 9.73% | 2,318,970 | 9.73% |
| 24 | 2,365,349 | 9.92% | 2,365,349 | 9.92% |
| 25 | 2,412,656 | 10.12% | 2,412,656 | 10.12% |
| 26 | 2,460,909 | 10.32% | 2,460,909 | 10.32% |
| 27 | 2,510,127 | 10.53% | 2,510,127 | 10.53% |
| 28 | 2,560,330 | 10.74% | 2,560,330 | 10.74% |
| 29 | 2,611,536 | 10.96% | 2,611,536 | 10.96% |
| 30 | 2,663,767 | 11.17% | 2,663,767 | 11.17% |
| 31 | 2,717,042 | 11.40% | 2,717,042 | 11.40% |
| 32 | 2,771,383 | 11.63% | 2,771,383 | 11.63% |
| 33 | 2,826,811 | 11.86% | 2,826,811 | 11.86% |
| 34 | 2,883,347 | 12.10% | 2,883,347 | 12.10% |

| AVERAGE CUMULATIVE RATE OF RETURN FOR SELECTED NUMBER OF YEARS | | | |
|---|---|---|---|
| 4 | 6.48% | 4 | 6.48% |
| 8 | 6.72% | 8 | 6.72% |
| 12 | 6.96% | 12 | 6.96% |
| 16 | 7.24% | 16 | 7.24% |
| 20 | 7.53% | 20 | 7.53% |
| 24 | 7.85% | 24 | 7.85% |
| 28 | 8.19% | 28 | 8.19% |
| 32 | 8.55% | 32 | 8.55% |

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.

COPY

# CHARITABLE UNITRUST

### Explanation for the Professional Advisor of DAVID LAWRENCE ADDERLY

## A. Flow Chart

The first flow chart for the unitrust includes three boxes. The first box shows the initial circumstance with property valued at $30,000,000.00. After transfer from the donor into the trust as illustrated in the center of the chart, a trustee may sell the assets tax-free, reinvest and distribute income for one life. When all income payments are completed, the trust corpus is transferred to charity as indicated by the box on the right hand side of the illustration. As time passes, the boxes move progressively lower on the page to show a change of ownership with passage of time.

Under the first flow chart box, the $30,000,000.00 asset is sold, bypassing $10,000,000 of gain. The gain is the difference between asset value (before sale costs) and adjusted basis of $20,000,000.00. If a unitrust earns more than the payout percent, gain is permanently bypassed. If a standard unitrust payout exceeds the earnings, then part of the pre-gift capital gain is paid out to the recipient. There will also not be a pre-arranged transaction if the trustee has the freedom to sell, meaning the trustee can select the purchaser and negotiate the price.

There is an income tax deduction of $17,604,900.00. This deduction is based upon the value of the asset, the unitrust payout selected, the age of the beneficiary, and the applicable federal rate. The deduction could save $6,161,715.00 if the income tax rate is 35.00%. Of course, if the tax bracket changes to a greater or lesser value, the tax savings will change proportionately.

The total tax savings may not always be available in the year of the gift. Since this is an appreciated property, the tax deduction is available up to 30% of adjusted gross income. Amounts in excess of this 30% limit may be carried forward for as many as five years.

In the center lower section of the chart is an explanation of the income benefit to the donor. The unitrust income payouts are calculated by multiplying 5% times the trust principal on January 1 of each year. Since this trust pays quarterly, that amount is divided into four equal payments of $375,000 for a total payment of $1,500,000 per year. The $1,500,000 income is greater than the prior $00 per year earned before transfer into the charitable trust, and there is an increase of $1,500,000 per year.

Income from a unitrust may be paid out with one of three methods. The first is a "straight" unitrust or Type I payout formula which pays the 5% regardless of earnings; if necessary payments are made from trust principal. The second method is "net income with makeup" or Type II and is the lesser of the 5% or the actual trust earnings. However, if the trust income does not equal 5% in the early years, and later earns more than 5% yearly income, the trust can pay 5% plus the additional earnings each year in order to pay back or makeup the initial deficit. The third method is simply net income only or Type III and follows the rules similar to Type II without any makeup.

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.

COPY

Under the applicable Treasury tables, a donor who is age 74 is projected to survive on average a total of 14.1 years. With an assumed 5% trust payout and 7% earnings, giving 2% growth of the income stream, the total projected income in this period of time is $24,158,829. The income illustrated of course is a net income amount, after all investment and trust administration costs are deducted.

The donor may wish to consider the effective rate of income. Although $30,000,000 in property was transferred to the trust, there was a tax saving of $6,161,715 leaving an actual effective investment of $23,838,285. An annual return of $1,500,000 on this latter amount is an effective rate of return of 6.29%. Some advisors might also consider the benefit of the capital gains bypass and consider an effective rate of return even higher than this 6.29% number.

While earnings are not guaranteed and are dependent on the quality of the trustee's investments, this illustration shows 7% estimated earnings, a 5% payment and growth of 2%. As long as the investments are passive in nature, generally securities such as stocks and bonds, the trust is tax-exempt and will not be reduced by paying trust income tax. If a trust lasts for an appreciable length of time, this tax-free growth may generate significant income in later years. Indeed, the true economic value of a trust that lasts over 20 years is approximately the same regardless of the selected payout percentage. By selecting the lower percentage, the later years of the trust (as result of tax-free growth of the principal) can produce higher income payments to the donor. Most studies indicate that the net economic result of selecting the unitrust percentage is similar for these trusts lasting 20 or more years and that the real question is whether the donor wishes more income now or later.

After the donor passes away, the trust principal is then distributed to the selected charities. Since the trust does not pass through probate process, there may be savings in probate costs.

## B. Trust Benefits Worksheet

The trusts benefits worksheets illustrate the projected principal and income over a period of 40 years. While estimated life expectancy is 14.1 years, it is entirely possible that the donor could live a longer or shorter period of time. Therefore the worksheet illustrates the effects for a term of 40 years.

Column 1 is the principal of the trust. If the trust has a net return of 7.000% and pays out 5% annually as shown in Column 2, then there is 2.000% growth of principal. Any growth is tax-free so long as there is no unrelated business income. The $30,000,000.00 initial principal becomes $30,600,000 at the end of year one and $39,663,532 at estimated maturity in year 14.1.

Columns 2 and 3 illustrate the income payments. The 5% amount is calculated by multiplying 5% times the trust balance on January 1 of each calendar year. As the principal increases, the income increases. While the trust income is $1,500,000 in the first year, it has gradually increased and equals $1,940,410 by year 14.1.

This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.



Column 3 shows the accumulated value of all of the income payments. By year 14.1, total income of $24,158,829 has been paid to the family.

Column 4 illustrates the amount of income available after 35.00% tax. For example, the $1,500,000 initial income payment is reduced by the 35.00% tax to $975,000.

Column 5 illustrates the income tax savings. If the deduction is permissible under the 30% of adjusted gross income rule, then the savings will be $6,161,715. An option for spreading the savings out over as many as 6 years can be selected.

Adding together the income after tax and the income tax savings, the total of the benefits after tax to the donor is illustrated. These benefits equal $7,136,715 the first year and a total tax savings plus after-tax income value of $21,864,954 in the year 14.1.

At the base of the worksheet is a summary section. The charitable deduction, tax savings, 14.1 year life expectancy, and benefits to family and charity are listed. With 3.40% discount rate, the unitrust remainder value of $39,663,532 has a present value of $24,754,365.

## C. Deduction Calculation

The deduction calculation sheet illustrates the required information under the Treasury rules for calculating a deduction. First, the selected Applicable Federal Rate (AFR) is noted. If the AFR from one of the two previous months has been selected, then a note appears stating that the permitted election under Section 7520(a) has been made with the appropriate month and AFR listed. Additional information in the heading section of this sheet includes the birth dates of the individuals; the duration of the trust (one-life, two or more lives, life or lives with a guaranteed number of years, as applicable); the gift value; gift date and payment frequency.

The calculation then continues following the guidelines set forth in the regulations to Section 664 of the Internal Revenue Code. These guidelines are as follows:

| | | |
|---|---|---|
| A. Unitrust percentage: | Selected payout percentage | |
| B. Adjustment factor: | Adjustment for payment quarterly, monthly, semiannually. | |
| C. Adjusted payout rate: | Unitrust % times the adjustment factor | |
| D. Nearest table rate below C: | The IRS tables are published only for every .2% | |
| E. IRS factor: | Remainder factor, IRS Pub. 1458 Table U(2) | |
| F. Nearest table rate: | Next higher rate for interpolation | |
| G. Factor at rate: | IRS Pub. 1458, Table U(2) factor | |
| H. Line (E) minus line (G): | Difference between factors | |
| I. Line (C) minus line (D): | Difference between rate & adjusted payout | |
| J. Line (I) divided by 0.2%: | Factor differential percentage | |
| K. Line (H) times line (J): | Interpolation result | |
| L. Line (E) minus line (K): | IRS deduction factor | |

M. Charitable deduction:      Deduction factor times gift value
    This is the present value under the gift tables for the determination of a gift today, based on the $30,000,000 value and the projected duration of the trust.
N. Tax Bracket & Savings:      Projected tax bracket and actual taxes saved at the bracket.

The deduction method is specified in the regulations to Section 664 of the Code. The tables used for this calculation are found in IRS publication 1458. The result of the calculation is simply a determination of the value today of what charity will receive in the future. Because this is a charitable remainder trust, the donor receives the benefit of the tax deduction in this tax year even though the benefit to the charity will be many years into the future.

## D. Effective Return Rates

The effective return worksheet illustrates the calculations used to determine effective rates. For the 5% unitrust, the tax savings of $6,161,715 reduce the net actual investment to $23,838,285. Dividing $1,500,000 by $23,838,285 produces an effective rate of 6.29%.

## E. Program Options

Several options exist for the entry of data into the Remainder Unitrust. Under the 50% or 30% of AGI deduction rules, the deduction can be carried forward up to 6 years. If there is a need to guarantee income for a number of years, a term of 1 to 20 guaranteed years can be selected. If that donor passes away prior to the selected term of years, then chosen family members will receive the income for the balance of the selected term.

If the parties desire to receive distributions that are primarily capital gain or tax-free income, one may illustrate those payment methods for future years, though the trust document cannot restrict the trustee to only investing in certain types of assets, e.g. tax exempt bonds. This result assumes that a trustee invests correctly and understands Section 664 four tier rules.



# Hold, Sale or Unitrust Comparison

| | Hold Option | | Sale Option | | Unitrust Option | |
|---|---|---|---|---|---|---|
| | | | Cap. Gain Tax | $1,500,000 | | |
| | Hold Inc. % | 0.00% | Sale Inc. % | 0.00% | UT Inc. % | 5.00% |
| | Hold App. % | 0.00% | Sale App. % | 0.00% | UT App.%* | 2.00% |
| Years | PRINCIPAL | INCOME | PRINCIPAL | INCOME | PRINCIPAL | INCOME |
| 0 | $30,000,000 | | $28,500,000 | | $30,000,000 | |
| 1 | 30,000,000 | 0 | 28,500,000 | 0 | 30,600,000 | 1,500,000 |
| 2 | 30,000,000 | 0 | 28,500,000 | 0 | 31,212,000 | 1,530,000 |
| 3 | 30,000,000 | 0 | 28,500,000 | 0 | 31,836,240 | 1,560,600 |
| 4 | 30,000,000 | 0 | 28,500,000 | 0 | 32,472,965 | 1,591,812 |
| 5 | 30,000,000 | 0 | 28,500,000 | 0 | 33,122,424 | 1,623,648 |
| 6 | 30,000,000 | 0 | 28,500,000 | 0 | 33,784,873 | 1,656,121 |
| 7 | 30,000,000 | 0 | 28,500,000 | 0 | 34,460,570 | 1,689,244 |
| 8 | 30,000,000 | 0 | 28,500,000 | 0 | 35,149,781 | 1,723,029 |
| 9 | 30,000,000 | 0 | 28,500,000 | 0 | 35,852,777 | 1,757,489 |
| 10 | 30,000,000 | 0 | 28,500,000 | 0 | 36,569,833 | 1,792,639 |
| 11 | 30,000,000 | 0 | 28,500,000 | 0 | 37,301,229 | 1,828,492 |
| 12 | 30,000,000 | 0 | 28,500,000 | 0 | 38,047,254 | 1,865,061 |
| 13 | 30,000,000 | 0 | 28,500,000 | 0 | 38,808,199 | 1,902,363 |
| 14 | **30,000,000** | **0** | **28,500,000** | **0** | **39,584,363** | **1,940,410** |
| 15 | 30,000,000 | 0 | 28,500,000 | 0 | 40,376,050 | 1,979,218 |
| 16 | 30,000,000 | 0 | 28,500,000 | 0 | 41,183,571 | 2,018,803 |
| 17 | 30,000,000 | 0 | 28,500,000 | 0 | 42,007,243 | 2,059,179 |
| 18 | 30,000,000 | 0 | 28,500,000 | 0 | 42,847,387 | 2,100,362 |
| 19 | 30,000,000 | 0 | 28,500,000 | 0 | 43,704,335 | 2,142,369 |
| 20 | 30,000,000 | 0 | 28,500,000 | 0 | 44,578,422 | 2,185,217 |
| 21 | 30,000,000 | 0 | 28,500,000 | 0 | 45,469,990 | 2,228,921 |
| 22 | 30,000,000 | 0 | 28,500,000 | 0 | 46,379,390 | 2,273,500 |
| 23 | 30,000,000 | 0 | 28,500,000 | 0 | 47,306,978 | 2,318,970 |
| 24 | 30,000,000 | 0 | 28,500,000 | 0 | 48,253,117 | 2,365,349 |
| 25 | 30,000,000 | 0 | 28,500,000 | 0 | 49,218,180 | 2,412,656 |
| 26 | 30,000,000 | 0 | 28,500,000 | 0 | 50,202,543 | 2,460,909 |
| 27 | 30,000,000 | 0 | 28,500,000 | 0 | 51,206,594 | 2,510,127 |
| 28 | 30,000,000 | 0 | 28,500,000 | 0 | 52,230,726 | 2,560,330 |
| 29 | 30,000,000 | 0 | 28,500,000 | 0 | 53,275,341 | 2,611,536 |
| 30 | 30,000,000 | 0 | 28,500,000 | 0 | 54,340,848 | 2,663,767 |
| 31 | 30,000,000 | 0 | 28,500,000 | 0 | 55,427,664 | 2,717,042 |
| 32 | 30,000,000 | 0 | 28,500,000 | 0 | 56,536,218 | 2,771,383 |
| 33 | 30,000,000 | 0 | 28,500,000 | 0 | 57,666,942 | 2,826,811 |
| 34 | 30,000,000 | 0 | 28,500,000 | 0 | 58,820,281 | 2,883,347 |
| 35 | 30,000,000 | 0 | 28,500,000 | 0 | 59,996,687 | 2,941,014 |
| 36 | 30,000,000 | 0 | 28,500,000 | 0 | 61,196,620 | 2,999,834 |
| 37 | 30,000,000 | 0 | 28,500,000 | 0 | 62,420,553 | 3,059,831 |
| 38 | 30,000,000 | 0 | 28,500,000 | 0 | 63,668,964 | 3,121,028 |
| 39 | 30,000,000 | 0 | 28,500,000 | 0 | 64,942,343 | 3,183,448 |

| TOTAL INCOME OVER LIFE EXPECTANCY | | | | | | |
|---|---|---|---|---|---|---|
| HOLD | $0 | SALE | $0 | UNITRUST | $24,158,829 | |
| EXPECTANCY | 14.1 YEARS | | | | | |

* 7.133758% Return adjusted to 7% for Quarterly payments.

Jul 27, 2011
This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.

COPY

# CHARITABLE UNITRUST

RATE OF THE MONTH    **June 2.8%**

GIFT DATE    **7/27/2011**

FIRST PERSON    **DAVID LAWRENCE ADDERLY**

BIRTH DATE    **11/22/1937**

INCOME TAX %    **35.00** %

CAP. GAIN %    **15.00** %
(Income and capital gains rates are assumed.)

Options:    **Future Tax Rate 35.00%**

EXPECTANCY    **14.1**

TRUST AMOUNT    **$30,000,000**

COST BASIS    **$20,000,000**

CURRENT RETURN    **0.00** %

TRUST RETURN*    **7.133758** %

1st PAYOUT %    **5.00** %
Net Quarterly Growth    2.000 %

2nd PAYOUT %    **5.00** %
Net Quarterly Growth    2.000 %

PAYMENT FREQ.    **Quarterly**

* 7.133758% Return rate adjusted to 7% for Quarterly payments.

Jul 27, 2011
This educational illustration is not professional tax or legal advice; consult a tax advisor about your specific situation.


COPY

# SG | SAAVEDRAGOODWIN

**ATTORNEYS & COUNSELORS AT LAW**
TELEPHONE (954) 767-6333 • FAX (954) 767-8111
WWW.SAAVLAW.COM

ATTORNEYS:
DAMASO W. SAAVEDRA (AV RATED)
ALLYSON D. GOODWIN
JENNIE L. COLABELLI
ROSS D. KULBERG (AV RATED)
GLEN M. LINDSAY (AV RATED)
ANDREW D. WYMAN (AV RATED)
DIANE J. ZELMER
(BOARD CERTIFIED IN CONSTRUCTION LAW)

OF COUNSEL:
MARA ALYSON
RANDOLPH M. BROMBACHER (AV RATED)
MARIO THOMAS GABOURY
L. FORREST OWENS
(BOARD CERTIFIED IN AVIATION LAW)

ATTORNEYS LICENSED IN:
FLORIDA
ILLINOIS
NEW YORK
NEW JERSEY
CONNECTICUT
WASHINGTON, D.C.

SENDER'S E-MAIL ADDRESS:
dzelmer@saavlaw.com

August 17, 2018

### CIVIL EXPLOITATION OF ELDERLY AND DISABLED ADULT
### & CIVIL THEFT DEMAND LETTER
### § 772.11, Fla. Stat.

***VIA EMAIL: tridley@meagher.com***
***VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED***

Three Angels Broadcasting Network
c/o Maegher & Geer
Attention: Timothy W. Ridley, Esq.
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402

  **RE: Our Client: David Lawrence Adderley**
     **419 acre tract of land on Bahamas Long Island Property (Property")**

Dear Mr. Ridley:

  This firm has the privilege of representing Mr. David Lawrence Adderley with regard to the 419 acre tract of property that rightfully belongs to Mr. Adderley located in Long Island Bahamas, and the Indentures of Conveyance which transferred that property to a Charitable Remainder Unitrust, which names your client, Three Angels Broadcasting Network ("3ABN")

<span style="color:red">**EXHIBIT J to 2nd
Amended Complaint**</span>

Saavedra | Goodwin
Page 2

as 100% charitable beneficiary. You have previously been provided with copies of our March 26, 2018 and March 30, 2018 correspondence along with the Affidavit of Mr. Adderley, which are fully incorporated herein, and attached as composite **Exhibit "1."**

We have been advised that on or about August 22, 2011, 3ABN arranged for the preparation of a CRUT to hold Mr. Adderley's property. Mr. Adderley was advised by 3ABN and its agents that the documents that he was signing would facilitate the transfer of 1-2 acres of his property to 3ABN for the building of a Sanctuary and for other religious purposes in accord with the beliefs of the Seventh Day Adventist Church. 3ABN misrepresented that the documents prepared and facilitated by 3ABN, including the CRUT and the three (3) Indentures of Conveyances signed on December 30, 2011 would transfer only 1-2 acres of his property and not the entire 419 tract. As you are aware Mr. Adderley is legally blind, a senior citizen and veteran. In addition, Mr. Adderley was not represented or advised by independent legal counsel, and these documents were not signed in the presence of Mr. Adderley's counsel. The deliberate misrepresentations, and indeed the intentional and deliberate exploitation, conversion and theft, by 3ABN has caused significant damages to Mr. Adderley.

**Exploitation, § 825.103(1), Fla. Stat.** 3ABN stood in a position of trust and confidence with Mr. Adderley, and owed a fiduciary duty to Mr. Adderley. Mr. Adderley is legally blind, a senior citizen and a veteran. By knowingly wrongfully obtaining and using Mr. Adderley's property, with the intent to temporarily or permanently deprive Mr. Adderley of the use, benefit, and possession of his property, or to benefit 3ABN instead of Mr. Adderley, 3ABN has exploited Mr. Adderley, an elderly and disabled adult, which directly violates Section 825.103(1)(a) of the Florida Criminal Statutes, punishable in Florida as a felony of grand theft in the first degree. In addition, 3ABN's actions have resulted in an unauthorized appropriation, sale, or transfer of Mr. Adderley's property in which Mr. Adderley did not receive the reasonable equivalent financial value in goods and services, which directly violates Section 825.103(1)(c) of the Florida Criminal Statutes, punishable in Florida as a felony of grand theft in the first degree.

**Theft, § 812.014, Fla. Stat.** Moreover, by knowingly obtaining, using, or endeavoring to obtain or to use, Mr. Adderley's property with intent to, either temporarily or permanently, (i) deprive Mr. Adderley of a right to the property or a benefit from the property, or (ii) appropriate the property of Mr. Adderley to 3ABN's own use or to the use of any person not entitled to the use of the property, 3ABN has directly violated Section 812.014 of the Florida Criminal Statutes, punishable in Florida as a felony of grand theft in the first degree.

Please be forewarned that 3ABN's exploitation, conversion, and theft of the 419 tract of land that belongs to Mr. Adderley has caused significant damages to Mr. Adderley. 3ABN has deprived my client of the possession and use of his property. Pursuant to Section 772.11 of the Florida Statutes, Mr. Adderley hereby demands you to pay the appraised value of the land in

SAAVEDRA | GOODWIN

the amount of **$22,900,000.00**.[1]  Alternatively, Mr. Adderley will accept the return of title to the entire 419 acre tract of property.

If you comply with this demand **within thirty (30) days after receipt**, Mr. Adderley shall give you a written limited release from further civil liability for the specific act of exploitation, conversion and theft described herein.  If you fail to comply with this demand, Mr. Adderley has authorized us to immediately file a cause of action against 3ABN as well as Mr. Hunt, individually and as a representative of 3ABN, **seeking treble damages (i.e., in excess of $68,700,700.00**[2]**)** for the property exploited, converted and stolen, as well as other damages, including but not limited to, loss of use, attorney's fees, costs, and interest, and any other relief available in law or equity.

We urge 3ABN to carefully reconsider its actions; the damages 3ABN has caused Mr. Adderley should be taken very seriously and there is no better economic time to resolve this matter than now.

### PLEASE GOVERN YOURSELF ACCORDINGLY.

Sincerely,

SAAVEDRA | GOODWIN

Diane J. Zelmer
For the Firm

/djz
cc:  Client

Attachment:    Exhibit "1" - March 26, 2018 and March 30, 2018 correspondence along with the Affidavit of Mr. Adderley

---

1 Although Section 772.11 of the Florida Statutes permits the demand of treble damages based on the current value, Mr. Adderley has agreed to demand $22,900,000.00, which represents the appraised value as of December 28, 2012.  If 3ABN refuses to comply with this demand, Mr. Adderley will seek treble damages.
2 Mr. Adderley claim for treble damages will be based on the actual value of the land in today's dollars, which will likely greatly exceed $68,700,700.00.

Case 1:18-cv-23862-RNS   Document 68-10   Entered on FLSD Docket 07/24/2019   Page 170 of
175
Case 1:18-cv-23862-RNS   Document 68-10   Entered on FLSD Docket 04/12/2019   Page 4 of 9

# SAAVEDRAGOODWIN

**ATTORNEYS & COUNSELORS AT LAW**
TELEPHONE (954) 767-6333 • FAX (954) 767-8111
WWW.SAAVLAW.COM

ATTORNEYS:
DAMASO W. SAAVEDRA (AV RATED)
ALLYSON D. GOODWIN
JENNIE L. COLABELLI
ROSS D. KULBERG (AV RATED)
GLEN M. LINDSAY (AV RATED)
CASEY B. MCCORMACK
ANDREW D. WYMAN (AV RATED)

ATTORNEYS LICENSED IN:
FLORIDA
ILLINOIS
NEW YORK
NEW JERSEY
CONNECTICUT
WASHINGTON, D.C.

OF COUNSEL:
MARA ALYSON
RANDOLPH M. BROMBACHER (AV RATED)
MARIO THOMAS GABOURY
L. FORREST OWENS
(BOARD CERTIFIED IN AVIATION LAW)

SENDER'S E-MAIL ADDRESS:
rkulberg@saavlaw.com

March 26, 2018

**VIA E-MAIL AND U.S. MAIL**
Mr. Danny Shelton
Three Angels Broadcasting Network
P.O. Box 220
West Frankfort, IL 62896
danshelton@earthlink.net
dan.shelton@3abn.org

   Re: David Lawrence Adderley

Dear Mr. Shelton:

   Thank you for speaking with me late last week over the phone. As discussed, we are representing the interests of Mr. David Lawrence Adderley and we ask that all future and further communications take place through this office. As we also discussed on our call, Mr. Adderley believes that he is the owner of all of his property located on Long Island in the Bahamas, including specifically, the 420+ acres known as the Adderley Estate. Accordingly, neither you nor Three Angels Broadcasting Network have any reason or permission to be on Mr. Adderley's property, and we immediately demand that you and 3ABN immediately cease and desist from entering this property and from performing any work thereon.

   As you must be aware, Mr. Adderley is blind. While Mr. Adderely may be blind, he is completely cognizant and understands fully what he is saying and has a clear memory as to what transpired with the Church and 3ABN. Mr. Adderley trusted his Church and 3ABN, which he thought at that time was the charitable division of his Church, to carry out his intentions with a portion of his property no larger than one or two acres for use as a Church Sanctuary. Unfortunately, it is clear that 3ABN, which we now understand to be a wholly separate entity from the Church, had Mr. Adderley sign documents which purport to transfer his property to a "Charitable Trust." Mr. Adderley is adamant that no discussion ever took place regarding any trust and he never has had an intention to donate his entire property to 3ABN or to a trust in his name.

<span style="color:red">**Composite Exhibit "1" to
Civil Theft Demand Letter**</span>

Saavedra | Goodwin
Page 2

Attached to this letter, you will find an Affidavit that is being filed of record in the Bahamas to ensure that 3ABN immediately ceases all actions with respect to Mr. Adderley's property. The statement and sworn testimony of Mr. Adderley are alarming and raise allegations of fraud and undue influence against 3ABN and its representatives. This serious matter requires an immediate resolution, including the execution of all necessary documents to terminate any so-called trust and ensure Mr. Adderley is the rightful owner of his property. Unfortunately, if this matter is not immediately resolved, the next step will be to file a lawsuit against 3ABN, which will undoubtedly include claims of fraud.

As I briefly noted over the phone, I will be out of the office through Thursday, March 29, 2018, but will be returning on Friday, March 30, 2018. I hope at that time we can discuss a fair resolution of these matters without the necessity of raising the profile of this case. I look forward to speaking with you or your counsel upon my return.

Sincerely,

**SAAVEDRA | GOODWIN**

Ross D. Kulberg, Esq.
For the Firm

RDK/dka

Enc.



**SAAVEDRAGOODWIN**

**ATTORNEYS & COUNSELORS AT LAW**
TELEPHONE (954) 767-6333 • FAX (954) 767-8111
WWW.SAAVLAW.COM

ATTORNEYS:
DAMASO W. SAAVEDRA (AV RATED)
ALLYSON D. GOODWIN
JENNIE L. COLABELLI
ROSS D. KULBERG (AV RATED)
GLEN M. LINDSAY (AV RATED)
CASEY B. MCCORMACK
ANDREW D. WYMAN (AV RATED)

ATTORNEYS LICENSED IN:
FLORIDA
ILLINOIS
NEW YORK
NEW JERSEY
CONNECTICUT
WASHINGTON, D.C.

OF COUNSEL:
MARA ALYSON
RANDOLPH M. BROMBACHER (AV RATED)
MARIO THOMAS GABOURY
L. FORREST OWENS
(BOARD CERTIFIED IN AVIATION LAW)

SENDER'S E-MAIL ADDRESS:
dantonelli@saavlaw.com

March 30, 2018

**VIA FED EX**

Hector H. Rivera, Esq.
IDM
11369 Okeechobee Blvd.
Bldg. B, Suite 100
Royal Palm Beach, FL 33411

Re:     David Lawrence Adderley

Dear Hector:

Per our email communications, enclosed please find the original executed Affidavit of Mr. Adderley for recording in The Bahamas.

Thank you for your assistance in this matter.

Sincerely,

**SAAVEDRA | GOODWIN**

Deborah K. Antonelli, FRP

/dka

Enc.

312 SOUTHEAST 17TH STREET, SECOND FLOOR, FORT LAUDERDALE, FLORIDA 33316

# AFFIDAVIT OF DAVID LAWRENCE ADDERLEY

I, David Lawrence Adderley (hereinafter, "I", "Me" or the "Owner"), of Miami-Dade County, Florida in the State of Florida one of the States of the United States of America, make Oath and Say as follows:-

1.  That I am a Bahamian citizen.

2.  That I am 80 years old.

3.  That I am legally blind.

4.  That by the following three Indentures of Conveyance, I became seised for an estate in fee simple in possession of the hereditaments described therein (hereinafter, "my Property"):-

    a.  Conveyance dated 15th March, 1966 between Wellington Leon Adderley and the Owner, recorded in Volume 986 at pages 386 to 390, at the Registry of Records of the Commonwealth of The Bahamas (hereinafter, the "said Registry");

    b.  Conveyance dated 21st May, 1971 between Wellington Leon Adderley and the Owner, recorded in Volume 2330 at pages 452 to 456, at the said Registry; and

    c.  Conveyance dated 21st May, 1971 between Wellington Leon Adderley and the Owner, recorded in Volume 2330 at pages 442 to 447, at the said Registry (collectively hereinafter, the "Original Conveyances").

5.  That due to my religious convictions and parishioner relationship with the Seventh Day Adventist Church (hereinafter, "my Church"), I wanted to donate a small portion consisting of 1-2 acres of my Property along Queens Highway to my Church, to carry out the wishes of my father, Wellington Adderley, and in order for my Church to build a Sanctuary thereon.

6.  That Roy Hunt, whom I believed to be a representative of my Church and Three Angels Broadcasting Network Inc. (hereinafter, the "Network"), led me to believe he had made arrangements to enable the donation of the 1-2 acres to my Church.

7.  That I truly believed Roy Hunt and relied on his guidance.

8.  That based on Roy Hunt's guidance, I met with members of the Network because I was told by Roy Hunt that the Network would facilitate the 1-2 acre donation to my Church. I was led to believe that the Network was the charitable giving division which would handle this donation on behalf of my Church. I believed, based upon representations from Roy Hunt and the Network, that my Church and the Network were one and the same.

9.  That I made clear to the Network representatives my intended donation of 1-2 acres to my Church, for the purpose of building a Sanctuary for my Church;

10. That I was led to believe by Network representatives that the Network would have the appropriate documents drafted to enable the 1-2 acre donation to my Church.

{00237780.DOC. 1 }

11.   That I was transported to the Bahamian Embassy by Network representatives, including Mr. Roy Hunt and his wife, and was told by Network representatives that we were going to said Embassy to execute the necessary documents to accomplish my intended donation to my Church.

12.   That I verily believed the Network representatives and relied on their representations.

13.   That the donation of all of my property was never discussed with my Church or the Network.

14.   That I recently learned that instead of the 1-2 acre donation to my Church, the network tricked and mislead me, and had me sign the following three Indentures of Conveyance and thereby unknowingly, purportedly conveyed my Property to the "Irrevocable Unitrust of David Lawrence Adderley":

   a.   Conveyance dated 30th December, 2011 from the Owner to the Irrevocable  Unitrust of David Lawrence Adderley, recorded in Volume 11697 at pages 10 to 19, at the Registry;

   b.   Undated Conveyance from the Owner to the Irrevocable Unitrust of David Lawrence Adderley, recorded in Volume 11697 at pages 20 to 29, at the Registry; and

   c.   Conveyance dated 30th December, 2011 from the Owner to the Irrevocable Unitrust of David Lawrence Adderley, recorded in Volume 11697 at pages 30 to 40, at the Registry (collectively hereinafter, the "Illegal Conveyances").

15.   That during all conversations with Mr. Hunt and the Network representatives, no mention was ever made about a trust or a trustee.

16.   That I never met with any attorney regarding my donation of 1-2 acres to my Church, let alone an attorney who represented me with respect to an irrevocable trust.

17.   That I recall signing some documents but was told such documents only related to the 1-2 acres of my Property that I was donating to my Church.

18.   That I never intended to convey any other part of my Property besides the 1-2 acres.

19.   That the Illegal Conveyances were obtained by depraved connivance, deceit, and fraudulent inducement.

20.   That the consideration stated in the said Conveyances is false and a misrepresentation of the truth.

21.   That I have never received any payment of any kind for my Property. Further, there was no mention of any payment in discussions with the Network as it was my intent to donate 1-2 acres of property for my Church to build a Sanctuary.

22.   That I am the rightful beneficial owner of my Property.

23.   That since learning of the Illegal Conveyances, I have also learned that The Network is trespassing on my Property and making improvements on my Property, which I have not authorized.

Case 1:18-cv-23362-RNS   Document 119   Entered on FLSD Docket 07/24/2019   Page 35 of 9
Case 1:18-cv-23362-RNS   Document 68-10   Entered on FLSD Docket 04/12/2019   Page 35 of 9
175

24. That I have never served as trustee of a trust for any purpose, nor authorized any other party to serve as trustee of a trust in my name.

25. That I have no knowledge about who is acting as trustee, if there is one, under the so called Irrevocable Unitrust of David Lawrence Adderley.

26. That I fear the Network has conceived a malicious and fraudulent scheme to control and deprive me of my Property ownership.

27. That it has been and continues to be my intention to sell my Property, to fund my retirement and my children.

28. That I make oath and swear this affidavit for the purpose of making the Network's fraudulent scheme known to the world and to solemnly claim ownership rights to my Property under penalty of perjury.

FURTHER, the affiant sayeth not.

_____          _____
Witness                                                         David Lawrence Adderley

Print Name: Jasmine N. Rodriguez

_____
Witness   Carol Robison

Print Name


**STATE OF FLORIDA**

**COUNTY OF** Miami-Dade

I have read the foregoing affidavit to David Lawrence Adderley and the forgoing affidavit was subscribed and sworn before me this 23rd day of March, 2018, by David Lawrence Adderley, the Affiant, who is personally known to me or produced the following identification _____.

ROSS D. KULBERG
Notary Public - State of Florida
Commission # GG 020107
My Comm. Expires Aug 9, 2020
Bonded through National Notary Assn.

Print Name:_____
Notary Public, State of Florida

My Commission Expires: