**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

DAVID LAWRENCE ADDERLEY,
an individual,                                                          Case No.:        1:18-cv-23362-RNS

        Plaintiff,

   v.

THREE ANGELS BROADCASTING
NETWORK, INC., a non-for-profit foreign
corporation, ROY HUNT, JR., an individual,
JAMES W. GILLEY, an individual, DANNY
SHELTON, an individual, and RICHARD
BARRY BENTON, ESQ., and individual,

        Defendants.
_____

**DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S SECOND**
**AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants Three Angels Broadcasting Network, Inc. ("3ABN"), Roy Hunt, Jr. ("Hunt") James W. Gilley ("Gilley"), and Danny Shelton ("Shelton"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), 9(b), and 8(a), hereby respectfully request that the Court dismiss Plaintiff David Lawrence Adderley's ("Adderley" or "Plaintiff") Verified Second Amended Complaint ("SAC") [D.E. 68], and in support state as follows:

## INTRODUCTION

The SAC, which asserts twenty-eight purported causes of action stemming from a 2011 transaction, is ripe for dismissal. First, Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. However, Plaintiff has failed to establish that the action is between citizens of different states. Therefore, the SAC should be dismissed under Federal Rule of Civil Procedure 12(b)(1). Second, the SAC should be dismissed for failure to include an indispensable party (namely the CRUT through its Trustees) under Rule 12(b)(7) of the Federal Rules of Civil Procedure. Third, Plaintiff's claims are facially barred by the applicable statutes of limitation and are deficient with respect Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. Moreover, Plaintiff does not allege what Defendants did following the 2011 transaction to conceal any cause of action he may have had, which would be required to demonstrate entitlement to a tolling of the statutes of limitation. Therefore, the Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND[1]

On August 22, 2011, Adderley signed a Charitable Remainder Unitrust Agreement ("CRUT"). Second Am. Comply. ("Compl.") ¶ 21. Its terms show it was intended to receive

---

[1] Alleged facts recited or referenced herein are not conceded for any purpose beyond this motion.

Adderley's real estate located in the Bahamas, which was then to be marketed and sold. *See* Compl. Ex. A. Adderley was to receive income from the trust during his lifetime; upon his death, 3ABN would receive the remainder. *Id.* On December 30, 2011, Adderley signed three Indentures of Conveyance that donated approximately 419 acres into the CRUT. *Id.* ¶¶ 39, 43. The gist of Adderley's case is his assertion that he was unable to read the CRUT and Indentures himself, because he is legally blind. *Id.* ¶ 46. He claims he relied on 3ABN, its director, Roy Hunt, and attorney Barry Benton, to tell him what he was signing. *Id.* Adderley alleges Hunt made unspecified misrepresentations about the documents that induced him to sign them. *Id.* ¶ 48. Adderley alleges that he was put on actual notice of Defendants' alleged misconduct in April of 2016. *Id.* ¶ 62. He alleges that on March 26, 2018, he demanded that 3ABN terminate the CRUT and return the property. *Id.* ¶ 51. He alleges that "every day" from August 31, 2012 to the present, 3ABN engaged in continuing tortious conduct consisting of "excluding Adderley from the use and possession of his property" and "performing improvements on the Property," among other things. *Id.* ¶ 69.

Adderley filed suit on August 17, 2018. [D.E. 1.] Adderley originally brought suit against 3ABN, and Hunt and Gilley as individuals. *Id.* Adderley later amended his Complaint and added Shelton and Benton as Defendants. [D.E. 68.] Several issues have been raised during the course of litigation, including whether subject matter jurisdiction exists and whether the Plaintiff added all indispensable parties. [D.E. 111.] These issues are in addition to the other facial defects of Plaintiff's Complaint addressed by Defendants in their motions to dismiss. [D.E. 21, 75.] This Court ordered jurisdictional discovery to ascertain whether Gilley is a citizen of the State of Florida, which would destroy diversity jurisdiction. [D.E. 120.] Now that jurisdictional discovery

has concluded, it is clear that the SAC should also be dismissed for lack of subject matter jurisdiction.

## ARGUMENT

I.    **THE SAC SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE DIVERSITY IS LACKING.**

Defendant James Gilley is a citizen of the State of Florida, and was so at the time the lawsuit was commenced. Therefore, the SAC should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

James and Camille Gilley—both retired—resided in California until 2017, when they purchased a residence in Florida with the intent to make Florida their permanent domicile. Florida is Camille's native state and, having spent significant amounts of time in Florida, the Gilleys always intended to retire there—not California. It is true that, at the time this lawsuit was commenced, certain details remained to be addressed to complete the Gilleys' transition to Florida—changing their postal address for mail with various businesses (e.g., credit cards, investment accounts, and the like), obtaining Florida drivers' licenses and voting registrations, and selling off their California property. But these discrete items should not weigh heavily in the jurisdictional calculus, because the totality of objective facts amply demonstrates that, when this lawsuit was filed, the Gilleys had both a residence and an intent to reside permanently in Florida. Diversity jurisdiction as to James Gilley is therefore absent.

A.    **Law governing diversity jurisdiction analysis**

28 U.S.C. § 1332(a)(1) vests this Court with authority to exercise jurisdiction over cases involving "citizens of different States." The party seeking diversity jurisdiction—plaintiff here— has the burden to establish jurisdiction by a preponderance of the evidence. *Jones v. Law Firm of Hill and Ponton*, 141 F. Supp. 2d 1349, 1354 (M.D. Fla. 2001); *Kondaur Capital Corp. v.*

*Freemont Inv. & Loan*, No. 210-CV-652-FTM-29DNF, 2011 WL 617178, at *3 (M.D. Fla. Feb. 15, 2011) ("The burden of persuasion for establishing diversity jurisdiction is on the party asserting it, and when challenged on allegations of jurisdictional facts, the party must support the allegations by competent proof.")  The existence of diversity is determined as of the time suit was commenced, not when the cause of action arose. *Jones*, 141 F. Supp. 2d at 1354–55. A natural person's state citizenship, or "domicile", is determined by two factors: residence and intent to remain. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir. 1984). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."  *Rural Int'l Bank Ltd. v. Key Fin. Inv. Grp. LLC*, No. 16-22280-CIV, 2017 WL 3382788, at *2 (S.D. Fla. Aug. 7, 2017).

Although certain presumptions[2] exist, in order to determine "domicile" for diversity jurisdiction purposes, the court considers objective facts bearing on an individual's "entire course of conduct" under a "totality of evidence" standard; no single factor is conclusive. Factors frequently considered include: a party's current residence; payment of taxes; voter registration and voting practices; driver's license and automobile registration; situs of personal and real property; location of brokerage and bank accounts; and membership in clubs, churches, fraternal organizations and other associations. *Taylor v. Am. Heritage Church Fin., Inc.*, No. 6:10-cv-559-

---

[2] One such presumption is that the state in which a person resides at any given time is also that person's domicile. *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941). However, in light of the fact that changes in residence are common, another presumption is that, once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state. *McDougald v. Jenson*, 786 F.2d 1465, 1483 (11th Cir. 1986).

Orl-31GJK, 2010 WL 2889694 at *2 (M.D. Fla. July 19, 2010) (citing 13E Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed.).)

In this case, the Gilleys' entire course of conduct reveals objective actions and an intent to make Florida their permanent retirement residence at the time the lawsuit was commenced.

**B.      Plaintiff cannot meet his burden of demonstrating that defendant James Gilley was domiciled in a state other than Florida at the time this lawsuit was commenced.**

"Where there is evidence indicating the party has more than one residence, or the residence is unclear, **the court should focus on the intent of the party**." *Hardenbrook v. Irwin*, No. 8:09-CV-2542-T-27TBM, 2010 WL 11629185, at *2 (M.D. Fla. May 26, 2010) (emphasis added). Although the Gilleys previously maintained a domicile in California—and continue to own property in both California and Florida—at the time this lawsuit was commenced on August 17, 2018, the objective facts demonstrate they intended to make Florida their home state. Specifically, James and Camille purchased their Florida property in March 2017. (Ex. A, *excerpt of* Deposition of James W. Gilley, at 177:3-6.)  James testified at his deposition that, at or shortly after this purchase, Florida is "where we were starting to move" and "we've always considered that Florida is where we were going to end up."  (Ex. A at 172:21-173:20.)  Camille Gilley echoed her husband's sentiment:

> Q.      And at that point in time when you purchased the home [in Florida], did you intend for that to become your principal residence or domicile?
>
> A.      Yes.
>
> *      *      *
>
> Q.      As of August 17, 2018, what would you say was your principal place of residence?
>
> A.      August of '18. Let me think. Okay. This is – I would say Florida.

Q.     Okay. As of August 17, 2018, what would you say your domicile is?

A.     The same time period, I consider Florida home. I was born in Florida. We've always had – we've had property in Florida and places that we thought we would live in and retire since the '90s. And so I consider Florida home. My mother was born here. My brother was born here. My fam – my grandparents, uncles. This is home to me.

(Ex. B, *excerpt of* Deposition of Camille Gilley at 12:16-19; 37:21-38:8.)  Consistent with those statements, after the Gilleys purchased their Florida residence, they obtained Premium Forwarding Service from the U.S. Post Office in Weimar, California, which bundled all of the mail directed to the Gilleys' California property and a local post office box, and mailed it to Gilleys' Florida address. (Declaration of Michelle Howard ("Howard Decl.") ¶ 7.) Therefore, it is irrelevant whether the Gilleys' mail is addressed to them in California or Florida, because the Gilleys were receiving their California mail in Florida.

Review of the Gilleys' time spent in Florida and California during the past three years also reveals a clear trend toward their spending progressively greater amounts of time in Florida between 2017 and 2019. In 2017, the year prior to start of this lawsuit, the Gilleys spent more than 50% of the year in California. (Corrected and Amended Declaration of James W. Gilley ("Gilley Corrected Decl.") ¶ 4.)  In 2018, the Gilleys spent over half of the year either in their Florida home or traveling, with the balance spent in California. (Gilley Corrected Decl. ¶ 4.) Through August of 2019, the Gilleys had already spent 146 out of the 224 days in Florida, and are therefore on pace to easily exceed 50% of their time in Florida this year. (Gilley Corrected Decl. ¶ 5.)  These facts demonstrate the Gilleys' establishment of a domicile in Florida.

In addition, the Gilleys recently filed their federal tax return for the 2018 tax year. That tax return reflects their Florida address. (Ex. C.) The Gilleys also recently obtained their drivers' licenses and voter registrations in Florida, further evidencing the Gilleys' bona fide commitment

to making Florida their permanent home. (Ex. A at 226:22-227:13; Ex. B at 34:18-24; 35:19-36:12.) Although these actions were not performed by the time plaintiff commenced this lawsuit, that fact is inconsequential given the Gilleys' other objective actions and intent. *Lawson v. Morgan*, 352 F. Supp. 282, 283 n.1 (E.D. Pa. 1973) (rejecting argument that, despite representative's move to New Jersey, she was not a citizen of New Jersey since she was still registered to vote in Pennsylvania and had a Pennsylvania driver's license).

Moreover, since the Gilleys are retired, they faced no particular urgency in immediately resolving every administrative issue related to their transcontinental move. One such administrative issue that Plaintiff has raised involves a Homeowners' Exemption on the Gilleys' California property, which is located in Placer County. Plaintiff has argued that since a Homeowners' Exemption appeared on the California property for the fiscal year of July 1, 2018 through June 30, 2019, and July 1, 2019 through June 30, 2020, Gilley was a citizen of California. But Plaintiff's reliance on the Homeowners' Exemption is flawed. First, according to Placer County, "[i]f you own and occupy a home as your principal place of residence on January 1, you may apply for a Homeowners' Exemption." County of Placer Assessor, *Homeowners' Exemption*, https://www.placer.ca.gov/5657/Homeowners-Exemption (last visited Oct. 18, 2019). This means that if the Gilleys owned and occupied their California residence on January 1, 2018, they were able to claim a homeowners' exemption for the entire year, whether or not their principal place of residence changed during the year. Second, once a person has filed for a Homeowners' Exemption and continues to own and occupy the property, that person will "automatically receive the exemption." County of Placer, *Assessor – Homeowners' Exemption FAQ*, https://www.placer.ca.gov/FAQ.aspx?TID=64 (last visited Oct. 18, 2019). Gilley started receiving the Homeowners' Exemption in 2016. (Ex. D.) Gilley has not yet paid his taxes for the

2019/2020 fiscal year. (Ex. E.) As such, Gilley still has the opportunity to advise Placer County that he no longer meet the requirements of the Homeowners' Exemption for the California property. In short, the existence or nonexistence of a Homeowners' Exemption is not controlling on the Gilleys' intent concerning citizenship.

There can be little doubt that, beginning with the purchase of their Florida home in the spring of 2017, the Gilleys' "entire course of conduct"—whether objective actions or subjective intent—demonstrates a bona fide transition of their domicile from California to Florida. Because plaintiff cannot establish sufficient evidence to overcome the Defendants' assertion that Gilley's domicile is in Florida, this action should be dismissed for lack of subject matter jurisdiction.

## II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ADD AN INDISPENSABLE PARTY.

Plaintiff's action should also be dismissed for failure to add an indispensable party. The CRUT, through its Trustees[3], are necessary parties that are not able to be joined because at least one Trustee destroys diversity of citizenship. Additionally, any addition of an indispensable party is untimely under the Court's Scheduling Order. Therefore, Plaintiff's action should be dismissed under Federal Rule of Civil Procedure 12(b)(7).

### A.   The Trustees are Indispensable Parties.

"Federal Rule of Civil Procedure 19 establishes a two-step inquiry to determine whether [the Trustee] is an indispensable party to this suit. First, under Rule 19(a), the court asks whether [the Trustee] is a 'person to be joined if feasible,' i.e. whether it is a 'necessary party' to the

---

[3] "[L]egal proceedings involving such traditional trusts are effectively brought by or against their trustees and, thus, it is the trustees' citizenship, not that of beneficiaries, that matters for purposes of diversity." *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017); *see also Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016, 194 L. Ed. 2d 71 (2016) ("legal proceedings involving a [traditional trust] were brought by or against the trustees in their own name.").

litigation. A party is deemed necessary under Rule 19(a)(1) if: (1) its absence will prevent the court from granting complete relief to the existing parties, or (2) the party claims an interest relating to the subject matter of the action and its absence in the litigation may (i) as a practical matter impair or impede its ability to protect that interest, *or* (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest." *Spear Grp., Inc. v. Fla. Power & Light Co.*, No. 13-80534-CIV, 2014 WL 272724, at *2 (S.D. Fla. Jan. 23, 2014). "If the court concludes that [the Trustee] is a necessary party under Rule 19(a)(1), then it must order its joinder, if feasible." *Id.* If "joinder is not feasible, then under Rule 19(b) it must then determine whether, in equity and good conscience, the action should proceed among the existing parties without it or be dismissed. *Id.* Here, the Trustee is a necessary party that cannot be joined and the action should be dismissed.

### 1.     The Trustees are Necessary Parties.

"Under Florida law, the general rule is that the Trustee is an indispensable party in all proceedings affecting the estate." *Taylor v. Moskow*, No. 16-20222-CIV, 2016 WL 10646329, at *4 (S.D. Fla. Oct. 4, 2016). Here, the gravamen of the SAC is whether the Defendants tricked Plaintiff into signing the Indentures of Conveyance transferring the Property into the CRUT and, whilst conflicting, whether the Trustees took proper actions in marketing the Property and fulfill the purpose of the CRUT. SAC ¶ 39. When the Property was transferred into the CRUT, Plaintiff was Trustee. SAC ¶¶ 31-32. Gilley and Shelton served as Trustees while the CRUT's purpose was to be fulfilled. Therefore, all three Trustees of the CRUT from its inception are necessary.

Also, without the Trustees as parties, the relief requested by the Plaintiff cannot be granted. Fed. R. Civ. P. 19(a)(1)(A). The SAC either asks for money damages stemming from

the alleged actions of the parties related to the CRUT or for specific trust remedies, which include, Count I (Declaration that CRUT is Invalid) where "Plaintiff demands a judgment declaring that the CRUT is invalid"; Count X (Constructive Trust) where Plaintiff asks "to impose a constructive trust on the Property, [and] to escrow funds in the event of a sale of the Property"; Count XI (Equitable Lien) to order a lien on Property and then foreclose on the lien; Count XII (Injunctive Relief) asks for a "permanent injunction against the 3ABN to enjoin it from trespassing, performing any modifications, alterations, construction or improvements on the Property"; Count XVIII (Reformation of Trust) "requests the Court to reform the CRUT to the intent of the Plaintiff"; and, Count XX (Equitable Accounting) asks for an equitable accounting of 3ABN, Gilley, and Shelton. *See* SAC ¶¶ 88, 159, 166, 173, 235, 252. Therefore, the Trustees are necessary parties.

## 2.    Joinder is Not Feasible.

Given the allegations in the SAC, all three CRUT Trustees are necessary parties to the litigation; however, joinder of the Trustees cannot be accomplished without destroying diversity jurisdiction. Fed. R. Civ. P. 19(a)(1). Plaintiff as an individual is a citizen of Florida, and would be opposed to himself, as Trustee, as well as Gilley as Trustee, who is also a citizen of Florida as demonstrated above. Therefore, joinder is not feasible because diversity jurisdiction is destroyed.

## 3.    The Action Should be Dismissed.

Under Rule 19(b), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "When conducting an analysis under Rule 19(b), a court must balance "(1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be

adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder." *Tracfone Wireless, Inc. v. US/Intelicom, Inc.*, 202 F.R.D. 321, 323 (S.D. Fla. 2001).

First, any judgment would be prejudicial to all parties, as well as the CRUT if the CRUT was not involved in the litigation. Specifically, Plaintiff would not be able to obtain full relief including damages related to the CRUT, or return of the Property held by the CRUT, since the CRUT would not be a party. Also, the Property held in the CRUT would have a clouded title because of the litigation and potential for judgment, which would limit its ability to be marketable. And, if the Property does not sell then it would disadvantage both the Plaintiff and the Defendants according to the terms of the CRUT. In short, no adequate relief could be fashioned because the CRUT would not be bound by any judgment in this case, yet, this case would affect the underlying purpose of the CRUT. *Tracfone Wireless, Inc. v. US/Intelicom, Inc.*, 202 F.R.D. 321, 324 (S.D. Fla. 2001) ("the Court is compel [sic] to dismiss the above-styled case because the Defendants face the risks of multiple and conflicting obligations if [the CRUT] is later determined to be the rightful owner of the [Property]."). Finally, Plaintiff can choose to sue Defendants in a jurisdiction where the CRUT, through its Trustees, can be joined. Therefore, equity and good conscience support dismissal of the current action.

**B.    The Plaintiff Failed to Timely Add an Indispensable Party.**

Even if joinder was feasible, the Plaintiff failed to timely add an indispensable party within the time limit set by the Court in its Scheduling Order. A court's Scheduling Order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Here, the Scheduling Order was modified to allow the parties until March 4, 2019 to seek amendment of the pleadings. [D.E. 51]. A deadline in a Scheduling Order

"may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a deadline has already expired, as here, Fed. R. Civ. P. 6(b) specifies as follows:

> **(b)**    **Extending Time**
>
> **(1)**    ***In General.*** When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> > **(A)**    with or without motion or notice if the court acts, or if a request is made, before the original time or its extension requires; or
> >
> > **(B)**    on motion made after the time has expired if the party failed to act because of excusable neglect.

Thus, in order to obtain leave to amend following expiration of the deadline for amendments, plaintiff must show both excusable neglect and good cause. The Supreme Court defines "excusable neglect" as including "inadvertence, mistake, or carelessness." *Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). "[G]ood cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007). Plaintiff cannot show either.

Plaintiff has had three opportunities to file a complaint against the correct parties and failed. [D.E. 1]; [D.E. 18]; [D.E. 68]. Plaintiff cannot show excusable neglect or good cause for failing to include the CRUT, through its Trustees, as parties. This was not in inadvertent mistake or carelessness. Plaintiff's failure appeared calculated as part of an effort to not destroy diversity jurisdiction. In fact, Plaintiff learned who the Trustees of the CRUT were by taking key depositions of current and former employees of 3ABN in January and February 2019. Plaintiff then used this information as part of his showing of "good cause" when he moved the Court to

amend his Complaint outside the Scheduling Order back in March 2019. *See* [D.E. 57]. Yet, Plaintiff never added the Trustees to his complaint. Therefore, Plaintiff cannot now claim he was unaware of who the Trustees were during the time period of his allegations or use that as a basis to show excusable neglect or good cause. As such, the SAC should be dismissed.

## III. PLAINTIFF'S COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, and unadorned, the-defendant-unlawfully-harmed-me accusations, cannot withstand a motion to dismiss." *Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1495 (2016). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

Although the Court may not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d), it can take judicial notice of public records and "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Odion*, 628 F. App'x at 638.

13

**B.**     **Adderley's Claims Are Barred by the Applicable Statutes of Limitation.**

    **1.**     **The Twenty-Eight Causes of Action in the Complaint are Barred by the Statutes of Limitation.**

The causes of action plead in the Complaint are all barred by the statutes of limitation.[4] "[T]he time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Fla. Stat. § 95.031. Generally "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). Causes of action founded on fraud, however, accrue when the facts are "discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a). The twenty-eight causes of action all stem from the undisputed fact that Adderley transferred property to the CRUT on December 30, 2011. Adderley's alleged injury and damages occurred on that date. Adderley also had facts sufficient to discover the alleged fraud on that date. Therefore, all of the causes of action accrued on December 30, 2011. *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 809 (M.D. Fla. 1987) (statute of limitations begins to run when the injury commences or first appears). Based upon the causes of action identified in the Complaint, the two-year, four-year, and five-year statutes of limitation apply. Adderley filed this action on August 17, 2018, which commences the action under Florida law. *See* Fla. R. Civ. P. 1.050. Under all of the applicable limitations periods, this action is untimely.

    **a.**     **Applicable Statutes of Limitation.**

    **i.**     **Two Years**

The statute of limitations in Florida is two years from "the time the cause of action is discovered or should have been discovered with the exercise of due diligence" for professional

---

[4] The SAC does not contain a count XVII, but instead has two causes of action listed as count XXIII. Therefore, the following discussion of counts will reference both the name and count number.

negligence, which is pleaded against Hunt (count XIII), and Gilley and Shelton (count XV). Fla. Stat. § 95.11(4)(a). Adderley alleges that he discovered Defendants' alleged bad acts in April 2016. Compl. ¶ 62. He did not bring suit within two years. As such, these claims are time-barred.

### ii.    Four Years

The statute of limitations in Florida is four years for the following counts in the Complaint: negligent misrepresentation against Hunt and 3ABN (count III), fraudulent inducement against Hunt and 3ABN (count IV), fraudulent misrepresentation against Hunt and 3ABN (count V), common law conversion against 3ABN (count VI), Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against 3ABN and Hunt (count VII), civil conspiracy against Hunt and 3ABN (count VIII), unjust enrichment against 3ABN (count IX), constructive trust against 3ABN (count X), breach of fiduciary duty against Hunt (count XIV), breach of fiduciary duty against 3ABN, Gilley, and Shelton (count XVI), violation of adult protection statute against Hunt and 3ABN (count XXI), and undue influence against Hunt and 3ABN (count XXIV). Fla. Stat. § 95.11(3) (actions that must be brought within four years include actions founded on negligence, fraud, statutory liability, and intentional torts); *Mayor's Jewelers, Inc. v. Meyrowitz*, No. 12-80055-CIV, 2012 WL 2344609, at *4–5 (S.D. Fla. June 20, 2012) ("the statute of limitations for a negligent misrepresentation claim is four years."); *Xavier v. Leviev Boymelgreen Marquis Developers, LLC*, 117 So. 3d 773, 775 (Fla. 3d DCA 2012) (statute of limitations for conversion is four years); *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008) (FDUTPA claims are subject to a four-year statute of limitations); *see Al-Hakim v. Big Lots Stores, Inc.*, 161 So. 3d 568, 570 (Fla. 2d DCA 2014) (statute of limitations for civil conspiracy is four years); *Wiand v. Dewane*, No. 8:10-CV-246-T-17MAP, 2011 WL 4460095, at *8 (M.D. Fla. July 11, 2011) (unjust enrichment claim

subject to a four year statute of limitations); *Collinson v. Miller*, 903 So. 2d 221, 229 (Fla. 2d DCA 2005) (a constructive trust claim is subject to a four year statute of limitation); *Woodward v. Woodward*, 192 So. 3d 528, 531 (Fla. 4th DCA 2016), *rev. dismissed*, No. SC16-1281, 2016 WL 5395722 (Fla. Sept. 27, 2016) (breach of fiduciary duty is an intentional tort subject to a four-year statute of limitations); *In re Guardianship of Rekasis*, 545 So. 2d 471, 473 (Fla. 2d DCA 1989) ("Undue influence is a species of fraud.").

Adderley did not bring any of these claims within four years of December 30, 2011. Therefore, these claims are barred by the statute of limitations and should be dismissed.

### iii.    Five Years

The statute of limitations in Florida is five years for the following counts appearing in the Complaint: conversion under Fla. Stat. § 812.014(1) against 3ABN (count VI), reformation of trust under Fla. Stat. § 736.0415 against 3ABN (count XVIII), civil exploitation under Fla. Stat. § 772.11 against 3ABN (count XXII), and civil theft under Fla. Stat. § 772.11 against 3ABN (count XXIII). Fla. Stat. § 95.11(2); Fla. Stat. § 772.17 (five-year statute of limitations for actions under Fla. Stat. ch. 772 which authorizes civil action for violation of Fla. Stat. §§ 812.014(1) and 772.11); *see Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n, Inc.*, 169 So. 3d 197, 201 (Fla. 1st DCA 2015) (applying five-year statute of limitations for an equitable reformation claim). Adderley did not bring these claims within five years of December 30, 2011. Therefore, they are barred by the statute of limitations and should be dismissed.

### b.    Equitable Claims and Punitive Damages

Adderley has alleged the following claims sounding in equity: declaratory judgment that the CRUT is invalid against 3ABN (count I), declaratory judgment that Indentures of Conveyances are invalid against 3ABN (count II), equitable lien against 3ABN (count XI),

injunctive relief against 3ABN (count XII), equitable reformation of trust against 3ABN (count XVIII), equitable reformation of Indentures of Conveyance against 3ABN (count XIX), and equitable accounting against Gilley, Shelton, and 3ABN (count XX). Under the concurrent remedy doctrine, these equitable claims are to be dismissed once the underlying legal action is dismissed. *Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1326 (11th Cir. 2007) ("where a party's legal remedies are time-barred, that party's concurrent are barred under the concurrent remedy doctrine."); *AFFCO New Zealand, Ltd. v. Am. Fine Foods Corp.*, 913 F. Supp. 2d 1331, 1336 (S.D. Fla. 2012) (declaratory judgment actions take the statute of limitations of the right sued upon).

Adderley has also plead punitive damages (count XXVIII). Adderley's claim of punitive damages is to be dismissed once the underlying cause of action is dismissed. *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1230 (Fla. 2016) ("a claim for punitive damages is not subject to a separate statute of limitations, but is actually dependent on the underlying cause of action."). Therefore, these additional claims are barred and should be dismissed.

### c. Negligent Spoliation of Evidence is Not a Viable Cause of Action.

Plaintiff's SAC includes a count for negligent spoliation of evidence against 3ABN and Benton (count XXV). "There is no independent cause of action for first-party spoliation of evidence." *Tarpley v. Miami-Dade Cty., Fla.*, No. 15-20997-CIV, 2015 WL 13554983, at *3 (S.D. Fla. Oct. 14, 2015). "First-party spoliation claims are claims in which the defendant who allegedly lost, misplaced, or destroyed the evidence was also a tortfeasor in causing the plaintiff's injuries or damages." *Id.* Ignoring the fact that Plaintiff does not even address what evidence 3ABN allegedly lost, misplaced, or destroyed, the crux of Plaintiff's cause of action is whether the physical copy of documents maintained by Benton, and subsequently transferred to

Leggett, was preserved. Plaintiff is simultaneously accusing Defendant Benton of destroying evidence and causing the Plaintiff's injuries. Therefore, Plaintiff is bringing a claim of first-party spoliation, which is not viable under Florida law.

>    **d.     Unauthorized Practice of Law Claim is Not Viable.**

Plaintiff's SAC includes a count for unauthorized practice of law against Hunt and 3ABN (count XXIII). "'To state a cause of action for damages under any legal theory that arises from the unauthorized practice of law [ . . . ] the pleading must state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law.'" *Scharrer v. Fundamental Admin. Servs., LLC*, No. 8:12-CV-1855-T-30MAP, 2013 WL 3943156, at *4–9 (M.D. Fla. July 30, 2013) citing *Goldberg v. Merrill Lynch Credit Corp.*, 35 So.3d 905, 907 (Fla. 2010). The standard is high. *Id.* at *5. Merely citing to cases and stating that the conduct is analogous is not enough. *See id.* (plaintiff cited to ten cases and failed to "identify a single, factually analogous case."). "[T]he *specified conduct* at issue must have been held to be the unauthorized practice of law by the Florida Supreme Court." *Id.*

Here, Plaintiff cited to two cases. Neither address the conduct of which Hunt and 3ABN are being accused. First, Plaintiff cites to *The Fla. Bar re Advisory Opinion-Nonlawyer Preparation of Living Trusts*, 613 So. 2d 426, 427 (Fla. 1992) for the proposition that "assembly, drafting, execution and funding of a trust document constitute the practice of law."  However, the Plaintiff failed to cite the full holding, which adds that "gathering the necessary information for the living trust does not constitute the practice of law, and nonlawyers may properly perform this activity."  *Id.* at 428. As stated in the Complaint, all of the actions attributed to Hunt and 3ABN were gathering the necessary information for the living trust. Compl. ¶ 294. Therefore, the situation Plaintiff presents is not analogous to the advisory opinion. Likewise, Plaintiff's reliance

on *The Fla. Bar v. Am. Senior Citizens All., Inc.*, 689 So. 2d 255, 258 (Fla. 1997) is misplaced. In

*American Senior Citizens*, the Court stated that "printed material purporting to explain legal

practices in general, or selling sample legal forms, [ . . . ] would not have fallen under the aegis

of practicing law" and that copying "the information given to [a person] in writing by [their]

clients," would be appropriate for a nonlawyer. *Id.* The conduct that was alleged in the SAC is

appropriate for a nonlawyer to complete. In addition, it should be noted that both of the cases

Plaintiff cites do not address the present situation, in which a person is donating land to a non-

profit organization. The cases are thus additionally inapposite on this basis and do not support

the cause of action. Therefore, Plaintiff's claim for unauthorized practice of law against Hunt and

3ABN (count XXIII) should be dismissed.

### 2.    Plaintiff Cannot Show That He is Entitled to Tolling.

Plaintiff is not entitled to any tolling that would rehabilitate his time-barred claims.

Plaintiff alleges fraudulent activities that occurred in the course of the 2011 transaction. All of

these activities were discoverable at that time. Put differently, the sum and substance of the

alleged fraud was memorialized in transactional documents that did not change after they were

signed. As such, tolling is not available.

### a.    The Delayed Discovery Doctrine Does Not Toll the Statute of Limitations.

"The delayed discovery doctrine is a well-established statutory exception in Florida and

'generally provides that a cause of action does not accrue until the plaintiff either knows or

reasonably should know of the tortious act giving rise to the cause of action.'" *State Farm Mut.*

*Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154,

1170 (S.D. Fla. 2015) (citing *Hearndon v. Graham*, 767 So.2d 1179, 1184 (Fla. 2000)). Actions

"founded upon fraud":

> [. . .] must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.

Fla. Stat. § 95.031(2)(a). "Thus, a plaintiff must initiate an action 'founded upon fraud' within four years of discovering the facts underlying the action or within four years of when those facts should have been discovered with diligence." *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1170.

Adderley's Complaint clearly anticipated the obvious – that the statutes of limitation have run – and proactively alleges that the delayed discovery doctrine applies. However, his reliance on the delayed discovery doctrine is not consistent with Florida law.

Adderley claims that he "did not discover, nor could have discovered through reasonable diligence, Defendants' misconduct until April 2016 because Defendants used deceptive and secret methods to avoid detection and to affirmatively conceal their fraudulent conduct." Compl. ¶ 63. Essentially, Adderley alleges that he was lulled into not discovering his current causes of action because 3ABN continued to discuss donation and use of a small portion of his property. *Id.* at ¶ 72. Adderley alleges that he could not have discovered 3ABN's alleged misconduct through reasonable diligence. *Id.* at ¶ 63.

Reasonable diligence must be affirmatively alleged in order to toll the statute of limitations. *See Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 (11th Cir. 2014) ("Klopfenstein has not plausibly alleged that he exercised reasonable diligence in discovering his causes of action and thus cannot invoke tolling."). "Although questions of due diligence often must be resolved by the trier of fact, that is not always the case. A party may fail to exercise due diligence as a matter of law." *McClung Surveying, Inc. v. Worl*, 541 S.E.2d 703, 706 (Ga. Ct.

App. 2000); *see Paredes v. Bank of Am., N.A.*, No. 217CV594FTM38MRM, 2018 WL 1071935, at *4 (M.D. Fla. Feb. 27, 2018), *appeal dismissed*, No. 18-11336-CC, 2018 WL 3238700 (11th Cir. May 17, 2018) ("the Complaint does not plead the specific facts necessary to delay the accrual of Florida's four-year statute of limitations, the court finds as a matter of law that the claims are due to be dismissed."); *see also Klopfenstein*, 592 F. App'x at 815-16.

In *Armbrister*, the court concluded that the plaintiff's argument that he was "lulled" into signing a document because he "trusted" the Defendants was wholly inadequate because "[a]ll Plaintiffs would have had to have done was to read the Public Offering Statements with which they were provided by Defendants." 667 F. Supp. at 810. Similarly, in *Paredes*, the court stated that the plaintiff failed "to allege why he could not have discovered the allegedly fraudulent acts at or near the time of commission through exercising of reasonable due diligence" when he failed to verify the statements made to him with publicly available information, failed to review the completeness of his documents, and failed to allege that he could not have discovered the information through exercising reasonable due diligence. *Paredes*, 2018 WL 1071935 at *3.

Here, all Adderley had to do was read the CRUT and Indentures of Conveyance or have a third party read them to him, as he alleges he did in April 2016 when he visited an estate lawyer. Compl. ¶ 62. The three Indentures of Conveyance are all signed by Adderley and accurately describe the land that was to be placed into the CRUT. Adderley alleges he is legally blind, but he has not alleged that his blindness prevented him from learning the contents of the Indentures. In addition, Adderley acknowledges that "every day since [August 31, 2012] to the present," he has been excluded from using and possessing his property. *Id.* at ¶ 69(e). The exclusion of Adderley from the property is an acknowledgement that 3ABN acted consistently with its understanding that all 419 acres were placed into trust. Accepting these allegations as true for

purposes of this motion, the exclusion of Adderley from his property from August 31, 2012 forward would have been more than enough to notify Adderley something was amiss concerning his interactions with Defendants and his claimed understanding of the underlying transaction. Finally, Adderley alleges that from January 24, 2012 to the present, 3ABN, Hunt, Gilley, and Shelton failed to sell the property, implying that he was aware of the size of the property that he had placed into the CRUT. *Id.* at ¶ 69(i). Therefore, Adderley could have used reasonable diligence to discover the facts underlying the Complaint before the statutes ran. His claims are thus barred.

### b. Fraudulent Concealment Does Not Toll the Statute of Limitations and is Not Pled With Required Particularity.

Adderley attempts to use fraudulent concealment as a basis to toll the statute of limitations. Adderley alleges that Defendants affirmatively concealed their alleged fraudulent conduct. Compl. ¶ 63. Adderley also alleges that the misconduct is "inherently self-concealing" based upon the fact that Adderley is legally blind. *Id.* The Complaint then provides conclusory statements regarding the alleged means that the Defendants' used to conceal the true nature of the documents from Adderley. *Id*. ¶ 65. However, there is no merit to Adderley's allegations and the allegations have not been plead with the particularity required to satisfy Rule 9(b).

### i. Fraudulent Concealment is Not Applicable.

"In order to establish fraudulent concealment sufficient to toll the statute, the plaintiff must show both successful concealment of the cause of action and fraudulent means to achieve that concealment." *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811 (Fla. 4th DCA 1995). Fraudulent concealment "focuses on subsequent actions to keep the improper conduct shrouded from sight." *W. Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So. 3d 635, 639

(Fla. 2d DCA 2015). Adderley has not plead any facts that show that the Defendants successfully concealed, or continued to conceal, the scope of the donation.

Adderley was on notice as to the scope of his donation on December 30, 2011 when he signed the three Indentures of Conveyance. A plaintiff has a duty to know what he is signing. *See Wirt v. Cent. Life Assur., Co.*, 613 So. 2d 478, 479 (Fla. 2d DCA 1992) ("Generally parties to a written instrument have a duty to learn and to understand the contents of that instrument before signing it."); *Onderko v. Advanced Auto Ins., Inc.*, 477 So. 2d 1026, 1028 (Fla. 2d DCA 1985) ("A party has a duty to learn and know the contents of an agreement before signing it."). Adderley attempts to use the fact that he is legally blind to circumvent the fact that he has a duty to know what he is signing prior to executing a document. However,

> [i]f a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 313 (Fla. 5th DCA 1985) (quoting *Sutton v. Crane*, 101 So. 2d 823 (Fla. 2d DCA 1958)). Therefore, "[t]he burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so before he signs it." *Id*.

Before signing any document, Adderley had an affirmative duty to select a reliable person to read him the contents of the documents including the CRUT on August 22, 2011 and the Indentures of Conveyance on December 30, 2011. Adderley failed to discharge his duty. Therefore, he cannot now claim that the Defendants used deceptive and secret methods to avoid detection when in fact any alleged "fraud" was evident on the face of the document when he signed it. Compl. Ex. A, D, E, F.

23

Further, Adderley has not alleged any facts that support the assertion that the Defendants continued to conceal any of the transaction documents. Adderley does not allege he lacked the documents showing that he transferred all 419 acres into the CRUT. In fact, the instances of "continued conversion/fraud" that Adderley cites in his Complaint prove the exact opposite of concealment. Adderley alleges 3ABN retained the property and excluded Adderley from "every day" use and possession of the property; performed improvements to the property; assured Adderley that he would receive a payout from the terms of the CRUT once the property was profitable; and attempted to market and sell the property. Compl. ¶ 69. These allegations demonstrate that Adderley was on notice that the CRUT held title to all 419 acres as outlined in the documents provided to Adderley, and that 3ABN openly acted in a manner consistent with the transaction described in those documents. The fraudulent concealment doctrine cannot operate to toll the statute of limitations here.

### ii. Adderley has Failed to Plead Fraudulent Concealment with the Required Particularity.

Even if this Court finds that fraudulent concealment could potentially apply, Adderley has failed to plead both the initial concealment and the subsequent actions of concealment with the required particularity under Rule 9(b). Under Rule 9(b)'s heightened pleading standard, "allegations of fraud, including fraudulent concealment for tolling purposes, [must] be pleaded with particularity." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (quotation omitted); s*ee also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) ("Plaintiffs have failed to adequately plead a claim for fraudulent concealment with the requisite level of specificity required by the Federal Rules of Civil Procedure."). "To satisfy the heightened pleading standard of Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made,

and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Odion*, 628 F. App'x at 637 (citing *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1262 (11th Cir. 2006)); *see also Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09-20372-CIV, 2010 WL 2652496, at *5 (S.D. Fla. Feb. 26, 2010).

As outlined above, Adderley has only provided conclusory statements of alleged fraudulent conduct. Adderley has not provided any specific statements that were allegedly made to him or appear in any correspondence with him, that supposedly detail that only a small portion was supposed to be transferred into the CRUT. Additionally, Adderley has not plead any facts that show that 3ABN prevented Adderley from discovering the alleged fraud after the documents were signed. Instead, Adderley provided generalized statements about what he thinks may have happened and attached several exhibits that only provide a basis for the transaction that occurred between the parties. As with *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. Appx 81, 87 (11th Cir. 2008), generalized allegations that "voluminous documents contain 'examples' of false statements somewhere within them" without providing the allegedly fraudulent representations with particularity has never been enough under Rule 9(b). *See also Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 906 (11th Cir. 2013) (denying tolling of statute of limitations because the plaintiff's contentions "amounted to only unsupported factual allegations or pure speculation."). Therefore, Adderley's claims should be dismissed because Plaintiff has failed to plead fraudulent concealment with particularity.

        **c.**       **Adderley Cannot Toll the Statute of Limitations Under Equity Principles.**

25

"Under the common law doctrine of equitable tolling, a plaintiff 'may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances.'" *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1170. "[T]he doctrine of equitable tolling is grounded in the fraudulent concealment of harm which gives rise to the right to sue." *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 810 (M.D. Fla. 1987). "[T]he doctrine supports the interests of justice by preserving a plaintiff's right to assert a meritorious claim when equitable circumstances have prevented a timely filing." *B&A Diagnostic, Inc.*, 145 F. Supp. 3d at 1170. "The Florida Supreme Court has explained that equitable tolling is generally applied when the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum." *Id.* (citing *Machules v. Dep't of Admin.*, 523 So.2d 1132, 1134 (Fla. 1988)).

"In order to benefit from the doctrine of equitable tolling, Plaintiffs must show: first, that they failed to discover, and *could not* have discovered, the facts underlying their claim before the applicable statute ran, and second, that this was so because Defendants prevented Plaintiffs from discovering the facts by 'fraudulent means.'" *Armbrister*, 667 F. Supp. at 810 (emphasis in original). The first requirement of equitable tolling fails for the reasons stated above. Adderley could have easily discovered the facts underlying his claim, as they were evident on the face of the documents, but failed to review the documents or have a neutral party review them with him.

Second, "[u]nless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding." *Allied Van Lines, Inc. v. Bratton*, 351 So.2d 344, 347 (Fla. 1977). "[O]ne who signs his name to an instrument . . . cannot escape the consequences of his signature by alleging he did not understand or read the form, unless he shows facts

indicating that he was prevented from reading it." *Bankers Ins. Co. v. Vasquez*, 483 So. 2d 440, 440 (Fla. 4th DCA 1985), *aff'd*, 502 So. 2d 894 (Fla. 1987). Adderley has not claimed that he was forced to sign either the CRUT or the Indentures of Conveyance. Adderley made general allegations that he was under undue influence to execute the documents. Adderley failed to identify what specific conduct of the Defendants caused undue influence and, more importantly, Adderley has not claimed that the Defendants induced him not to read or have someone read the documents on his behalf. Therefore, the statute of limitations is not tolled under a theory of equitable tolling.

## IV.    THE FRAUD/MISREPRESENTATION CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD WITH PARTICULARITY UNDER FEDERAL RULE OF CIVIL PROCEDURE 9(b).

Adderley has failed to plead his fraud and misrepresentation claims with particularity as required by Federal Rules of Civil Procedure 9(b). Several claims included in Adderley's Complaint are based in common law fraud and misrepresentation, specifically: negligent misrepresentation against Hunt and 3ABN (count III), fraudulent inducement against Hunt and 3ABN (count IV), fraudulent misrepresentation against Hunt and 3ABN (count V), civil conspiracy against Hunt and 3ABN (count VIII), and undue influence by active procurement against Hunt and 3ABN (count XXIV). These claims require a higher pleading standard under Rule 9(b). Adderley's Complaint has failed to satisfy this pleading requirement.

In making a fraud claim, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not

making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Odion*, 628 F. App'x at 637 (citing *Garfield*, 466 F.3d at 1262); *see also Nationwide Advantage Mortg. Co.*, 2010 WL 2652496 at *5. Federal courts are strict regarding the pleading requirements for fraud. *See W. Coast Roofing & Waterproofing, Inc.*, 287 F. Appx at 87. Adderley's claims fail to adequately plead that fraud or misrepresentations occurred.

Adderley's complaint lacks the location of the misrepresentation and the exact language used to misrepresent him. He owes the Defendants the "precise misconduct with which they are charged." *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (discussing particularity required of federal fraud pleadings). At the very least, Adderley must present the specifics necessary to generate an optimal defense. *Id.*

Adderley merely alleges that he was informed by 3ABN and Hunt that the transfer would only encompass a small portion of his property. However, Adderley has not pled the precise statements, the time and place these statements were allegedly made, or who allegedly made the statements.

Additionally, for civil conspiracy, Adderley has "failed to provide any detail at all as to the alleged conspiracy, let alone the who, what, when, where and how of defendants' alleged agreement." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1320 (S.D. Fla. 2014) (claim for civil conspiracy based on fraud must satisfy heightened pleading standard). Mere conclusory statements regarding an agreement do not satisfy the heightened pleading standard for conspiracy. *See McElrath*, 2012 WL 463893 at *6 (conclusions without supporting factual allegations does not comply with Rule 9(b)'s heightened requirements.); *see also Alhassid v. Bank of Am.*, N.A., 60 F. Supp. 3d 1302, 1320 (S.D. Fla. 2014) (supporting a "civil conspiracy

claim by a general suggestion of fraud" is not enough). Further, Adderley failed to plead that some overt act was done in pursuance of the conspiracy. *McElrath v. ABN AMRO Mortg. Grp., Inc.*, No. 11-62216-CIV, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) ("A conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators."). Again, mere conclusory statements will not suffice. *See id.* (plaintiffs did not provide factual support that an overt act occurred in pursuance of the conspiracy).

Adderley pleads only conclusory allegations in support of his claims of fraud and misrepresentation. He failed to plead the precise statements, the time and place the statements were allegedly made, or who allegedly made the statements. As such, these claims should be dismissed.

## V.   ADDERLEY'S EQUITABLE CLAIMS SHOULD BE DISMISSED BECAUSE HE FAILED TO ALLEGE THAT ADEQUATE LEGAL REMEDIES WERE NOT AVAILABLE.

In addition to the statute of limitations issues, seven of Adderley's equity claims – declaratory judgment that CRUT is invalid against 3ABN (count I), declaratory judgment that Indentures of Conveyances are invalid against 3ABN (count II), equitable lien against 3ABN (count XI), injunctive relief against 3ABN (count XII), equitable reformation of trust against 3ABN (count XVIII), equitable reformation of Indentures of Conveyance against 3ABN (count XIX), and equitable accounting against Gilley, Shelton, and 3ABN (count XX) – should be dismissed because Adderley failed to identify whether adequate legal remedies were available to him instead of the claims in equity. In order to be eligible to pursue an equitable remedy, Adderley must show that there does not exist an adequate remedy at law. *Liza Danielle, Inc. v.*

*Jamko, Inc.*, 408 So. 2d 735, 738 (Fla. 3d DCA 1982) ("Lack of an adequate remedy at law is a prerequisite for equitable relief . . . ."). However, Adderley has failed to allege whether adequate legal remedies were available to him.

Moreover, "[t]he failure to employ an adequate legal remedy at the proper time is not a ground for equitable relief." *Am. Sur. Co. of New York v. Murphy*, 152 Fla. 862, 864, 13 So. 2d 442, 443 (1943). "Where an adequate remedy at law has been lost by negligence or lack of diligence, equity will not interfere, since equity is not solicitous for those who sleep on their rights." *Id*. Adderley did not pursue legal remedies until after they were barred by the statute of limitations. *Mobil Oil Corp. v. Dade Cty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) ("There is no dispute that under Florida law, the general rule is that if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available."). Adderley cannot now assert equitable claims in the place of time-barred legal claims. Therefore, Adderley's equitable claims should be dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court dismiss the Complaint pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), 12(b)(6), and 12(b)(7).

*/s/ Raymond L. Robin*
Raymond L. Robin, Esq.
FBN: 613835
KELLER LANDSBERG PA
Broward Financial Centre
500 East Broward Boulevard, Suite 1400
Fort Lauderdale, FL 33394
Tel: (954) 761-3550
Email:raymond.robin@kellerlandsberg.com

and

MEAGHER & GEER, P.L.L.P.
M. Gregory Simpson, Esq.*
Timothy R. Schupp, Esq.*
Robert W. Vaccaro, Esq.*
33 South Sixth Street, Suite 4400
Minneapolis, Minnesota 55402
Tel: (612) 338-0661
Fax: (612) 338-8384
Email:  gsimpson@meagher.com
Email:  tschupp@meagher.com
Email:  rvaccaro@meagher.com
*Attorneys for 3ABN Defendants*

*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 23rd day of October, 2019, a true and correct copy of the foregoing Motion was electronically filed with the Clerk of the Court by using the CM/ECF system which will send notice to all counsel of record on the Service List below.

*/s/ Raymond L. Robin*
Raymond L. Robin, Esq.
FBN: 613835

31

## SERVICE LIST

Diane J. Zelmer, Esq.
Ross D. Kulberg, Esq.
Glen M. Lindsay, Esq.
SAAVEDRA | GOODWIN
312 SE 17th Street, 2nd Floor
Fort Lauderdale, FL 33316
Tel: 954-767-6333
Email: DZelmer@saavlaw.com
Email: RKulberg@saavlaw.com
Email: GLindsay@saavlaw.com

*Attorneys for Plaintiff*

S. Jonathan Vine, Esq.
Ryan M. Ranson, Esq.
COLE, SCOTT & KISSANE, P.A.
222 Lakeview Ave., Suite 120
West Palm Beach, FL 33401
Tel: (561) 383-9200
Email: jonathan.vine@csklegal.com
Email: ryan.ranson@csklegal.com

*Attorneys for Defendant*
*Richard Barry Benton, Esq.*