**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

DAVID LAWRENCE ADDERLEY,
an individual,                                                                 Case No.:        1:18-cv-23362-RNS

        Plaintiff,

  v.

THREE ANGELS BROADCASTING
NETWORK, INC., a non-for-profit foreign
corporation, ROY HUNT, JR., an individual,
JAMES W. GILLEY, an individual, DANNY
SHELTON, an individual, and RICHARD
BARRY BENTON, ESQ., and individual,,

        Defendants.
_____

**3ABN DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS WITH
RESPECT TO THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Three Angels Broadcasting Network, Inc. ("3ABN"), Roy Hunt, Jr. ("Hunt"), James W. Gilley ("Gilley"), and Danny Shelton ("Shelton") (collectively referred to as "3ABN Defendants") by and through undersigned counsel and pursuant to Local Rule 56.1 of the United States District Court for the Southern District of Florida, hereby submits the following Statement of Material Facts as to which there are no genuine issues in dispute:

## PARTIES

1. Plaintiff David Adderley ("Adderley") is an individual residing in Miami, Florida. (Second Amended Compl. ("SAC") [DE 68] ¶ 1.) Adderley is a dual citizen of the United States and the Bahamas. (*Id.*) Until his resignation on January 24, 2012, Adderley was Trustee of the David Lawrence Adderley Charitable Remainder Unitrust ("CRUT"). (*Id.*, Exs. A & B.)

2. Defendant 3ABN is an Illinois not-for-profit corporation with its principal place of business in West Frankfort, Illinois. (SAC ¶ 4.) 3ABN is a television and radio network broadcasting a variety of faith-based programming. (*See* https://3abn.org/about.html#history.)

3. Defendant Hunt, named in his individual capacity, is the director of planned giving and trust services for 3ABN. (SAC ¶ 5.) Hunt is a certified trust officer. (Ex.A, Hunt Dep. 12:24-13:3.)

4. Defendant Gilley, named in his individual capacity, is a retired individual who served as 3ABN's President and CEO between 2007 and 2015. (Ex.B, Gilley Dep. 41:11-15.) Gilley also served, as an authorized representative and on behalf of 3ABN, as Trustee of the CRUT from January 26, 2012 until his resignation from 3ABN in 2015. (SAC, Ex.C.)

5. Defendant Shelton, named in his individual capacity, served as President and CEO of 3ABN and, as such, was Trustee of the CRUT after 2015. (Ex.C, Shelton Dep. at 12:5-7.)

1

6.     Defendant Barry Benton ("Benton"), named in his individual capacity, is a Georgia resident and attorney who prepared the CRUT involved in this action. (SAC ¶ 8, 19.) At all times relevant to the SAC, he was licensed to practice law in Florida. (Ex.D, Benton Dep. at 70:2-10.)

**FORMATION OF THE CRUT**

7.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8.     On July 20, 2011, Adderley made an unsolicited call to Hunt at 3ABN, during which Adderley discussed his views about 3ABN with Hunt. (Hunt Dep. 18:3-19:18.) Adderley owned land on Long Island in the Bahamas, which he believed was worth $30 million, and he wanted to donate this property to 3ABN in a way that would allow him to achieve both tax benefits and income. (Hunt Dep. 20:10-18.) Hunt asked Adderley if he was willing to discuss the matter with an attorney; Adderley responded that he was. (*Id.* at 20:19-20.)

9.     Adderley's Long Island Bahamas property was raw land that was unproductive, *i.e.*, it produced no income to Adderley. (Ex.F, Andrews Dep. 68:5-16.)

10.    Hunt thereafter called Benton and discussed his phone call from Adderley. (Hunt Dep. 20:20-22.) Hunt described the conversation as follows:

> [I] called Barry Benton and I said, "Barry, I have a phone call that just came in," and I said, "I'm suspicious. Would you be willing to call him and find out anything about him, if he – if this is for real, just what?" He said, "Sure, I'll call him." So he called me back and he said, "I feel this is for real." They talked, and

2

> both David and Barry had been in the service about the same time, a year apart, and they knew a lot of the same commanding officers, so they kind of hit it off real quick. (Hunt Dep. 20:20-21:5.)

11. Benton's call with Adderley occurred on July 27, 2011, and lasted more than an hour. (Benton Dep. 39:24.) The conversation involved various discussions about Adderley's background, why Adderley was interested in making a donation to 3ABN, the Bahamas property, trusts, estate tax considerations, and more. (*Id*. at 35:1-41:6.) Benton advised Adderley to obtain independent legal counsel. (*Id.* at 40:25-41:6.)

12. The following day, Benton sent Adderley correspondence regarding a proposed CRUT agreement, which included an illustration of potential unitrust payments, if the property was sold, based on Adderley's $30 million property valuation assumption, and instructions on the management of the CRUT. (SAC, Ex.I.)

13. On August 22, 2011, Adderley signed the CRUT as both Grantor and Trustee. (SAC ¶ 21; Ex.A at 7.) The schedule of property that Adderley transferred into the CRUT was: (1) $10.00; and (2) Real property located on Long Island, Bahamas. (SAC, Ex.A, Attachment A.)

14. The terms of the CRUT establish that it was to be funded with Adderley's Long Island, Bahamas real estate, which had to be marketed and sold for the trust to have any money for the unitrust payments. (*Id*., Ex.A.) Adderley was to receive income from the CRUT during his lifetime and, upon his death, 3ABN would receive the remainder. (*Id.*)

15. Prior to signing the CRUT, Hunt advised Adderley to obtain independent counsel. (Hunt Dep. 65:5-8.) According to Hunt, Adderley declined to do so, indicating, "No. I trust 3ABN." (*Id.* at 65:10-11.)

3

16. After Adderley signed the CRUT, 3ABN engaged Lewis & Longley, attorneys in Nassau, Bahamas, to begin the legal process of preparing the property for sale. (Hunt Dep. at 132:9-133:24.)

17. On January 24, 2012, Adderley executed three Indentures of Conveyance (dated December 30, 2011) to the Irrevocable Unitrust of David Lawrence Adderley, before a notary at the Bahamian Consulate in Miami. (Ex.G, Green Dep. at 35:7-12; 23:6-24:19; 30:25-32:15; and 36:4-37:1.) The Indentures of Conveyance were prepared by Lewis & Longley. (SAC, Ex.D.)

18. The Indentures of Conveyance were prepared to obtain permits from the Bahamian Investments Board, under the provisions of the International Persons Landholding Act of 1993, which would allow 3ABN, a non-Bahamian citizen, to hold the land in the event it did not sell before Adderley's demise. (Ex.H, Pl.'s Expert Report of Charles Mackay at 5.)

19. Also on January 24, 2012, Adderley executed a Notice of Resignation of Trustee before two witnesses. (SAC, Ex.B.) 3ABN, through Gilley, executed an Acceptance of Appointment of Trustee for the CRUT on January 26, 2012. (SAC, Ex.C.)

### 3ABN APPRAISES AND SURVEYS THE PROPERTY TO PREPARE IT FOR SALE IN ORDER TO FUND THE CRUT

20. In December 2011, Lewis & Longley engaged Bahama Geomatics Limited, a licensed surveying, mapping, and consulting firm based in Nassau, to conduct a boundary survey and plan works for the property. The survey was completed by Emile Ledee, a Bahamian licensed land surveyor, in May 2012. (Hunt Dep. 225:12-226:8.) 3ABN paid for the survey, because the CRUT had no money. (Hunt Dep. 225:12-226:8.)

21. An affidavit attesting to Adderley's Bahamian citizenship was signed and notarized on May 8, 2012. (SAC, Ex.D.) Mr. Adderley did not have a current Bahamian passport when he

4

signed the three Indentures of Conveyance, but with Mr. Hunt's assistance he obtained one. (Hunt Dep. at 156:14-19.)

22. Lewis & Longley engaged TR Associates Limited, a licensed real estate appraisal company in Nassau, in order to conduct an appraisal and valuation of the property for 3ABN. TR Associates issued an appraisal report on May 20, 2012 for two of the three Property parcels totaling 377.537 acres in the amount of $12,110,000. (Hunt Dep. 223:9-17; Ex.I, TR Associates Appraisal.) 3ABN paid for the appraisal as the CRUT had no money. (Hunt Dep. at 223:1-5.)

23. Based on Adderley's opinion that the Property was worth $30 million, 3ABN engaged a second appraisal from Integra Realty Resources, to complete an inspection and analysis of the Property. Integra Realty Resources issued an appraisal valuation of $22.9 million for the approximately 419 acres on November 15, 2012. (Ex.J, Hunt Dep. Ex.34 (Excerpt).) 3ABN paid for the second appraisal as the CRUT had no money. (Hunt Dep. at 223:1-5.)

24. Permits were issued by the Investments Board under the International Persons Landholding Act, 1993 on August 31, 2012 to 3ABN. (SAC, Ex.D.)

25. Lewis & Longley recorded the permits, indentures of conveyance, affidavits of Bahamian citizenship and survey plans with the Registrar General's Department, Deeds and Documents Section on September 12, 2012. (SAC, Ex.D.)

### ADDERLEY AFFIRMS THE CRUT AND DONATION TO 3ABN IN 2013

26. 3ABN's accounting firm, as a part of a routine audit, sent a May 7, 2013 letter (under the signature of 3ABN's Treasurer, Brian Hamilton), to confirm that Mr. Adderley placed his property on Long Island, Bahamas, with an appraised value of $22.9 million into a CRUT. (Ex.K, Hunt Dep., Ex.35.) The letter provides:

> According to our records you have placed real estate with an appraised value of $22,900,000 into a **Charitable Remainder Unitrust Agreement**. According to

5

> this Unitrust agreement, any amount distributed for charitable purposes will be as follows:
>
> 100% to Three Angels Broadcasting Network, Inc. of West Frankfort, Illinois for unrestricted purposes.
>
> If you agree with the above please sign below and return to our auditors in the enclosed envelope. Please note any discrepancies.

(*Id.*) (Emphasis in original.)

27. On May 13, 2013, Mr. Adderley signed this document where indicated and returned it as requested, expressing his agreement as to the CRUT and charitable distributions from it. (*Id.*)

[redacted]

### 3ABN, AS CRUT TRUSTEE, MARKETS THE PROPERTY

28. 3ABN produced a sales video featuring the Property in order to market it on the internet. (Hunt Dep. at 175:3-23.)

29. In March 2013, 3ABN entered into an open listing agreement with Sunshine Real Estate on Long Island, Bahamas to market and sell the property at a price of $30 million. (Ex.N, Gilley Dep. Ex.41.)

30. In August 2015, 3ABN entered into an Exclusive Right of Sale Listing Agreement with Keller Williams Realty, a large real estate franchise with offices and agents in the Bahamas, and its then-agent Adriana Gonzalez ("Gonzalez"), who was based in Miami. (Ex.O, A. Gonzalez Dep. Ex.105.) Adderley had previously worked with Gonzalez when he purchased his current residence in 2015. (Ex.P, Gonzalez Dep. at 26:15-27:1). Adderley wanted 3ABN to engage

Gonzalez to list and sell the Long Island, Bahamas property. (Hunt Dep. at 217:20-218:2.) At this time, Gonzalez had been a licensed real estate agent for less than two years, and this was her first and only commercial listing ever, as well as her largest listing by value. (Gonzalez Dep. at 69:18-20; 72: 1-3.)

31.     On February 26, 2016, Gonzalez advised 3ABN that she had left Keller Williams and joined YES Real Estate Services, a Miami-based real estate company, and asked 3ABN to execute a new listing agreement. (Ex.Q, Gonzalez Dep. Ex.114.) 3ABN thought Keller Williams was better suited to market and sell the Property, and informed Gonzalez of its decision to remain with Keller Williams on March 2, 2016. (Ex.R, Gonzalez Dep. Ex.115.)

32.     Gonzalez then contacted her attorney, Matthew Ladd ("Ladd"), on March 8, 2016, in order to have him review the CRUT documents and the circumstances surrounding the creation of the CRUT. (Ex.S, Gonzalez Dep. Ex.116.) Ms. Gonzalez told Mr. Ladd they "need to take this trust company out of the deal." (*Id.* at p.2.)

33.     Despite its desire to keep the Property listed with Keller Williams, 3ABN ultimately decided to allow the listing to follow Gonzalez to YES Real Estate Services, in order to honor Adderley's wishes. (Ex.T, Hamilton Dep. at 113-:13-17.)

**GONZALEZ BRINGS ADDERLEY TO ATTORNEY LADD TO REVIEW THE CRUT**

34.     Gonzalez then introduced Mr. Adderley to attorney Ladd. (A. Gonzalez Dep. 13: 2 – 8; 176:14 -177:7.) Mr. Adderley signed a retainer agreement dated April 7, 2016 for Mr. Ladd to contemplate a "Dec. action to modify irrevocable trust." (Ex.U, Ladd Dep. Ex.63.) Mr. Ladd's internal trust account record identifies the matter as: "Client is requesting review of documents to confirm if he was scammed or if he got what he was expecting." (Ex.V, Ladd Dep. Ex.64.)

7

35. 3ABN provided attorney Ladd him with all of the documents he requested (Ex.W, Ladd Dep. Ex.73), and Ladd thereafter wrote to 3ABN on May 3, 2016 stating that he had met with Adderley, explained the CRUT and 3ABN serving as trustee, and that Mr. Adderley's concerns were "ameliorated". (Ex.X, Gonzalez Dep. Ex.125.)

### GONZALEZ AND YES REALTY FAIL TO SHOW THE PROPERTY OR PRODUCE ANY POTENTIAL BUYERS

36. 3ABN expressed concern to Ms. Gonzalez because YES Realty had no office in the Bahamas and was not licensed to sell property in the Bahamas. (Ex.Y, A. Gonzalez Dep. Ex.121.)

37. YES Realty contacted Sotheby's in May 2016, which had an office in the Bahamas, to partner with YES Realty on the listing of the property. (A. Gonzalez Dep. Ex.125.) Sotheby's declined, because they did not want to incur the expense of fronting the listing and because they believed the property's $32 million price was "probably more than double what the land could actually sell for." (Ex.Z, A. Gonzalez Dep., Ex.124.) This important information was not shared with 3ABN. (Ex.AA, Yabor Dep. at 48:12–50:9.)

38. YES ultimately partnered with Bahamas Best Real Estate operated by Charlie Beede. 3ABN signed a listing agreement with Bahamas Best Real Estate for a 12 month term staring on June 27, 2016. (Ex.BB, Hunt Dep. Ex.36.)

39. Mr. Beede was located on Long Island, Bahamas and shared Sotheby's opinion that the property was worth less than half of the asking price of $32 Million, and he shared his opinion with YES Realty and Ms. Gonzalez. (Ex.CC, Beede Dep. at 27:16–23.)

40. During the listing with Bahamas Best Real Estate, Gonzalez and Beede insisted that the road into the property, which was overgrown, be cleared in order to allow access. (Beede Dep.

72:5–75:12.) 3ABN paid Mr. Beede to clear the road, but the work was not done properly. (Shelton Dep. at 26:15-14.)

41. Gonzalez never showed the Property to any prospective buyers, nor did she ever bring any potential buyers to 3ABN. (Hamilton Dep. at 115:2-6.) The same is true of Beede. (Beede Dep. at 28:3-4; 46:1-7.) The listing agreement expired on June 26, 2017. (Hunt Dep. Ex.36.)

42. In 2018, 3ABN completely rebuilt the road into the property at a cost to 3ABN well in excess of $133,000. (Ex.DD, Hamilton Dep. Ex.83.)

43. Between 2012 and 2018, 3ABN's Board of Directors regularly discussed the status of the Property and progress reports on the marketing and sale of the property. (Ex.EE, Board Meeting Minutes.)

44. Ms. Gonzalez, whose listing to sell the property on Long Island, Bahamas had expired, found Mr. Adderley's current lawyers, Saavedra Goodwin, and escorted him to the initial meeting. (A. Gonzalez Dep. 323:3–25.)

45. Adderley's lawyers thereafter sent a letter to 3ABN, dated March 26, 2018, enclosing a March 20, 2018, Affidavit from Mr. Adderley containing various allegations. (SAC, Ex.G.) The letter states that the Affidavit had been "filed of record in the Bahamas" and demanded that 3ABN cease all actions with respect to the Property. (*Id.*) 3ABN has not attempted to sell or market the property since receiving the letter.

46. ███████████████████████████████████████████████████████████████████████████████████

47. Ms. Gonzalez has an interest in the outcome of Adderley's lawsuit against the Defendants. On March 23, 2018, Gonzalez and Adderley entered into "Agreement for

9

Consulting Services", which contained a term of five years and required Adderley to pay Gonzalez ten percent (10%) of the gross sale price of the Property. (Ex.FF, A. Gonzalez Dep. Ex.151.) On June 22, 2018, Gonzalez and Adderley entered into a handwritten Addendum to their consulting services agreement wherein Adderley further agreed to pay Gonzalez ten percent (10%) of any recovery that Adderley received from 3ABN as a result of this lawsuit. (Ex.GG, A. Gonzalez Dep. Ex.152.) On August 8, 2018, the consulting services agreement was again amended to provide that Gonzalez would receive either ten percent (10%) of the gross sale price of the Property or ten percent (10%) of the lawsuit recovery, not both. (Ex.HH, A. Gonzalez Dep. Ex.153.)



48. ███████████████████████████████████████████████████████████████████████

49. ███████████████████████████████████████████████████████████████████████

50. ███████████████████████████████████████████████████████████████████████

Dated: November 18, 2019      /s/ Raymond L. Robin
Raymond L. Robin, Esq.
FBN: 613835
KELLER LANDSBERG PA
Broward Financial Centre
500 East Broward Boulevard, Suite 1400
Fort Lauderdale, FL 33394
Telephone: 954-761-3550
Email: raymond.robin@kellerlandsberg.com

and

M. Gregory Simpson, Esq.*
Timothy R. Schupp, Esq.*
Robert W. Vaccaro, Esq.*
**MEAGHER & GEER, P.L.L.P.**
33 South Sixth Street, Suite 4400
Minneapolis, Minnesota 55402
Tel: (612) 338-0661
Fax: (612) 338-8384
Email: gsimpson@meagher.com
Email: tschupp@meagher.com
Email: rvaccaro@meagher.com
*Attorneys for Defendants*
*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **18th** day of **November, 2019,** I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice to all counsel of record on the attached Service List.

/s/ Raymond L. Robin
Raymond L. Robin
FBN: 613835

## SERVICE LIST

Diane J. Zelmer, Esq.
Ross D. Kulberg, Esq.
Glen M. Lindsay, Esq.
Saavedra | Goodwin
312 S.E. 17th Street, 2nd Floor
Fort Lauderdale, Florida 33316
Phone: (954) 767-6333
Email: dzelmer@saavlaw.com;
rkulberg@saavlaw.com;
glindsay@saavlaw.com;
eservice@saavlaw.com
*Counsel for Plaintiff*

S. Jonathan Vine, Esq.
Ryan M. Ranson, Esq.
Cole, Scott & Kissane, P.A.
22 Lakeview Ave., Suite 120
West Palm Beach, Florida 33401
Phone: (561) 383-9200
Email: jonathan.vine@csklegal.com;
ryan.ranson@csklegal.com
***Counsel for Defendant Richard Barry Benton, Esq.***