United States District Court
for the
Southern District of Florida

| David Lawrence Adderley, Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 18-23362-Civ-Scola |
| Three Angels Broadcasting Network, Inc. and others, Defendants. | ) |

**Omnibus Order on Defendants' Motions to Dismiss**

This matter is before the Court on Defendants Three Angels Broadcasting Network ("3ABN), Roy Hunt, James Gilley, and Danny Shelton's (the "3ABN Defendants") motion to dismiss the Plaintiff's Second Amended Complaint. (ECF No. 135.) Also before the Court is Defendant Benton's motion to dismiss the Second Amended Complaint. (ECF No. 90.) Both motions are fully briefed and ripe for the Court's review. Upon review of the record and the relevant legal authority, the Court **grants in part and denies in part** the Defendants' motion (**ECF No. 135**) and **grants** Defendant Benton's motion in its entirety. (**ECF No. 90.**)

I. **Background**

This case involves a dispute over a trust prepared in 2011. (ECF No. 68 at ¶ 5.) According to the allegations in the complaint, Plaintiff Adderley owned over 400 acres of vacant land in The Bahamas. (*Id.* at ¶ 13.) As a devout member of the Seventh Day Adventist Church, Adderley wished to donate a small portion of his property in The Bahamas to the Seventh Day Adventist Church to build a sanctuary and for other religious purposes. (*Id.* at ¶ 14.) Adderley is legally blind. (*Id.* at ¶ 3.)

Adderley worked with 3ABN, a charitable organization, to facilitate and structure his donation. (*Id.* at ¶15.) 3ABN retained Defendant Benton, a Georgia attorney, to prepare a charitable remainder unitrust (the "Trust") for 3ABN's benefit, rather than the intended purpose. (*Id.* at ¶ 19.) On August 22, 2011, Adderley signed the Trust. The Trust transferred Adderley's property to the Trust and identifies 3ABN as the charity that will receive 100% of the charitable distribution upon his death. (*Id.* at ¶ 25.) The 3ABN Defendants and Benton did not disclose to Adderley the true contents of the Trust. According to the complaint, Adderley did not know that he was signing an irrevocable Trust or any trust instrument. (*Id.* at ¶ 23.) Based on 3ABN's misrepresentations,

Adderley also signed three indentures of conveyance which conveyed part of his property to the Trust in exchange for $150,000. (*Id.* at ¶ 41.) Adderley's property is valued at $22.9 million. (*Id.* at ¶ 41.) Adderley never received $150,000 for his property. (*Id.*)

Adderley did not discover the Defendants' fraud until 2016 when he hired a Florida attorney to review the Trust documents because he was interested in selling his property. (*Id.* at ¶ 62.) On August 17, 2018, Adderley filed a 20-count complaint against the Defendants for various counts of fraud, misrepresentation, negligence, and to undo the Trust documents. (ECF No. 1.) The Plaintiff's 28-count Second Amended Complaint is now before this Court. (ECF No. 68.)

## II. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors

of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## III. Analysis

### A. Subject Matter Jurisdiction

On August 29, 2019, this Court ordered jurisdictional discovery as to the citizenship of Defendant Gilley. "Federal courts are courts of limited jurisdiction." *Word v. U.S. Commodity Future Trading Comm.*, 924 F.3d 1363, 1366 (11th Cir. 2019). Here, this Court's subject matter jurisdiction is premised on diversity pursuant to 28 U.S.C. § 1332(a). Diversity must be complete, meaning that all plaintiffs to an action must be of different citizenship than all defendants. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse . . . ."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989) (stating same). The party commencing suit in federal court has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction. *Underwriters*, 613 F.3d at 1085; *see also Banci v. Wright*, 44 F. Supp. 2d 1272, 1274 (S.D. Fla. 1999). "[A]nd if the diversity jurisdiction is properly challenged, that party also bears the burden of proof." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). "Diversity is determined when the suit is instituted, not when the cause of action arose." *Jones v. Law Firm of Hill and Ponton*, 141 F. Supp. 2d 1349, 1354-55 (M.D. Fla. 2001).

To be a citizen of a state within the meaning of the diversity provision, a natural person must be both a citizen of the United States and a domiciliary of a state. A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment." *Id.* at 1355. Domicile is determined by two factors: (1) residence and (2) intent to remain. *Id.* In determining domicile, a court should consider both positive evidence and presumptions. One such presumption is that the state in which a person resides at any given time is also that person's domicile. *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279, 1281 (M.D. Ala. 1998). "But because changes in residence are so common in this country, courts also refer to another presumption: once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state." *Id.*

An individual's entire course of conduct determines domicile for diversity jurisdiction purposes. "Facts frequently taken into account include but are not limited to: current residence; residence of family and dependents; place of employment and name of business; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in church, clubs, and business organizations; driver's license and

automobile registration; and payment of taxes. No single factor is conclusive; instead, a 'totality of evidence' approach is necessary." *Id.* Courts generally "give little weight" to a party's declaration of domicile because "these declarations are often self-serving." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013).

Based on the record before jurisdictional discovery, Gilley's citizenship was in dispute. If Gilley were found to be a Florida citizen, he would defeat complete diversity. The Plaintiff claims that at the time of the filing of this lawsuit, Gilley was a citizen of California. Upon review of the record, the parties' briefing, and the jurisdictional discovery taken to date, the Court agrees with the Plaintiff.

There is no dispute that Defendant Gilley and his wife own homes in both Florida and California. In 2018, when this lawsuit was filed, the Gilleys were in the process of moving from California to Florida to retire. (ECF No. 135 at 6.) They spent time in both California and Florida. (ECF No. 153 at 6-7.) In 2018, they spent 146 days in their Florida home, 38 days traveling, and the remaining 191 days in California. (ECF No. 136 at ¶ 4.) In 2018, Gilley was registered to vote in California and held a valid California driver's license. (ECF No. 153 at 9.) The Gilleys 2018 federal tax return reflects their Florida address. (ECF No. 135 at 7.) The Defendants argue that although Gilley may have been a California resident in the past, he is able to show that, as of 2018, he established his *new* domicile in Florida. The Court disagrees.

Gilley must overcome the presumption that "once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state." *McDonald*, 13 F. Supp. 2d at 1281. "When a party's domicile changes during the period of time surrounding the filing of the complaint, the court must not only weight the quantity and quality of his ties to the new domicile but also the bridges to the former domicile that still remain." *Gabriel v. G2 Secure Staff, LLC*, 225 F. Supp. 3d 1370, 1372 (S.D. Fla. 2016) (Snow, Mag. J.). Gilley was still in transition between California and Florida when this lawsuit was filed in 2018. Gilley's church membership, voting record, driver's license, safety deposit box, homestead exemption for 2018, and social security benefit statements are all in California or addressed to the Gilley's California address. (ECF No. 153 at 8-11.) Although the Defendants rely on the Gilleys' intent to eventually retire to Florida, this is insufficient to establish that Gilley was domiciled in Florida in 2018. Accordingly, Gilley was a citizen of California when this lawsuit was filed and the court may exercise its diversity jurisdiction.

### B. Indispensable Parties

The Defendants also move to dismiss this case based on the Plaintiff's failure to join an indispensable party. (ECF No. 135 at 9.) The Defendants argue that the trustees of the Trust are indispensable parties and must be joined as defendants in this case. The Plaintiff's statement of the law on this issue is correct. The trustee, however, is a party to this lawsuit. Although Adderley was originally the trustee, he appointed Defendant 3ABN as trustee on January 24, 2012. (ECF No. 68-2 at 1.) The Plaintiff argues that the *former*, as well as the current, trustee must be joined as a defendant and because Adderley cannot be a defendant, this case should be dismissed. The Plaintiff, however, fails to cite any case law for his assertion that all former and current trustees are indispensable parties. The law is actually to the contrary. The real party in interest is the *current* trustee. *See Taylor v. Moskow,* 717 F. App'x 836, at 839 (11th Cir. 2017). Here, the current trustee, 3ABN, is a Defendant. Accordingly, the Court declines to dismiss the complaint based on failure to join an indispensable party.

### C. Substantive Motion to Dismiss Arguments

The Defendants' motion to dismiss argues that the Plaintiff's twenty-eight causes of action are barred by the statute of limitations. (ECF No. 135 at 15.) The Defendants' argument groups the counts into those that fall under a two-year statute of limitations, four-year statute of limitations, and five-year statute of limitations. (*Id.* at 15-17.) The Plaintiff does not take issue with the applicable limitations periods and the fact that they have run. (ECF No. 153 at 20.) Instead, the Plaintiff puts forth five legal theories that may toll the statute of limitations: (i) the delayed discovery doctrine; (ii) fraudulent concealment; (iii) equitable estoppel; (iv) continuing torts doctrine; and (v) equitable tolling. (*Id.* at 21-26.) The Plaintiff, however, does not explain which doctrines apply to which counts or cite case law applying these theories to the Plaintiffs' causes of action.[1] (*See id.*)

"Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk." *Sideridraulic System SpA v. Briese Schiffahrts GmbH & Co. KG*, No. 10-0715, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011) (citations and quotations omitted). "A litigant who fails to press a point by supporting it with pertinent

---

[1] The Plaintiff cannot assert that all theories apply to all counts. *See, e.g., Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1329 (S.D. Fla. 2012) (Cohn, J.) ("[T]he Florida Supreme Court has held that the delayed discovery doctrine applies only to cases involving fraud, products liability, professional malpractice, medical malpractices, or intentional torts based on abuse.").

authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.). In short, the Court will not do parties' research for them. *Id.* Moreover, "[a]t the motion to dismiss stage, it is the plaintiff's burden to plead facts that establish that the statute of limitations has been tolled." *My 24Hour News.com, Inc. v. AT&T Corp.*, No. 18-1647-MHC, 2019 WL 3521951, at *5 (N.D. Ga. Jan. 10, 2019), *aff'd sub nom. My24HourNews.com, Inc. v. AT&T Corp.*, No. 19-10413, 2019 WL 5205970 (11th Cir. Oct. 16, 2019). Here, the Plaintiff has failed to establish which facts support its tolling theories as applied to each cause of action. However, the Court will not punish the Plaintiff for his attorney's mistakes.

### i. The Plaintiff's Tolling Theories

The majority of the Plaintiff's tolling theories require the Plaintiff to exercise some level of due diligence in discovering the Defendants' fraud or pursuing his rights. "In fraudulent concealment cases, the plaintiff must show (1) successful concealment of the cause of action; (2) fraudulent means to achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim." *Razor Capital, LLC v. CMAX Fin. LLC*, No. 17-80388, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017) (Marra, J.). "[F]raudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." *Id.* (citations and quotations omitted). With respect to delayed discovery, this doctrine "generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Id.* at *5. "In the civil context, a party who relies on a misrepresentation must show that it exercised some diligence in investigating the misrepresentation, unless it is shown that the fraudulent party had exclusive or superior knowledge, or prevented further investigation." *Id.* Equitable tolling requires that the party seeking tolling prove "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016). "A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling." *Id.*

The Court finds that the Plaintiff has not met his burden of pleading due diligence under these theories. The Plaintiff alleges that he "could not have discovered through reasonable diligence, Defendants' misconduct . . . because Defendants used deceptive and secret methods to avoid detection . . . By its very nature, the misconduct by Defendants was inherently self-concealing, especially

given the fact that Adderley is legally blind." (ECF No. 68 at ¶ 63.) However, the Plaintiff does not allege why he could not have discovered the fraud through due diligence or explain the Defendants' "deceptive and secret methods." The Plaintiff repeatedly relies on Adderley's blindness as the reason that the fraud was not detected. This argument also fails. "The burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so before he signs it." *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 313 (5th DCA 1985). The Plaintiff cites to this Court's holding in *Begualg Inv. Management, Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2012 WL 5941971 (S.D. Fla. 2012) (Scola, J.). In *Begualg*, on summary judgment, this Court found that there was a disputed issue of fact as to whether the plaintiff was on notice of the alleged fraud. *Id.* at *4. Begualg was not fluent in English and the relevant contracts were in English. However, unlike in this case, Begualg hired Interinvestments as its agent to translate the terms of the contract. *Id.* The fact that Interinvestments was "acting as a clandestine agent" for the Defendants and advised Begualg that the contract included everything they discussed was not something the plaintiff could have discovered through due diligence. *Id.* at *5. Here, there are no allegations that Adderley believed that attorney Benton was his agent, hired anyone to read the Trust documents to him, or engaged in any due diligence before signing the Trust documents. Accordingly, the holding in *Begualg* is inapplicable to the facts of this case.

Moreover, the Defendant's fraud is based on misrepresentations and omissions made to Adderley regarding the actual contents of the Trust. (*Id.* at ¶ 65.) For example, "[Defendants] omitted informing Adderley that the CRUT was prepared with favorable terms to 3ABN…" (*Id.* at ¶ 65(f)). "But Florida law is clear that simple reliance on a misrepresentation is not enough to delay the accrual of fraud claims because a party has a duty of reasonable due diligence." *Paredes v. Bank of Am., N.A.*, 2018 WL 1071935 (M.D. Fla. Feb. 27, 2018). And "mere non-disclosure" is also insufficient to plead fraudulent concealment. *Razor Capital,* 2017 WL 3481761 at *5. Accordingly, the Court finds that the Plaintiff has not met his burden with regard to fraudulent concealment, delayed discovery, and equitable tolling.

Remaining before the Court are Plaintiff's theories of equitable estoppel and the continuing torts doctrine. (ECF No. 153 at 24-25.) "Equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed." *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir. 1985) (quotations and citations omitted). To prove equitable estoppel, the Plaintiff must show the following elements: "(1) conduct which amounts to a false representation or

concealment of material facts; (2) the intention or at least the expectation, that such conduct shall be acted upon by, or influence, the other party; and (3) knowledge, actual or constructive, of the real facts." *Lurry v. Transcor Am., LLC*, 140 F. App'x 79, 81 (11th Cir. 2005). The party claiming estoppel must also show "(1) lack of knowledge and of the means of knowledge of the truth; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice." *Id.*

There are no allegations in the complaint that the Plaintiff recognized the basis for a lawsuit anytime before 2016. Therefore, the claims with a two and four-year statute of limitations expired in 2013 and 2015, respectively. However, the Plaintiff alleges that in April 2016 he became aware of the Trust but "3ABN and Hunt induced [him] not to pursue legal action to declare the [Trust] invalid" and made a number of misrepresentations to the Plaintiff. (ECF No. 68 at ¶ 197.) In April 2016, the Plaintiff's claims with a *five-year* statute of limitations had not yet expired. Therefore, the Defendants' misrepresentations in April 2016 induced the Plaintiff's forbearance from bringing suit while those claims were still viable. *Cf. Cook*, 753 F.2d at 1563 (holding that the plaintiff's misrepresentations "could not have induced forbearance from bringing suit when the suit was barred before those misrepresentations could have commenced."). The Court also holds that, construing the complaint's allegations in the light most favorable to the Plaintiff, he has met the necessary elements to plead equitable estoppel at the motion to dismiss stage. The Defendants made misrepresentations to induce Adderley to sign Trust documents that he did not read or understand. Adderley relied on them in good faith because 3ABN represented that, as a charitable organization, they would carry out his wishes. And, in 2016, when he finally discovered the fraud, they continued to mislead him so that he would not file a timely lawsuit. Accordingly, the Court finds that the Defendants are estopped from asserting the five-year limitations period for Counts VI (conversion), XVIII (reformation of trust), XXII (civil exploitation), and XXIII (civil theft).

"Florida recognizes an exception to the general statute of limitations for torts that are continuing in nature. Under this doctrine, the statute of limitations runs from the date that the tortious conduct ceases." *Perera v. Wachovia Bank, N.A.*, 09-23779, 2010 WL 1375635, at *2 (S.D. Fla. March 15, 2010) (Turnoff, Mag. J.) (citations omitted). "Moreover, Florida courts have held that whether the doctrine applies to a particular set of circumstances is a question for the trier of fact." *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318, 2009 WL 3861482 (S.D. Fla. Nov. 17, 2009) (Seitz, J.).

The Plaintiff's complaint alleges that the continuing tort doctrine applies to the Plaintiff's count for conversion. (ECF No. 68 at ¶ 69.) Because the Court holds that the Defendant is estopped from asserting the statute of limitations as to Plaintiff's conversion count, the Court will not address whether the continuing tort doctrine applies to conversion at this stage in the litigation.

### ii. Plaintiff's Remaining Claims

With regard to the Plaintiff's equitable claims (Counts I, II, XI, XII, XVIII, XIX, XX), the Defendants argue that these claims are to be dismissed under the concurrent remedy doctrine once the underlying action is dismissed. (ECF No. 135 at 17.) Because the Court is not dismissing the Plaintiff's complaint, the equitable claims will not be dismissed under the concurrent remedy doctrine.

Count XXVIII is a stand-alone claim for punitive damages. Punitive damages are a remedy, not a cause of action. *See Moretta v. Miami-Dade Cty.*, 06-20467, 2007 WL 701009, at *10 (S.D Fla. Jan. 23, 2007) (Gold, J.) (dismissing punitive damages count because Plaintiff "does not address the defect in pleading punitive damages as an independent cause of action and not as a remedy."). Accordingly, Count XXVIII is also dismissed.

The Plaintiff also asserts a count for negligent spoliation of evidence (Count XXV). The Defendants argue that first-party spoliation of evidence is not a cause of action. (ECF No 135 at 18.) In response, the Plaintiff argues that he is asserting a third-party claim for spoliation against attorney Benton. (ECF No. 153 at 28.) First, the Court agrees with the Defendants that first-party spoliation of evidence is not a cause of action. *Tarpley v. Miami-Dade Cty., Fla.*, No. 15-20997, 2015 WL 13554983, at *3 (S.D. Fla. Oct. 14, 2015) (Scola, J.). With regard to a third-party claim, attorney Benton is a defendant in this lawsuit so, by definition, it is not a third-party claim. *See id.* at *3 ("third-party spoliation claims occur when a person or an entity, thought not a party to the underlying action causing the plaintiff's injuries or damages, lost, misplaced, or destroyed evidence critical to that action."). Accordingly, Count XXV is dismissed.

Count XXIII asserts a cause of action for the unauthorized practice of law. As this Court has previously held, "it does not appear that Florida law recognizes an independent cause of action for the unauthorized practice of law." *Reichard v. Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A.*, No. 18-62773, 2019 U.S. Dist. LEXIS 101715, at *7 (S.D. Fla. June 17, 2019) (Scola J.). The Florida Supreme Court has held that to properly state a cause of action for "damages under *any legal theory* that arises from the unauthorized practice of law . . . the pleading must state that [the Florida Supreme Court] has ruled that the specified conduct at issue constitutes the unauthorized practice of law." *Id.* (citing *Goldberg v. Merrill Lynch*, 35 So.3d 905, 907 (Fla. 2010)). In other words,

unauthorized practice of law is not itself a legal theory but could constitute the underlying conduct that gives rise to an otherwise cognizable cause of action. *See Scharrer v. Fundamental Admin. Services,* No. 12-1855, 2013 WL 3943156, at *5 (M.D. Fla. 2013 July 30, 2013) ("the unauthorized practice of law is a foundational prerequisite to bringing another tort arising from the same facts"). The Plaintiff has asserted 27 other causes of action that are presumably based on the same conduct that constitutes the unauthorized practice of law. Accordingly, the Court dismisses Count XXIII as it cannot stand alone.

### D. Defendant Benton's Motion to Dismiss

Defendant Richard Benton, the lawyer that drafted the Trust, filed a separate motion to dismiss the counts asserted against him: negligent spoliation of evidence (Count XXV); negligent misrepresentation (XXVI); aiding and abetting unauthorized practice of law (Count XXVII); and punitive damages (XXVIII). (ECF No. 90.) As discussed above, negligent spoliation, unauthorized practice of law, and punitive damages fail as a matter of law and must be dismissed.

With respect to the Plaintiff's negligent misrepresentation claim, Benton argues that the Plaintiff's negligent misrepresentation claim is barred by the applicable four-year statute of limitations. (ECF No. 90 at 6.) In response, the Plaintiff argues that fraudulent concealment and the delayed discovery doctrine toll the statute of limitations. (ECF No. 96 at 11-15.) As explained above, the Court finds that the Plaintiff has not met his burden of pleading due diligence under either theory and therefore cannot show that the statute of limitations should be tolled. Accordingly, the Court grants Defendant Benton's motion to dismiss.

## IV. Conclusion

Based on the foregoing, the Court **grants in part and denies in part** the Defendants' motion (**ECF No. 135**) and **grants** Defendant Benton's motion in its entirety. (**ECF No. 90.**) Accordingly, the Court dismisses counts III, IV, V, VII, VIII, IX, X, XIII, XIV, XV, XVI, XX[2], XXIII[3], XXIV[4], XXV, XXVI, XXVII, and XXVIII.

---

[2] The Court dismisses Violation of Adult protection Statute, currently labeled as Count XXI, although it should be labeled Count XX.
[3] The Court dismisses Undue Influence by Active Procurement, currently labeled as Count XXIV, although it should be labeled Count XXIII.
[4] The Court dismisses Unauthorized Practice of Law, currently labeled as Count XXIII, although it should be Count XXIV.

The surviving counts are: Counts I, II, VI, XI, XII, XVII[5], XVIII[6], XIX[7], XXI[8], and XXII[9].

**Done and ordered** at Miami, Florida on December 23, 2019.

Robert N. Scola, Jr.
United States District Judge

---

[5] Reformation of Trust, labeled XVIII although it should be XVII, survives the motion to dismiss.
[6] Equitable Reformation of Indentures of Conveyance, labeled XIX although it should be XVIII, survives the motion to dismiss.
[7] Equitable Accounting, labeled XX although it should be XIX, survives the motion to dismiss.
[8] Civil Exploitation of Elderly and Disabled Adult, labeled XXII although it should be XXI, survives the motion to dismiss.
[9] Civil Theft, labeled XXIII although it should be XXII, survives the motion to dismiss.