**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-23362-Civ-SCOLA/TORRES

DAVID LAWRENCE ADDERLEY,

        Plaintiff,

v.

THREE ANGELS BROADCASTING
NETWORK, INC., a non-for-profit foreign
Corporation, ROY HUNT, JR., an individual,
JAMES W. GILLEY, an individual, DANNY
SHELTON, an individual, and RICHARD
BARRY BENTON, ESQ,

        Defendants
_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT BENTON'S MOTION FOR COSTS**

This matter is before the Court on Defendant Richard Barry Benton's Motion for Taxation of Costs [D.E. 215] against Plaintiff, who filed his opposition to the motion [D.E. 222]. Given the arguments in opposition, a reply is unnecessary. The matter, referred for disposition, is thus ripe for adjudication. After careful review of the motion, response, relevant authorities, and for the reasons discussed below, Defendant's motion should be **GRANTED in part** and **DENIED in part**.

1

# I.  BACKGROUND

Plaintiff initiated this lawsuit against multiple defendants through a Complaint filed August 17, 2018. [D.E. 1].  Plaintiff filed his Second Amended Complaint on April 12, 2019, which added Defendant Richard Barry Benton ("Benton") as a Defendant. [D.E. 68].  Following extensive discovery and motion practice, the trial Judge entered on December 26, 2019, an Omnibus Order on Defendants' Motion to Dismiss, which in part granted Benton's Motion to Dismiss in its entirety based on statute of limitations and other grounds.  [D.E. 204].  On Benton's motion, the Court also entered Final Judgment in his favor on all claims asserted against him in the action. [D.E. 216].

Benton now seeks an award of taxable costs in the total amount of $41,552.91, under the auspices of 28 U.S.C. § 1920 as well as Fla. Stat. § 92.231(2). Plaintiff responded in opposition to the motion [D.E. 222] relying primarily on the argument that "[b]ecause Plaintiff brought this action in good faith and this case involves complex and novel issues of facts and law, it would be wholly be inequitable under all the circumstances in the case to put the burden of costs upon Plaintiff."  Plaintiff, however, did not challenge any particular item of cost included in the motion.

# II.  ANALYSIS

## A.  *Entitlement to Taxable Costs*

The first issue we must tackle is whether Benton is entitled to any taxable costs following the entry of judgment in his favor.  Benton argues that he is

presumptively entitled to costs given his status as prevailing party in the action. Plaintiff agrees that costs are presumptively awardable. [D.E. 222 at 2].  But Plaintiff argues that equity dictates a different result.  Benton purportedly engaged in egregious misconduct in the underlying transaction at issue in the case, which included spoliation of evidence.  As a result, Benton "should not be rewarded for his misconduct" through an award of taxable costs.

Under Fed. R. Civ. P. 54(d)(1), a prevailing party "should" recover costs as a matter of course unless directed otherwise by a court or statute.  A strong presumption exists in favor of awarding costs. *Yellow Pages Photos, Inc. v. Ziplocal, LP,* 846 F.3d 1159, 1166 (11th Cir. 2017).  A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920).  "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so." *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000).  The court should not take into consideration the relative wealth of the parties, as it would undermine the presumption that Rule 54(d)(1) creates in favor of the prevailing parties.  *Id.*

Upon the filing of a timely motion or bill of costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the requested costs fall outside the scope of this statute or are otherwise unreasonable. *See, e.g., Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *14 (S.D. Fla. Apr. 14, 2009) (finding that the burden lies with the challenging party to

show that depositions were not related to an issue in the case at the time they were taken, and thereby show they were not wholly or partially "necessarily obtained for use in the case.").

Citing somewhat out-dated Sixth and Seventh Circuit caselaw, Plaintiff urges us to negate the presumption of taxable costs in this case because he engaged in good faith litigation, over a close and complicated case. It is true that district courts have discretion to decline an award of costs for extraordinary circumstances. *See, e.g., Chapman,* 229 F.3d at 1038 ("That provision establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise." (citations omitted)). The Sixth Circuit has expounded on that discretion by once holding that district courts can exercise it in "cases where taxable expenditures by the prevailing party are unnecessary or unreasonably large, cases where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues, cases where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant, and cases that are close and difficult." *White & White, Inc. v. Am. Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir. 1986).

The problem with that analysis is that it can be misinterpreted, as Plaintiff does here, as license for a Court to single out one of these "factors" to undermine the Rule 54(d) presumption. The Sixth Circuit itself has cautioned against this approach in a recent case that clearly sought to take a step back from an expansive reading of *White & White.* Specifically, the Court in *Freeman v. Blue Ridge Paper*

4

*Prod., Inc.,* 624 F. App'x 934, 939 (6th Cir. 2015), reiterated that, although good faith may be a relevant consideration, it is not, without more, adequate to deny costs.   And the focus of *White & White's* reliance on the "closeness" or "difficulty" of a case centered around the fact that the case "involved an 80-day trial with 43 witnesses, 800 exhibits, over 15,000 pages of transcripts, and a 95–page opinion by the court." *Id.* at 939.   By contrast, that case (like this one) involved a legal issue that was "settled law" which allowed for final adjudication at the summary judgment stage. In that circumstance, the non-prevailing plaintiff that was assessed taxable costs "cite[d] no authority supporting their assertion that the case was so close and difficult as to render the award of costs an abuse of discretion or contrary to law." *Id.*

Other Circuits have also been reluctant to rely on *White & White* as a vehicle to upset the statutory balance found in section 1920.   The Third Circuit, for instance, has found that "we agree with the Ninth Circuit and the majority of courts that have rejected the losing party's good faith as a relevant factor, . . . The only time the losing party's conduct should be at issue is if the losing party acted in bad faith during the course of litigation and then requested a costs award reduction. In such a circumstance, we agree with the courts that hold that a district court may deny a losing party's request to reduce costs if the losing party acted in bad faith." *In re Paoli R.R. Yard PCB Litig.,* 221 F.3d 449, 467 (3d Cir. 2000), as amended (Sept. 15, 2000) (citing *National Info. Serv. v. TRW, Inc.,* 51 F.3d 1470, 1472-73 (9th Cir. 1995) ("We specifically reject Plaintiffs' argument that their good faith in

prosecuting the underlying antitrust action should defeat the presumption in favor of awarding costs. All parties to a federal action have an obligation to act in good faith and with proper purpose. It follows that noble intentions alone do not relieve an unsuccessful litigant of the obligation under Rule 54(d) to compensate his opponent for reasonable costs.")); *see also Cherry v. Champion Int'l Corp.,* 186 F.3d 442, 447 (4th Cir. 1999) (recognizing that the losing party's good faith is "is a *prerequisite* for her claim to relief from the presumptive application on Rule 54(d)(1)") (emphasis in original).

And as to the closeness or difficulty of a case as a basis to deny presumptive costs, the court in *Paoli* rejected that out of hand: "we hold that this factor is not an appropriate one for district courts to consider, . . . Rather, we believe that to deny a prevailing party costs because it was successful in prosecuting or defending against a complex legal theory unduly punishes that party. Effecting such a penalty, absent punishable conduct on the part of the prevailing party, is contrary to this court's long line of precedent interpreting Rule 54(d)(1)." *In re Paoli,* 221 F.3d at 467 (citing *Klein v. Grynberg,* 44 F.3d 1497, 1507 (10th Cir.1995)).

We note that the Eleventh Circuit has never followed or apparently even cited *White & White* in any decision considering these issues. We think that is significant. And as between that court's expansive analysis, as opposed to the more limited rules espoused by the Fourth, Ninth and Tenth Circuits, we are confident that our Circuit would more align itself with the latter, not the former approach.

But putting that aside, analyzing this case under the *White & White* lens we fail to see how Plaintiff can persuasively argue that this case merits special treatment. Contrary to Plaintiff's theory, it really was not that close. The Court adjudicated the case on a motion to dismiss. The statute of limitations argument that ultimately won the day seems clear and straightforward. This is, as *Freeman* found, a fairly settled case. And even though the underlying injury that is at the heart of the case may indeed be serious and meaningful, for purposes of Rule 54(d) Benton's successful defense of the case is hardly novel or complex.

Furthermore, we concede that Plaintiff had a good faith case to make that Benton may have had responsibility for the damages he is alleging. But as *White & White* makes clear, that finding is not dispositive. Nor does Plaintiff's reliance on misconduct by Benton fare any better. As *Paoli* explains, this particular factor addresses whether the prevailing party engaged in misconduct during the litigation that would cut against an award of costs in her favor. Here, any alleged misconduct (which the District Judge held inapposite in his Order) that Benton committed prior to being sued is hardly a basis to deny him costs when he prevailed in the litigation. There is no mention of any untoward or improper conduct he engaged in during the case. So we fail to see how this factor helps Plaintiff defeat the pending motion for costs.

In short, the presumption of costs in favor of a prevailing party fully applies in this straightforward case. Plaintiff's earnestness notwithstanding, his claims against this additional defendant failed as a matter of law. Under Rule 54(d), he is

bound to compensate the prevailing defendant for the "relatively minor" expenses that Congress has seen fit to reimburse.  The proper exercise of discretion in this case is to carry out that legislative directive.  *See Taniguchi v. Kan Pac. Saipan, Ltd.,* 566 U.S. 560, 573 (2012) ("Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.' 10 *Wright & Miller* § 2666, at 203. Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized in § 1920.").

> **B.**  ***Calculation of Reasonable Costs to Award***

Having failed to convince us that costs should be summarily rejected, Plaintiff failed to provide any argument challenging any particular cost requested in Benton's application.  Under Local Rule 7.3, the failure to timely raise any challenge allows us to award in toto all the costs requested.  *See, e.g., Club Madonna v. City of Miami Beach,* 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) ("Local Rule 7.3's requirements are not optional, but mandatory.") ("Plaintiff's failure to comply with Local Rule 7.3 is grounds for granting [defendant's] requested amount of fees, if otherwise reasonable.").

So before awarding all the costs requested by default, we must independently assure ourselves that the costs included in the application are reasonable and

compensable under 28 U.S.C. § 1920.  In doing so, we find only two issues with the application.

### 1.    *Costs for Deposition Transcripts*

First, Benton requests reimbursement of $18,961.47 in taxable costs related to deposition transcripts procured in the case.  On its face, that request seems high. In analyzing the application further in that light, Benton is seeking transcripts for every copy of a deposition that he obtained in the case.  He further conclusorily contends that almost all of the transcripts were used to support his defenses in the case.  The problem with that is, given his unique status as a co-defendant in the case, we are not certain which particular deposition really related to the issues and defenses that he pursued.  And it is Benton's ultimate burden to show that each transcript at issue was "necessarily obtained for use in the case."  *See EEOC v. W & O, Inc.,* 213 F.3d 600, 620–21 (11th Cir.2000) (noting that costs of deposition transcripts may be taxed where the transcripts were, either wholly or partially, "necessarily obtained for use in the case").  Whether transcripts have been "necessarily obtained for use in the case," or merely for the convenience of counsel, is to be determined on a case-by-case basis. *See, e.g., Desisto Coll., Inc. v. Town of Howey–in–the–Hills,* 718 F. Supp. 906, 913 (M.D. Fla. 1998).

Given the summary nature of the request, we are reluctant to award all of the transcript costs, notwithstanding Plaintiff's failure to challenge this request. From the limited record presented, and as a result of Benton's own failure to show in his application why each particular transcript was necessary for his defenses, a

reduction is appropriate.  Accordingly, we will award 66% of the transcription costs requested in the application, which results in a taxable award of $12,514.57.

## 2.    *Costs for Expert Witnesses*

Second, Benton relies on Florida law, specifically Fla. Stat. § 92.231(2), to support his demand for $22,361.00 in expert witness fees.  Benton believes that this statutory provision requires us to award that sum in this federal case because the Florida Supreme Court defined the recovery of expert witness fees (in dicta) as a "substantive right." *See Massey v. David,* 979 So. 2d 931, 939 (Fla. 2008).  And under this substantive statute, Plaintiff is entitled to "[a]ny expert or skilled witness who shall have testified in any cause shall be allowed a witness fee including the cost of any exhibits used by such witness in an amount agreed to by the parties, and the same shall be taxed as costs."

Curiously Benton does not cite a single federal case, from this Circuit or elsewhere, that has awarded the full amount of an expert's fees as taxable costs under section 1920.  That is hardly surprising because the amount and nature of costs to be awarded is governed by federal law, even in diversity cases. *See Kivi v. Nationwide Mut. Ins. Co.,* 695 F.2d 1285, 1289 (11th Cir. 1983) (reversing district court order taxing expert witness costs in excess of those authorized under federal statute in diversity action); *Diperna v. GEICO Gen. Ins. Co.,* 2016 WL 7246094, at *8 (M.D. Fla. June 27, 2016) (noting that "federal law generally determines what costs may be awarded to a prevailing party in federal court, even when a federal court exercises diversity jurisdiction"); *Kearney v. Auto-Owners Ins. Co.,* 2010 WL

10

3062420, at *2 (M.D. Fla. Aug. 4, 2010) (applying the traditional rule that federal law governs costs even on state law claims because costs are generally viewed as a procedural matter).

And with respect to the particular Florida law argument that Benton now raises, the Eleventh Circuit directly addressed it in *Kivi*, where a plaintiff in an insurance coverage case relied upon Florida's insurance code to seek expert witness fees in excess of the per diem found in 28 U.S.C. § 1821. *Kivi,* 695 F.2d at 1289. That plaintiff's theory, like Benton's now, was that if the state law provides for an award of expert witness fees then they may be assessed as costs in a diversity case. But that was summarily rejected. "We need not labor long concerning this issue because it is well settled that expert witness fees cannot be assessed in excess of witness fees provided in § 1821." *Id.* That well settled law flowed from a 1932 decision of the Supreme Court that made it clear that only Congress could provide for recoverable costs in federal court, notwithstanding any conflicting state law. *See Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry.,* 284 U.S. 444, 447 (1932) ("But this [state law] provision, by its terms, is inapplicable, as the Congress has definitely prescribed its own requirement with respect to the fees of witnesses. The Congress has dealt with the subject comprehensively, and has made no exception of the fees of expert witnesses. Its legislation must be deemed controlling, and excludes the application in the federal courts of any different state practice.").

Indeed, Florida federal cases have applied these long-settled cases in diversity cases where plaintiffs specifically relied on Fla. Stat. § 92.231(2) as the

basis for a full award of expert witness fees.   Judge Spaulding comprehensively analyzed the issue, in light of *Kivi,* in an insurance case in which she rejected the plaintiff's argument because "federal law generally determines what costs may be awarded to a prevailing party in federal court, even when a federal court exercises diversity jurisdiction.." *Diperna v. GEICO,* 2016 WL 7246094, at *8.  And she also persuasively explained why the dicta in *Massey v. David* did not alter the result because that court's discussion had nothing to do with the *Erie* issue posed in this type of case.  *Id.* at *9 ("While Diperna assigns great weight to the above dicta, the *Massey* court's procedural-substantive discussion occurred only as part of a separation-of-powers analysis. Contrary to Diperna's suggestion, that the Florida Supreme Court characterized the statute as 'substantive' in one context does not establish that it is substantive for all purposes.").  Judge Spaulding, like us, was bound by the *holding* of the most relevant Eleventh Circuit decision, which foreclosed plaintiff's argument:  "The question before the Court is whether choice-of-law principles should permit an award of expert witness fees pursuant to a state law. On that issue, *Massey* is silent, while *Kivi* is unequivocal. The Eleventh Circuit has determined that an entitlement to expert witness fees is not substantive for choice-of-law purposes, and that holding is binding on the Court." *Id.*

So as a federal court applying section 1920 in a diversity case, expert fees and costs may be awarded only to the extent permitted by federal law.  And "in [28 U.S.C.] §§ 1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' witnesses." *Crawford,* 482 U.S. at 442.  Section 1821 authorizes fees

and allowances to an expert witness who appears in court or at a deposition. 28 U.S.C. § 1821(a)(1); *see also Ageloff v. Delta Airlines, Inc.,* 860 F.2d 379, 390 (11th Cir. 1988) (expert witness fees are taxable as costs in the same manner as any other witness fees). When a party seeks reimbursement for such fees, "a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford,* 482 U.S. at 439. Hence these federal statutes limit the amount a prevailing party may recover for "expert witnesses" to $40.00 per day (plus subsistence costs that are not relevant here). *See also Cronin v. Washington Nat. Ins. Co.,* 980 F.3d 663, 672 (11th Cir. 1993) ("[I]t is settled that expert witness fees may not exceed the statutory per diem provided in 28 U.S.C. § 1821."); *Tiara Condominium Ass'n, Inc. v. Marsh USA, Inc.,* 697 F. Supp. 2d 1349, 1371 (S.D. Fla. 2010); *Rosa v. City of Fort Myers,* 2008 WL 1776458, at * (M.D. Fla. Apr. 18, 2008) ("Under 28 U.S.C. § 1821(b), a witness attending court or a deposition shall be paid a $40.00 attendance fee per day plus travel expenses. This $40.00 is a maximum amount per witness, including expert witnesses.").

Accordingly, the maximum expert cost that Benton could recover here would be $40.00 per day for any day the expert testified as a witness. *See, e.g., Tiara Condominium Ass'n,* 697 F. Supp. 2d at 1347. He relied on two experts in the case, but neither of them was ever deposed or testified at trial. Instead, they both conducted research and prepared expert reports. But the case was dismissed before they were ever utilized in deposition or trial proceeding. Therefore, no witness costs

were incurred for these experts under section 1920.  The request for $22,361.00 for reimbursement of expert witness fees must be denied.

### 3.   *Final Amount of Cost Award*

Again, no challenge was made to the other costs included in the motion and we find them to be reasonable and compensable:  fees for subpoenas of $180.00 and photocopying costs for $50.44.  When they are added to the amount we award for deposition transcripts, $12,514.57, the maximum costs that can be awarded in Benton's favor is $12,745.01.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Benton's motion for taxable costs [D.E. 215] be **GRANTED in part** and **DENIED in part**:

A.   Benton should be awarded $12,745.01 in taxable costs, plus post-judgment interest;

B.   A cost judgment for that amount should be entered in Benton's favor;

C.   Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule

3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 30th day of January, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge